**UNITED STATE DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE EVENFLO CO., INC.<br>MARKETING, SALES PRACTICES AND<br>PRODUCTS LIABILITY LITIGATION | MDL No. 1:20-md-02938-DJC |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

**MEMORANDUM IN SUPPORT OF EVENFLO COMPANY, INC.'S**
**MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION**
**COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# Table of Contents

**Page**

Table of Authorities ................................................................................................ iv

I.  INTRODUCTION ................................................................... 1

II.  BACKGROUND ...................................................... 3

    A.  The Plaintiffs' Allegations ..................................................... 3

    B.  The Big Kid Meets And Exceeds Regulatory Requirements ...................... 6

III.  LEGAL STANDARD ........................................................ 8

IV.  PLAINTIFFS DO NOT ALLEGE A PLAUSIBLE INJURY IN FACT, DEFEATING ARTICLE III STANDING AND PLAINTIFFS' ABILITY TO STATE A CLAIM ................................................................... 8

    A.  Plaintiffs Do Not Allege A Plausible Economic Injury ............................... 9

    B.  Plaintiffs' Theory Premised On Risk of Future Harm Is Legally Insufficient ................................................... 12

    C.  Plaintiffs' Inability To State An Economic Injury Defeats Many State-Law Claims Under Fed. R. Civ. P. 12(b)(6) ....................................... 13

    D.  Plaintiffs Lack Standing To Seek Injunctive Relief .................................... 18

    E.  NHTSA, Not This Court, Is The Proper Federal Body To Determine Whether Plaintiffs' Requested Injunctive Relief Is Appropriate ................. 19

V.  PLAINTIFFS' REMAINING STATE-LAW CLAIMS SHOULD BE DISMISSED ....................................................... 20

    A.  The Alabama Implied Warranty (Count V) .................................................. 21

    B.  The Alaska CPL And Implied Warranty (Counts VI-VII) .......................... 21

    C.  The California Consumer Protection Statutes (Counts VIII-X) And Implied Warranty (Counts XI & XII) ......................................................... 22

    D.  The Colorado CCPA (Count XIII) ............................................................... 24

    E.  The Florida FDUTPA And Implied Warranty (Counts XIV-XV) ............... 24

F.  The GFBPA, Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), And Breach Of Implied Warranty (Counts XVI-XVIII) .......................................................................................... 25

G.  The Illinois ICFA And Implied Warranty (Counts XIX & XXI) ................ 25

H.  The Indiana IDCSA And Implied Warranty (Counts XXII-XXIII) ............ 26

I.  The Iowa CFA And Implied Warranty (Counts XXIV-XXV) .................... 26

J.  The Kentucky Consumer Protection Act ("KCPA") (Count XXVI) ........... 27

K.  The Louisiana Warranty Against Redhibitory Defects (La. Civ. Code Art. 2520 (Count XXVII) .................................................................. 27

L.  The Maine UTPA (Count XXVIII) ................................................... 27

M.  The Massachusetts Consumer Protection Law (Count XXIX) ................... 28

N.  The Michigan Consumer Protection Act ("MCPA") And Implied Warranty (Counts XXX-XXXI) ...................................................... 28

O.  The Minnesota Consumer Statutes (Counts XXXII-XXXV) ..................... 29

P.  The New Jersey Implied Warranty (Count XXXIX) .................................. 30

Q.  The New York NYGBL And Implied Warranty (Counts XXXX-XXXXII) ................................................................................. 30

R.  The North Carolina NCUDTPA (Count XXXXIII) ................................... 31

S.  The Ohio Deceptive Trade Practices Act ("ODTPA") And Implied Warranty (Counts XXXXIV-XXXXV) ............................................... 31

T.  The Oklahoma OCPA (Count XXXXVI) ................................................ 32

U.  The Pennsylvania Implied Warranty (Count IL) ...................................... 32

V.  The South Carolina SCUTPA (Count L) ................................................. 33

W.  The Tennessee Implied Warranty (Count LII) ......................................... 33

X.  The Texas TDTPA (Count LIII) ........................................................... 34

**Page**

Y.     The Washington Consumer Protection Act ("WCPA") (Count LV) ............ 34

Z.     The West Virginia WVCCPA (Count LVI) ................................................. 34

AA.    The Wisconsin Deceptive Trade Practices Act ("WDTPA") (Count LVII) ................................................................................................................ 34

VI.    COUNT LVIII FAILS BECAUSE IT ASSERTS CLAIMS UNDER THE LAWS OF TWENTY-TWO STATES AND THE DISTRICT OF COLUMBIA THAT HAVE NO CONNECTION TO THESE PLAINTIFFS' PURCHASE OF A BIG KID ...................................................................................... 35

VII.   NEARLY HALF THE PLAINTIFFS FAIL TO PLEAD THEIR STATE CONSUMER FRAUD CLAIMS WITH PARTICULARITY .................................. 36

VIII.  PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT, UNJUST ENRICHMENT, AND NEGLIGENT MISREPRESENTATION .......................................................................................... 38

IX.    RELIEF REQUESTED ........................................................................................... 40

CERTIFICATE OF SERVICE

## Table of Authorities

**Cases:** | **Page(s)**

*Agrolipetsk, LLC v. Mycogen Seeds,*
2017 WL 7371191 (S.D. Ind. June 5, 2017) ........................................................... 37

*Am. Suzuki Motor Corp. v. Super. Ct. of L.A. Cnty.,*
37 Cal. App. 4th 1291 (Ct. App. 1995) ................................................ 20, 23, 24

*Amin v. Mercedes-Benz USA, LLC,*
301 F. Supp. 1277 (N.D. Ga. 2018) ........................................................... 19

*Anderson v. Hannaford Brothers Co.,*
659 F.3d 151 (1st Cir. 2011) ................................................................. 14

*Anschultz Corp. v. Merrill Lynch & Co., Inc.,*
690 F.3d 98 (2d Cir. 2012) ................................................................... 40

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................... 8, 38

*Bahringer v. ADT Sec. Servs., Inc.,*
942 F. Supp. 2d 585 (D.S.C. 2013) ........................................................... 33

*Baron v. Pfizer, Inc.,*
42 A.D.3d 627 (N.Y. App. Div. 2007) ....................................................... 16

*Barricello v. Wells Fargo Bank, N.A.,*
2016 WL 1244993 (D. Mass. Mar. 22, 2016) ................................................. 5

*Beck v. FCA US LLC,*
273 F. Supp. 3d 735 (E.D. Mich. 2017) ...................................................... 22

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................... 8, 38

*Billions v White & Stafford Furniture Co.,*
528 So. 2d 878 (Ala. Civ. App. 1988) ....................................................... 13

*Boales v. Brighton Builders, Inc.,*
29 S.W.3d 159 (Tex. App. 2000) ............................................................ 34

*Bober v. Glaxo Wellcome PLC,*
246 F.3d 934 (7th Cir. 2001) .............................................................. 25

**Page(s)**

*Borden v. Antonelli Coll.,*
    304 F. Supp. 3d 669 (S.D. Ohio 2018) ..................................................... 32

*Burns v. Winnebago Indus., Inc.,*
    2013 WL 4437246 (M.D. Fla. Aug. 16, 2013) ........................................... 40

*Bussian v. DaimlerChrysler Corp.,*
    411 F. Supp. 2d 614 (M.D.N.C. 2006) ..................................................... 20

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
    761 F.3d 732 (7th Cir. 2014) ..................................................... 14

*Carey v. Select Comfort Corp.,*
    2006 WL 871619 (D. Minn. Jan. 30, 2006) ........................................... 15

*Casey v. Odwalla, Inc.,*
    338 F. Supp. 3d 284 (S.D.N.Y. 2018) ..................................................... 18

*Castillo v. Tyson,*
    268 A.D.2d 336 (N.Y. App. Div. 2000) ..................................................... 38

*Coker v. DaimlerChrysler Corp.,*
    617 S.E.2d 306 (N.C. Ct. App. 2005) ..................................................... 16

*Corral v. Carter's Inc.,*
    2014 WL 197782 (E.D. Cal. Jan. 16, 2014) ........................................... 23

*Corsello v. Verizon N.Y., Inc.,*
    967 N.E.2d 1177 (2012) ..................................................... 39

*Cortina v. Wal-Mart, Inc.,*
    2015 WL 260913 (S.D. Cal. Jan. 20, 2015) ........................................... 36

*Cummings v. FCA US LLC,*
    401 F. Supp. 3d 288 (N.D.N.Y. 2019) ..................................................... 31

*Cyr v. Ford Motor Co.,*
    2019 WL 7206100 (Mich. Ct. App. Dec. 26, 2019) ................................. 29

*Darst v. Ill. Farmers Ins. Co.,*
    716 N.E.2d 579 (Ind. Ct. App. 1999) ..................................................... 40

*Denton v. Dep't Stores Nat'l Bank,*
    2011 WL 3298890 (W.D. Wash. Aug. 1, 2011) ..................................... 34

**Page(s)**

*Dinwiddie v. Suzuki Motor of Am., Inc.*,
    111 F. Supp. 3d 1202 (W.D. Okla. 2015) ................................................................ 32

*Duke v. Flying J, Inc.*,
    178 F. Supp. 3d 918 (N.D. Cal. 2016) .................................................................... 34

*Edel v. Southtowne Motors of Newnan II, Inc.*,
    789 S.E.2d 224 (Ga. Ct. App. 2016) ...................................................................... 14

*Elyazidi v. SunTrust Bank*,
    2014 WL 824129 (D. Md. Feb. 28, 2014),
    *aff'd*, 780 F.3d 227 (4th Cir. 2015) ...................................................................... 36

*Epstein v. C.R. Bard, Inc.*,
    460 F.3d 183 (1st Cir. 2006) ................................................................................... 38

*Everett v. TK-Taito, L.L.C.*,
    178 S.W.3d 844 (Tex. App. 2005) ........................................................................... 17

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ................................................................................... 30

*Fleming v. Janssen Pharm., Inc.*,
    186 F. Supp. 3d 826 (W.D. Tenn. 2016) ................................................................. 17

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014) ...................................................................... 22

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
    2013 WL 5448078 (D. Colo. Sept. 27, 2013) ........................................................ 36

*Fuchs v. Menard, Inc.*,
    2017 WL 4339821 (N.D. Ill. Sept. 29, 2017) ......................................................... 25

*Garcia v. Medved Chevrolet, Inc.*,
    240 P.3d 371 (Colo. App. 2009) ............................................................................. 12

*Gorman v. Am. Honda Motor Co.*,
    839 N.W.2d 223 (Mich. Ct. App. 2013) .................................................................. 29

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011) ................................................................................. 16

**Page(s)**

*Greenberg v. United Airlines*,
   563 N.E.2d 1031 (Ill. App. Ct. 1990) ...................................................................... 19

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................. 22

*Hall v. Walter*,
   969 P.2d 224 (Colo. 1998) ...................................................................................... 13

*Hamilton v. Ball*,
   7 N.E.3d 1241 (Ohio Ct. App. 2014) ..................................................................... 31

*Harrison v. Leviton Mfg. Co.*,
   2006 WL 2990524 (N.D. Okla. 2016) ................................................................... 16

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989) ............................................................................................... 36

*Hochendoner v. Genzyme Corp.*,
   823 F.3d 724 (1st Cir. 2016) .................................................................................... 8

*Home Owners Ins. Co. v. ADT LLC*,
   109 F. Supp. 3d 1000 (E.D. Mich. 2015) .............................................................. 37

*Hubert v. Gen. Nutrition Corp.*,
   2017 WL 3971912 (W.D. Pa. Sept. 8, 2017) ......................................................... 11

*Iannacchino v. Ford Motor Co.*,
   888 N.E.2d 879 (Mass. 2008) ................................................................................ 28

*In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*,
   639 F. App'x 866 (3d Cir. 2016) ............................................................................ 15

*In re Baycol Products Litig.*,
   265 F.R.D. 453 (D. Minn. 2008) ........................................................................... 18

*In re Bisphenol-A (BPA) Polycarbonate Prods. Liab. Litig.*,
   687 F. Supp. 2d 897 (W.D. Mo. 2009) ................................................................. 15

*In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011) ............................................................. *passim*

**Page(s)**

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs.*
  *& Liab. Litig.,*
  903 F.3d 278 (3d Cir. 2018) ................................................................. 10, 12, 18, 19

*In re Riddell Concussion Reduction Litig.,*
  77 F. Supp. 3d 422 (D.N.J. 2015) ....................................................................... 37

*In re Taxotere (Docetaxel) Prod. Liab. Litig.,*
  2020 WL 1819668 (E.D. La. Apr. 7, 2020) ......................................................... 27

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
  684 F. Supp. 2d 942 (N.D. Ohio 2009) ............................................................... 39

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund*
  *v. Merck & Co.,*
  929 A.2d 1076 (N.J. 2007) ................................................................................. 11

*Johnson v. Bobcat Co.,*
  175 F. Supp. 3d 1130 (D. Minn. 2016) ............................................................... 19

*Johnson Controls, Inc. v. Jay Indus., Inc.,*
  459 F.3d 717 (6th Cir. 2006) .............................................................................. 29

*Kantner v. Merck & Co.,*
  2007 WL 3092779 (Ind. Sup. Ct. Apr. 18, 2007) ............................................... 14

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ............................................................................ 36

*Keating v. Nordstrom, Inc.,*
  2018 WL 576825 (D. Alaska Jan. 26, 2018) ...................................................... 36

*Kerin v. Titeflex Corp.,*
  770 F.3d 978 (1st Cir. 2014) .................................................................... *passim*

*Kesling v. Hubler Nissan, Inc.,*
  997 N.E.2d 327 (Ind. 2013) ............................................................................... 26

*Kirst v. Ottosen Propeller & Accessories, Inc.,*
  784 F. App'x 980 (9th Cir. 2019) ....................................................................... 13

*Laskowski v. Brown Shoe Co.,*
  2015 WL 1286164 (M.D. Pa. Mar. 20, 2015) ..................................................... 37

**Page(s)**

*Liss v. Lewiston-Richards, Inc.,*
   732 N.W.2d 514 (Mich. 2007) ............................................................. 29

*Ly v. Nystrom,*
   615 N.W.2d 302 (Minn. 2000) ............................................................. 30

*MacDonald v. Thomas M. Cooley Law School,*
   724 F.3d 654 (6th Cir. 2013) ............................................................. 40

*Manley v. Hain Celestial Grp., Inc.,*
   417 F. Supp. 3d 1114 (N.D. Ill. 2019) ............................................... 25

*Maxwell v. Remington Arms Co.,*
   2014 WL 5808795 (M.D.N.C. Nov. 7, 2014) ..................................... 31

*McKee v. Isle of Capri Casinos, Inc.,*
   864 N.W.2d 518 (Iowa 2015) ............................................................. 14

*McKinnon v. Honeywell Int'l, Inc.,*
   977 A.2d 420 (Me. 2009) .................................................................... 14

*McLearn v. Wyndham Resort Dev. Corp.,*
   2020 WL 1189844 (M.D. Tenn. Mar. 11, 2020) ............................... 37

*McNair v. Synapse Grp., Inc.,*
   672 F.3d 213 (3d Cir. 2012) ............................................................... 18

*Michelson v. Volkswagen Aktiengesellschaft,*
   99 N.E.3d 475 (Ohio Ct. App. 2018) ................................................. 31

*Midwestern Midget Football Club Inc. v. Riddell, Inc.,*
   2016 WL 3406129 (S.D.W. Va. June 17, 2016) ................................ 18

*Miller v. Vonage Am., Inc.,*
   2015 WL 59361 (E.D. Wis. Jan. 5, 2015) ......................................... 37

*Mulder v. Kohl's Dep't Stores, Inc.,*
   865 F.3d 17 (1st Cir. 2017) ............................................................... 37

*Murillo v. Kohl's Corp.,*
   197 F. Supp. 3d 1119 (E.D. Wis. 2016) ............................................ 35

*MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co.,*
   383 F. Supp. 3d 307 (D. Vt. 2019) .................................................... 36

**Page(s)**

*Nicdao v. Chase Home Fin.*,
   839 F. Supp. 2d 1051 (D. Alaska 2012) ................................................. 21

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
   567 F.3d 8 (1st Cir. 2009) .................................................................... 38

*O'Neil v. Simplicity, Inc.*,
   574 F.3d 501 (8th Cir. 2009) ............................................................ 10, 15

*Padilla v. Porsche Cars N. Am.*,
   391 F. Supp. 3d 1108 (S.D. Fla. 2019) ................................................. 24

*Painter Tool, Inc. v. Dunkirk Specialty Steel, LLC*,
   2017 WL 2985578 (W.D. Pa. July 13, 2017) ........................................ 33

*Palmer Foundry, Inc. v. Delta-HA, Inc.*,
   319 F. Supp. 2d 110 (D. Mass 2004) ................................................... 20

*Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*,
   215 F.3d 195 (1st Cir. 2000) .............................................................. 20

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003) ................................................. 30

*Pershouse v. L.L. Bean, Inc.*,
   368 F. Supp. 3d 185 (D. Mass. 2019) ................................................. 39

*Pharm. Care Mgmt. Ass'n v. Rowe*,
   429 F.3d 294 (1st Cir. 2005) .............................................................. 36

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*
   *v. Walgreens Co.*,
   631 F.3d 436 (7th Cir. 2011) .............................................................. 36

*Polaris Ind., Inc. v. McDonald*,
   119 S.W.3d 331 (Tex. App. 2003) ....................................................... 17

*Polk v. KV Pharm. Co.*,
   2011 WL 6257466 (E.D. Mo. Dec. 15, 2011) ...................................... 15

*Poulin v. Thomas Agency*,
   746 F. Supp. 2d 200 (D. Me. 2010) .................................................... 14

**Page(s)**

*Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,*
  400 U.S. 62 (1970) ..................................................... 19

*Precision Links Inc. v. USA Prods. Grp., Inc.,*
  2009 WL 801781 (W.D.N.C. Mar. 25, 2009) ......................... 16

*Price v. Philip Morris, Inc.,*
  848 N.E.2d 1 (Ill. 2005) ............................................. 11

*Prohias v. Pfizer, Inc.,*
  485 F. Supp. 2d 1329 (S.D. Fla. 2007) ............................ 38

*Rampey v. Novartis Consumer Health, Inc.,*
  867 So. 2d 1079 (Ala. 2003) ........................................ 21

*Rimini St., Inc. v. Oracle Int'l Corp.,*
  2020 WL 5531493 (D. Nev. Sept. 14, 2020) ....................... 36

*Rios v. Cabrera,*
  2010 WL 5111411 (M.D. Pa. Dec. 9, 2010) ........................ 36

*Rivera v. Wyeth-Ayerst Labs.,*
  283 F.3d 315 (5th Cir. 2002) ....................................... 10

*Riviello v. Chase Bank, USA, N.A.,*
  2020 WL 1129956 (M.D. Pa. Mar. 4, 2020) ....................... 17

*Rodriguez v. Recovery Performance & Marine, LLC,*
  38 So. 3d 178 (Fla. Dist. Ct. App. 2010) ........................ 13

*Rolo v. City Investing Co. Liquidating Trust,*
  155 F.3d 644 (3d Cir. 1998) ........................................ 35

*Rule v. Fort Dodge Animal Health, Inc.,*
  607 F.3d 250 (1st Cir. 2010) ....................................... 15

*Russo v. NCS Pearson, Inc.,*
  462 F. Supp. 2d 981 (D. Minn. 2006) .............................. 37

*Savalli v. Gerber Prods. Co.,*
  2016 WL 5390223 (S.D. Fla. Sep. 20, 2016) ..................... 24

*Savett v. Whirlpool Corp.,*
  2012 WL 3780451 (N.D. Ohio Aug. 31, 2012) .................... 32

**Page(s)**

*Schmidt v. Ford Motor Co.,*
   972 F. Supp. 2d 712 (E.D. Penn. 2013) ...................................................................... 32

*Schnellmann v Roettger,*
   627 S.E.2d 742 (S.C. Ct. App. 2006) ...................................................................... 17

*Shaulis v. Nordstrom, Inc.,*
   865 F.3d 1 (1st Cir. 2017) ...................................................................... 15, 28

*Sheris v. Nissan N. Am. Inc.,*
   2008 WL 2354908 (D.N.J. June 3, 2008) ...................................................................... 30

*Siemens Med. Sols. USA, Inc. v. Sunrise Med. Tech., Inc.,*
   2005 WL 615747 (N.D. Tex. Mar. 16, 2005) ...................................................................... 37

*Silvas v. Gen. Motors, LLC,*
   2014 WL 1572590 (S.D. Tex. Apr. 17, 2014) ...................................................................... 20

*Simpson v. Champion Petfoods USA, Inc.,*
   397 F. Supp. 3d 952 (E.D. Ky. 2019) ...................................................................... 27

*Sisemore v. Dolgencorp, LLC,*
   212 F. Supp. 3d 1106 (N.D. Okla. 2016) ...................................................................... 16

*Skelton Truck Lines LTD v. Peoplenet Commc'ns. Corp.,*
   2017 WL 11570877 (D. Minn. Jan. 18, 2017) ...................................................................... 30

*Small v. Lorillard Tobacco Co.,*
   720 N.E.2d 892 (N.Y. 1999) ...................................................................... 16

*Smith v. Apple, Inc.,*
   2009 WL 3958096 (N.D. Ala. Nov. 4, 2009) ...................................................................... 21

*Somoza v. Evenflo Co. Inc.,*
   2015-CA-001596 (Fla. Cir. Ct. Mar. 2, 2018) ...................................................................... 2

*Spaulding v. Wells Fargo Bank, N.A.,*
   714 F.3d 769 (4th Cir. 2013) ...................................................................... 37

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ...................................................................... 8

*St. Clair v. Kroger Co.,*
   581 F. Supp. 2d 896 (N.D. Ohio 2008) ...................................................................... 32

**Page(s)**

*Stemm v. Tootsie Roll Indus., Inc.,*
    374 F. Supp. 3d 734 (N.D. Ill. 2019) ........................................................... 14

*Taylor v. Mid-Tenn Ford Truck Sales, Inc.,*
    1994 WL 700859 (Tenn. Ct. App. Dec. 16, 1994) .................................... 33

*The 'In' Porters, S.A. v. Hanes Printables, Inc.,*
    663 F. Supp. 494 (M.D.N.C. 1987) ........................................................... 36

*Thiedemann v. Mercedes-Benz USA, LLC,*
    872 A.2d 783 (N.J. 2005) ........................................................................... 16

*Thuney v. Lawyer's Title of Ariz.,*
    2019 WL 467653 (D. Ariz. Feb. 6, 2019) .................................................. 36

*Tietsworth v. Harley-Davidson, Inc.,*
    677 N.W.2d 233 (Wis. 2004) ..................................................................... 35

*Tietsworth v. Sears,*
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................... 23

*Toca v. Tutco, LLC,*
    430 F. Supp. 3d 1313 (S.D. Fla. 2020) ..................................................... 24

*Tomasino v. Estee Lauder Cos.,*
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) ........................................................ 31

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.,*
    117 F. Supp. 3d 722 (M.D.N.C. 2015) ..................................................... 37

*Town of Chester, N.Y. v. Laroe Estates, Inc.,*
    137 S. Ct. 1645 (2017) ............................................................................... 18

*Travis v. Ferguson,*
    2017 WL 1736708 (Tenn. Ct. App. May 3, 2017) .................................... 33

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................................... 12

*Waters v. Electrolux Home Prods., Inc.,*
    154 F. Supp. 3d 340 (N.D. W. Va. 2015) ................................................. 34

*Weaver v. Chrysler Corp.,*
    172 F.R.D. 96 (S.D.N.Y. 1997) ........................................................... 16, 37

**Page(s)**

*Weinberg v. Sun Co.*,
    777 A.2d 442 (Pa. 2001) ..................................................................... 17

*Welk v. Beam Suntory Import Co.*,
    124 F. Supp. 3d 1039 (S.D. Cal. 2015) .................................................. 39

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) .............................................................. 23

*Winkworth v. Spectrum Brands, Inc.*,
    2020 WL 3574687 (W.D. Penn. June 30, 2020) .................................... 19

*Yost v. Gen. Motors Corp.*,
    651 F. Supp. 656 (D.N.J. 1986) ............................................................ 16

**Statutes, Rules and Regulations:**

49 U.S.C. § 30101 ................................................................................ 6

49 U.S.C. § 30111(b) ........................................................................... 6, 20

49 U.S.C. § 30118 ................................................................................ 7, 19

49 U.S.C. § 30119 ................................................................................ 7

49 U.S.C. § 30120 ................................................................................ 7, 19

49 U.S.C. § 30121 ................................................................................ 7

49 U.S.C. § 30162(a) ............................................................................ 19

Fed. R. Civ. P. 9(b) .............................................................................. 3, 8, 38

Fed. R. Civ. P. 12(b) ............................................................................ 13

Fed. R. Civ. P. 12(b)(1) ........................................................................ 2, 40

Fed. R. Civ. P. 12(b)(6) ........................................................................ *passim*

Ala. Code § 7-2-607(3)(a) ..................................................................... 21

**Page(s)**

Ala. Code § 8-19-10(a)(1) ................................................... 13

A.S. § 45.02.314(b)(3) ...................................................... 21

A.S. § 45.50.531(a) ........................................................... 13

Cal. Bus. & Prof. Code § 17500 ...................................... 22

Cal. Civ. Code § 1770(a) ................................................... 22

810 ILCS 5/2-314 ............................................................. 25

815 ILCS 505/10a(a) ......................................................... 14

Colo. Rev. Stat. § 6-1-106(1)(a) ....................................... 24

Conn. Gen. Stat. § 42-110a .............................................. 36

D.C. Code § 28-3901 ........................................................ 36

6 Del. Code § 2512 ........................................................... 36

Fla. Stat. § 501.211(2) ...................................................... 13

Fla. Stat. § 501.212(1) ...................................................... 24

Ga. Code § 10-1-374(a)(1) ................................................ 25

Ga. Code § 10-1-396(1) ..................................................... 25

Ga. Code § 11-2-314(2)(c) ................................................ 25

Idaho Code § 48-602 ........................................................ 36

Ind. Code § 24-5-0.5-4(a) ................................................. 14

Ind. Code § 24-5-0.5-6 ...................................................... 26

Ind. Code § 26-1-2-314(2)(c) ........................................... 26

Iowa Code § 554.2314(2)(c) ............................................. 26

Iowa Code § 714H.4(1)(g) ................................................ 26

|  | Page(s) |
|---|---|
| Iowa Code § 714H.5 ........................................................ | 14 |
| Kan. Stat. § 50-624 ........................................................ | 36 |
| La. Civ. Code Art. 2520 ........................................................ | 27 |
| 5 M.R.S. § 208(1) ........................................................ | 27, 28 |
| Mass. Gen. Laws. ch. 93A ........................................................ | 15, 28 |
| Mich. Comp. Laws § 445.904(1)(a) ........................................................ | 29 |
| Minn. Stat. § 8.31 ........................................................ | 30 |
| Minn. Stat. § 325D.09 ........................................................ | 15 |
| Minn. Stat. § 325D.43 ........................................................ | 15 |
| Minn. Stat. § 325F.67 ........................................................ | 15 |
| Minn. Stat. § 325F.68 ........................................................ | 15 |
| Minn. Stat. § 3336.2-314 ........................................................ | 15 |
| Miss. Code Ann. § 75-24-3 ........................................................ | 36 |
| Mont. Code Ann. § 30-14-102 ........................................................ | 36 |
| Neb. Rev. Stat. § 59-1601 ........................................................ | 36 |
| New York Gen. Bus. Law § 349 ........................................................ | 16 |
| New York Gen. Bus. Law § 350 ........................................................ | 16 |
| N.H. Rev. Stat. § 358-A:1 ........................................................ | 36 |
| N.J. Stat. Ann. § 56:8-19 ........................................................ | 16 |
| N.M. Stat. § 57-12-2 ........................................................ | 36 |
| Or. Rev. Stat. § 646.605 ........................................................ | 36 |
| R.I. Gen. Laws § 6-13.1-1 ........................................................ | 36 |

|  | Page(s) |
|---|---|
| S.C. Code § 39-5-140(a) | 17 |
| S.D. Codified Laws § 37-24-1 | 36 |
| Tenn. Code § 47-2-314 | 33 |
| Tenn. Code § 47-2-314(2)(c) | 33 |
| Tenn. Code § 47-18-109(a)(1) | 17 |
| Utah Code Ann. § 13-11a-1 | 36 |
| Wash. Rev. Code § 19.86.170 | 34 |
| 49 C.F.R. § 510 | 7 |
| 49 C.F.R. § 554 | 7 |
| 49 C.F.R. § 571.213 | *passim* |

**Other Authorities:**

| | |
|---|---|
| Dennis R. Durbin *et al.*, *Child Passenger Safety*, 142(5) Pediatrics (2018) | 5 |
| Federal Motor Vehicle Safety Standards, *Child Restraint Systems*, 59 Fed. Reg. 37167-01 (Jul. 21, 1994) | 7, 8 |
| Federal Motor Vehicle Safety Standards, *Child Restraint Systems—Side Impact Protection*, 79 Fed. Reg. 32211 (2014) | 7 |
| Michael R. Elliott *et al.*, *Effectiveness of child safety seats vs seat belts in reducing risk for death in children in passenger vehicle crashes*, 160(6) ARCH PEDIATR. ADOLESC. MED. 617-21 (2006) | 5 |
| *Moving Ahead for Progress in the 21st Century Act*, Pub. L. No. 112-141 (2012) | 7 |

I.      **INTRODUCTION.**

Parents and caregivers across the country undoubtedly seek to make an inherently unsafe endeavor—car travel—safer for themselves and their family members. That applies to the decision to purchase a car seat, whether that is a booster seat like the Big Kid, the aim of which is to properly position an older child so as to utilize the vehicle's lap and shoulder belt to protect in a collision, or child restraints containing internal harnesses like rear-facing infant seats or convertible or combination car seats. Defendant Evenflo Company, Inc. ("Evenflo") manufactures and markets all of these options. For its part, Evenflo seeks to provide parents and caregivers information designed to enable them to make good decisions about what type of car seat works best for their families, understanding that parents and caregivers are in the best position to assess the needs of their family and the developmental stages of their own children. Evenflo includes information on its website, social media, product packaging, instruction manuals, and on-product labeling. Here, Plaintiffs seize on two particular statements about the Big Kid drawn from the universe of public information, and quarrel with the adequacy of these two isolated statements in the abstract, rather than in context. They claim solely economic harm.

Specifically:  Plaintiffs take issue with Evenflo's representations that the Big Kid was "side impact tested" (the "Side Impact Representation") and could be used by children weighing between 30 and 40 pounds (the "Weight Minimum"). They claim the Side Impact Representation is misleading, not because Evenflo fails to perform side impact testing, but because they wish Evenflo would have performed it differently. They also fault Evenflo for representing that children weighing between 30 and 39 pounds, who meet all other child requirements for booster seat use, can use the Big Kid even though that weight range is specifically sanctioned by the National Highway Traffic Safety Administration ("NHTSA"). Plaintiffs challenge the regulatory sanctioned weight range because the American Academy of Pediatricians ("AAP") allegedly

prefers a different type of car seat for those children—one with an internal harness. Evenflo and its industry peers, with NHTSA's approval, have offered such a harnessed product for many years.

The Consolidated Amended Class Action Complaint (10/20/20) ("Amended Complaint" or "AC") begs the question: How have Plaintiffs been harmed? Plaintiffs tacitly admit to purchasing and using the Big Kid—some for months, others for years—without incident.[1] The Big Kid worked for them as represented. There are no plausible allegations that the Big Kid's market value would have been less had Evenflo omitted or altered the challenged representations. Nor do Plaintiffs allege that an alternative belt-positioning booster seat exists for less cost. Moreover, the representations Plaintiffs challenge are true:  The Big Kid is side-impact tested, and NHTSA specifically permits the 30-pound weight threshold. Plaintiffs' inability to plead actionable injury or deception, along with a host of other deficiencies, requires dismissal of the Amended Complaint under Fed. Rs. Civ. P. 12(b)(1) or 12(b)(6). Principal among them are:

*First*, Plaintiffs lack Article III standing to seek money damages or injunctive relief because they suffered no injury in fact and face no realistic threat of immediate harm from Evenflo's Big Kid sales. Plaintiffs do not allege that the Big Kid failed to operate as expected for them, that cheaper alternative products exist, or that the Big Kid's market value would be less had it omitted or altered the challenged representations. For the same reasons, Plaintiffs cannot state a claim under the consumer fraud and implied warranty laws of many states.

*Second*, the state consumer fraud claims fail due to lack of actionable deception. The implied warranty of merchantability claims fail because there are no allegations that the Big Kid

---

[1]   The Amended Complaint specifically references one product liability lawsuit filed against Evenflo involving a child using a Big Kid. (AC ¶ 212, n.8). That case resulted in a defense verdict for Evenflo after a multi-week trial. *Somoza v. Evenflo Co. Inc.*, 2015-CA-001596, Dkt. No. 776 (Fla. Cir. Ct. Mar. 2, 2018) ("VERDICT –IN FAVOR OF DEFENDANTS").

failed to perform as intended for Plaintiffs, and there is no contractual privity with Evenflo.

*Third*, Count LVII should be dismissed because Plaintiffs cannot invoke the consumer fraud laws of states unconnected to their purchase of any Big Kid under the commerce clause.

*Fourth*, nearly half of Plaintiffs, whose claims sound in fraud, fail to plead their claims with the particularity required under Fed. R. Civ. P. 9(b).

*Finally*, Plaintiffs' assertion of general common law claims for fraudulent concealment, unjust enrichment, and negligent misrepresentation should be dismissed for basic pleading deficiencies, where no attempt is made to allege these claims under specific state laws.

## II.   BACKGROUND.

### A.   The Plaintiffs' Allegations.

The 43 Plaintiffs who filed the Amended Complaint are citizens of 28 different states. All allege they purchased at least one Big Kid at a cost of approximately $30 to $50. (*See*, *e.g.*, AC ¶¶ 39, 83, 122, 133, 143, 167, 183). The Big Kid is a belt-positioning booster seat designed to raise the child so that the vehicle's lap and shoulder belts are positioned to fit the child properly. The seat does not contain its own internal harness for restraint. It merely "boosts" the child to a proper height. *See* 49 C.F.R. § 571.213 at S4.[2] In addition to the Weight Minimum, the Big Kid contains statements concerning suitable height, age, and maturity. (AC ¶¶ 247, 254). Children generally stop using the Big Kid between ages 8 and 12. (*Id.* ¶¶ 216(c), 255)).

Most Plaintiffs purchased their Big Kid before February 2020, when an internet article spawned this litigation. (*See*, *e.g.*, *id.* ¶¶ 285, 14-17 (Davis 2018); 29-33 (Epperson 2013); 42-44

---

[2] The Big Kid is but one type of car seat. Evenflo offers various types of infant seats, convertible seats, combination seats, and booster seats to ensure all families can afford a car seat that works for them. Rear-facing infant seats are available for the youngest children.  Harnessed convertible seats can be used both when the child is rear-facing and once a child is forward-facing. Booster seats like the Big Kid contain no internal harness. Combination seats are used first with an internal harness, and later as a booster seat with the harness removed. (*See* AC ¶¶ 216-218, 255).

(Howland 2014); 45-50 (Hash 2010); 51-54 (Aly 2018); 82-86 (Alexie 2016); 92-97 (Brodeur 2016)). Plaintiffs do not plead how long they used their Big Kids, their children's weight when using the Big Kid, or whether they used alternative seats. (*See*, *e.g.*, *id.*). For some, such as Plaintiff David Schnitzer, who purchased the Big Kid in 2015 for his five-year old son, their children likely stopped using the Big Kid by the time Plaintiffs filed suit. (*Id.* ¶¶ 132-37).

Even though Plaintiffs willingly purchased and used the Big Kid without incident, Plaintiffs now assert they suffered economic harm due to the Side Impact Representation and the Weight Minimum. (*See generally id.* ¶ 1). Most Plaintiffs allege they relied on the Side Impact Representation in purchasing the Big Kid (*e.g.*, *id.* ¶¶ 26-28, 51-54, 98-101); a few allege they relied solely on the Weight Minimum (*e.g.*, *id.* ¶¶ 34-37, 38-41, 68-73, 178-181); and many allege they relied on both (*e.g.*, *id.* ¶¶ 87-91, 175-177, 182-188). Many Plaintiffs allege they performed research before purchasing the Big Kid (*see*, *e.g.*, *id.* ¶¶ 31 ("researched various seats online and in-store"); 47 ("researched various seats through word-of-mouth, online, and in-person")), yet implausibly deny knowledge of the AAP's view that children are best served to remain in seats containing internal harnesses—not booster seats like the Big Kid—until the child has outgrown the harness seat (*id.* ¶¶ 216-218).

Plaintiffs concede that the Big Kid is side-impact tested, but claim that the Side Impact Representation is nonetheless misleading because, in their opinion, the testing was not adequate. (*Id.* ¶¶ 231-233). Plaintiffs allege that Evenflo's side-impact test is less rigorous than NHTSA's side-impact testing for automobiles, while overlooking that NHTSA does not require side-impact testing for car seats at all. (*Id.* ¶ 235). Plaintiffs further fault Evenflo's side-impact testing because it *only* tests to ensure:  (1) the child stays restrained in the vehicle belts; and (2) the Big Kid does not break apart in a collision. (*Id.* ¶¶ 236-38). Plaintiffs' theory of deception appears to

be that, because Evenflo theoretically could have developed a side-impact test protocol that tested additional safety criteria, its Side Impact Representation is actionably misleading.

Plaintiffs also allege that Evenflo "cling[s] to the 30-pound minimum" for use of the Big Kid "in the face of scientific consensus" that children weighing fewer than 40 pounds should remain in car seats containing an internal harness. (*Id.* ¶ 258). The Amended Complaint ignores that NHTSA—the agency charged with regulating car seat safety and a stakeholder in any actual "consensus"—issued a regulation approving children weighing 30 pounds to use a belt-positioning booster like the Big Kid. *See infra* at II.B. Plaintiffs' theory of deception as to the Weight Minimum appears to be nothing more than Evenflo should have reiterated AAP's guidance that children should remain in harnessed car seats until they have outgrown those seats.

Although the Amended Complaint includes inflammatory allegations that Evenflo has subjected millions of children to the risk of "grave injury and death" (AC ¶ 11), the reality, based on literature cited by Plaintiffs, is that the Big Kid makes children safer. Plaintiffs concede car seats—including belt-positioning booster seats such as the Big Kid—"are associated with a 28% reduction in risk of death[,] adjusting for seating position, vehicle type, model year, driver and passenger ages, and driver survival status." (*Id.* ¶ 223 (citing Michael R. Elliott *et al.*, *Effectiveness of child safety seats vs seat belts in reducing risk for death in children in passenger vehicle crashes*, 160(6) ARCH PEDIATR. ADOLESC. MED. 617-21 (2006))). Similarly, the Amended Complaint cites an AAP Statement, which acknowledges that "[b]ooster seats reduce the risk of nonfatal injury among 4- to 8-year olds by 45% compared to seat belts." Dennis R. Durbin *et al.*, *Child Passenger Safety*, 142(5) Pediatrics (2018); (AC ¶ 216, n.10).[3]

Plaintiffs plead vagaries as to the remedies sought. They plead that they "did not get the

---

[3] When a document on which the Amended Complaint relies contradicts an allegation in the Amended Complaint, "the document trumps the allegation." *See*, *e.g.*, *Barricello v. Wells Fargo Bank, N.A.*, 2016 WL 1244993, at *10 (D. Mass. Mar. 22, 2016) (dismissing complaint).

benefit of the bargain they struck" because "[t]hey paid for a booster seat under the mistaken belief . . . that it was actually 'side impact tested,' and that it was safe for children as small as 40 or even 30 pounds in the event of a side impact collision" (AC ¶ 282) and, had they known their competing version of the truth, they "would not have purchased [the] seat, would have paid less for it, or instead would have purchased one of the many safer available alternatives." On this basis, Plaintiffs seek unspecified "actual damages." (*See*, *e.g.*, *id.* ¶ 120, Request for Relief (E)). No Plaintiff pleads how much he or she "would have paid" for the Big Kid or identifies any specific "safer available alternative." Plaintiffs also ask for injunctive relief to recall all Big Kid models and add additional unspecified label warnings. (*Id.*, Request for Relief (J)).

## B.     The Big Kid Meets And Exceeds Regulatory Requirements.

NHTSA regulates car seat safety pursuant to the National Traffic and Motor Vehicle Safety Act and the Highway Safety Act, 49 U.S.C. §§ 30101 *et seq.* (the "Safety Act"). The Safety Act directs NHTSA to "prescribe motor vehicle safety standards" by "carry[ing] out needed safety research and development" to "reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. NHTSA promulgates Federal Motor Vehicle Safety Standards ("FMVSS") utilizing formal rulemaking procedures during which the agency must:  "(1) consider relevant available motor vehicle safety information; (2) consult with [state or interstate authorities]; (3) consider whether a proposed standard is reasonable, practicable, and appropriate for the particular type of . . . motor vehicle equipment;" and (4) consider whether the standard furthers the Safety Act.  *Id.* § 30111(b).

FMVSS 213 governs car seats used in motor vehicles. *See* 49 C.F.R. § 571.213. That standard regulates belt-positioning booster seats like the Big Kid separately from seats containing internal harnesses. *Id.* at S4 (defining "Belt-positioning seat"). The Big Kid must comply with the requirements in FMVSS 213 concerning dynamic performance in a crash, force

distribution, installation, and labeling. *Id.* at S5.1 to S5.8. NHTSA has a broad range of enforcement remedies in response to violations of the FMVSS, including formal investigatory powers, recalls, and civil penalties. 49 U.S.C. §§ 30118-30121; 49 C.F.R. §§ 510, 554.

FMVSS 213 requires belt-positioning seats to undergo a dynamic testing protocol that includes frontal sled testing. *Id.* at S6.1. Although FMVSS 213 currently does not require side-impact tests on any car seat, it does not prohibit manufacturers from developing their own side-impact test protocols or other tests. *Id.* at S5.5, 5.1, 5.2(e) (requiring Big Kid label to contain thirteen pieces of information, a statement that the seat "conforms to all applicable Federal motor vehicle safety standards," and not be "misleading to the consumer"). NHTSA is working on amending FMVSS 213 to require side-impact tests on some car seats, but the proposed rule would not require side-impact tests on belt-positioning booster seats like the Big Kid.[4]

FMVSS 213 requires children to weigh at least 30 pounds before using a belt-positioning seat. *Id.* at S5.5.2(f) ("[B]ooster seats shall not be recommended for children whose masses are less than 13.6 kg"). NHTSA amended FMVSS 213 in 1994 to adopt this threshold in response to legislation "direct[ing] the agency to initiate rulemaking on child booster seat safety" due to concerns that "some child booster seats 'may not restrain adequately a child in a crash.'" FMVSS, *Child Restraint Systems*, 59 Fed. Reg. 37167-01 (Jul. 21, 1994) (codified at 49 CFR § 571.213). NHTSA determined available data demonstrated that children weighing less than 30 pounds "are better protected" in seats that contain an internal harness, but children weighing at least 30 pounds may use booster seats. *Id.* NHTSA rejected a provision requiring manufacturers

---

[4] Congress passed legislation in 2012 directing NHTSA to "issue a final rule amending [FMVSS No. 213] to improve the protection of children seated in child restraint systems during side impact crashes." *Moving Ahead for Progress in the 21st Century Act*, Pub. L. No. 112-141, 112 Congress (2012). NHTSA has promulgated a proposed amendment to FMVSS 213 for public comment that is not final. *See* FMVSS, *Child Restraint Systems—Side Impact Protection*, 79 Fed. Reg. 32211 (2014).

to include an "affirmative warning" that children weighing less than 30 pounds should not use booster seats because it "could reduce the effectiveness" of other warnings.  *Id.*

## III.    LEGAL STANDARD.

A plaintiff must plead facts "showing that the pleader is entitled to relief[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (affirming dismissal). A complaint must contain sufficient factual matter that, accepted as true, states a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (affirming dismissal). In addition, because many of Plaintiffs' claims sound in fraud, they must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

## IV.    PLAINTIFFS DO NOT ALLEGE A PLAUSIBLE INJURY IN FACT, DEFEATING ARTICLE III STANDING AND PLAINTIFFS' ABILITY TO STATE A CLAIM.

The Court's jurisdiction is limited to "cases" and "controversies" under Article III of the Constitution.  *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (affirming dismissal for lack of standing). A plaintiff must suffer an "injury in fact" to have Article III standing.  *In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 510-13 (D. Mass. 2011) (dismissing case for lack of standing); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016) (finding "concreteness" is an independent element of "injury in fact"). To establish injury-in-fact, a plaintiff must allege an injury that is not only "concrete and particularized" but also "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. A "concrete" injury is one that "actually exist[s]," meaning it is "real, and not abstract." *Id.*[5]

Plaintiffs allege they "did not get the benefit of the bargain they struck" when they purchased the Big Kid and, had they known of the alleged misrepresentations, they would not

---

[5] The "plausibility standard applicable under Rule 12(b)(6)" applies "to standing determinations at the pleading stage." *Hochendoner*, 823 F.3d at 730. A plaintiff "bears the burden . . . to plausibly demonstrate his standing to bring the action. Neither conclusory assertions nor unfounded speculation can supply the necessary heft." *Id.* at 731.

have purchased the Big Kid, would have paid less, or would have purchased a safer, alternative product. (*See*, *e.g.*, AC ¶¶ 120, 282). Plaintiffs further speculate it is "likely" that "many" children "have been, and will be, injured" due to the alleged deceptions. (*Id.* ¶ 281). Neither theory of harm—economic loss or risk of future physical harm—plausibly alleges a "concrete," "actual," or "imminent" injury as required to confer Article III standing.  *See Fruit Juice*, 831 F. Supp. 2d at 510-12 (dismissing claims that fruit juice labels misrepresented lead content).

### A.      Plaintiffs Do Not Allege A Plausible Economic Injury.

Plaintiffs plead no facts establishing an economic injury that confers Article III standing. Plaintiffs do not plausibly plead benefit-of-the-bargain damages, because the Big Kid worked as expected for them. Nor do they plead any viable theory of overpayment or price premium, because they do not allege they would have purchased a cheaper alternative, or that the Big Kid's market value would have been less had the challenged representations been altered or omitted.

In *Fruit Juice*, for example, the MDL plaintiffs alleged that the juice contained lead, yet the defendants advertised their juice as safe to drink—specifically by children—and did not disclose the lead content. 831 F. Supp. 2d at 509-10. This Court dismissed the plaintiffs' claims for violations of various consumer protection laws, breach of warranty, and unjust enrichment for lack of Article III standing, reasoning:

> The fact is that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm.  The products have not been recalled, have not caused any reported injuries, and do not fail to comply with federal standards.  The products had no diminished value due to the presence of the lead. Thus, Plaintiffs received the benefit of the bargain, as a matter of law, when they purchased these products.

*Id.* at 512. The First Circuit later adopted similar reasoning in *Kerin v. Titeflex Corp.*, 770 F.3d 978 (1st Cir. 2014), dismissing for lack of Article III standing plaintiff's claim that he "overpa[id]" for steel tubing because it may fail if struck by lightning, but the tubing did not

violate any applicable regulatory standard and worked as expected for the plaintiff. *Id.* at 983-85.

As in *Fruit Juice*, Plaintiffs here "paid for [a Big Kid], and they received [a Big Kid], which they [used] without suffering harm." 831 F. Supp. 2d at 512. NHTSA has not recalled the Big Kid, the Big Kid meets NHTSA's standards as to testing and minimum weight, and Plaintiffs plead no facts plausibly establishing the Big Kid's economic value as less than what Plaintiffs paid due to the alleged misrepresentations. The *Fruit Juice* result should obtain here.

The First Circuit decisions are consistent with decisions by courts across the country that routinely reject similar claims where consumers allege economic injury after purchasing a product that worked as represented for them. *See*, *e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018) (plaintiffs who purchased talcum powder did not suffer an economic injury due to any omission of cancer risk disclosures because "[a] plaintiff alleging an economic injury as a result of a purchasing decision must do more than simply characterize that purchasing decision as an economic injury," as "buyer's remorse . . . is not a cognizable injury"); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 504–05 (8th Cir. 2009) (observing "[t]his case is similar to other no-injury cases" before concluding "[t]he [plaintiffs' product] performs just as it was intended, and thus there is no injury and no basis for relief"); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) (plaintiffs who purchased and safely used a pain killer did not suffer an economic injury because, had the manufacturer "provided additional warnings or made [the product] safer, the plaintiffs would be in the same positon they occupy now").

Here, Plaintiffs likewise fail to plead facts establishing the Big Kid was worth less than the approximately $30 to $50 they paid. For the 43 Plaintiffs here, the Big Kid worked exactly as they expected when they purchased the product. Only one Plaintiff experienced a side-impact

collision while using the Big Kid (AC ¶ 140), and none seeks compensation for physical harm. (*Id.* ¶ 282, Request for Relief)). Plaintiffs presented no facts that would entitle them to benefit-of-the-bargain damages in this case.

Nor do Plaintiffs plead facts establishing any other type of economic injury such as price premium or overpayment. Plaintiffs' allegations that they "would have purchased one of the many safer available alternatives" are unsupported by any factual allegation upon which to base their conclusion. (*Id.* ¶ 120). Plaintiffs do not allege that any alternative belt-positioning booster seat was available for a cheaper price than the Big Kid, which confirms they suffered no out-of-pocket injury. *See Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 59 (Ill. 2005) (no economic loss where "net change in consumers' economic position as a result of th[e] misrepresentation was zero"); *Hubert v. Gen. Nutrition Corp.*, 2017 WL 3971912, at *8 (W.D. Pa. Sept. 8, 2017) (Significantly, "Plaintiffs do not allege GNC advertised the supplements they purchased as superior to other products, nor do Plaintiffs identify any comparable, cheaper products to show that the supplements they purchased from GNC were sold at a premium price").[6]

Plaintiffs' claim that they "would have paid less" for the Big Kid had Evenflo altered or omitted the challenged representations not only is unsupported by any factual allegations, it is rejected by the Amended Complaint itself. (*See, e.g.*, AC ¶¶ 253-254 (alleging Evenflo changed the Big Kid's minimum weight from 30 pounds to 40 pounds in 2020 but alleging no corresponding price change)). Courts reject such "fraud-on-the-market" theories of price inflation. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1088 (N.J. 2007) ("[T]o the extent that plaintiff seeks to prove only that the price charged for Vioxx was higher than it should have been as a result of defendant's fraudulent marketing

---

[6] In fact, the Amended Complaint alleges that the Big Kid was priced $10 less than a competing product, Graco's TurboBooster. (AC ¶ 225).

campaign . . . the theory must fail"); *Garcia v. Medved Chevrolet, Inc.*, 240 P.3d 371, 380 (Colo. App. 2009) ("We are unable to conclude that any similar [fraud on the market] theory would be justified . . . where a car buyer claims that there were fraudulent omissions on window stickers and that, but for those omissions, the buyer would have paid a lower price or, perhaps, would not have purchased the automobile").

The Amended Complaint lacks any factual allegations establishing Plaintiffs would have paid less money—either by paying less for the Big Kid or for another booster seat—had Evenflo altered or omitted the challenged representations. Rather, Plaintiffs purchased a Big Kid that worked as expected for them. Hence, they plead no economic injury that confers standing.

### B.    Plaintiffs' Theory Premised On Risk Of Future Harm Is Legally Insufficient.

Although "a possible future injury" may theoretically serve as an alternative to economic injury for standing purposes, such suits "require caution." *Kerin*, 770 F.3d at 981-85. To confer standing, a plaintiff must plead a future injury that is "certainly impending," meaning "a credible or substantial threat to [Plaintiffs'] health." *Fruit Juice*, 831 F. Supp. 2d at 510.

No Plaintiff alleges that a family member was injured due to the Big Kid, let alone facts establishing that a family member faces an "increased risk of future injury" due to the Big Kid. The absence of allegations establishing a "certainly impending" risk of physical injury forecloses any standing based on future harm. *See Johnson & Johnson*, 903 F.3d at 289 ("had [plaintiff] alleged that she was at risk of developing ovarian cancer, she may have established standing based on a theory of future physical injury" but she "chose not to"); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class[.]").

The closest Plaintiffs come to asserting any risk is to speculate that "[i]t is likely that many [children] have been, and will be, injured[.]" (AC ¶ 281). *But cf. Kerin*, 770 F.3d at 983

(finding no standing because plaintiff failed to show that the "severe" future harm was "anything but remote"). Consistent with cases like *Kerin*, the literature cited in the Amended Complaint demonstrates the Big Kid makes children safer.  *Accord Fruit Juice*, 831 F. Supp. 2d at 511 (plaintiffs' failure to allege specific facts establishing that the product was dangerous resulted in a claim "simply too hypothetical or conjectural to establish Article III standing").

### C.   Plaintiffs' Inability To State An Economic Injury Defeats Many State-Law Claims Under Fed. R. Civ. P. 12(b)(6).

For the same reasons, many state-law claims fail under Fed. R. Civ. P. 12(b):

- **Alabama:** Plaintiff Natalie Davis cannot state a claim under the Alabama Deceptive Trade Practices ("ADTPA") (Count IV (AC ¶¶ 333-54)) because she has not suffered "actual damages" as required by Alabama law. Ala. Code § 8-19-10(a)(1); *see Billions v. White & Stafford Furniture Co.*, 528 So. 2d 878, 880-81 (Ala. Civ. App. 1988) (affirming dismissal of ADTPA claim absent showing of actual damages).

- **Alaska:** Plaintiff Jilli Hiriams, who purchased three Big Kids between 2016 and 2018, cannot state a claim under the Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPL") (Count VI (AC ¶¶ 366-86)) because she does not allege an "ascertainable loss" as a result of Evenflo's alleged deceptive conduct. A.S. § 45.50.531(a); *Kirst v. Ottosen Propeller & Accessories, Inc.*, 784 F. App'x 980, 983 (9th Cir. 2019) (affirming dismissal of Alaska CPL claim where plaintiff, who alleged seller misrepresented repaired propeller as "new," suffered no monetary loss).

- **Colorado:** Plaintiff Casey Hash cannot state a claim under the Colorado Consumer Protection Act ("CCPA") (Count XIII (AC ¶¶ 458-78)). To enforce the CCPA privately, a plaintiff must allege injury in fact.  *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998) (holding CCPA does not permit a claim for relief when claimant lacks standing). Hash alleges that, had she known of Evenflo's allegedly misleading representations, she would not have purchased the Big Kid or would have paid less for it (AC ¶ 50), which is insufficient under the CCPA.

- **Florida:** Plaintiffs Karyn Aly and Debora de Souza Correa Talutto have no "actual damages," defeating the Florida Deceptive And Unfair Trade Practices Act ("FDUTPA") and implied warranty claims (Counts XIV-XV (AC ¶¶ 479-98)). Fla. Stat. § 501.211(2); *see Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010) (dismissing FDUTPA claim because Plaintiff could not show market value of jet-boat as delivered was less than as represented). This standard requires pleading "the difference in the market value of the [product] . . . in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Id.* But the Florida Plaintiffs plead no facts establishing that the Big Kid they received has a lesser market value than a Big Kid that omits the challenged

misrepresentations.

- **Georgia:** Plaintiff Cathy Malone's Georgia Fair Business Practices Act ("GFBPA") claim (Count XVI (AC ¶¶ 499-523)) fails for lack of actual damages. *See Edel v. Southtowne Motors of Newnan II, Inc.*, 789 S.E.2d 224, 228 (Ga. Ct. App. 2016) (buyers of fraudulently marketed car warranties did not allege actual injury where they had not had a warranty claim denied, made no repairs, and otherwise alleged no actual damages).

- **Illinois:** Plaintiff Penny Biegeleisen, who purchased five Big Kids since 2015 (AC ¶ 63), cannot state a claim under Illinois Consumer Fraud And Deceptive Business Practices Act ("ICFA") (Count XIX (AC ¶¶ 556-72)) because she has not pled a tangible, out-of-pocket economic injury constituting "actual damage." 815 ILCS 505/10a(a) (action limited to a person who "suffers actual damage as a result of a violation"); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (allegation that "advertised 'sales prices' were in fact just the normal . . . retail prices" not an actionable loss under ICFA because no showing plaintiff "paid more than the actual value of the merchandise he received"). Biegeleisen purchased Big Kids that worked as expected for her, and she "cannot save her ICFA claim by alleging that she would not have bought the Product had she known about [the alleged deception]." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 743 (N.D. Ill. 2019) (dismissing claims).

- **Indiana:** The Indiana Plaintiffs' claim under the Indiana Deceptive Consumer Sales Act ("IDCSA") (Count XXII (AC ¶¶ 590-617)) fails because they have no "damages actually suffered," Ind. Code § 24-5-0.5-4(a), which Indiana courts interpret to mean "demonstrable out-of-pocket expenses," but not "hypothetical market price damages." *Kantner v. Merck & Co.*, 2007 WL 3092779, ¶¶ 17-18 (Ind. Sup. Ct. Apr. 18, 2007) (rejecting that "[w]hether couched as 'fraud on the market,' 'excessive price' or 'benefit of the bargain,' [plaintiff's] remaining claim is the same: She allegedly paid more than she 'should' have as a result of the alleged acts or omissions of [defendant] even though she doesn't allege any injuries or additional expenses as a result of taking [the drug]").

- **Iowa:** Plaintiff Anna Gathings does not plead facts establishing an "ascertainable loss" as required to privately enforce the Iowa Private Right Of Action For Consumer Frauds Act ("Iowa CFA") (Count XXIV (AC ¶¶ 629-35)). *See* Iowa Code § 714H.5; *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 532 (Iowa 2015) (plaintiff did not suffer an "ascertainable loss" after penny slot machine misrepresented a "Bonus Award" of $41,797,550.16). Gathings pleads no tangible loss of money.

- **Maine:** Plaintiff Jeffrey Lindsey cannot state a claim under the Maine Unfair Trade Practices Act ("Maine UTPA") (Count XXVIII (AC ¶¶ 670-84)). Maine courts construe the private right of action under the Maine UTPA, and its injury requirement, narrowly. *Anderson v. Hannaford Brothers Co.*, 659 F.3d 151, 160-61 (1st Cir. 2011) (imposing a "substantial injury" requirement on private Maine UTPA claims). Maine UTPA damages are limited to non-speculative "loss of money or property." *Poulin v. Thomas Agency*, 746 F. Supp. 2d 200, 206 (D. Me. 2010) (lowered credit score not actionable Maine UTPA injury); *McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420, 427 (Me. 2009) (finding that class representative failed to allege injury under Maine

14

UTPA). Lindsey does not plead any non-speculative loss of money.

- **Massachusetts:** Plaintiff Edith Brodeur has not pled a legally cognizable injury under state law (Count XXIX (AC ¶¶ 685-706)). *See* Mass. Gen. Laws ch. 93A, § 9(1) (a plaintiff must show she was "injured" by the unfair or deceptive act); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017) ("a claim resting only on a deceptive practice . . . is insufficient to state a Chapter 93A claim"). This is especially true where, as here, Brodeur bought her Big Kid in 2016 (AC ¶ 93) and used it without incident or harm. *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 253 (1st Cir. 2010) (no actionable Chapter 93A injury where plaintiff received the protection she sought after purchase without manifestation of the alleged safety risk).

- **Minnesota:** Plaintiffs Joshua Kukowski and Kari Forhan lack compensable injury and thus cannot state a claim under four Minnesota consumer protection statutes: The Prevention of Consumer Fraud Act ("MCFA") (Minn. Stat. § 325F.68); False Statement in Advertising Act ("MFSAA") (Minn. Stat. § 325F.67); Unlawful Trade Practices Act ("MUTPA") (Minn. Stat. § 325D.09); and Deceptive Trade Practices Act ("MDTPA") (Minn. Stat. § 325D.43); or breach of implied warranty under Minn. Stat. § 3336.2-314. (Counts XXXII-XXXVI (AC ¶¶ 734-87)). Where the Minnesota Plaintiffs received a product that performed as expected for them, and their claimed injury is only that they would have paid less for the product, or not bought it at all, had an alleged safety risk been disclosed, they cannot pursue any of the asserted claims. *Carey v. Select Comfort Corp.*, 2006 WL 871619, *1 (D. Minn. Jan. 30, 2006) (granting motion to dismiss MCFA, MFSAA, MUTPA, and MTDPA claims where plaintiff's mattress performed as expected, and rejecting claims that plaintiff would not have purchased the mattress or would have paid less for it had he known the mattress' "'air-chambered technology' contains a defect that traps moisture and causes mold to grow"); *O'Neil*, 574 F.3d at 504 (rejecting "benefit of the bargain" and price premium claims under Minnesota law "because [plaintiff's] crib has not exhibited the alleged defect" and "[t]heir bargain . . . did not contemplate the performance of cribs purchased by other consumers").

- **Missouri:** Plaintiff Emily Naughton cannot state a claim under the Missouri Merchandising Practices Act ("MMPA") (Count XXXVII (AC ¶¶ 788-804)). She does not allege an "ascertainable loss" of money, measured by the "benefit of the bargain" rule, as she fails to "allege [s]he did not receive the benefit from the [Big Kid] for which [s]he bargained; i.e. the [Big Kid] did not perform as intended." *Polk v. KV Pharm. Co.*, 2011 WL 6257466, at*5 (E.D. Mo. Dec. 15, 2011). She cannot claim an "ascertainable loss" by alleging the Big Kid would have cost less had the safety risk been disclosed. *In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*, 639 F. App'x 866, 869 (3d Cir. 2016) (affirming dismissal of MMPA claim where the plaintiff "received the drug she was prescribed, the drug did the job it was meant to do"); *In re Bisphenol–A (BPA) Polycarbonate Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 912-13 (W.D. Mo. 2009) (product that performed as anticipated conferred full benefit of the bargain despite undisclosed safety risk).

- **New Jersey:** Plaintiff Karen Sanchez fails to allege an "ascertainable loss of moneys or property" as required to state a claim under the New Jersey Consumer Fraud Act

("NJCFA") (Count XXXVIII (AC ¶¶ 805-15)). N.J. Stat. Ann. § 56:8-19. New Jersey rejects "hypothetical diminution in value" as "too speculative to satisfy the CFA requirement of a demonstration of a quantifiable or otherwise measurable loss." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 795 (N.J. 2005) (purchase of vehicle with defective fuel gauge was not an "ascertainable loss" where repairs were covered by warranty and diminished resale value was "too speculative"). Sanchez's failure to allege what she paid for the Big Kid, that the Big Kid did not perform as expected, or that alternative, cheaper products existed, dooms her attempt to plead economic injury under New Jersey law. *See Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011) (dismissing CFA claim where plaintiff "fails to allege how much he paid for his brewer and how much other comparable brewers manufactured by Defendants' competitors cost at the time of purchase"). Her failure to allege injury also requires dismissal of her implied warranty claim (Count XXXIX (AC ¶¶ 816-24)). *See Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 658 (D.N.J. 1986) (dismissing implied warranty claim for failure to plead facts supporting damages).

- **New York:** The New York Plaintiffs do not state an actionable injury under New York Gen. Bus. Law ("NYGBL") §§ 349 or 350 (Counts XXXX-XXXXI (AC ¶¶ 825-54)). *See Small v. Lorillard Tobacco Co.*,720 N.E.2d 892, 898 (N.Y. 1999) (no injury where plaintiffs failed to show "cost of cigarettes was affected by the alleged misrepresentation"). Where, as here, the New York Plaintiffs plead that they bought a product they "would not have purchased, absent a manufacturer's deceptive commercial practices," there is "no manifestation of either pecuniary or 'actual harm.'" *Baron v. Pfizer, Inc.*, 42 A.D.3d 627,629 (N.Y. App. Div. 2007) (finding allegations that plaintiff "would not have purchased the drug absent defendant's deceptive practices" inadequate to allege actionable injury). Nor do the New York Plaintiffs state an implied warranty claim (Count XXXXII (AC ¶¶ 855-65)), because the New York Plaintiffs have no actual damages. *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997) (dismissing implied warranty claim for lack of damages).

- **North Carolina:** The North Carolina Unfair & Deceptive Trade Practices Act ("NCUDTPA") claim (Count XXXXIII (AC ¶¶ 866-80)) fails because the North Carolina Plaintiffs have not sufficiently alleged they suffered an actual economic injury. *Coker v. DaimlerChrysler Corp.*, 617 S.E.2d 306, 310-11 (N.C. Ct. App. 2005) ("injury in fact" is required to state a NCUDTPA claim); *Precision Links Inc. v. USA Prods. Grp., Inc.*, 2009 WL 801781, at *3 (W.D.N.C. Mar. 25, 2009) (dismissing claim because "speculative allegations of possible harm in the future are simply insufficient to establish the actual injury necessary to support a claim under the [NC]UDTPA").

- **Oklahoma:** Plaintiff Linda Mitchell's Oklahoma Consumer Protection Act ("OCPA") and implied warranty claims (Counts XXXXVI-XXXXVII (AC ¶¶ 891-920)) fail because Mitchell must be an "aggrieved customer," which requires pleading actual damages. Mitchell—who purchased 4 Big Kids—has not done so. *Sisemore v. Dolgencorp, LLC*, 212 F. Supp. 3d 1106, 1109-10 (N.D. Okla. 2016) (allegation that product was worthless and caused others harm insufficient to state a OCPA claim); *Harrison v. Leviton Mfg. Co.*, 2006 WL 2990524, at *5 (N.D. Okla. Oct. 19, 2006) (dismissing OCPA and implied warranty claims because "[c]ourts do not allow

consumers to bring claims against manufacturers for products that are perceived to be harmful, but that have not actually cause[d] an identifiable injury").

- **Pennsylvania:**  Plaintiffs Hailey Lechner and Lauren Mahler fail to state a Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") claim (Count XXXXVIII (AC ¶¶ 921-36)) because they fail to allege an "ascertainable loss," as neither alleges the Big Kid did not work as expected, or that a cheaper alternative was available.  *Riviello v. Chase Bank USA, N.A.*, 2020 WL 1129956, at *3-4 (M.D. Pa. Mar. 4, 2020) ("To allege an ascertainable loss, the plaintiff 'must be able to point to money or property that he would have had but for the defendant's fraudulent actions"); *see also Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) (explaining that the PUTPCPL requires allegations regarding lack of benefits received and the amount of the purchase).  Lechner's claim also fails because she admits that her insurance company replaced her Big Kid with a different booster seat at no cost to her.  (AC ¶ 160).

- **South Carolina:**  Plaintiffs Tarnisha Alston and Rachel Huber cannot state a claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") (Count L (AC ¶¶ 948-63)), because they "suffered no pecuniary loss" as a result of Evenflo's alleged misrepresentations.    S.C.  Code  §  39-5-140(a)  (requiring  "ascertainable loss"); *Schnellmann v. Roettger*, 627 S.E.2d 742, 746 (S.C. Ct. App. 2006) (finding no pecuniary injury as a result of alleged misstatements).

- **Tennessee:**  Plaintiff Ashley Miller does not plead an "ascertainable loss of money or property" as required to assert a Tennessee Consumer Protection Act ("TCPA") claim (Count LI (AC ¶¶ 964-80)).  Tenn. Code § 47-18-109(a)(1).  For the claim to be actionable, the ascertainable loss "must be more than trivial or speculative."  *Fleming v. Janssen Pharm., Inc.*, 186 F. Supp. 3d 826, 834 (W.D. Tenn. 2016) (dismissing TCPA claim).  Miller's claimed loss is speculative.

- **Texas:**  Plaintiff Lindsey Brown cannot state a claim under the Texas Deceptive Trade Practices and Consumer Protection Act ("TDTPA") or for implied warranty breach (Counts LIII-LIV (AC ¶¶ 992-1019)), because she does not plead facts establishing either an "out-of-pocket" or "benefit-of-the-bargain" loss.  *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 858 (Tex. App. 2005) ("The out-of-pocket measure compensates for the difference between what the consumer paid and what he received; the benefit-of-the-bargain measure compensates for the difference between what a consumer was promised and what he received").  Brown has not alleged an economic injury under the TDTPA where the Big Kid worked as represented for her.  *Id.* (plaintiff failed to identify "any way in which the [seat belt buckle] in their vehicles performed differently from the way [defendants] represented the buckles would perform").  Brown's implied warranty claim likewise fails.  *Polaris Ind., Inc. v. McDonald*, 119 S.W.3d 331 (Tex. App. 2003) (dismissing implied warranty claim where plaintiff "got exactly what he paid for-a water vehicle fit for recreational use").

- **West Virginia.**  The West Virginia Plaintiffs have not sustained an "ascertainable loss" sufficient to give rise to a West Virginia Consumer Credit and Protection Act ("WVCCPA") claim (Count LVI (AC ¶¶ 1033-60))—they purchased a Big Kid and do

not allege the booster seat did not work as expected for them. *See In re Baycol Products Litig.*, 265 F.R.D. 453, 459 (D. Minn. 2008) (applying West Virginia law and finding no ascertainable loss existed because the product "served its exact purpose"). Nor do they allege they would have purchased a cheaper, alternative belt-positioning booster seat. *Cf. Midwestern Midget Football Club Inc. v. Riddell, Inc.*, 2016 WL 3406129, at *6 (S.D.W. Va. June 17, 2016) (finding plaintiff "suffered a loss" under the WVCCPA "when it purchased Revolution Helmets at an inflated price—relying on Riddell's safety claims—instead of purchasing the lower-priced traditional helmets").

### D.   Plaintiffs Lack Standing To Seek Injunctive Relief.

"[S]tanding is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). "[A] plaintiff who has standing to seek damages must also demonstrate standing to pursue injunctive relief." *Id.* To pursue injunctive relief, a plaintiff must demonstrate that he or she is likely to suffer future injury from the product. *Johnson & Johnson*, 903 F.3d at 292 (finding plaintiff lacked standing to pursue injunctive relief).

Plaintiffs do not plead any threat of future economic injury because they do not plead facts sufficient to establish they are likely to purchase another Big Kid. Courts regularly dismiss deceptive marketing claims seeking injunctive relief in such circumstances. *See*, *e.g.*, *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 224-25 (3d Cir. 2012) (former customers of magazine did not have standing to seek injunction against magazine's deceptive subscription-renewal practices because plaintiffs "d[id] not allege that they intended to subscribe [to the magazine] again"); *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 299 (S.D.N.Y. 2018) (denying Article III standing for injunctive relief in deceptive labeling case because "Plaintiff does not allege that she will purchase Defendants' products in the future") (collecting cases).

Plaintiffs further do not plead facts establishing they personally face any "real," "immediate," or "certainly impending" risk of physical harm due to their purchase of the Big Kid that is redressible through injunctive relief. Even if they had, their knowledge of the alleged safety risks, as demonstrated by this lawsuit, prevents them from claiming that Evenflo's alleged

deception caused any future harm in a side-impact collision, as opposed to Plaintiffs' own acceptance of the alleged risks. *See Johnson & Johnson*, 903 F.3d at 292 (finding plaintiff lacked standing to pursue injunctive relief because she was well aware of the risks of using the product and thus could not be harmed in the future); *Winkworth v. Spectrum Brands, Inc.*, 2020 WL 3574687, at *7-8 (W.D. Penn. June 30, 2020) (same).[7]

### E.   NHTSA, Not This Court, Is The Proper Federal Body To Determine Whether Plaintiffs' Requested Injunctive Relief Is Appropriate.

NHTSA, pursuant to its congressionally-delegated authority, regulates car seat safety pursuant to FMVSS 213.  NHTSA set the 30-pound weight minimum for belt-positioning booster seats, and is currently finalizing a side-impact testing rule that imposes no obligations on booster seats.  NHTSA may determine whether a booster seat "contains a defect . . . or does not comply with an applicable motor vehicle safety standard," as well as issue recalls or restrict sales.  49 U.S.C. §§ 30118, 30120.  NHTSA even solicits consumer complaints to determine whether to investigate an alleged defect or noncompliance.  49 U.S.C. § 30162(a) (authorizing "[a]ny interested person" to file a petition to investigate a defect or noncompliance).

The Supreme Court "recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was necessary if consistent and coherent policy were to emerge."  *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68 (1970) (applying primary jurisdiction

---

[7] For the same reason, Plaintiffs' claims under several state laws (Counts XVII (Georgia Uniform Deceptive Trade Practices Act ("GUDTPA")), XX (Illinois Uniform Deceptive Trade Practices Act ("IDTPA")), and XXXIII (Minnesota Deceptive Trade Practices Act ("MDTPA"))) should be dismissed under Fed. R. Civ. P. 12(b)(6).  *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 1277, 1296 (N.D. Ga. 2018) (no claim for injunctive relief under GUDTPA where plaintiff had been damaged but was not likely to be damaged again by the fraudulent advertising/marketing); *Greenberg v. United Airlines*, 563 N.E.2d 1031, 1037 (Ill. App. Ct. 1990) (affirming dismissal of claim under IDTPA); *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016) (allegation of "continuing" unlawful conduct insufficient for injunction under the MDTPA; plaintiff could not plausibly plead threat of future harm where he was now aware of allegedly misleading promotional material).

doctrine).  Consequently, the court may stay a case pending agency review.  *Palmer Foundry, Inc. v. Delta-HA, Inc.*, 319 F. Supp. 2d 110, 113 (D. Mass. 2004) (invoking primary jurisdiction doctrine and staying case).  The First Circuit relies on three factors: "(1) whether the agency determination l[ies] at the heart of the task assigned the agency by Congress; (2) whether agency expertise [is] required to unravel intricate, technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court."  *Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 215 F.3d 195, 205 (1st Cir. 2000) (holding doctrine applicable).

Here, the factors align to support NHTSA's consideration of the Big Kid's adequacy. The Weight Minimum and side-impact issues Plaintiffs challenge unquestionably "lie[] at the heart of the task assigned the agency by Congress," as Congress has explicitly asked NHTSA to regulate these areas.  Agency expertise is also required.  To amend FMVSS 213, NHTSA must "consider relevant available motor vehicle safety information" and "consider whether a proposed standard is reasonable, practicable, and appropriate for the particular type of . . . motor vehicle equipment."  49 U.S.C. § 30111(b).  Finally, NHTSA's determination would materially aid the court in determining the scope of any requested injunctive relief.  *See*, *e.g.*, *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627-28 (M.D.N.C. 2006) (deferring to NHTSA's investigation of a safety defect); *Silvas v. Gen. Motors, LLC*, 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014) (finding NHTSA is the proper body to issue a "park it now" alert); *Am. Suzuki Motor Corp. v. Super. Ct. of L.A. Cnty.*, 37 Cal. App. 4th 1291, 1299-1300 (Ct. App. 1995) ("[T]he remedy which will best promote consumer safety, and which will address [purchasers] concern that 'tragic consequences' will result if the [alleged rollover] defect is not remedied, is to petition the . . . (NHTSA) for a defect investigation").

## V.    PLAINTIFFS' REMAINING STATE-LAW CLAIMS SHOULD BE DISMISSED.

Plaintiffs assert additional claims under the consumer fraud and implied warranty statutes

of their home states.  Those claims, however, fail for a myriad of different reasons, including no actionable deception where the challenged representations are true and permitted by NHTSA. The implied warranty claims likewise fail for lack of injury, privity, and omission of factual allegations establishing Plaintiffs could not use the Big Kid as intended.

### A.   The Alabama Implied Warranty (Count V).

**No Privity.**  To recover economic loss for breach of implied warranty (AC ¶¶ 355-65), Plaintiff Davis must have privity of contract with Evenflo.  *Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1089 (Ala. 2003) (dismissing implied warranty claims on lack of privity grounds).  She does not allege privity with Evenflo.  (AC ¶ 15).

**No Notice.**  The implied warranty claim also fails because Davis did not provide pre-suit notice.  Ala. Code § 7-2-607(3)(a); *Smith v. Apple, Inc.*, 2009 WL 3958096, at *1-2 (N.D. Ala. Nov. 4, 2009) (dismissing implied warranty claim).  Her attempt (AC ¶ 363) to rely on class action complaints to satisfy the notice requirement is deficient.  *Smith*, 2009 WL 3958096, at *1 ("the filing of a lawsuit itself constitutes sufficient notice only if personal injuries are involved").

### B.   The Alaska CPL And Implied Warranty (Counts VI-VII).

**No Deceptive Act or Practice.**  The Alaska CPL claim (AC ¶¶ 366-86) fails for lack of an actionable "unfair or deceptive act or practice."  *Nicdao v. Chase Home Fin.*, 839 F. Supp. 2d 1051, 1076 (D. Alaska 2012) (defining "deceptive" as "the capacity or tendency to deceive"). The Side Impact Representation is true, and the Weight Minimum complies with FMVSS 213.

**Fit for Ordinary Purpose.**  To recover for breach of implied warranty (AC ¶¶ 387-97), Plaintiff Hiriams must plausibly allege that the Big Kid was not "fit for the ordinary purpose for which the goods are used."  A.S. § 45.02.314(b)(3).  Hiriams has failed to allege the Big Kid did not work as intended for her.

21

### C.    The California Consumer Protection Statutes (Counts VIII-X) And Implied Warranty (Counts XI & XII).

**<u>No Deceptive Act or Practice.</u>**  The California Plaintiffs do not state a claim under California's Unfair Competition Law ("UCL"), Legal Remedies Act ("CLRA"), or False Advertising Law ("FAL") because they fail to allege that Evenflo made an actionable "deceptive," "misleading," or "fraudulent" representation (AC ¶¶ 398-434).  Cal. Civ. Code § 1770(a) (CLRA); Cal. Bus. & Prof. Code § 17500 (FAL); *Id.* § 17200 (UCL).[8]  Neither the Side Impact Representation nor the Weight Minimum (AC ¶ 401) is actionable under California law because neither is misleading to a "reasonable consumer."  *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1011 (N.D. Cal. 2014) ("reasonable consumer" test "requires a plaintiff to show that members of the public are likely to be deceived;" dismissing UCL, CLRA, and FAL claims).

The Side Impact Representation is not actionable because the only "measurable claim"—that the Big Kid was side-impact tested—is true.  *Id.* at 1012 ("to be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false").  Any inference the California Plaintiffs made that the Big Kid represented the ultimate side-impact safety or was the "best choice" for their children is subjective and not measurable.  *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 750 (E.D. Mich. 2017) (dismissing UCL claim based on representations vehicle was subject to "rigorous testing" and "equipped with some of the most advanced safety and security technology available").  Nor is the Weight Minimum actionable, given that NHTSA set that threshold.  The Big Kid does not claim to be the best option for every child between 30 and 40 pounds—it merely lists the minimum and maximum weight for the seat as set by NHTSA, along with height, age, and maturity

---

[8] "Generally, a violation of the FAL or the CLRA is also a violation of the fraudulent prong of the UCL."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (dismissing each statutory claim).

requirements for the Big Kid's use.  (*See*, *e.g.*, AC ¶¶ 230, 247).

**No Actionable Omissions.**  The California Plaintiffs fare no better by framing their UCL, CLRA, and FAL claims as omissions.  (*See*, *e.g.*, *id.* ¶ 401).  An obligation to disclose extends only when concealment results in an "unreasonable safety hazard."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012) (affirming dismissal of CLRA and UCL claims for failure to allege that the product defect posed an unreasonable safety hazard).  Plaintiffs plead no facts quantifying the injury risk children weighing less than 40 pounds face in a side-impact collision *due to using the Big Kid*, let alone that any risk is "unreasonable."  *See Corral v. Carter's Inc.*, 2014 WL 197782, at *4 (E.D. Cal. Jan. 16, 2014) (holding that plaintiffs "must allege at least some evidence that the use of *Defendant's* product, as directed, increases the frequency with which the harm will occur") (emphasis in original).

**Fit For Ordinary Purpose.**  The implied warranty claims under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act") and the Uniform Commercial Code ("UCC") (AC ¶¶ 435-57) fail because the implied warranty—whether brought under the UCC or the Song-Beverly Act—does "not 'impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality.'" *Am. Suzuki*, 37 Cal. App. 4th at 1296-97 (rejecting that product must be "free of all speculative risks, safety-related or otherwise"); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) ("The mere manifestation of a defect by itself does not constitute a breach of the implied warranty[.]  Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose").

Plaintiffs do not establish that the Big Kid was unfit for its ordinary purpose, as Plaintiffs used the Big Kid as intended, and received the intended result—their children were adequately

and safely restrained.  "To hold otherwise would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized.  And, compensation would have to be paid for a product 'defect' that was never made manifest, in a product that for the life of any warranty actually performed as [Evenflo] guaranteed it would."  *Am. Suzuki*, 37 Cal. App. 4th at 1299.

### D.      The Colorado CCPA (Count XIII).

**Regulatory Exemption.**  The CCPA claim (AC ¶¶ 458-78) fails because NHTSA set the Weight Minimum and permitted the Side Impact Representation, exempting both from the CCPA.  *See* Colo. Rev. Stat. § 6-1-106(1)(a) (CCPA exempts "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency").

### E.      The Florida FDUTPA And Implied Warranty (Counts XIV-XV).

**Regulatory Exemption.**   The FDUTPA claim (AC ¶¶ 479-87) fails because the FDUTPA "does not apply" to any "act or practice required or specifically permitted by federal or state law."  Fla. Stat. § 501.212(1); *Savalli v. Gerber Prods. Co.*, 2016 WL 5390223, at *4 (S.D. Fla. Sep. 20, 2016) (dismissing FDUTPA marketing claims because the labeling on the product "plainly [met] the [federal] regulatory requirements, and [was] thus expressly permitted" by federal law).  Plaintiff Aly alleges she relied on the Side Impact Representation, but NHTSA is aware that companies like Evenflo have been completing their own protocols for years.  Plaintiff Talutto alleges she additionally relied on the Weight Minimum, which is a threshold NHTSA set.

**No Privity.**   The implied warranty claim (AC ¶¶ 488-98) fails because the Florida Plaintiffs did not purchase the Big Kid product directly from Evenflo, in violation of Florida's "bright-line privity rule."  *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1326 (S.D. Fla. 2020) (dismissing claims for lack of privity); *Padilla v. Porsche Cars N. Am.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019) ("[t]ime and again, Florida courts have dismissed . . . implied warranty claims . . . for lack of contractual privity where the plaintiff [] did not purchase a product directly

24

from the defendant").

### F.     The GFBPA, Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), And Breach Of Implied Warranty (Counts XVI-XVIII).

**Safe Harbor.**  The GFBPA and GUDTPA claims (AC ¶¶ 499-544) fail because both statutes contain safe harbors for activities specifically authorized and in compliance with rules or statutes administered by federal agencies.  *See* Ga. Code § 10-1-396(1) (GFBPA); *id.* § 10-1-374(a)(1) (GUDTPA).  Because Evenflo's challenged conduct complies with FMVSS 213, it cannot violate either the GFBPA or GUDTPA.

**Fit For Ordinary Purpose.**  The implied warranty claim requires a showing that the Big Kid was not "fit for the ordinary purpose for which such goods are used."  Ga. Code § 11-2-314(2)(c).  But Plaintiff Malone failed to allege the Big Kid did not work as intended for her.

### G.     The Illinois ICFA And Implied Warranty (Counts XIX & XXI).

**No Deceptive Act Under ICFA.**  The IFCA claim (AC ¶¶ 556-72) should be dismissed because the alleged misrepresentations are "literally true" and comply with federal law (FMVSS 213).  *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940-41 (7th Cir. 2001) (concluding that 815 ILCS 505/10b(1) exempts from ICFA those representations "specifically authorized" by federal law and dismissing claims); *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *4-5 (N.D. Ill. Sept. 29, 2017) (dismissing allegations that lumber had smaller dimensions than labeled because the applicable federal regulator approved the size representations).

**Implied Warranty: No Privity.**  The implied warranty claim (AC ¶¶ 579-89) fails because Plaintiff Biegeleisen purchased five Big Kids from Walmart, not Evenflo (AC ¶ 63).  810 ILCS 5/2-314; *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1121 (N.D. Ill. 2019) (dismissing claims, concluding that, "with respect to purely economic loss, . . . implied warranties give a buyer . . . a potential cause of action only against his immediate seller").

### H.    The Indiana IDCSA And Implied Warranty (Counts XXII-XXIII).

**No Actionable Conduct.**  The Indiana Plaintiffs' IDCSA claim (AC ¶¶ 590-617) fails because NHTSA "expressly permit[s]" the Weight Minimum.  *See* Ind. Code § 24-5-0.5-6 (IDCSA "does not apply to an act or practice that is: (1) required or expressly permitted by federal law, rule or regulation").  While Plaintiff Jessica Greenshner challenges the Side Impact Representation and Evenflo's statement that the Big Kid is "rigorously" tested (AC ¶ 66), those statements are not deceptive.  The Big Kid is tested in compliance with FMVSS 213, and the term "rigorous" is non-actionable opinion.  *See Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 333 (Ind. 2013) (statement that vehicle is "sporty" and a "great value" is not actionable).

**Fit For Ordinary Purpose.**  To state an implied warranty claim (AC ¶¶ 618-28), the Indiana Plaintiffs must plead that their Big Kids were not "fit for the ordinary purposes for which such goods are used."  Ind. Code § 26-1-2-314(2)(c).  Like the other Plaintiffs, the Indiana Plaintiffs do not allege the Big Kid did not work as intended for them.

### I.    The Iowa CFA And Implied Warranty (Counts XXIV-XXV).

**No Actionable Conduct.**  Neither the Weight Minimum nor the Side Impact Representation violates the Iowa CFA (AC ¶¶ 629-35).  NHTSA set the Weight Minimum in FMVSS 213, which exempts that representation from the CFA's scope.  *See* Iowa Code § 714H.4(1)(g) (Iowa CFA does not apply to "[c]onduct that is required or permitted by the orders or rules or a statute administered by, a federal, state, or local governmental agency").  The Side Impact Representation is an objectively accurate statement that complies with FMVSS 213 such that it does not violate the Iowa CFA.

**Fit For Ordinary Purpose.** To state an implied warranty claim (AC ¶¶ 636-43), the Big Kid must be "[un]fit for the ordinary purposes for which such goods are used." Iowa Code § 554.2314(2)(c). Plaintiff Gathings does not allege that the Big Kid did not work as intended.

**J.      The Kentucky Consumer Protection Act ("KCPA") (Count XXVI).**

**No Privity.**   The KCPA claim (AC ¶¶ 644-50) fails for lack of privity of contract.  *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 962 (E.D. Ky. 2019) (dismissing KCPA claim for lack of privity because the plaintiff purchased the dog food from retailers and not the manufacturer).   Plaintiff Joseph Wilder purchased the Big Kid from a retailer, Walmart (AC ¶ 79), not from Evenflo, and thus lacks privity.

**K.      The Louisiana Warranty Against Redhibitory Defects (La. Civ. Code Art. 2520) (Count XXVII).**

**Fit For Ordinary Use.**   Plaintiff Talise Alexie's claim for violation of the warranty against redhibitory defects should be dismissed.  (AC ¶¶ 651-69). "[A] defect is redhibitory if it 'renders the thing useless' or renders its use 'so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.'"  *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2020 WL 1819668, at *3 (E.D. La. Apr. 7, 2020) (finding no redhibitory defect where medication worked for plaintiff and accordingly "was far from being 'useless'"). Alexie, like the *Taxotere* plaintiff, has failed to plead facts showing the Big Kid was "useless" or "so inconvenient or imperfect" that Alexie would not have used it, where she purchased her Big Kid seat in 2016 (AC ¶ 83), and she does not allege the Big Kid failed to work as intended.

**L.      The Maine UTPA (Count XXVIII).**

**No Actionable Conduct.**  Neither the Side Impact Representation nor the Weight Minimum (AC ¶ 89) violates the Maine UTPA (AC ¶¶ 670-84), because neither is misleading to a reasonable consumer, and NHTSA permits both representations.  5 M.R.S. § 208(1) (Maine UTPA specifically exempts from its scope "actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the State or of the United States").   The Weight Minimum is exempt because NHTSA set that threshold in

FMVSS 213.  *Id*.  The Side Impact Representation is an objectively accurate statement that complies with FMVSS 213 such that it does not violate the Maine UTPA.

### M.      The Massachusetts Consumer Protection Law (Count XXIX).

**No Actionable Conduct.**  Plaintiff Brodeur's claim that the Big Kid was defective does not state a claim under Chapter 93A (AC ¶¶ 685-706).  *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 888 (Mass. 2008) ("Because the term 'defect' is conclusory and can be subjective as well, a bare assertion that a defendant, while representing the opposite, has knowingly manufactured and sold a product that is 'defective,' or suffers from 'safety-related defects,' does not suffice to state a viable [93A] claim.");  *Shaulis*, 865 F.3d at 12 (claims based on overpayment must be measurable against an objective standard that the product was represented as meeting, but did not).

**Regulatory Exemption.**  Evenflo's decision to conduct side-impact testing that exceeds FMVSS 213 requirements does not give rise to Chapter 93A liability.  *Iannachino*, 888 N.E.2d at 888 ("in the absence of any allegation of personal injury . . . we decline to adopt a rule that would expose a company to liability for failing to meet self-imposed standards that may in fact be aspirational goals conducive to the development and implementation of improved safety measures that exceed regulatory requirements").  Further, Chapter 93A is not intended to provide a remedy for alleged economic loss in the face of Evenflo's compliance with NHTSA standards.  *Id.* at n.17 (explaining that NHTSA was better positioned to remedy economic injury arising from NHTSA standard); Mass. Gen. Laws ch. 93A § 3 (expressly exempting "transactions or actions otherwise permitted" by a federal or state regulatory scheme).

### N.      The Michigan Consumer Protection Act ("MCPA") And Implied Warranty (Counts XXX-XXXI).

**Regulatory Exemption.**  The Michigan Plaintiffs fail to state a claim under the MCPA

(AC ¶¶ 707-22) because the MCPA exempts any "transaction or conduct specifically authorized under laws administered by . . . [an] officer acting under statutory authority of . . . the United States." Mich. Comp. Laws § 445.904(1)(a). In interpreting the exemption, the "focus is on whether the transaction at issue, *not the alleged misconduct*, is 'specifically authorized.'" *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 518 (Mich. 2007) (finding exemption applied). NHTSA regulates the Big Kid's design, testing, and labeling, exempting Big Kid sales from the MCPA. *See Cyr v. Ford Motor Co.*, 2019 WL 7206100, at *3 (Mich. Ct. App. Dec. 26, 2019) (dismissing MCPA claims concerning purchase of vehicles with defective transmissions because "the manufacture, sale, and lease of automobiles, and the provision of express and implied warranties concerning those automobiles and their components . . . . [are all] conduct [that] is 'specifically authorized' under federal and state law").

**No Notice.** The implied warranty claim (AC ¶¶ 723-33) fails for lack of pre-suit notice. *Gorman v. Am. Honda Motor Co.*, 839 N.W.2d 223, 229 (Mich. Ct. App. 2013) (upholding dismissal of implied warranty claims). The Michigan Plaintiffs cannot satisfy the notice requirement by pointing to the multiple consumer class action complaints filed against Evenflo (AC ¶ 731). *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 729-30 (6th Cir. 2006) (requiring statutory notice even if defendant had notice of alleged misconduct).

**Fit for Ordinary Purpose.** The Michigan Plaintiffs used the Big Kid as intended for them and have not alleged that the Big Kid did not work properly, which defeats the implied warranty claim. *Gorman*, 839 N.W.2d at 228 (requiring a showing that the product is below the "average quality within the industry" to state a claim for implied warranty of merchantability).

O.     **The Minnesota Consumer Statutes (Counts XXXII-XXXV).**

**MCFA, MFSAA, & MUTPA Claims Do Not Allege A Public Benefit.** The Minnesota Plaintiffs seek actual damages, injunctive relief, and attorneys' fees under the MCFA, MFSAA,

and MUTPA.  (AC ¶¶ 745-46, 765-66, 776-77).  They seek to enforce all three statutes via Minnesota's private attorney general statute, Minn. Stat. § 8.31.  Section 8.31 permits private enforcement of the MCFA, MFSAA, and MUTPA only when the claims benefit the public.  *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).  The Minnesota Plaintiffs' claim for monetary damages does not benefit the public.  *Skelton Truck Lines LTD v. Peoplenet Commc'ns. Corp.*, 2017 WL 11570877, at *27 (D. Minn. Jan. 18, 2017) ("Courts consistently focus their inquiry on the relief sought by the plaintiff, and find no public benefit where plaintiffs request only damages even when plaintiffs are suing for injuries resulting from mass produced and mass marketed products").  Plaintiffs state in passing they are also seeking injunctive relief, but "merely seeking injunctive relief has been held insufficient to constitute a public benefit," *id.* at *29, and in any event they do not allege irreparable harm.

### P.     The New Jersey Implied Warranty (Count XXXIX).

**Fit for Ordinary Purpose.** The implied warranty claim (AC ¶¶ 816-24) fails. Plaintiff Sanchez used the Big Kid as intended for her and has not alleged that the Big Kid failed to satisfy the "minimum level of quality," malfunctioned, or harmed her children.  *See Sheris v. Nissan N. Am. Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (dismissing implied warranty claims).

### Q.     The New York NYGBL And Implied Warranty (Counts XXXX-XXXXII).

**No Actionable Deception.**   The NYGBL claims are premised on the Side Impact Representation and the Weight Minimum, (AC ¶¶ 831, 846), neither of which is actionable under the NYGBL.  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (a statement's deceptiveness may be determined as a matter of law).  "[T]he statute . . . does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation."  *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d

512, 529 (S.D.N.Y. 2003) (restaurant's omission of nutritional content not actionable).  The Weight Minimum is not actionable because NHTSA authorized it, and it is accompanied by other statements concerning, for example, height and age.  Nor is the factually true Side Impact Representation actionable, because Plaintiffs do not plausibly allege that Evenflo's testing showed any defect.  *See*, *e.g.*, *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307-08 (N.D.N.Y. 2019) (dismissing § 349 claim premised on omission of internal vehicle test results).

**No Privity.**  The implied warranty claim (AC ¶¶ 855-65) also fails because there is no privity between the New York Plaintiffs, who purchased the Big Kid from retailers (*id.* ¶ 130), and Evenflo, as required to state such a claim.  *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 262-63 (E.D.N.Y. 2014) (dismissing implied warranty claim).

### R.    The North Carolina NCUDTPA (Count XXXXIII).

**No Deceptive Act.**  The NCUDTPA claim (AC ¶¶ 866-80) also fails because the challenged representations are not the type of "egregious or aggravating circumstances" required to trigger the NCUDTPA.  *Maxwell v. Remington Arms Co.*, 2014 WL 5808795, at *5 (M.D.N.C. Nov. 7, 2014) (conclusory allegations labeling the defendant's advertising as "false, misleading, or deceptive" were not sufficient to allege "the requisite level of unscrupulous, unethical conduct, or aggravating circumstances required to adequately state an UDTPA claim").

### S.    The Ohio Deceptive Trade Practices Act ("ODTPA") And Implied Warranty (Counts XXXXIV-XXXXV).

**ODTPA: No Statutory Standing.**  The ODTPA claim (AC ¶¶ 881-86) should be dismissed because the ODTPA cannot be privately enforced by individual consumers, like Plaintiff Cassandra Honaker.  *See Michelson v. Volkswagen Aktiengesellschaft*, 99 N.E.3d 475, 479-80 (Ohio Ct. App. 2018) (sustaining dismissal because the ODTPA exclusively protects "a purely commercial class"); *Hamilton v. Ball*, 7 N.E.3d 1241, 1252-53 (Ohio Ct. App. 2014)

("consumers lack standing to file suit under the DTPA"); *Borden v. Antonelli Coll.*, 304 F. Supp. 3d 669, 673-76 (S.D. Ohio 2018) ("The majority of courts to address the issue have held that an individual consumer does not have standing to sue under the ODTPA").

**Implied Warranty: No Notice, No Privity, Fit for Intended Use.**  Honaker's implied warranty claim (AC ¶¶ 887-90) also fails. *First*, Honaker failed to plead that she provided pre-litigation notice of her claim. *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) ("If a plaintiff fails to plead pre-litigation notice, her breach of warranty claim must be dismissed."). *Second*, Honaker purchased her seat from Walmart (AC ¶ 149) and thus lacks privity with Evenflo. *Savett v. Whirlpool Corp.*, 2012 WL 3780451, at *10 (N.D. Ohio Aug. 31, 2012) ("Ohio law requires privity in order to sustain a breach of implied warranty claim.") (citation omitted). *Finally*, like the other state-law claims, Honaker has failed to allege that the Big Kid is not fit for its ordinary purpose. *Id.* at *11 (dismissing implied warranty claim because the plaintiff failed to allege a defect that rendered the product unfit for its ordinary purpose).

### T.     The Oklahoma OCPA (Count XXXXVI).

**Regulatory Exemption.**  The OCPA claim (AC ¶¶ 891-909) fails because the OCPA exempts from its purview "any 'actions or transactions regulated under laws administered'" by any regulatory body of the United States—including NHTSA. *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1215-16 (W.D. Okla. 2015) (finding acts under NHTSA's supervision and regulatory authority were not actionable under OCPA).  NHTSA regulates the Big Kid's design, testing and labeling; the OCPA claim should be dismissed.

### U.     The Pennsylvania Implied Warranty (Count IL).

**Implied Warranty: Lack of Notice and Fitness.** The implied warranty claim (AC ¶¶ 937-47) fails for two reasons. *First,* the Pennsylvania Plaintiffs failed to provide the requisite pre-suit notice of the alleged defect. *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 718 (E.D.

Penn. 2013) (dismissing implied warranty claim for failure to provide statutory pre-suit notice).

**Second,** the Pennsylvania Plaintiffs failed to plead that the Big Kid "functioned improperly in the absence of abnormal use and reasonable secondary causes." *Painter Tool, Inc. v. Dunkirk Specialty Steel, LLC*, 2017 WL 2985578, at *3-4 (W.D. Pa. July 13, 2017) (dismissing claim) (citing *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992)).

### V.     The South Carolina SCUTPA (Count L).

<u>**No Deceptive Act.**</u>  The SCUTPA claim (AC ¶¶ 948-63) also fails because the Side Impact Representation and Weight Minimum do not have the "the tendency to deceive," as these statements are true and comply with FMVSS 213.  *Bahringer v. ADT Sec. Servs., Inc.*, 942 F. Supp. 2d 585, 593-94 (D.S.C. 2013) (ADT's statement that alarm would notify the fire department "[a]s soon as an ADT fire or smoke detector signals an alarm" was not misleading where the alarm failed to trigger, as "[t]he language . . . focuses on what happen[ed] once a fire . . . alarm has been triggered" and "does not suggest that its fire alarm systems are infallible").

### W.     The Tennessee Implied Warranty (Count LII).

<u>**Fit for Ordinary Purpose.**</u>  The implied warranty claim (AC ¶¶ 981-91) fails because Plaintiff Miller has not pled the Big Kid was not fit for its ordinary purpose.  Tenn. Code § 47-2-314(2)(c).  To state an implied warranty claim, the defect must "essentially deprive the owner of beneficial use of the goods."  *Taylor v. Mid-Tenn Ford Truck Sales, Inc.*, 1994 WL 700859, at *5 (Tenn. Ct. App. Dec. 16, 1994) (dismissing claims).  Miller has not pled facts showing the Big Kid she purchased for her 38-pound son has "essentially" no "beneficial use."

<u>**No Privity.**</u>  The warranty claim also fails as Miller purchased her Big Kid from Walmart and lacks privity with Evenflo (AC ¶ 176).  Tenn. Code § 47-2-314; *Travis v. Ferguson*, 2017 WL 1736708, at *2-3 (Tenn. Ct. App. May 3, 2017) (dismissing implied warranty claim against prior vehicle owner where plaintiff purchased vehicle through auction house).

### X.     The Texas TDTPA (Count LIII).

**Regulatory Exemption.**  The TDTPA claim (AC ¶¶ 992-1008) fails because NHTSA specifically set the Weight Minimum Plaintiff Brown challenges (AC ¶ 180) in FMVSS 213. *See*, *e.g.*, *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 165 (Tex. App. 2000) (failure to file purchase agreements related to bond issues did not violate TDTPA where nothing in Texas law required their filing); *Duke v. Flying J, Inc.*, 178 F. Supp. 3d 918, 926 (N.D. Cal. 2016) (recognizing TDTPA safe harbor for specifically permitted conduct).

### Y.     The Washington Consumer Protection Act ("WCPA") (Count LV).

**Regulatory Exemption.**   The WCPA claim (AC ¶¶ 1020-32) should be dismissed because NHTSA expressly regulates the Weight Minimum in FMVSS 213, and permits the Side Impact Representation.  *See* Wash. Rev. Code § 19.86.170 (WCPA does not "apply to actions or transactions otherwise permitted by . . . any other regulatory body [of] . . . the United States."); *Denton v. Dep't Stores Nat'l Bank*, 2011 WL 3298890, at *4 (W.D. Wash. Aug. 1, 2011) (dismissing claim because defendant's conduct complied with federal regulations).

### Z.     The West Virginia WVCCPA (Count LVI).

**No Notice.**   The WVCCPA claim (AC ¶¶ 1033-60) fails because, although the West Virginia Plaintiffs plead "counsel advised" Evenflo of a violation (AC ¶ 1059), they do not plead that they provided the requisite written notice.  *Waters v. Electrolux Home Prods., Inc.*, 154 F. Supp. 3d 340, 354 (N.D. W. Va. 2015) (dismissing claim for lack of notice because the WVCCPA "requires a plaintiff to provide notice 'in writing and by certified mail,' not by filing a complaint").

### AA.   The Wisconsin Deceptive Trade Practices Act ("WDTPA") (Count LVII).

**No Duty to Disclose.**  Plaintiff Najah Rose alleges that the Side Impact Representation and the Weight Minimum violated the WDTPA (AC ¶¶ 1061-72).  The WDTPA claim's

gravamen is that Evenflo omitted facts about internal testing data that revealed alleged safety risks about side-impact collisions.  (*Id.* ¶¶ 1064-66).  But nondisclosure or omissions are not actionable under the WDTPA.  *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004) ("Silence—an omission to speak—is insufficient to support a claim under [the WDTPA]" which "does not purport to impose a duty to disclose but, rather, prohibits only affirmative assertions, representations or statements of fact that are false, deceptive, or misleading").

**No Untrue, Deceptive, or Misleading Representations.**  To state a WDTPA claim, Rose must allege an untrue, deceptive, or misleading affirmative representation.  *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1126 (E.D. Wis. 2016) (dismissing WDTPA claim).  None of her alleged misrepresentations meet that standard: (1) she admits Evenflo performed side-impact testing, she just wishes testing had been conducted differently; and (2) the Weight Minimum was set by NHTSA.  Evenflo does not market the Big Kid as the proper car seat for all children, nor as the "ultimate" in safety, and any inference Plaintiff made to the contrary is not reasonable.  *See*, *e.g.*, *Tietsworth*, 677 N.W.2d at 246 (upholding dismissal of WDPTA claim because manufacturer's representations as to quality were not actionable).

**VI.    COUNT LVIII FAILS BECAUSE IT ASSERTS CLAIMS UNDER THE LAWS OF TWENTY-TWO STATES AND THE DISTRICT OF COLUMBIA THAT HAVE NO CONNECTION TO THESE PLAINTIFFS' PURCHASE OF A BIG KID.**

Plaintiffs purport to assert causes of action under the laws of 22 states that have no connection to Plaintiffs' Big Kid purchases.  (AC ¶¶ 1073-81).  Unless a class is actually certified, Plaintiffs are the only individuals with live claims against Evenflo.  *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) ("Until the putative class is certified, the action is one between the [named plaintiffs] and the defendants.  Accordingly, the First Amended Complaint must be evaluated as to these particular plaintiffs").

The "Commerce Clause . . . precludes the application of a state statute to commerce that

takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989); *see also Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 311 (1st Cir. 2005) ("A state statute is per se invalid under the dormant Commerce Clause when it 'regulates commerce wholly outside the state's borders or when the statute has a practical effect of controlling conduct outside of the state'"). Courts apply this principle to dismiss consumer protection claims alleged under state statutes that are unconnected to the allegedly fraudulent transaction. *Elyazidi v. SunTrust Bank*, 2014 WL 824129, at *8 (D. Md. Feb. 28, 2014) (dismissing plaintiff's claim under the Maryland Consumer Protection Act because "the conduct about which Plaintiff complain[ed] occurred entirely in the Commonwealth of Virginia[.]"), *aff'd*, 780 F.3d 227 (4th Cir. 2015).[9]  And nearly all the consumer protection statutes Plaintiffs invoke are expressly limited to in-state conduct.[10]

## VII.   NEARLY HALF THE PLAINTIFFS FAIL TO PLEAD THEIR STATE CONSUMER FRAUD CLAIMS WITH PARTICULARITY.

Fed. R. Civ. P. 9(b) applies to many of Plaintiffs' consumer protection claims, requiring them to plead the "who, what, when, where, and how of the misconduct charged."[11]  The

---

[9] *See also The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 501-02 (M.D.N.C. 1987) (dismissing extraterritorial claims under the North Carolina Unfair Trade Practices Act); *Rios v. Cabrera*, 2010 WL 5111411, at *3 (M.D. Pa. Dec. 9, 2010) ("Ms. Rios, as a New York consumer, cannot invoke Pennsylvania consumer protection statutes regarding conduct occurring outside of Pennsylvania"); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2013 WL 5448078, at *6-7 (D. Colo. Sept. 27, 2013) (dismissing extraterritorial claims under Colorado, Florida, and Oklahoma consumer protection statutes).

[10] For statutes, *see, e.g.*, Conn. Gen. Stat. § 42-110a; D.C. Code § 28-3901; 6 Del. Code § 2512; Idaho Code § 48-602; Kan. Stat. § 50-624; Miss. Code Ann. § 75-24-3; Mont. Code Ann. § 30-14-102; Neb. Rev. Stat. § 59-1601; N.H. Rev. Stat. § 358-A:1; N.M. Stat. § 57-12-2; Or. Rev. Stat. § 646.605; R.I. Gen. Laws § 6-13.1-1; S.D. Codified Laws § 37-24-1; Utah Code Ann. § 13-11a-1.  For case law, *see Thuney v. Lawyer's Title of Ariz.*, 2019 WL 467653, at *6-7 (D. Ariz. Feb. 6, 2019) (Arizona); *Cortina v. Wal-Mart, Inc.*, 2015 WL 260913, at *3 (S.D. Cal. Jan. 20, 2015) (Arkansas); *Elyazidi*, 2014 WL 824129, at *8 (Maryland); *Rimini St., Inc. v. Oracle Int'l Corp.*, 2020 WL 5531493, at *41 (D. Nev. Sept. 14, 2020) (Nevada); *MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co.*, 383 F. Supp. 3d 307, 313 (D. Vt. 2019) (Vermont).

[11] *See Keating v. Nordstrom, Inc.*, 2018 WL 576825, at *8 (D. Alaska Jan. 26, 2018) (Alaska); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (California); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir.

following 21 Plaintiffs fail to plead their state-law claims with particularity:

| State | Plaintiff | Rule 9(b) Defect(s) |
|---|---|---|
| **AK** | Jilli Hiriams | No model or specific source of the representation pled (AC ¶ 20).[12] |
| **CA** | Mike Xavier | No purchase dates or specific source of the representations pled (AC ¶ 23-24). |
| | Desinae Williams | No model, representations, or specific source of the representations pled (AC ¶ 27). |
| | Keith Epperson | No specific source of the representation pled (AC ¶ 31). |
| | Heather Hampton | No specific source of the representation pled (AC ¶ 40). |
| **IL** | Penny Biegeleisen | No model, purchase date, representations, or specific source of the representations pled (AC ¶ 63). |
| **IN** | Becky Brown | No purchase location pled (AC ¶ 69). |
| **MA** | Edith Brodeur | No model, purchase date, purchase location, or source of the representations pled (AC ¶ 93-96). |
| **MI** | Marcella Reynolds | No model, purchase date, or specific source of the representation pled (AC ¶ 99-100). |
| | Theresa Holliday | No model or purchase date pled (AC ¶ 103). |
| | Amy Sapeika | No representation pled (AC ¶ 108). |
| **MN** | Joshua Kukowski | No model, purchase date, or specific source of the representation pled (AC ¶ 113). |
| | Kari Forhan | No model, purchase date, or representation pled (AC ¶ 116-18). |
| **NJ** | Karen Sanchez | No specific source of the representation pled (AC ¶ 127). |
| **NY** | Danielle Sarratori | No model or specific source of representation pled (AC ¶ 130). |
| | David Schnitzer | No purchase location or specific source of representations pled (AC ¶ 133-34). |
| **NC** | Carla Matthews | No purchase dates or specific source of the representation pled (AC ¶ 139). |
| **PA** | Lauren Mahler | No model, purchase date, or specific source of representation pled (AC ¶ 163-64). |

2011) (Illinois); *Agrolipetsk, LLC v. Mycogen Seeds*, 2017 WL 7371191, at *3 (S.D. Ind. June 5, 2017) (Indiana); *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22-23 (1st Cir. 2017) (Massachusetts); *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1004 (E.D. Mich. 2015) (Michigan); *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006) (Minnesota); *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 433-36 (D.N.J. 2015) (New Jersey); *Weaver*, 172 F.R.D. at 101 (New York); *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 729 (M.D.N.C. 2015) (North Carolina); *Laskowski v. Brown Shoe Co.*, 2015 WL 1286164, at *7 (M.D. Pa. Mar. 20, 2015) (Pennsylvania); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 782 (4th Cir. 2013) (South Carolina); *McLearn v. Wyndham Resort Dev. Corp.*, 2020 WL 1189844, at *4 (M.D. Tenn. Mar. 11, 2020) (Tennessee); *Siemens Med. Sols. USA, Inc. v. Sunrise Med. Tech., Inc.*, 2005 WL 615747, at *5 (N.D. Tex. Mar. 16, 2005) (Texas); *Miller v. Vonage Am., Inc.*, 2015 WL 59361, at *5 (E.D. Wis. Jan. 5, 2015) (Wisconsin).

[12] The model information is essential; the Big Kid has more than one model (AC ¶¶ 272 (identifying Sport and AMP high back models)), and the Amended Complaint acknowledges that Evenflo's representations changed over the years (*see, e.g.*, *id.* ¶ 67 (explaining that Evenflo changed some of its U.S. booster seats to a 40-pound minimum in May 2016)).

| SC | Tarnisha Alston | No model or specific source of the representation pled (AC ¶ 168). |
|----|----------------|--------------------------------------------------------------------|
| TN | Ashley Miller | No model or purchase date pled (AC ¶ 176). |
| TX | Lindsey Brown | No model, purchase date, or specific source of representations pled (AC ¶ 179-80). |
| WI | Najah Rose | No model, purchase location, or specific source of representations pled (AC ¶ 198-200). |

The state-law claims asserted by these Plaintiffs should be dismissed under Rule 9(b).

## VIII.  PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT, UNJUST ENRICHMENT, AND NEGLIGENT MISREPRESENTATION.

Plaintiffs' back-of-the-hand attempt to plead claims for fraudulent concealment, unjust enrichment, and negligent misrepresentation on behalf of all 43 plaintiffs under the laws of all 50 states, the District of Colombia, and Puerto Rico fails to satisfy both Fed. Rs. Civ. P. 12(b)(6) and 9(b).[13]  Counts I-III constitute the exact boilerplate, impermissible "formulaic recitation of the elements of a cause of action" that the Supreme Court clearly rejected in *Twombly*. 550 U.S. at 555 (affirming dismissal).  Plaintiffs make no attempt to "plead[] *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).  Moreover, these claims are based on the legally incorrect assertion that the fraudulent concealment, unjust enrichment, and negligent misrepresentation laws of all states are "materially the same."  (AC ¶¶ 305, 321, 328).

**Unjust Enrichment.**  Plaintiffs' claims for unjust enrichment are barred under the laws of many states.  Some states preclude unjust enrichment claims where the plaintiff received the benefit of the bargain (as Plaintiffs did here).  *E.g.*, *Prohias v. Pfizer, Inc.* 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (dismissing unjust enrichment claims where plaintiffs received the benefit of the bargain in purchase of Lipitor); *Castillo v. Tyson*, 268 A.D.2d 336, 337 (N.Y. App. Div.

---

[13] *See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009) (applying Rule 9(b) to unjust enrichment and negligent misrepresentation claims sounding in fraud); *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 189-90 (1st Cir. 2006) (applying Rule 9(b) to claim for fraudulent concealment) (citation omitted).

2000) (affirming dismissal of putative class plaintiffs' claims that fight promoters were unjustly enriched when boxer was disqualified, because "plaintiffs received what they paid for, namely, 'the right to view whatever event transpired'").

Other states preclude unjust enrichment claims when there is an adequate remedy at law, as Plaintiffs seek here.  *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (dismissing nationwide unjust enrichment claim and holding, under Massachusetts law, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment"); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (2012) (dismissing unjust enrichment claim and holding, under New York law, that unjust enrichment is "available only in unusual situations," is "not a catchall cause of action to be used when others fail," and is not available "where it simply duplicates, or replaces, a conventional contract or tort claim").

Finally, many states require contractual privity to state an unjust enrichment claim.  *See*, *e.g.*, *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 952 (N.D. Ohio 2009) (dismissing unjust enrichment claim where plaintiffs purchased Whirlpool washing machines from retailers, not Whirlpool, and thus had not conferred a direct benefit on defendant Whirlpool).  All Plaintiffs lack privity with Evenflo.[14]

**Negligent Misrepresentation And Fraudulent Concealment.**  Plaintiffs also fail to plead essential elements of negligent misrepresentation and fraudulent concealment, or their claims are otherwise barred by state laws.  For example, some states apply the economic loss doctrine, which prohibits Plaintiffs from recovering economic damages for negligent representation or fraud claims here.  *Welk v. Beam Suntory Import Co.*, 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015) (dismissing negligent misrepresentation claims because California's

---

[14] *See* AC ¶¶ 15, 19, 23, 27, 30, 35, 39, 43, 46, 52, 56, 59, 63, 66, 69, 75, 79, 83, 88, 93, 99, 103, 106, 113, 116, 122, 127, 130, 133, 139, 143, 149, 155, 159, 163, 167, 173, 176, 179, 183, 190, 194, 198.

economic loss doctrine prevented recovery absent personal injury); *Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013) (finding that economic loss rule barred claims of fraudulent concealment and negligent misrepresentation in the products liability context). Other states require a "special" or "privity-like" relationship to sustain misrepresentation or fraudulent concealment claims, potentially resulting in dismissal of multiple Plaintiffs. *Anschultz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 113 (2d Cir. 2012) (noting that "New York and California law clearly diverge" regarding privity requirements for negligent misrepresentation claims); *MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 665 (6th Cir. 2013) (dismissing fraudulent concealment claim under Michigan law because plaintiff did not allege making inquiries to defendant that triggered duty to disclose). Finally, some states do not recognize negligent representation as a distinct tort. *Darst v. Ill. Farmers Ins. Co.*, 716 N.E.2d 579, 584 (Ind. Ct. App. 1999) ("Indiana does not recognize the tort of negligent misrepresentation" except in employment context).

## IX.    RELIEF REQUESTED.

For these reasons, Evenflo respectfully asks the Court to dismiss the Amended Complaint in its entirety pursuant to Fed. Rs. Civ. 12(b)(1), and 12(b)(6).

Dated:  November 20, 2020              Respectfully submitted,

              /s/ Lawrence G. Scarborough
              Lawrence G. Scarborough (BBO No. 681285)
              BRYAN CAVE LEIGHTON PAISNER LLP
              1290 Avenue of the Americas
              New York, New York 10104-3300
              Telephone:  (212) 541-2000
              E-mail:  lgscarborough@bclplaw.com

              Dan H. Ball
              Richard P. Cassetta
              Timothy J. Hasken (Admitted *Pro Hac Vice*)
              BRYAN CAVE LEIGHTON PAISNER LLP
              211 North Broadway, Suite 3600
              St. Louis, Missouri 63102
              Telephone:  (314) 259-2000
              E-mail:  dhball@bclplaw.com
              E-mail:  richard.cassetta@bclplaw.com
              E-mail:  tim.hasken@bclplaw.com

              Jessica R. Maziarz (Admitted *Pro Hac Vice*)
              Kathryn E. Bettini (Admitted *Pro Hac Vice*)
              BRYAN CAVE LEIGHTON PAISNER LLP
              Two North Central Avenue, Suite 2100
              Phoenix, Arizona 85004-4406
              E-mail:  jessica.maziarz@bclplaw.com
              E-mail:  kathryn.bettini@bclplaw.com

              *Attorneys for Defendant*
              *Evenflo Company, Inc.*

## CERTIFICATE OF SERVICE

I, Lawrence G. Scarborough, hereby certify that this document was electronically filed and served using the Court's CM/ECF system on November 20, 2020.

              /s/ Lawrence G. Scarborough
              Lawrence G. Scarborough