**UNITED STATE DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

IN RE EVENFLO CO., INC.
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION          MDL No. 1:20-md-02938-DJC

THIS DOCUMENT RELATES TO:

ALL ACTIONS

**REPLY IN SUPPORT OF EVENFLO COMPANY, INC.'S**
**MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION**
**COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

**Table of Contents**

**Page**

Table of Authorities ................................................................................. ii

I.  INTRODUCTION ........................................................................ 1

II. PLAINTIFFS DO NOT HAVE ARTICLE III STANDING OR
    STATE A CLAIM ......................................................................... 1

    A.  Plaintiffs Fail To Plead A Cognizable Injury ......................................... 1

    B.  Plaintiffs Lack Standing To Seek Injunctive Relief .............................. 5

III. PLAINTIFFS' STATUTORY STATE-LAW CLAIMS SHOULD BE
     DISMISSED .................................................................................. 6

    A.  Plaintiffs Fail To Plead A Deceptive Act Under Many States'
        Laws ..................................................................................... 6

    B.  Evenflo Is Entitled To State Regulatory Safe Harbors .......................... 7

    C.  Implied Warranty Privity Exceptions Do Not Apply To
        Plaintiffs ............................................................................... 8

    D.  Plaintiffs' Pre-Suit Notice Is Insufficient ............................................. 8

IV. THE COURT SHOULD DISMISS COUNT LVIII ......................................... 9

V.  MANY STATE FRAUD CLAIMS ARE NOT PLED WITH
    PARTICULARITY ............................................................................ 9

VI. PLAINTIFFS' NATIONWIDE CLAIMS SHOULD BE DISMISSED ............. 10

VII. RELIEF REQUESTED ....................................................................... 10

CERTIFICATE OF SERVICE

i

**Table of Authorities**

**Cases:**                                                                 **Page(s)**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................  5

*Am. Rivers, Inc. v. NOAA Fisheries*,
  2006 WL 1455629 (D. Or. May 23, 2006) ..............................................  6

*Americoach Tours, Inc. v. Detroit Diesel Corp.*,
  2005 WL 2335369 (W.D. Tenn. Sept. 23, 2005) .....................................  8

*Arzio v. Shinseki*,
  602 F.3d 1343 (Fed. Cir. 2010) ..............................................................  7

*Aspinall v. Philip Morris USA Inc.*,
  2015 WL 9999126 (Mass. Super. Aug. 11, 2015) ...................................  2

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017) .................................................  7

*Cottrell v. Alcon Laboratories*,
  874 F.3d 154 (3d Cir. 2017) ...................................................................  3

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ..................................................................  5

*Dixon v. Ford Motor Co.*,
  2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ........................................  8

*Easter v. Am. W. Fin.*,
  381 F.3d 948 (9th Cir. 2004) ..................................................................  5

*Geis v. Nestle Waters N. Am., Inc.*,
  321 F. Supp. 3d 230 (D. Mass. 2018) .....................................................  4

*Gustavsen v. Alcon Laboratories, Inc.*,
  903 F.3d 1 (1st Cir. 2018) .......................................................................  2, 3

*In re Actiq Sales & Mktg. Practices Litig.*,
  2012 WL2135560 (E.D. Pa. June 13, 2012) ...........................................  5

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
  751 F. Supp. 2d 277 (D. Mass 2010) ......................................................  9

**Page(s)**

*In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*,
831 F. Supp. 2d 507 (D. Mass. 2011) ........................................................ 2, 4

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017) ........................................................ 10

*In re Johnson & Johnson Talcum Powder Prods. Mktg.,*
*Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ..................................................................... 2, 3, 6

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015) ........................................................................ 4

*In re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011) ................................................... 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
582 F.3d 156 (1st Cir. 2009) .................................................................... 4

*ITyX Sols. AG v. Kodak Alaris, Inc.*,
952 F.3d 1 (1st Cir. 2020) ........................................................................ 4

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012) ...................................................................... 4

*Kerin v. Titeflex Corp.*,
770 F.3d 978 (1st Cir. 2014) .................................................................... 1, 3

*Khouri v. Nat'l Gen. Ins. Mktg., Inc.*,
2020 WL 6749713 (M.D.N.C. Nov. 17, 2020) ......................................... 7

*Manley v. Hain Celestial Grp., Inc.*,
417 F. Supp. 3d 1114 (N.D. Ill. 2019) ..................................................... 8

*Munsell v. Colgate-Palmolive Co.*,
463 F. Supp. 3d 43 (D. Mass. 2020) ........................................................ 9

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ................................................................................. 5, 6

*Ortiz v. Sig Sauer, Inc.*,
448 F. Supp. 3d 89 (D.N.H. 2020) ........................................................... 3

**Page(s)**

*Padilla v. Porsche Cars N. Am., Inc.*,
  391 F. Supp. 3d 1108 (S.D. Fla. 2019) ...................................................... 8

*Schmidt v. Ford Motor Co.*,
  972 F. Supp. 2d 712 (E.D. Pa. 2013) ....................................................... 9

*Simpson v. Champion Petfoods USA, Inc.*,
  397 F. Supp. 2d 952 (E.D. Ky. 2019) ...................................................... 7

*Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*,
  524 F.3d 315 (1st Cir. 2008) ................................................................... 9

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002) .................................................................... 10

*Wortman v. C.R. Bard, Inc.*,
  2019 WL 6329651 (S.D. Ind. Nov. 26, 2019) ......................................... 10

**Rules and Regulations:**

49 C.F.R. § 571.213 .................................................................................... 1

Fed. R. Civ. P. 12(b)(1) .............................................................................. 1, 5, 10

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1, 5, 10

## I.      INTRODUCTION.

Plaintiffs' Memorandum in Opposition to Evenflo's Motion to Dismiss (12/18/20) ("Opp.") confirms that the factual allegations in the Consolidated Amended Class Action Complaint (10/20/20) ("AC") fail to adequately plead standing under Rule 12(b)(1) or to state a claim under Rule 12(b)(6). Plaintiffs cite no factual allegations establishing a plausible injury that permits this case to proceed. Plaintiffs further fail repeatedly to meaningfully respond to Defendant Evenflo Company, Inc.'s ("Evenflo's") arguments. For example, Plaintiffs reference Big Kid representations (at 4) that have no relevance to their proposed class period of "2008" to "the present." (AC ¶ 293). Plaintiffs exalt (at 1, 3, 6, 22, 30) a non-binding 1992 National Highway Traffic Safety Administration ("NHTSA") flyer, which both lacks legal force and predates the 30-pound weight threshold NHTSA set in FMVSS 213 (49 C.F.R. § 571.213) through formal rulemaking. And Plaintiffs respond (at 20) to Evenflo's primary jurisdiction argument with the discordant response that FMVSS 213 does not preempt state-law claims (an argument Evenflo never advanced). The AC should be dismissed.

## II.     PLAINTIFFS DO NOT HAVE ARTICLE III STANDING OR STATE A CLAIM.

### A.      Plaintiffs Fail To Plead A Cognizable Injury.

Plaintiffs concede (at 10, 13) that they do not rely on the risk of future harm to establish a cognizable injury. As a result, Plaintiffs' sole basis for pleading an injury that satisfies Article III and state laws is a single, threadbare allegation:  "that they 'would not have purchased the seat' or 'would have paid less for it'" had they known the Side Impact and Weight Minimum representations were false. (Opp. at 8, 11). Such an "unsupported conclusion" of "overpayment" does not adequately plead economic injury. *See Kerin v. Titeflex Corp*., 770 F.3d 978, 980 (1st Cir. 2014) (holding insufficient an allegation that, after buying an allegedly unsafe product, plaintiff suffered economic "damages 'that may be measured as his overpayment or as the cost of

remedying the safety issue'"); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 285 (3d Cir. 2018) ("[A] plaintiff must do more than offer conclusory assertions of economic injury in order to establish standing. She must allege facts that would permit a factfinder to *value* the purported injury at something more than zero dollars without resorting to mere conjecture") (emphasis added). Nor do allegations that Plaintiffs "would not have purchased" the Bid Kid establish economic injury when they fail to identify a cheaper alternative booster seat they would have purchased. Tellingly, Plaintiffs do not point to any other factual allegations within their AC to support their claim of economic injury.[1]

Plaintiffs' heavy reliance on *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1 (1st Cir. 2018), demonstrates the inadequacy of their allegations. The *Gustavsen* plaintiffs alleged prescription eye drop manufacturers "unfairly" designed dispensers to emit drops too big for the eye, "forc[ing] patients to waste medication." *Id.* at 5 (affirming dismissal of claims as preempted). They alleged that, "[i]f the bottles dispensed smaller drops, then each bottle would deliver more doses, and patients would be able to purchase fewer bottles," resulting in patients' saving "upwards of $500" "on a yearly basis." *Id.* While expressing skepticism regarding the claim's viability, the First Circuit reasoned that, because "plaintiffs expressly allege that scientific studies and the admission of a marketing executive for one of the major defendants all state that consumer cost would fall to some degree were the drops smaller," plaintiffs adequately pled an injury. *Id.* at 8. Unlike the detailed factual allegations in *Gustavsen* that quantified out-of-pocket

---

[1] Plaintiffs point the Court to nothing within the AC plausibly establishing that they would have purchased a "different or cheaper" booster seat had they known the truth; to the contrary, the AC alleges that the Big Kid was priced $10 less than its primary competition, Graco's TurboBooster. (AC ¶ 225). Plaintiffs instead declare (at 12), contrary to *In re Fruit Juice Prod. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 513 (D. Mass. 2011), and *Johnson & Johnson*, that the absence of such an allegation is "irrelevant" to whether they have adequately pled economic injury. In support, Plaintiffs cite only *Aspinall v. Philip Morris USA Inc.*, 2015 WL 9999126, at *4 (Mass. Super. Aug. 11, 2015), where a state trial court declined to rule on a motion to strike a class damages expert until completing an evidentiary hearing, an irrelevant issue here.

loss due to "wasted" medication, Plaintiffs plead nothing beyond the "unsupported conclusion" that, had Evenflo altered the challenged representations, Plaintiffs would have spent less money.

Importantly, the Third Circuit in *Johnson & Johnson* confronted and rejected the precise "eye dropper" analogy Plaintiffs attempt here. As in *Gustavsen*, in *Cottrell v. Alcon Labs.*, 874 F.3d 154 (3d Cir. 2017), a panel majority held that plaintiffs adequately alleged an economic injury. A year later, the *Johnson & Johnson* Court rejected the application of *Cottrell* to plaintiff's alleged economic injury resulting from her purchase of baby powder, explaining:

> We concluded that the *Cottrell* plaintiffs had standing only *after* we conducted an analysis of their economic theories . . . . [Estrada, the *Johnson & Johnson* plaintiff,] contends that *Cottrell* "confirmed that a consumer's purchase of a product based on the manufacturer's deceptive and unfair business practices constitutes injury-in-fact." Estrada Br. 2. In so arguing, Estrada overreads our opinion. The *Cottrell* plaintiffs did not have standing simply because they purchased a product that a consumer would view as flawed. Rather, the plaintiffs had standing only because they were unable to use a portion of the eye-drop medication they had purchased, and they alleged an economic theory that allowed them to value that unused portion.

*Johnson & Johnson*, 903 F.3d at 286-87. This Court should likewise reject Plaintiffs' attempt here to "overread[]" *Gustavsen* as authorizing consumer purchasers to state a claim in federal court simply "because they purchased a product that [they later] view[ed] as flawed." *Id.* at 287.

Plaintiffs cite scant authority to support their claim that their threadbare allegation adequately pleads injury. The closest (at 11) is *Ortiz v. Sig Sauer, Inc.*, 448 F. Supp. 3d 89 (D.N.H. 2020), where another district court found a gun purchaser alleged an economic injury due to false advertising that a gun was "drop safe." *Id.* at 98-99. The decision does little to help Plaintiffs here, however, because *Ortiz* alleged facts establishing the gun had "diminished resale value," an economic theory nowhere in the AC. *Id.* at 98.[2] The remaining cases Plaintiffs cite (at

---

[2] The *dicta* in *Ortiz* concerning an alternative "overpayment" injury "overreads" *Gustavsen* and is inconsistent with the First Circuit's admonishment in *Kerin* against alleging "unsupported conclusion[s]" to establish economic injury. 448 F. Supp. 3d at 98-99.

10 n.1) do not concern deceptive marketing and stand for little more than the simple proposition that overpayment, *if adequately factually alleged*, is a cognizable form of economic injury.[3]

Plaintiffs' effort to avoid this Court's holding in *Fruit Juice* is particularly unavailing. Plaintiffs assert (at 10-11) that *Fruit Juice* is somehow different because Evenflo "lied about the most important aspect of the seat—its ability to protect children—and [] the seats do not perform that basic function." But this is the exact injury the Court in *Fruit Juice* found insufficient to establish Article III standing. There, the plaintiffs alleged that "Defendants promised to provide products that were safe for consumption, but Plaintiffs received products that posed a health risk," making them "unsuitable for their intended purpose—consumption—and valueless." 831 F. Supp. 2d at 512. The *Fruit Juice* plaintiffs then alleged that, "[b]ecause [they] would not have purchased these products if they had known the products contained lead . . . they suffered an economic injury—the price of the product—when they purchased the products." *Id.* The *Fruit Juice* Court held these allegations insufficient, in language that applies equally here:  "Because Plaintiffs are unable to show that *any* actual harm resulted from [use of the Big Kid], their allegation of 'economic' injury lacks substance . . . . Plaintiffs paid for [a booster seat], and they received [a booster seat], which they [used] without suffering harm." *Id.* Plaintiffs' equivalent allegations should fail here as well.

In sum, allegations that Plaintiffs "would not have purchased the seat" or "would have paid less for it" are insufficient to establish economic injury under controlling First Circuit law

---

[3]  *See ITyX Sols. AG v. Kodak Alaris, Inc.*, 952 F.3d 1, 9-10 (1st Cir. 2020) (finding company had standing to enforce commercial contract); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 14 (1st Cir. 2015) (overpayments for prescription drug due to anticompetitive non-compete conferred standing); *Katz v. Pershing, LLC*, 672 F.3d 64, 77 (1st Cir. 2012) (affirming dismissal of data-privacy claims for lack of standing); *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 161, 190 (1st Cir. 2009) (finding elevated reimbursement, insurance, and coinsurance costs due to drug company's publication of false average wholesale prices to confer standing); *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 237 (D. Mass. 2018) (finding "specific facts" alleging that company breached its promise to lower plaintiff's monthly charge for water services to "$1.99 each month for one year" to confer standing).

and the other precedents in analogous consumer cases that require more. Plaintiffs have not

suffered an economic injury by purchasing a product that worked as expected for them. Nor do

Plaintiffs allege they would have purchased a cheaper alternative booster seat (let alone identify

one), or that the Big Kid's market value would have been lower if the challenged representations

were altered or omitted. Whether analyzed as lack of standing under Rule 12(b)(1) or failure to

state a claim under Rule 12(b)(6), the AC should be dismissed in its entirety for failure to plead a

cognizable injury.[4]

### B.    Plaintiffs Lack Standing To Seek Injunctive Relief.

Plaintiffs cite (at 18-19) neither allegations establishing their intention to purchase

another Big Kid, nor authority permitting such plaintiffs to seek injunctive relief. Instead,

Plaintiffs erroneously analogize themselves to the plaintiff in *Davidson v. Kimberly-Clark Corp.*,

889 F.3d 956 (9th Cir. 2018). In *Davidson*, the Ninth Circuit explained that the plaintiff—who

purchased wipes deceptively advertised as "flushable"—could seek injunctive relief because she

adequately alleged that, in the future, "she would purchase truly flushable wipes . . . if it were

possible" from the defendant. *Id.* at 968-71. No similar allegation appears here.

In addition, the Court should decline Plaintiffs' invitation (at 18) to defer ascertaining

Plaintiffs' standing to seek injunctive relief until class certification, which request they base on

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999), and *Amchem Products, Inc. v. Windsor*,

521 U.S. 591, 612 (1997). Those cases were limited to considering the propriety of class

settlements, and neither stands for the broad proposition that Article III standing should be

deferred until later. *See*, *e.g.*, *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004)

---

[4] Plaintiffs cite (at 14-15) several cases they contend establish that their damages allegations are sufficient to establish several state-law consumer fraud claims. These cases are easily distinguishable—for example, in *In re Actiq Sales & Mktg. Practices Litig.*, 2012 WL 2135560, at \*5 (E.D. Pa. June 13, 2012), the court considered whether the defendant's misleading representations caused physicians to prescribe a drug for off-label purposes, which would have violated a section of the Indiana Code that is not at issue here. *Id.* at \*5.

("*Fibreboard* does not require courts to consider class certification before standing"). Much more narrowly, *Fibreboard* only suggests deferral in the event that certification issues are "logically antecedent" to Article III concerns. There is no antecedent connection here, where Plaintiffs allege they would have not have purchased a Big Kid if they had known then what they know now. (*See* AC ¶ 296);  *Johnson & Johnson*, 903 F.3d at 293 (finding no standing to seek an injunction because "[t]he law affords [plaintiff] the dignity of assuming that she acts rationally, and that she will not act in such a way that she will again suffer the same alleged 'injury'").

## III.   PLAINTIFFS' STATUTORY STATE-LAW CLAIMS SHOULD BE DISMISSED.

Plaintiffs' state-law claims, all of which are premised on the Weight Minimum and Side Impact representations, also fail because the representations are either not deceptive, and/or are exempted by the various states' safe harbor/regulatory exemptions.

### A.   Plaintiffs Fail To Plead A Deceptive Act Under Many States' Laws.

Plaintiffs distort NHTSA's actions (at 21-22) to support the novel theory that Evenflo committed consumer fraud by using a Weight Minimum that recites the exact threshold NHTSA set in FMVSS 213.[5] In support, Plaintiffs rely on a non-binding 1992 NHTSA flyer that predates NHTSA's amendments to FMVSS 213, which set the 30-pound weight threshold. That antecedent reference allows Plaintiffs to condemn by saying that "Evenflo has known for 28 years that NHTSA believes that children under 40 pounds should not use booster seats[.]" (Opp. at 21.) Among other fallacies, Plaintiffs misapply agency law. *See Am. Rivers, Inc. v. NOAA Fisheries*, 2006 WL 1455629, at *8 (D. Or. May 23, 2006) (agency brochure published without any formal rulemaking was not evidence of agency's position). Plaintiffs also violate a "basic tenet" of interpretation (at 22, 29) in claiming the Weight Minimum violated FMVSS 213's

---

[5] Plaintiffs repeatedly mischaracterize the Weight Minimum as a safety guarantee for every child weighing between 30 and 40 pounds. (*See*, *e.g.*, Opp. at 30). There are, of course, a number of factors (weight, height, age, and maturity) that guide a parent as to when a booster seat is appropriate for his or her child. (AC ¶¶ 247, 254).

general prohibition on "misleading" statements, when its more specific provision, S5.5.2(f), established that threshold. *See*, *e.g.*, *Arzio v. Shinseki*, 602 F.3d 1343, 1347 (Fed. Cir. 2010) (applying "basic tenet" of construction that specific regulation controls over general regulation).

Plaintiffs also do not dispute (at 23) that Evenflo's Side Impact Representation is true. Plaintiffs merely repeat their subjective belief that the Side Impact Representation was some guarantee of absolute safety (notably, Plaintiffs cite nothing establishing that children using Big Kids are frequently injured in side-impact collisions). Ultimately, by conducting non-required side-impact testing, Evenflo did exceed government standards for booster seats. (Memorandum in Support of Evenflo Company, Inc.'s Motion to Dismiss the Amended Complaint (11/20/20) ("Memo") at 6-7).[6] And Evenflo's statement that the Big Kid was "rigorously tested" has been found to be subjective, and thus non-actionable, under state laws. *See*, *e.g.*, *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 750 (E.D. Mich. 2017) (applying California law and dismissing claim based on representation that truck alleged to be unsafe was the product of "rigorous testing").[7]

## B.      Evenflo Is Entitled To State Regulatory Safe Harbors.

Plaintiffs cannot rely (at 28) on a general standard that regulatory safe harbors impose a "'heavy' burden," while conceding (*id.*) that statutory safe harbors, at a minimum, apply to

---

[6] Plaintiffs' cases (at 23-27) largely cite to unremarkable legal standards. When Plaintiffs do try to dispute Evenflo's authority, their effort fails—for example, Plaintiffs incorrectly contend (at 25) that Kentucky does not require privity. *See Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 962 (E.D. Ky. 2019) (explaining the few federal courts not requiring privity are outliers that ignore contrary state precedent). Plaintiffs also incorrectly assert (at 26 n.8) that North Carolina requires pleading egregious or aggravating circumstances for contract claims only. *See*, *e.g.*, *Khouri v. Nat'l Gen. Ins. Mktg., Inc.*, 2020 WL 6749713, at *4 (M.D.N.C. Nov. 17, 2020) (dismissing UDTPA claim not involving any contract because "[t]o be deceptive within the meaning of § 75-1.1, a misleading act must occur under egregious or aggravating circumstances") (quotations and citations omitted). Finally, Plaintiffs' authority for Ohio predates the cases Evenflo cites in its Memo (at 32-33), which limit standing to a commercial class of potential claimants.

[7] Plaintiffs' comparison (at 4) between the 38.5 mph impact speed utilized in NHTSA's automobile side-impact test and the approximately 20 mph change of velocity used in Evenflo's Big Kid side-impact test improperly conflates two distinct engineering concepts, as it is the instantaneous change in velocity of a vehicle (also called delta-V), and not simply impact speed, that measures crash severity.

7

practices that are "affirmatively permitted." Evenflo's Weight Minimum, which repeats the exact weight threshold NHTSA established in FMVSS 213 through formal rulemaking, is exactly the type of "affirmatively permitted" conduct protected by these safe harbors.

### C.      Implied Warranty Privity Exceptions Do Not Apply To Plaintiffs.

Plaintiffs concede (at 31) that they failed to plead an exception to the Ohio implied warranty claim's privity requirement. Their claims to three exceptions in other states fail as well.

Plaintiffs are not third-party beneficiaries under Florida, Illinois, or New York law (at 30-31) because, to the extent the states recognize that exception, Plaintiffs fail to plead the requisite elements. *See*, *e.g.*, *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1118-19 (S.D. Fla. 2019) (dismissing implied warranty claim with prejudice); *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019) (finding purchaser was not a third-party beneficiary of contract between retailer and manufacturer); *Dixon v. Ford Motor Co.*, 2015 WL 6437612, at *6-7 (E.D.N.Y. Sept. 30, 2015) (casting doubt on exception and dismissing implied warranty claim). The direct-dealing exception (at 31) does not apply because the Illinois Plaintiff purchased her Big Kids from Walmart. (AC ¶ 63); *see Manley*, 417 F. Supp. 3d at 1124 (doubting exception and finding it inapplicable to retail purchase). Finally, the dangerous-product exception (at 32) does not apply to the New York or Tennessee Plaintiffs, as they assert economic loss claims. *Dixon*, 2015 WL 6437612, at *5 (under New York law, "there is no 'thing of danger' exception to the privity rule for implied warranty claims that involve purely economic loss"); *Americoach Tours, Inc. v. Detroit Diesel Corp.*, 2005 WL 2335369, at *7-8 (W.D. Tenn. Sept. 23, 2005) (dismissing claim as plaintiff sought economic damages; "the requirement of privity is not excused regardless of whether the product was unreasonably dangerous").

### D.      Plaintiffs' Pre-Suit Notice Is Insufficient.

Although Plaintiffs contend they provided pre-suit notice on behalf of the Michigan,

Ohio, and Pennsylvania Plaintiffs, they do not cite to the AC or their impermissible exhibits to support their assertion.[8] The challenged Plaintiffs cannot rely on notice provided by *others* to satisfy their own notice obligations. *See Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 718 (E.D. Pa. 2013) (finding notice directly from other customers, including one named plaintiff, was insufficient to establish notice on behalf of other named plaintiffs).

## IV.    THE COURT SHOULD DISMISS COUNT LVIII.

Plaintiffs cite authorities (at 34, 35 n.12) suggesting that the Court may defer resolving the Plaintiffs' standing to bring claims on behalf of non-resident classes when the class plaintiffs have standing to seek their own claims. Here, where Plaintiffs lack standing to bring their own claims, they similarly lack standing to bring the claims in Count LVIII on behalf of absent class members. In addition, as detailed in Evenflo's Memo (at 20-35), there is variation in state consumer fraud laws; if Plaintiffs' other state-law claims fail, the Court should dismiss Count LVIII.

## V.    MANY STATE FRAUD CLAIMS ARE NOT PLED WITH PARTICULARITY.

Plaintiffs' cited authorities (at 35-36) do not establish that the 21 identified Plaintiffs pled their consumer fraud claims with the requisite particularity. *See Munsell v. Colgate-Palmolive Co.*, 463 F. Supp. 3d 43, 52-53 (D. Mass. 2020) (in a single-plaintiff class action, plaintiff alleged regular deodorant purchases and a uniform misrepresentation on which she relied); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 751 F. Supp. 2d 277, 290 (D. Mass. 2010) (claims sufficiently alleged because plaintiff identified "the time and place of the fraudulent

---

[8] Materials outside the complaint should not be considered. *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (sustaining district court's decision not to consider exhibits to motion to dismiss). Should the Court consider them, these exhibits: (1) fail to identify Ohio Plaintiff Honaker, Pennsylvania Plaintiff Lechner, or Michigan Plaintiff Sapieka; and (2) fail to raise or cite to Michigan or Pennsylvania claims, and cite to Ohio claims for the first time in a December 18, 2020 letter. (Dkts. 83-1, 83-2). Finally, Pennsylvania Plaintiff Mahler sent a pre-suit demand letter under Massachusetts law—not Pennsylvania. (Dkt. 83-3).

representations," "the identities of the perpetrators and recipients," and the misrepresentations' content). Here, 21 Plaintiffs fail to plead the representation on which he/she relied, or the source of the deceptive representation, and their failure to identify the model and purchase date also fails Rule 9(b) because the representations varied by year and model. (*See* Memo at 37 n.12).

## VI.   PLAINTIFFS' NATIONWIDE CLAIMS SHOULD BE DISMISSED.

Plaintiffs' rote recitation of elements, failure to plead facts, and conclusory assertion that the laws of all 50 states and two territories are "materially the same" in Counts I to III are insufficient, legally incorrect, and lack plausibility. Plaintiffs misrepresent or ignore (at 36-38) the differing state laws for the three nationwide claims. *E.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433-34 (S.D.N.Y. 2017) (dismissing New York unjust enrichment claim due to adequate remedy at law); *Wortman v. C.R. Bard, Inc.*, 2019 WL 6329651, at *3 (S.D. Ind. Nov. 26, 2019) (explaining "Indiana law only permits a claim of negligent misrepresentation in certain contexts" and not for claims like Plaintiffs'). Their own authority (at 38) demonstrates a varied application of the economic loss doctrine. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002) ("Pennsylvania state courts have exhibited a 'lack of hospitality to tort liability for purely economic loss'") (citation omitted). Plaintiffs do not plausibly plead undifferentiated claims under the laws of 52 jurisdictions. *See*, *e.g.*, *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667 (E.D. Mich. 2011) (dismissing nationwide unjust enrichment claims as "[s]tate law requirements under unjust enrichment law vary widely").

## VII.   RELIEF REQUESTED.

Evenflo respectfully asks the Court to dismiss the Amended Complaint in its entirety pursuant to Fed. Rs. Civ. 12(b)(1) and 12(b)(6).

Dated:  January 8, 2021                          Respectfully submitted,

                                                 /s/ Lawrence G. Scarborough
                                                 Lawrence G. Scarborough (BBO No. 681285)
                                                 BRYAN CAVE LEIGHTON PAISNER LLP
                                                 1290 Avenue of the Americas
                                                 New York, New York 10104-3300
                                                 Telephone:  (212) 541-2000
                                                 E-mail:  lgscarborough@bclplaw.com

                                                 Dan H. Ball
                                                 Richard P. Cassetta
                                                 Timothy J. Hasken (Admitted *Pro Hac Vice*)
                                                 BRYAN CAVE LEIGHTON PAISNER LLP
                                                 211 North Broadway, Suite 3600
                                                 St. Louis, Missouri 63102
                                                 Telephone:  (314) 259-2000
                                                 E-mail:  dhball@bclplaw.com
                                                 E-mail:  richard.cassetta@bclplaw.com
                                                 E-mail:  tim.hasken@bclplaw.com

                                                 Jessica R. Maziarz (Admitted *Pro Hac Vice*)
                                                 Kathryn E. Bettini (Admitted *Pro Hac Vice*)
                                                 BRYAN CAVE LEIGHTON PAISNER LLP
                                                 Two North Central Avenue, Suite 2100
                                                 Phoenix, Arizona 85004-4406
                                                 Telephone:  (602) 364-7000
                                                 E-mail:  jessica.maziarz@bclplaw.com
                                                 E-mail:  kathryn.bettini@bclplaw.com

                                                 *Attorneys for Defendant*
                                                 *Evenflo Company, Inc.*

## CERTIFICATE OF SERVICE

I, Lawrence G. Scarborough, hereby certify that this document was electronically filed and served using the Court's CM/ECF system on January 8, 2021.

                                                  /s/ Lawrence G. Scarborough
                                                 Lawrence G. Scarborough

11