UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE EVENFLO CO., INC. MARKETING, SALES PRACTICES & PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>All Actions | )<br>)<br>)<br>)<br>)  MDL No. 20-md-02938-DJC<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                    **January 27, 2022**

## I.   Introduction

A putative class of consumers that purchased the Big Kid booster seat ("Plaintiffs") have filed this lawsuit against Defendant Evenflo Company, Inc. ("Evenflo") alleging fraudulent concealment (Count I), unjust enrichment (Count II), negligent misrepresentation (Count III) and violation of the consumer protection and implied warranty laws of twenty-eight states (Counts IV–LVIII). D. 67. Evenflo has moved to dismiss. D. 79. For the reasons stated below, the Court ALLOWS the motion.

## II.  Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). To determine if the burden has been met, the Court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of

1

liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

A defendant may also move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011).

### III. Factual Background

Unless otherwise noted, the following facts are drawn from Plaintiffs' consolidated amended complaint, D. 67, and are taken as true for the purpose of resolving the motion to dismiss.

#### A. Evenflo's Big Kid Booster Seat

Evenflo manufactures and sells children's car seats. D. 67 ¶¶ 224–25. There are three basic designs of these seats that correspond to children's weights and heights: rear-facing seats, forward-facing seats with harnesses and belt-positioned booster seats. Id. ¶ 215. In the early 2000s, Evenflo introduced a belt-positioned booster seat, the Big Kid, which it marketed as safe for children as young as one with a minimum weight of thirty pounds and no minimum height. Id. ¶¶ 224–25. The Big Kid was designed with similar features to a booster seat from one of Evenflo's competitors, Graco, but was priced lower. Id. In 2008, Evenflo added side wings to the Big Kid to align with Graco's design and increase customers' perception of the Big Kid's safety. Id. ¶¶ 226–27.

The National Highway Traffic Safety Administration ("NHTSA") promulgates the federal safety regulation, 49 C.F.R. § 571.213 ("FMVSS 213"), with which booster seats must comply before they are sold in the United States. See id.; 49 C.F.R. § 1.95 (delegating authority to NHTSA for promulgating regulations including safety standards); D. 67 ¶ 211.[1] The American Academy of Pediatrics ("AAP") also develops and publishes its own guidance for safety standards for these seats. Id. NHTSA and AAP have recommended a harnessed seat for children who weigh forty pounds or less because adult seat belts may not adequately hold a child in place. Id. ¶¶ 212, 216-19, 245. In 2011, NHTSA and AAP both updated their guidance to recommend that parents keep children in a specific seat type for as long as possible (i.e., until they max out the manufacturer's height and weight limits) before moving them up to the next type of seat. Id. ¶¶ 265, 265 n. 26.

### 1.  *Side Impact Testing*

Evenflo advertises the Big Kid as "side impact tested" on its own website and packaging, in its marketing, and in product descriptions at major retailers. Id. ¶¶ 247–49, 271–72. Evenflo also stitches a "side impact tested" label onto the seats. Id. ¶ 249.

Because NHTSA has not regulated side impact testing for booster seats, Evenflo developed its own side impact test. Id. ¶¶ 229–30; see 49 C.F.R. § 571.213 S5.1, S6.1 (specifying required tests). Evenflo did not publicly disclose its testing protocol, but states that its "rigorous test simulates the government side impact tests conducted for automobiles" and "simulates the energy in the severe 5-star government side impact tests conducted for automobiles." Id. ¶¶ 230, 234, 272. Evenflo further states that it "continue[s] to go above and beyond government standards to

---

[1] The Court takes judicial notice of applicable NHTSA regulations (i.e., FMVSS 213), which Plaintiffs incorporate by reference into their complaint. See Schuster v. Harbor, 471 F. Supp. 3d 411, 416 (D. Mass. 2020) (taking judicial notice of agency rules referenced in complaint on motion to dismiss).

provide car seats that are tested at 2X the Federal Crash Test Standard" and all of its car seats "meet or exceed all applicable federal safety standards and Evenflo's side impact standards." Id. ¶¶ 233–34, 272.

Although NHTSA does not perform or require side impact testing for booster seats, NHTSA's crash testing protocol for vehicles rates them based on the extent of injuries observed in crash dummies during two simulated side impact crash scenarios: an intersection-type collision with a 3,015-pound moving barrier at 38.5 miles per hour and a telephone pole crash where a vehicle is pulled into the pole at 30 miles per hour. Id. ¶ 232. Evenflo performs its side impact test by placing the Big Kid seat on a bench, moving the bench at 20 miles per hour, then suddenly decelerating it. Id. ¶ 231. A booster seat only fails this test if the child crash dummy escapes its restraint entirely and ends up on the floor or if the booster seat itself breaks apart into pieces. Id. ¶ 238. As a result, the Big Kid rarely fails Evenflo's side impact test. Id. ¶ 239. In its testing, Evenflo has observed the seat belt slipping off the dummy's shoulders and tightening around the abdomen and ribs, which puts children at risk of head injury. Id. ¶¶ 240–41.

        2.     *Weight and age minimum*

When Evenflo first introduced the Big Kid in the early 2000s, it marketed the seat as safe for children as young as one-year-old so long as they weighed thirty pounds, with no minimum height. Id. ¶ 260. Engineers at the company have since concluded that one- and two-year-olds should not be placed in a booster seat, and, in 2007, Evenflo raised the minimum age for the Big Kid to three and added a minimum height of thirty-eight inches. Id. ¶¶ 261-62. Evenflo then warned consumers that placing a child under the new age and height minimum in the Big Kid could "result in your child striking the vehicle's interior during a sudden stop or crash, potentially resulting in serious injury or death." Id. ¶ 262. Around 2012, a senior booster seat engineer at

Evenflo circulated research reports suggesting that three- and four-year-olds were at an increased risk of injury in booster seats because they often do not sit in them properly. Id. ¶¶ 266–67. The engineer concluded that having the weight minimum at thirty pounds encourages parents to transition children to a booster seat early, but that Evenflo should discourage such a change in favor of keeping children in harnessed seats longer. Id. The engineer further suggested that Evenflo raise the weight minimum to forty pounds and to follow NHTSA's 2011 guidelines, which recommend a four-year age minimum for booster seats. Id.[2] In late 2012, Evenflo raised the Big Kid's age minimum to four years old. Id. ¶ 268. The engineer's suggestion to increase the weight minimum was rejected. Id. Even after Evenflo increased the Big Kid's age minimum, it continued selling old models with manuals from 2008, which stated that the seat was safe for three-year-olds. Id. ¶ 269. Evenflo increased the Big Kid's weight minimum to forty pounds in 2020 following an investigative news article reporting on the facts alleged above. Id. ¶ 253.

B.  **Big Kid Purchases**

Plaintiffs come from twenty-eight states. Id. at 16–43. Each named plaintiff purchased a Big Kid booster seat between 2008 and the present. Id.; id. ¶ 293 (defining putative class). Although four plaintiffs allege that they were involved in a car accident, one of which was prior to purchasing a Big Kid, and one plaintiff alleging an injury during a car accident while using the Big Kid seat, see id. ¶¶ 24, 139–40, 160, 185, Plaintiffs allege economic injury. That is, each plaintiff alleges that that had she "known of the significant safety risks posed by the Big Kid booster seat, and the low threshold for Defendant giving its own booster seat a passing grade regarding side impact testing, she would not have purchased this seat, would have paid less for it, or instead would have purchased one of many safer available alternatives." See, e.g., id. ¶ 188.

---

[2] The 2011 NHTSA guidelines are recommendations, not regulations. See id. ¶ 265, 265 n.26.

IV.     **Procedural History**

In February 2020, purchasers of the Big Kid brought the first lawsuit against Evenflo in the Southern District of Ohio. Xavier v. Evenflo Co. Inc., No. 3:20-cv-00053 (S.D. Ohio Feb. 12, 2020). Various other purchasers then filed suit in multiple district courts. The Judicial Panel on Multidistrict Litigation subsequently ordered all Evenflo booster seat actions centralized and transferred the actions to this Court. D. 2, 5. Plaintiffs later filed their consolidated amended complaint. D. 67. Evenflo has now moved to dismiss. D. 79. The Court heard the parties on the pending motion and took this matter under advisement. D. 91.

V.      **Discussion**

    A.      **Standing**

As an initial matter, Evenflo challenges Plaintiffs' standing to bring this suit. D. 80 at 26. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" within Article III of the U.S. Constitution, Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), and serves to "identify those disputes which are appropriately resolved through the judicial process," Whitmore v. Arkansas, 495 U.S. 149, 155 (1990). To establish Article III standing, Plaintiffs must demonstrate that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 578 U.S. at 338 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Plaintiffs bear the burden of establishing standing, but "the same pleading standards apply both to standing determinations and Rule 12(b)(6) determinations." Hochendoner v. Genzyme Corp., 823 F.3d 724, 734 (1st Cir. 2016). "An individual's plausible allegations of a personal injury will generally suffice to plead an injury in fact, even if the claim is ultimately lacking on the merits." Id.

        1.      *Injury-in-fact*

"The '[f]irst and foremost' concern in standing analysis is the requirement that the plaintiff establish an injury in fact." Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting Spokeo, 578 U.S. at 338) (alteration in original)). To do so, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560).

Plaintiffs allege only past economic injury—that they would not have purchased the Big Kid or would have paid less for it—had they known that the seat was "not safe for children weighing between 30 and 40 pounds and that Evenflo's statements about side-impact testing were false and misleading." D. 83 at 16-19; see, e.g., D. 67 ¶¶ 188, 282.

Evenflo contends that the Plaintiffs received the benefit of their bargain, thus they have not alleged a cognizable injury. "Under the benefit of the bargain theory, a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value." In re Johnson & Johnson Talcum Powder Prod. Mktg.,Sales Prac. & Liab. Litig., 903 F.3d 278, 283 (3d Cir. 2018). "The economic injury is calculated as the difference in value between what was bargained for and what was received." Id.

Evenflo relies upon In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig., 831 F. Supp. 2d 507, 510–13 (D. Mass. 2011), where the district court concluded that a group of consumers lacked standing based in part on insufficient allegations of economic harm. The consumers purchased juice advertised as safe for consumption, but the juice contained lead, and the consumers argued that the juice posed a health risk to them and their children rendering the juice "valueless." Id. at 512. The court rejected Plaintiffs' allegations under this theory of injury, concluding that, "Plaintiffs received the benefit of the bargain, as a matter of law, when they purchased these

7

products," reasoning that, "Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm." Id. (citing Rivera v. Wyeth–Ayerst Labs, 283 F.3d 215 (5th Cir. 2002) (concluding that plaintiffs lacked standing because they did not show they were harmed by using an anti-inflammatory drug that was later withdrawn from the market because of its potential to cause liver damage)). Plaintiffs' theory of injury further failed, for "[t]he products have not been recalled, have not caused any reported injuries . . . do not fail to comply with any federal standards . . . [and] had no diminished value due to the presence of the lead." Id.; see Kerin v. Titeflex Corp., 770 F.3d 978, 983 (1st Cir. 2014) (affirming dismissal for no standing where plaintiff's "purported present injury, 'overpayment' for a defective product and the cost of replacement, is thus entirely dependent on an unsupported conclusion that the [product] is defective, coupled with a speculative risk of future injury").

Plaintiffs attempt to distinguish Fruit Juice by arguing that their allegations are not merely that the Big Kid was unsatisfactory to them, but rather that the seat was unsafe for children under forty pounds. D. 83 at 19.³ But that is precisely what the Fruit Juice plaintiffs alleged—that the juice was unsafe to consume based on the presence of lead, like the plaintiffs here who have alleged that the Big Kid was unsafe for their children because of Evenflo's marketing of it. See Fruit Juice, 831 F. Supp. 2d at 513 (characterizing injury as plaintiffs' dissatisfaction with product where complaint failed to allege that "products had any diminished value because of the presence of lead or that they would have purchased different or cheaper fruit juice products had they known about the lead").

---

³ Plaintiffs do not allege that the Big Kid was recalled. See D. 67. Moreover, Plaintiffs do not allege that the Big Kid fails to comply with NHTSA regulations related to required testing and age/weight minimums, but rather informal NHTSA guidance of same. See id. ¶¶ 265–67.

8

Cases from outside the First Circuit considering similar theories of economic injury warrant the same result here. In Johnson & Johnson, 903 F.3d at 281, plaintiffs claimed economic injury in purchasing baby powder they said was unsafe because of studies linking it to cancer. Id. The Third Circuit held the plaintiff failed to allege that the baby powder "provided her with an economic benefit worth one penny less than what she paid" because she offered no analysis of the diminished value, but rather generic information about the undisclosed link to cancer. Id. at 288. Similarly, in O'Neil v. Simplicity, Inc., 574 F.3d 501, 504 (8th Cir. 2009), the Eighth Circuit held that plaintiffs did not allege an economic injury when claiming, "they paid for a drop-side crib and now they do not use the crib because the drop-side is not safe," because the allegedly defective crib, "has not exhibited the alleged defect, [so] they have necessarily received the benefit of their bargain. [Plaintiffs] purchased a crib with a functioning drop-side and that crib continues to have a functioning drop-side." Id. The Court finds this line of cases, in line with Kerin and Fruit Juice, more persuasive than the recent case of Carder v. Graco Children's Prods., Inc., 2:20-cv-00137-LMM, 2021 WL 3909953, at *3-5 (N.D.Ga. Aug. 31, 2021) (following Circuit precedent and concluding that Plaintiffs had standing for side-impact claims regarding booster seats, but concluding that Plaintiffs lacked standing to seek injunctive relief), D. 111; D. 114 (distinguishing Carder), particularly in light of TransUnion LLC v. Ramirez, __ U.S. __, 141 S.Ct. 2190, 2210 (2021) (concluding that class members whose credit files were not disseminated to third-parties did not suffer "a concrete harm" required for Article III standing); D. 105 at 1; cf. Carder, 2021 WL 3909953, at *3 n.5 (concluding that TransUnion did not warrant a different outcome).

Plaintiffs further contend that they have alleged actual economic loss because they overpaid for the Big Kid. See D. 83 at 17-19 (citing Gustavsen v. Alcon Labs., Inc., 903 F.3d 1, 8 (1st Cir. 2018)). In Gustavsen, plaintiffs alleged they were deceived into overpaying for eye

9

drops. The allegations of economic injury in Gustavsen, however, exceed those made here. First, the plaintiffs put a number on their overpayment, "an out-of-pocket loss of $500 to $1000 per year." Gustavsen, 903 F.3d at 7. Second, plaintiffs alleged facts to explain that number. Plaintiffs "expressly allege[d] that scientific studies and the admission of a marketing executive for one of the major defendants" showed "consumer cost would fall to some degree" if the alleged deceptive practice—unnecessarily enlarging the size of eye drops—was not used. Id. at 8. Plaintiffs "compar[ed] the number of bottles a patient would use if the bottles dispensed 15 microliter doses against the number of bottles each patient is now required to purchase [to] calculate that a patient, on a yearly basis, could save upwards of $500, depending on the brand and type of solution used." Id. at 5. Here, Plaintiffs have alleged no estimate (aside from a bare claim that the seats were "worthless" to them) of how much the Big Kid would diminish in value, or any facts giving rise to same. See, e.g., D. 67 ¶ 814.

Plaintiffs rely upon Ortiz v. Sig Sauer, Inc., 448 F. Supp. 3d 89, 97–98 (D.N.H. 2020) for the proposition that a plaintiff establishes economic injury by alleging "that he would not have purchased a [product] or would not have paid as much for it" had he known about a defect. See D. 83 at 19. There, the plaintiff sufficiently pled economic injury at the motion to dismiss stage by alleging both an actual defect in the product and that the manufacturer's recall program for same would not adequately compensate him for lost resale value, including the defect's impact on the product's market value. Ortiz, 448 F. Supp. 3d at 97–98 (citing Gustavsen, 903 F.3d at 7). Here, by contrast, Plaintiffs have not alleged an actual defect in the product, nor are they suggesting any resale value of the Big Kid or diminution in value of the current Big Kid, as discussed above.

Additionally, only some of the named plaintiffs allege the approximate weight of their child at the time of purchase, whereas others offer no allegations about the age, height or weight of their

10

child, as to plausibly suggest that their child was below the respective age, height and weight minimums of the Big Kid.  See, e.g., D. 67 ¶¶ 19, 24, 36, 40, 63.  With respect to testing, Plaintiffs also do not account for other safety tests that Evenflo is required to conduct based on other potential crash scenarios (i.e., front impact), see 49 C.F.R. § 571.213 S5.1, S6.1 (specifying required tests), meaning that the seat may indeed provide some value in those instances but, as alleged, not in side impact collisions.  Considering Plaintiffs have not alleged they exclusively purchased the seat because of its ability to protect against side impact collisions, their claim that the seats were "worthless" is not plausible, yet they do not allege anything to explain what the diminished value to them may be, or what the market value of the seat would be, given these allegations about testing.

Even taking Plaintiffs' allegations about the forty-pound seat minimum and side-impact testing as true, they do not offer a plausible explanation of Plaintiffs' economic injury—all Plaintiffs claim is that the Big Kid, because of these alleged problems, were of no value to them.  Accordingly, Plaintiffs have not shown they have standing to redress their economic injuries.[4]

    2.    *Injunctive relief*

Plaintiffs seek a permanent injunction requiring Evenflo to recall the Big Kid, stop selling the Big Kid and add a warning label to all future Big Kid models.  D. 67 at 240.  Evenflo asserts that Plaintiffs lack standing to seek injunctive relief.  D. 80 at 36.  Where, as here, Plaintiffs seek injunctive relief from future injury, they must plausibly allege that "the threatened injury is 'certainly impending' or there is a 'substantial risk that the harm will occur.'"  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (internal citation omitted).  "Either a certainly

---

[4] Given that Plaintiffs have not alleged an economic injury sufficient for Article III standing, the Court does not reach Evenflo's argument that NHTSA has primary jurisdiction over the claims here and the Court should defer ruling on it.

impending harm or substantial risk of harm suffices." Massachusetts v. U.S. Dep't of Health & Human Servs., 923 F.3d 209, 222–23 (1st Cir. 2019) (emphasis in original).

The Court concludes that Plaintiffs lack standing to seek injunctive relief. Plaintiffs' complaint is devoid of allegations that they personally are susceptible to future harm, either physical or economic, and a court-mandated recall would confer economic benefit on Plaintiffs who have not shown economic injury. Further, the putative class consists entirely of individuals who have already "purchased an Evenflo 'Big Kid' booster seat between 2008 and the present." D. 67 ¶ 293. An injunction requiring Evenflo to stop selling the Big Kid or place a warning label on future models would not redress any alleged injury as to Plaintiffs, who do not claim they are likely to buy another Big Kid—to the contrary, Plaintiffs allege only that they would not have bought the Big Kid had they known about the weight and testing issues prior to purchase. See Johnson & Johnson, 903 F.3d at 292-93 (concluding that plaintiff had no standing to seek injunctive relief requiring warning label when plaintiff now was aware of alleged risks because she likely "will not act in such a way that she will again suffer the same alleged 'injury'").[5]

Plaintiffs counter that such a determination is premature, particularly in a consumer class action, because standing to seek an injunction may be determined at the class certification stage. D. 83 at 26. Plaintiffs rely upon Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012) for that proposition, but as Winfield made clear, such a deferral is appropriate only when

---

[5] Plaintiffs rely upon a Ninth Circuit decision to distinguish the proposition, held by several circuits, that a previously deceived consumer does not have standing to seek injunctive relief for the same product, but the Ninth Circuit specifically noted that there, unlike the case here and before the other circuits, the plaintiff "sufficiently allege[d] that she would purchase [the products] manufactured by [defendants]" again, if they did not contain the allegedly deceptive labels. Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 969 n.5 (9th Cir. 2018) (citing and distinguishing Conrad v. Boiron, Inc., 869 F.3d 536 (7th Cir. 2017); Nicosia v. Amazon.com, Inc., 834 F.3d 220 (2d Cir. 2016); McNair v. Synapse Grp. Inc., 672 F.3d 213 (3d Cir. 2012)).

certification is "logically antecedent to Article III concerns" and where "named plaintiffs in a class action . . . have standing to sue the defendant on at least some claims." Id. (quoting Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999)).  This is not the case here.  First, certifying the class is not logically antecedent to standing for injunctive relief because, as explained above, the putative class has already purchased a Big Kid and cannot show imminent future injury.  Second, the Court has determined that Plaintiffs have not alleged economic injury and have no standing to bring claims for damages, the only other relief sought.  "[T]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Lewis v. Casey, 518 U.S. 343, 357 (1996) (internal citation and quotation marks omitted); see Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 20 (D. Mass. 1991) (stating that "[w]hen the issue of standing is raised by a party, this Court must resolve that issue before considering the class certification requirements of Rule 23") (emphasis omitted).

For all these reasons, Plaintiffs do not have standing here.  In light of this ruling, the Court need not turn to Evenflo's challenges to the specific claims that Plaintiffs assert.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 79.

**So Ordered.**

/s/ Denise J. Casper<br>
United States District Judge