UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| ) | |
| IN RE EVENFLO CO., INC. ) | |
| MARKETING, SALES PRACTICES ) | |
| & PRODUCTS LIABILITY LITIGATION ) | |
| ) | MDL No. 20-md-02938-DJC |
| This Document Relates To: ) | |
| ) | |
| All Actions ) | |
| ) | |
| ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                    December 20, 2023

## I.    Introduction

A putative class of consumers that purchased the Big Kid booster seat ("Plaintiffs") filed this lawsuit against the manufacturer, Defendant Evenflo Company, Inc. ("Evenflo") alleging that Evenflo misrepresented the safety features of the Big Kid booster seat. D. 67. The Court initially dismissed the consolidated complaint on standing grounds under Fed. R. Civ. P. 12(b)(1). D. 119. The First Circuit affirmed that dismissal as to the injunctive relief Plaintiffs sought, but reversed the ruling as to Plaintiffs' monetary claims and remanded the case. D. 127.[1] Plaintiffs now have moved to amend their complaint. D. 144. For the reasons stated below, the Court ALLOWS the motion to amend in part and DENIES it in part.

---

[1] Since the First Circuit directed this Court to clarify the nature of its dismissal, D. 127 at 27–28, this Court clarifies that its dismissal on standing grounds was without prejudice. Hochendoner v. Genzyme Corp., 823 F.3d 724, 736 (1st Cir. 2016).

## II.     Standard of Review

Fed. R. Civ. P. 15(a) "mandates that leave to amend is to be 'freely given when justice so requires' . . . unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Rule 15(a)(2) and Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." Boston & Me. Corp. v. Town of Hampton, 987 F.2d 855, 868 (1st Cir. 1993), overruled on other grounds, Educadores, Puertorriqueños en Acción v. Hernandez, 377 F.3d 61 (1st Cir. 2004). Futility depends upon whether the proposed amendment "plead[s] enough [facts] to make out a plausible claim for relief." HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 578 (1st Cir. 2014) (citing cases). As such, to assess futility, courts apply "the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (citing 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.08[4], at 15–81 (2d ed. 1993)).

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find

the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

## III.    Factual Background

Except where otherwise noted, the following facts are drawn from Plaintiffs' proposed second amended complaint, D. 144-1, and are accepted as true for the purpose of resolving the motion to amend.

### A.    Evenflo's Big Kid Booster Seat

Evenflo manufactures and sells children's car seats.  D. 144-1 ¶ 6.  There are three basic designs of car seats that are intended for children of varying sizes:  rear-facing seats, forward-facing seats with harnesses and belt-positioning booster seats.  Id. ¶ 161.  The National Highway Traffic Safety Administration ("NHTSA") promulgates the federal safety regulation, 49 C.F.R. § 571.213 ("FMVSS 213"), with which booster seats must comply before they are sold in the United States.  See id.; 49 C.F.R. § 1.95 (delegating authority to NHTSA for promulgating regulations including safety standards); D. 144-1 ¶ 4 n.1.[2]  The American Academy of Pediatrics ("AAP") also develops and publishes its own guidance for safety standards for these seats.  D. 144-1 ¶ 157. These recommendations advise transitioning children from rear-facing seats to forward-facing seats with harnesses and finally to belt-positioning booster seats based on the size of the child.  Id. ¶ 162.  As early as 1992, NHTSA and AAP have recommended children who weigh forty pounds or less remain "in a seat with its own internal harness."  Id. ¶¶ 163, 191, 197, 211.  In 2011, NHTSA and AAP both updated their guidance to recommend that parents keep children in harnessed seats for as long as possible (i.e., until they max out the manufacturer's height and weight limits) before

---

[2] The Court takes judicial notice of applicable NHTSA regulations which Plaintiffs incorporate by reference into their complaint.  See Schuster v. Harbor, 471 F. Supp. 3d 411, 416 (D. Mass. 2020).

moving them up to belt-positioning booster seats, because adult seat belts may not remain in proper position on a younger child's body in the event of an accident.  Id. ¶¶ 162, 164, 197.

In the early 2000s, Evenflo introduced a belt-positioning booster seat, the Big Kid, which it marketed as safe for children as young as one with a minimum weight of thirty pounds and no minimum height.  Id.  ¶ 206.  The Big Kid was designed with similar features to a booster seat from one of Evenflo's competitors, Graco, but was priced lower.  Id.  ¶ 171.  In 2008, Evenflo added side wings to the Big Kid to align with Graco's design and increase customers' perception of the Big Kid's safety.  Id. ¶¶ 172–73.

### 1.    Side-Impact Testing

Evenflo advertises the Big Kid as "side-impact tested" on its own website and packaging, in its marketing, and in product descriptions at major retailers.  Id. ¶¶ 2, 7–8, 10, 179–80, 192–95, 218.  Evenflo also stitches a "side impact tested" label onto the seats themselves.  Id. ¶ 195.

Because NHTSA had not regulated side impact testing for booster seats, Evenflo developed its own side impact test.  Id. ¶¶ 175, 222–23; see 49 C.F.R. § 571.213a (enacted June 30, 2022) (requiring side-impact testing for car seats designed for children under 40 pounds).  Evenflo did not publicly disclose its testing protocol, but states that its "rigorous test simulates the government side impact tests conducted for automobiles" and "simulates the energy in the severe 5-star government side impact tests conducted for automobiles."  Id. ¶ 218.  Evenflo further states that it "continue[s] to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard" and all of its car seats "meet or exceed all applicable federal safety standards and Evenflo's side impact standards."  Id. ¶¶ 179, 218.

Although NHTSA does not perform or require side-impact testing for booster seats, NHTSA's 5-Star Safety Ratings program rates vehicles based on the extent of injuries observed in crash dummies during two simulated side-impact crash scenarios:  an intersection-type collision

with a 3,015-pound moving barrier at 38.5 miles per hour and a telephone pole crash where a vehicle is pulled into the pole at 30 miles per hour.  Id. ¶ 178.  Evenflo performs its side-impact test by placing the Big Kid seat on a bench, moving the bench at 20 miles per hour, then suddenly decelerating it.  Id. ¶ 177.  A booster seat only fails this test if the child crash dummy comes out of its restraint entirely and ends up on the floor or if the booster seat itself breaks apart into pieces. Id. ¶¶ 182–84.  As a result, the Big Kid rarely fails Evenflo's side-impact test.  See id. ¶ 185.  In its testing, Evenflo has observed the seat belt slipping off the dummy's shoulders and tightening around the abdomen and ribs, which would put children at risk of serious injury.  Id. ¶¶ 186–87.

2.    *Weight and age minimum*

When Evenflo first introduced the Big Kid in the early 2000s, it marketed the seat as safe for children as young as one-year-old so long as they weighed thirty pounds, with no minimum height.  Id. ¶ 206.  Engineers at the company have since concluded that one- and two-year-olds should not be placed in a booster seat, and, in 2007, Evenflo raised the minimum age for the Big Kid to three and added a minimum height of thirty-eight inches.  Id. ¶¶ 207–08.  Evenflo then warned consumers that placing a child under the new age and height minimum in the Big Kid could "result in your child striking the vehicle's interior during a sudden stop or crash, potentially resulting in serious injury or death."  Id. ¶ 208.  Around 2012, a senior booster seat engineer at Evenflo circulated a presentation internally indicating that three- and four-year-olds were at an increased risk of injury in booster seats because they often do not sit in them properly.  Id. ¶ 212. The engineer concluded that having the weight minimum at thirty pounds encourages parents to transition children out of a harnessed seat and into a booster seat early and suggested that Evenflo should discourage such a change by raising the weight minimum for its booster seats to forty pounds and increasing the age minimum to four years in accordance with NHTSA's 2011 guidelines.  Id.  In response to the engineer's recommendations, Evenflo raised the Big Kid's age

minimum to four years old, but rejected the weight minimum increase.  Id. ¶ 214.  Even after Evenflo increased the Big Kid's age minimum, it continued selling old models with manuals from 2008, which stated that the seat was safe for three-year-olds.  Id. ¶ 215.  Evenflo increased the Big Kid's weight minimum to forty pounds in 2020 following an investigative news article reporting on the facts alleged above.  Id. ¶ 201.

### B.   Big Kid Purchases

Plaintiffs come from nineteen states.  Id. ¶¶ 18–148.  Each Named Plaintiff purchased a Big Kid booster seat between 2008 and the present.  Id.; id. ¶ 242 (defining putative class).  Although one Plaintiff alleges that her son was injured in a car accident while riding in the Evenflo Big Kid, id. ¶ 136, Plaintiffs allege economic injury.  That is, each Plaintiff alleges that that had she "known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them."  See, e.g., id. ¶ 26.

## IV.   Procedural History

In February 2020, purchasers of the Big Kid brought the first lawsuit against Evenflo in the Southern District of Ohio.  Xavier v. Evenflo Co. Inc., No. 3:20-cv-00053 (S.D. Ohio Feb. 12, 2020).  Various other purchasers then filed suit in multiple district courts.  The Judicial Panel on Multidistrict Litigation ordered that all Evenflo Big Kid booster seat actions be centralized and transferred to this Court.  D. 2; D. 5.  On January 27, 2022, the Court granted Evenflo's motion to dismiss the complaint under Rule 12(b)(1) on the basis that Plaintiffs lacked standing.  D. 119.  Plaintiffs appealed.  D. 121.  On appeal, the First Circuit affirmed this Court's ruling as to the lack of standing for prospective injunctive relief, D. 127 at 26–27, reversed as to Plaintiffs' standing to pursue monetary relief based on overpayment for the booster seats, id. at 25, and remanded the case for further proceedings.  After remand from the First Circuit, this Court adopted the parties'

proposed joint scheduling order, which included deadlines for Plaintiffs to move for leave to file a second amended complaint.  D. 133, 137.   Plaintiffs have now moved to file a second amended consolidated class action complaint.  D. 144.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 161, 162.

## V.   Discussion

Evenflo opposes the motion to amend on the basis that proposed amendment is futile and does not raise any arguments as to undue delay or prejudice.  D. 151 at 4.  The Court thus applies the 12(b)(6) standard to each of Evenflo's arguments.

### A.   <u>Primary Jurisdiction Doctrine (All Counts)</u>

Evenflo seeks to dismiss this case in favor of the National Highway and Traffic Safety Agency's ("NHTSA") primary jurisdiction.  The doctrine of primary jurisdiction "comes into play whenever enforcement of [a plaintiff's] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." <u>Conservation L. Found., Inc. v. Exxon Mobil Corp.</u>, 3 F.4th 61, 70 (1st Cir. 2021) (quoting <u>United States v. W. Pac. R. Co.</u>, 352 U.S. 59, 64 (1956)).  "Despite its name, the primary jurisdiction doctrine is unrelated to a court's subject matter jurisdiction, or power, to hear a dispute."  <u>In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Pracs. Litig.</u>, No. 12-MD-2320-PB, 2013 WL 1124081, at *2 (D.N.H. Mar. 18, 2013) (citing <u>Mashpee Tribe v. New Seabury Corp.</u>, 592 F.2d 575, 580 n.1 (1st Cir. 1979)).  Instead it is a "prudential" doctrine, which "guides a court in deciding when those issues should be resolved in the first instance by the agency." <u>Conservation L. Found.</u>, 3 F.4th at 70.

Three factors guide this Court's analysis of primary jurisdiction:  "(1) whether the agency determination lies at the heart of the task assigned the agency by Congress; (2) whether agency expertise is required to unravel intricate technical facts; and (3) whether, though perhaps not

determinative, the agency determination would materially aid the court." Rymes Heating Oils, Inc. v. Springfield Terminal R. Co., 358 F.3d 82, 91 (1st Cir. 2004).  In weighing the factors, the Court need not assign equal weight to each and may consider whether "referral to the agency promotes 'national uniformity in the interpretation and application of a federal regulatory regime.'" Conservation L. Found., 3 F.4th at 72 (quoting Am. Auto. Mfrs. Ass'n v. Mass. Dep't of Env't Prot., 163 F.3d 74, 81 (1st Cir. 1998)).  After consideration of these factors, the Court "balance[s] them 'against the potential for delay inherent in the decision to refer an issue to an administrative agency.'" Id. at 74 (quoting Am. Auto. Mfrs. Ass'n, 163 F.3d at 81).

Here, the crux of Plaintiffs' claims is that representations Evenflo made about the Big Kid booster seat's weight capacity and side-impact testing were not true. See e.g., D. 144-1 ¶¶ 256–57, 271–72, 289–90, 302–03, 312–13; see also D. 127 at 10–11 (describing Plaintiffs' claims as "explicitly based on misrepresentations" and noting that plaintiffs' claims for breach of implied warranty of merchantability similarly "sound[ed] in misrepresentation").  Evenflo does not identify any pending agency determination to which this Court should defer.  Cf. Conservation L. Found., 3 F.4th at 70–74 (assessing appropriateness of stay issued pending an agency's decision on renewal of defendant's permit).  Evenflo instead points to prior determinations setting a "30-pound weight minimum for belt-positioning booster seats" and "a side impact-testing rule that imposes no obligations on booster seats."  D. 151 at 14 (citing 49 C.F.R. § 571.213a).  The Court rejects Evenflo's argument that NHTSA's choices not to require side-impact testing for booster seats or a higher weight minimum for belt-positioned seats shield Evenflo from liability on Plaintiffs' misrepresentation-based claims.  See Azurity Pharms., Inc. v. Edge Pharma, LLC, 45 F.4th 479, 500 (1st Cir. 2022) (concluding that "FDA's choice not to enforce" its bulk drug policy do not make the terms of the policy "less than perfectly clear" and did not require dismissal of

Lanham Act misrepresentation claims regarding defendant's adherence to the policy); Conservation L. Found., 3 F.4th at 74 (quoting Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 761 (9th Cir. 2015) (stating that "even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation")). Questions as to whether the consumer "'received what [he] bargained for,' which arise frequently in consumer protection suits, ordinarily do not lie at the heart of agencies' Congressional mandates." In re Colgate, 2013 WL 1124081, at *4 (internal citation omitted).

Moreover, NHTSA's role in ensuring motor vehicle safety does not mean that its expertise is required to understand the facts of this case or that its determination of appropriate booster seat safety features would materially aid this Court. See Conservation L. Found., 3 F.4th at 73 (concluding that stay in favor of agency determination was improper where it would not materially help the court, even where agency's expertise would be helpful in understanding some facts and determination lay at heart of agency's assigned task). This case does not depend on interpretation of a complex and ambiguous agency regulation or guidance. Compare Azurity Pharms., 45 F.4th at 501 (concluding that agency expertise was not helpful where court could resolve misrepresentation claims by referring to "clear statutory text . . . reinforced by the FDA's interim guidance") and Rectrix Aerodome Centers, Inc. v. Barnstable Mun. Airport Comm'n, No. CIV.A. 06-11246-RGS, 2007 WL 2178077, at *3 (D. Mass. July 27, 2007) (rejecting primary jurisdiction argument where there was "no pending FAA proceeding to which the court could defer" or "any prior determination by the FAA on the substance of plaintiff's claims"), with Rymes Heating Oils, 358 F.3d at 90–91 (affirming dismissal of claim which required interpretation of two trackage rights orders issued by Surface Transportation Board, where Board was "uniquely suited to

determine not only the purpose of those orders but also the likely effect of the various interpretations on transportation policy").   While NHTSA's expertise might be useful in understanding the economics of the booster seat industry or the science behind safety testing, such expertise is less helpful in assessing whether Evenflo's marketing and packaging materials misrepresented features of its product.  See Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 305–06 (1976) (concluding that "standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of this case"); In re Colgate, 2013 WL 1124081, at *7 (concluding that FDA's "special expertise" was not required to determine whether "labeling and advertising statements were false and misleading"). Ultimately, Plaintiffs' claims turn on whether the weight range and side-impact representations are false or misleading.  Even assuming that Evenflo's representations would not be false if NHTSA determined Big Kid was "safe" under its regulations, those representations might still have the capacity to mislead a consumer.  See, e.g., Tucker v. Pac. Bell Mobile Servs., 145 Cal. Rptr. 3d 340, 360 (Cal. Ct. App. 2012) (explaining that "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer" is actionable under California false advertising law, Cal. Bus. & Prof. Code § 17200 (internal citation omitted)); Belmont Condo. Ass'n, Inc. v. Geibel, 74 A.3d 10, 27 (N.J. Super. App. Div. 2013) (explaining that statement which is "literally true" was actionable under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq. where it "had the capacity to mislead the average reader")); People ex rel. Spitzer v. Gen. Elec. Co., 302 A.D.2d 314, 315 (N.Y. Sup. Ct. App. Div. 2003) (concluding that even if manufacturer's statement was literally true under dictionary definition "literal truth is not an availing defense in light of the evident capacity of the representations at issue to mislead even

reasonable consumers acting reasonably under the circumstances" to New York Deceptive Acts and Practices Act claim, N.Y. Gen. Bus. Law § 349).

Evenflo's reliance on In re Beech Nut is not persuasive.  D. 151 at 15 (citing In re Beech-Nut Nutrition Co. Baby Food Litig., No. 1:21-CV-133, 2023 WL 350818, at *1 (N.D.N.Y. Jan. 19, 2023)).  Although the In re Beech-Nut plaintiffs sought to characterize their claims as "'garden variety' false advertising, their claims repeatedly assert that [defendant's] products are 'unsafe' to consume and that it is the products' underlying toxicity, not the label statement themselves that cause any alleged injuries."  In re Beech-Nut, 2023 WL 350818, at *4.  The court reasoned that to determine whether labeling omissions were misleading, it would need to first determine whether the level of heavy metals in the products made them unsafe.  Id.  Plaintiffs' asserted injury here continues to be economic and caused by Evenflo's alleged fraud, not by the unsafe nature of the booster seats themselves.  Other cases which invoke the primary jurisdiction doctrine in favor of NHTSA involve unsafe vehicular defects, rather than claims of false advertising or other misrepresentations.  See, e.g., Silvas v. Gen. Motors, LLC, No. 2:14-CV-89, 2014 WL 1572590, at *1–3 (S.D. Tex. Apr. 17, 2014) (deferring to NHTSA's primary jurisdiction as to plaintiffs' "extraordinary" request that car manufacturer be ordered to issue a park-it-now alert due to defective ignition switch, where NHTSA had "proceeded substantially into the recall process" with respect to this issue); Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 628–29 (M.D.N.C. 2006) (deferring to NHTSA with respect to model years where NHTSA found a safety defect and issued a safety recall, but allowing claims regarding model years for which NHTSA decided not to pursue recall, where NHTSA's report made clear that such decision "does *not* equate to a finding that the NHTSA found no problem or defect" in those vehicles (emphasis in original)) .

Courts evaluating similar misrepresentation-based cases involving booster seats have concluded that NHTSA does not have primary jurisdiction over such matters.  Oceguera v. Baby Trend, Inc., No. 521CV00398JWHKKX, 2022 WL 1599869, at *6 (C.D. Cal. Jan. 14, 2022) (concluding NHTSA lacked primary jurisdiction over misrepresentation case involving appropriate weight range and side-impact testing for booster seats); Stevens v. Britax Child Safety, Inc., No. 2:20-CV-07373-MCS-AS, 2021 WL 4706702, at *1, 4 (C.D. Cal. July 13, 2021) (concluding NHTSA lacked primary jurisdiction over false advertising claims based on statements that booster seat could "protect your child well beyond the federal safety standards").  Given the allegations of misrepresentations causing economic harm in the present case and the delay that an administrative process necessarily entails, the Court concludes that there is no basis for invoking the doctrine of primary jurisdiction.  Accordingly, the Court rejects Evenflo's argument that amendment of the complaint is futile based on NHTSA's primary jurisdiction.

Accordingly, the Court rejects Evenflo's argument that amendment of the complaint is futile based on NHTSA's primary jurisdiction.

### B.     Materiality of Misrepresentations

The parties agree Plaintiffs' claims for fraud, violation of state consumer protection statutes, and affirmation-based breach of express warranty claims, in some way require the alleged misrepresentation, deceptive statement or affirmation to be material.  D. 151 at 17–18 (collecting cases); D. 158 at 18 n.16 (noting that Plaintiffs do not contest "that materiality (or causation) is important to the claims)).  Evenflo further argues that the unjust enrichment claims also rise and fall on materiality because they "require an allegation of unjust circumstance or inequity (like a fraud) that justifies restitution."  D. 151 at 18 & n.9 (collecting cases).  Given that neither party has identified which counts of the complaint are encompassed by this argument, the Court has focused on the specific Plaintiffs whose claims Evenflo asserts should be dismissed on this basis.

D. 151 at 19–20.  First, Evenflo asserts that eleven Plaintiffs from Florida, Indiana, Iowa, Missouri, New Jersey, North Carolina, Ohio, Pennsylvania, South Carolina and West Virginia did not adequately allege materiality and causation for the "weight range" representations.  Id. at 19. Second, it asserts that seventeen Plaintiffs from California, Florida, Georgia, Indiana, Maine, Michigan, Missouri, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington and West Virginia did not adequately allege materiality and reliance for the "side-impact testing" representations.  Id. at 19–20.  The Court thus focuses its inquiry on these Plaintiffs identified by Evenflo.

As neither party has suggested the inquiry varies across jurisdictions in a meaningful manner, the Court turns to the Second Restatement of Torts for a fair characterization of the relevant law on materiality.  A fact is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" or "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it."  Restatement (Second) of Torts § 538(2) (1977).  Materiality is significant in a fraud case because a plaintiff cannot reasonably rely on a misrepresentation that is immaterial. See id. § 538(1).[3]  In the context of a transaction, some states formulate a material fact as one that

---

[3] The definition of a material misrepresentation, as one which would influence the decision-making of a reasonable or prudent person or which was made with knowledge of its importance to the recipient, appears consistent with the law of the relevant states.  See, e.g., Kwikset Corp. v. Superior Ct., 246 P.3d 877, 892 (Cal. 2011); J.P. Morgan Sec., LLC v. Geveran Invs. Ltd., 224 So. 3d 316, 324 (Fla. Dist. Ct. App. 2017); Pope v. Mercury Indem. Co. of Georgia, 677 S.E.2d 693, 697 (Ga. App. 2009); Omni Ins. Grp. v. Poage, 966 N.E.2d 750, 755 (Ind. Ct. App. 2012); Dier v. Peters, 815 N.W.2d 1, 8 (Iowa 2012); Coffin v. Dodge, 76 A.2d 541, 543 (Me. 1950); Ann Arbor Rehab Centers, Inc v. Schudy, No. 312050, 2014 WL 806038, at *3 (Mich. Ct. App. Feb. 27, 2014); Carnahan v. Am. Fam. Mut. Ins. Co., 723 S.W.2d 612, 615 (Mo. Ct. App. 1987); Ji v. Palmer, 755 A.2d 1221, 1228 (N.J. Super. Ct. App. Div. 2000); Stutman v. Chem. Bank, 731 N.E.2d 608, 612 (N.Y. 2000); James v. Integon Nat. Ins. Co., 744 S.E.2d 491, 494 (N.C. Ct. App.

affects the value of the subject matter of a contract.  See, e.g., Thompson v. Best, 478 N.E.2d 79, 83 (Ind. Ct. App. 1985); Whitehurst v. Life Ins. Co. of Va., 62 S.E. 1067, 1068 (N.C. 1908).

The proposed complaint plausibly alleges that the purpose of car booster seats is to ensure the safety of and prevent injury to children sitting in those seats.  D. 144-1 ¶¶ 5-6.  A reasonable person would plausibly attach some importance to the appropriate weight range and the side-impact performance when selecting a booster seat because such features go to the safety of the product.  See, e.g., Kiriacopoulos v. Gen. Motors LLC, No. CV 22-10785, 2023 WL 2789622, at *6 (E.D. Mich. Apr. 5, 2023) (concluding that plaintiffs pled actionable fraud claim where alleged misstatements related to "superior safety features of vehicles"); Carder v. Graco Children's Prod., Inc., 558 F. Supp. 3d 1290, 1330 (N.D. Ga. 2021), on reconsideration in part, No. 2:20-CV-00137-LMM, 2021 WL 9721143 (N.D. Ga. Nov. 18, 2021) (concluding that claim under North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") was plausibly pled where plaintiffs alleged that "Defendant omitted material facts about the safety of its Booster Seats (particularly the Booster Seats' safety in side-impact collisions) and instead 'marketed and labeled the Booster Seats as "side-impact tested" and misrepresented that the Booster Seats are safe for children as small as 30 pounds, and safe for children as young as three-years-old'" (internal citations omitted)); In re Takata Airbag Prod. Liab. Litig., 462 F. Supp. 3d 1304, 1318 (S.D. Fla. 2020) (concluding that consumers adequately pled actionable misrepresentations where Defendants distributed marketing materials that touted air bags and other passive safety features of vehicles); In re Gen. Motors LLC Ignition Switch Litig., 257 F. Supp. 3d 372, 412 (S.D.N.Y. 2017)

---

2013); Long v. Rice, 992 N.E.2d 1220, 1225 (Ohio 2013); Steele v. Singletary, 110 S.E. 833, 835 (S.C. 1922); Odom v. Oliver, 310 S.W.3d 344, 351 (Tenn. Ct. App. 2009); Martin v. Miller, 600 P.2d 698, 700–01 (Wash. App. 1979); Atkins v. Kirkpatrick, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991).

(concluding that allegations of "defective process" leading to unsafe vehicles "would have been material to a reasonable consumer"), modified on reconsideration on other grounds, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017).  That is, Plaintiffs have plausibly pled that the ability of the Big Kid booster seat to seat smaller children safely and protect children in a side-impact collision could impact their purchase of the seat or the value of the seat.  See, e.g., D. 144-1 ¶¶ 14, 15, 275 (alleging that Plaintiffs would have paid less for the booster seat but for the misrepresentations).  The Court thus concludes the alleged misrepresentations regarding the appropriate weight range and side-impact testing go to a material fact.

Evenflo urges that certain Plaintiffs' "boilerplate allegations are not specific enough to establish materiality."  D. 151 at 18.  The Court construes Evenflo's argument as an objection to each Plaintiff's allegation that "had Plaintiff [in question] known that Evenflo's statements regarding side-impact testing and the safety of the product for children, as light as 30 pounds were false, she [or he] would not have purchased the seats, or would have paid less for them.  D. 144-1 ¶¶ 21, 26, 31, 35, 40, 43, 50, 55, 60, 65, 71, 75, 83, 89, 92, 96, 103, 108, 115, 120, 127, 131, 143, 148.  Applying the Rule 12(b)(6) analysis for futility to the allegations in the proposed second amended complaint, as the Court must do at this point, Plaintiffs have sufficiently alleged that the misrepresentations impacted their purchasing decisions.  See In re WellNx Mktg. & Sales Pracs. Litig., 673 F. Supp. 2d 43, 51–52 (D. Mass. 2009).

As to the weight range misrepresentations, Evenflo nevertheless objects that eleven Plaintiffs "do not specifically allege that their children weighed less than 40 pounds at the time they bought their Big Kid seats."  D. 151 at 18.  This mischaracterizes several Plaintiffs' allegations.  For instance, Talutto alleged that her "son at the time was just over 30 pounds."  D. 144-1 ¶ 34.  Other Plaintiffs identified by Evenflo alleged that their children were three-, four-, or

five-years old at the time they purchased a Big Kid booster seat.  Id. ¶ 42 (alleging that Greenshner's child was five); id. ¶ 86 (alleging that Naughton's child was four); id. ¶ 91 (alleging that Karen Sanchez's children were three and five); id. ¶ 106 (alleging that Matthews's youngest children were between five and six); id. ¶ 123 (alleging that Alston's child was four).  Given that other Named Plaintiffs alleged that their five-year olds weighed less than 40 pounds, id. ¶¶ 62, 99 (alleging that Alexie's and Schnitzer's five-year olds weighed less than 40 pounds), the Court reasonably infers that others' children (namely Greenshner's, Naughton's, Sanchez's, Matthews's and Alston's) also may have weighed less than 40 pounds when those Plaintiffs purchased the Big Kid.  Others of the eleven identified Plaintiffs specifically alleged that they researched the Big Kid booster seat prior to purchase and encountered weight range representations that influenced their purchasing decisions.  Id. ¶ 54 (alleging that "Gathings researched various seats online" and "ultimately purchased the Big Kid model . . . because it could accommodate her child as she grew"); id. ¶ 141("Smarr researched by reading product reviews about the safety of the Evenflo Big Kid booster seats, including that the seats were safe for children weighing less than 40 pounds").  Although a few Plaintiffs (Aly, Honaker and Mahler) neither allege the weight or age of their children nor the circumstances under which they encountered the weight range representations, the proposed complaint alleges that the weight range representation appeared on the booster seat packaging.  Id.  ¶ 203.  Viewing the complaint as a whole and drawing all plausible inferences in Plaintiffs' favor, the Court concludes that all eleven plaintiffs have adequately pled that they relied upon the weight range representations.

The Court reaches a similar conclusion as to the side-impact testing representations.  Evenflo argues that sixteen Plaintiffs "pleaded only a boilerplate allegation that the side-impact

representation mattered to their decision."  D. 151 at 18.[4]  The Court nevertheless must accept Plaintiffs' factual assertions as to the influence of the side-impact misrepresentations on their purchasing decisions.  D. 144-1 ¶¶ 21, 26, 31, 35, 40, 43, 50, 55, 60, 65, 71, 75, 83, 89, 92, 96, 103, 108, 115, 120, 127, 131, 143, 148.  Moreover, many of these Plaintiffs make supporting allegations that they encountered the side-impact representations prior to purchase and relied on them.  Id. ¶ 34 (alleging that Talutto "carefully reviewed the product information on Amazon and provided by Evenflo in its marketing materials" and that "Side impact tested" representation "caused her to believe that the car seats would be safe, particularly in the event of a collision or side-impact collision"); id. ¶¶ 38–39 (alleging that Taylor researched the Big Kid online and "relied on representations that the Big Kid booster seats were side-impact tested in deciding to purchase the Big Kid Booster seats amongst various other options"); id. ¶¶ 42, 106 (alleging that Greenshner and Matthews "recall[] reviewing information stating the seat was . . . safe in the event of a side-impact crash, that the seat exceeded NHTSA recommendations, that it was rigorously tested, and that the boost in height decreased the risk of injury"); id. ¶ 69 (alleging that "Lindsey carefully researched the various car seat offerings on line and purchased the Big Kid booster seat specifically because: . . . the Big Kid booster seat was expressly advertised as having been side-impact tested and thus safe for kids, like his daughter, in the event of a collision"); id. ¶¶ 74, 130 (alleging that Holliday and Miller "recall[] seeing Evenflo's safety representations on the seat's box at the time of purchase and relied on [such] representations"); id. ¶¶ 87, 125, 137 (alleging that Naughton, Alston and Reed "perceived Defendant's representations regarding side-impact collision testing as an indication that the Big Kid booster seat had succeeded under rigorous safety

---

[4] Evenflo states that it identified seventeen such Plaintiffs, but names only sixteen.  D. 151 at 18–20.

testing standards beyond those required by the government when, in fact, it did not"); id. ¶¶ 91, 95 (alleging that "Evenflo's affirmative representations concerning the Big Kid booster seat's supposed safety and quality were material to" Karen Sanchez and Sarratori).

Having reviewed each of the identified Plaintiffs' individual allegations in the context of the proposed complaint, the Court concludes that each Plaintiff has adequately pled reliance on material misrepresentations when purchasing the Big Kid booster seat.  Accordingly, the motion to amend will not be denied on this basis.

**C.      Statute of Limitations**

Evenflo identifies three Plaintiffs, Sapeika, Matthews and Schnitzer, from Michigan, North Carolina and New York, respectively, whose breach of warranty claims (Counts XLI, XLII, LIX, LXI, LIV, LV) it alleges have not been filed within the relevant statute of limitations.  D. 151 at 20–21.  Evenflo also argues that Matthews's North Carolina Unfair and Deceptive Trade Practices claim (Count LVIII) and Schnitzer's New York Deceptive Acts and Practices claim (Count LIII) are time-barred.  Id.

> *1.     Breach of Warranty Claims (Counts XLII, XLIII, LIX, LXI, LV and LVI as to Sapeika, Schnitzer, Matthews respectively)*

In all three states identified by Evenflo, warranty clams expire four years from the tender of delivery.  Mich. Comp. Laws § 440.2725(1)-(2); N.C. Gen. Stat. § 2-2-725; NY U.C.C. Law § 2-725(1)-(2).  Neither party disputes the length of the limitations period for the relevant claims, that tender of delivery occurred when each Plaintiff purchased a Big Kid booster seat or that more than four years had passed between Plaintiffs' purchases and the filing of their claims.  D. 151 at 20–21; D. 158 at 19–20.  Plaintiffs argue instead that the statute of limitations should be tolled under a fraudulent concealment theory until publication of a February 6, 2020 article by ProPublica

that detailed the false and misleading nature of Evenflo's representations to consumers.  D. 158 at 20.

Although there is some variation in how the test is articulated across jurisdictions, the fraudulent concealment doctrine allows a plaintiff to toll the statute of limitations where the defendant attempts to hide the basis for plaintiff's cause of action.  Michigan, New York and North Carolina each require plaintiffs to plead affirmative concealment as an element of fraudulent concealment.  Bradley v. Gleason Works, 438 N.W.2d 330, 332 (Mich. Ct. App. 1989); Ross v. Louise Wise Servs., Inc., 868 N.E.2d 189, 198 (N.Y. 2007); Lockerman v. S. River Elec. Membership Corp., 794 S.E.2d 346, 356 (N.C. Ct. App. 2016).  "[A] plaintiff may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort."  Fertitta v. Knoedler Gallery, LLC, No. 14-CV-2259 JPO, 2015 WL 374968, at *8 (S.D.N.Y. Jan. 29, 2015); see Winterhalter, 87 F. App'x at 519 (explaining that "the concealment must be of the 'cause of action,' not of the facts leading to the cause of action").  Nor is mere silence or a failure to inform plaintiffs that a cause of action exists sufficient, absent a duty to disclose the relevant information to plaintiffs.  Bradley, 438 N.W.2d at 332; Zumpano v. Quinn, 849 N.E.2d 926, 929–30 (N.Y. 2006); Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 218–19 (4th Cir. 1987) (explaining that "'[f]raudulent concealment' implies conduct more affirmatively directed at deflecting litigation than that alleged here" where defendant merely "fail[ed] to own up to illegal conduct").

Here, the proposed complaint alleges that fraudulent concealment occurred based on Evenflo's "continu[ing] to manufacture and sell seats with false and misleading statements and without disclosing the limitations of its side impact testing."  D. 144-1 ¶ 238.  Plaintiffs further allege they could not have reasonably discovered the deception given that the information was

within Evenflo's possession and unavailable to an average consumer.  Id. ¶ 234.  Plaintiffs have

not pled any facts indicating that Evenflo took affirmative steps to conceal Plaintiffs' causes of

action for breach of warranty.  In other words, Plaintiffs' allegations that Evenflo fraudulently

concealed their cause of action rest on the same factual basis as their warranty claims:   the

representations regarding weight range and side-impact testing Evenflo made about the Big Kid

booster seat to consumers.  See, e.g., Kiriacopoulos, 2023 WL 2789622, at *11 (granting motion

to dismiss Michigan warranty claims as time-barred where "Plaintiffs identify misrepresentations

in the form of advertising materials touting the class vehicles' safety and reliability" but "suggest

no facts that would 'prove' that alleged misrepresentations in GM's promotional materials 'were

designed  to  prevent  subsequent  discovery'  of  Plaintiffs'  implied  warranty  claims"  (citation

omitted)); Bank of New York Mellon v. WMC Mortg., LLC, 39 N.Y.S.3d 892, 896–97 (N.Y. Sup.

Ct. 2016) (granting motion to dismiss warranty claim because defendant's failure to notify plaintiff

of facts within its knowledge was not basis for tolling statute of limitations).  Evenflo's failure to

disclose  the  allegedly  misleading  and  false  statements  in  its  marketing  materials  prior  to  the

ProPublica article does not suffice to constitute affirmative concealment.  Lockerman, 794 S.E.2d

at 356; cf. Wheeler v. BMW of N. Am. LLC, 534 F. Supp. 3d 527, 535–36 (W.D.N.C. 2021)

(holding  that  affirmative  conduct  was  adequately  pled  where  Plaintiff  alleged  that  BMW

"mask[ed]" vehicle engine defect by releasing a customer care package and by telling Plaintiff that

"having to add oil in between oil changes was 'normal'").  Nor have Plaintiffs identified basis

under which Evenflo had a duty to disclose the misrepresentations to Plaintiffs.  D. 158 at 19–20.

Even if a duty to disclose had been established, Plaintiffs "must allege facts that indicate that the

defendant intentionally failed to disclose information to mislead the plaintiff, thereby allowing the

period of limitation to expire before the plaintiff realized that he or she had a claim."  Homrich v.

<u>Anderson</u>, No. 353217, 2021 WL 1050362, at *5 (Mich. Ct. App. Mar. 18, 2021), <u>appeal dismissed</u>, 961 N.W.2d 149 (Mich. 2021). No such allegations have been made here.

In sum, the Court concludes that the following claims for breach of express and implied warranties are time barred: Sapeika's claims under Mich. Comp. Laws §§ 440.2313, 440.2314 (Counts XLII and XLIII), Schnitzer's claims under N.Y. U.C.C. §§ 2-313, 2-314 (Counts LV and LVI) and Matthews's claims under N.C. Gen. Stat. §§ 25-2-313, 25-2-314 (Counts LIX and LX). Accordingly, Plaintiffs' motion to amend is denied with respect to these claims by Sapeika, Schnitzer and Matthews.[5]

### 2. *Unfair and Deceptive Trade Practices Claims*

#### a) <u>New York (Count LIII as to Schnitzer)</u>

Plaintiffs make no argument that Schnitzer's claim under the New York Deceptive Acts and Practices Act ("DAPA"), N.Y. Gen. Bus. L. § 349, should be tolled pursuant to the discovery rule. Indeed, New York law does not appear to support application of the discovery rule to DAPA. <u>Wender v. Gilberg Agency</u>, 276 A.D.2d 311, 312 (N.Y. 2000) (stating that "discovery rule is not applicable and cannot serve to extend [DAPA] limitations period"). In light of the Court's conclusion as to the fraudulent concealment theory and Schnitzer's failure to identify any alternative basis for tolling the statute of limitations, the Court denies Plaintiffs' motion to amend the complaint as to Schnitzer's DAPA claim under N.Y. Gen. Bus. Law § 349, *et seq.* (Count LIII).[6] <u>See Kainer v. Christie's Inc.</u>, 141 A.D.3d 442, 443–44 (N.Y. 2016) (holding that DAPA

---

[5] These Counts survive as to other named class members from Michigan and New York, namely Holliday (Michigan) and Sarratori (New York) who allegedly purchased their booster seats within the four-year statutory period. D. 144-1 ¶¶ 74, 95 (alleging that Holliday and Sarratori purchased booster seats in 2019).

[6] Evenflo has not asserted that Sarratori's, the other New York Plaintiff, claim under the New York DAPA is time-barred, and thus the Court need not reach this issue. D. 151 at 20–21.

action runs from time when plaintiff was injured and concluding that defendant did not prevent plaintiff filing DAPA claim by fraudulent concealment).

b)    North Carolina (Count LVIII as to Matthews)

Evenflo also argues Matthews's NCUDTPA claim, N.C. Gen. Stat. § 75-1.1 *et seq.*, is time-barred, because Matthews's action was filed more than four years from the time of injury. D. 151 at 21.    However, when a NCUDTPA claim "is based on alleged fraudulent conduct, then the violation occurs—and the limitations clock starts running—at the time that the fraud is discovered or should have been discovered with the exercise of reasonable diligence." Dreamstreet Invs., Inc. v. MidCountry Bank, 842 F.3d 825, 830 (4th Cir. 2016) (citation and internal quotation marks omitted); see Diop v. BMW of N. Am., LLC, 511 F. Supp. 3d 679, 685 (E.D.N.C. 2021) (denying motion to dismiss NCUDTPA claim where plaintiff's allegations did not clearly indicate when he acquired knowledge of the engine defect and thus court could not determine on pleadings when accrual occurred).    Plaintiffs have pled that they did not know that Evenflo's representations were false and misleading until the publication of the ProPublica article.    D. 144-1 ¶¶ 235, 238. Accordingly, Matthews alleged facts sufficient to toll the statute of limitations under North Carolina law and the Court allows Plaintiffs motion to amend the complaint as to Matthews's NCUDTPA claim under N.C. Gen. Stat. § 75-1.1 *et seq.* (Count LVIII).

**D.    Economic Loss Doctrine**

Evenflo argues that fraud claims based upon omissions or concealment asserted by the nationwide class (Count I) are barred in California, Florida, Maine, New Jersey, Pennsylvania, and South Carolina by the economic loss doctrine. D. 151 at 21–22. Evenflo asserts that this also applies to statutory fraud claims in Maine, New Jersey, North Carolina, Pennsylvania and South Carolina (Counts XXXVII, XLIX, LVIII, LXVI, LXX). Id. at 21. The economic loss doctrine, broadly speaking, precludes plaintiffs' ability to recover under tort law for purely economic losses,

22

that is losses that do not involve injury to a person or harm to property other than the product of the transaction.  See e.g., Robinson Helicopter Co. v. Dana Corp., 102 P.3d 268, 272–73 (Cal. 2004); Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc., 110 So. 3d 399, 401 (Fla. 2013).  The scope of the doctrine varies between jurisdictions, and neither party has fully developed legal arguments for how the Court should resolve issues relating to the application of the economic loss doctrine in each state.  Thus the Court focuses on whether each state's version of the rule prohibits fraud-based claims arising from "fraudulently omitted information," as asserted by Evenflo.  D. 151 at 21.

### 1.  Common-Law Fraud Claim (Count I)

#### a)  California

A recent California appellate decision recognizes a broad exception to the economic loss doctrine for fraudulent inducement claims, regardless of whether they are based on affirmative misrepresentations or concealment.  Dhital v. Nissan N. Am., Inc., 300 Cal. Rptr. 3d 715, 726–27 (Cal. Ct. App. 2022).  Dhital recognized that other states had adopted a more limited fraudulent inducement exception and that federal courts applying the California economic loss rule had reached divergent conclusions on the same issue, but concluded that California law would permit fraudulent concealment claims for economic loss.  Id. at 726 (citing cases).

Here, Plaintiffs have alleged both affirmative representations and material omissions that they relied on when deciding to purchase Big Kid Booster seats.  D. 144-1 ¶¶ 256–64.  The proposed complaint alleges that Evenflo knew that the Big Kid booster seats could not safely seat children as light as 30 pounds and was not side-impact tested in a manner that met or exceeded government standards, but allowed the misrepresentations and misleading omissions to persist in order to attract more buyers.  Id. ¶¶ 7, 9–12.   In light of Dhital, this Court rejects Defendants' argument that the economic loss rule renders omissions-based fraud claims futile.

Accordingly, the Court allows the amendments as to the California Plaintiffs' claims for fraud.

b)      Florida

Under Florida law, when "an action is based upon fraud independent of the contractual breach, the economic loss rule does not bar recovery." Allen v. Stephan Co., 784 So. 2d 456, 458 (Fla. Dist. Ct. App. 2000).  Such independent fraud includes "fraud [that] occurs in connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction." Id. at 457; Tiara Condo., 110 So. 3d at 406.  Here, Plaintiffs allege that Evenflo lied and omitted material information about the safety features of the Big Kid booster seat which caused Plaintiffs to purchase the seats.  Plaintiffs do not merely allege a contract claim based on the Big Kid's failure to perform or allege that the Big Kid malfunctioned and damaged itself.  Such a claim is not barred by the economic loss rule under Florida law.  See Topp, Inc. v. Uniden Am. Corp., 513 F. Supp. 2d 1345, 1351 (S.D. Fla. 2007).

Accordingly, the Court allows the amendments as to the Florida Plaintiffs' claims for fraud.

c)      Maine

The Supreme Judicial Court of Maine adopted the economic loss rule as to negligence, negligent misrepresentation and strict products liability claims.  Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc., 659 A.2d 267, 269–71 (Me. 1995).  Oceanside left open whether the economic loss doctrine could also bar recovery on a fraud claim.  Am. Aerial Servs., Inc. v. Terex USA, LLC, 39 F. Supp. 3d 95, 111 (D. Me. 2014).  Another court, applying Maine law, declined to bar recovery for a fraudulent inducement claim where misrepresentations regarding the quality of the contracted-for product also induced plaintiff to agree to contractual terms.  Redzone Wireless, LLC v. NETGEAR, Inc., No. 2:16-CV-00595-JDL, 2019 WL 10255541, at *8 (D. Me. Sept. 20, 2019).

Here, Plaintiffs have at least plausibly alleged that they would not have agreed to the price of the Big Kid booster seat but for their reliance on Evenflo's misrepresentations and omissions. D. 144-1 ¶¶ 15, 17, 232, 260.  It is not clear that Maine law bars fraudulent inducement claims for purely economic losses, even when the representations on which Plaintiffs rely concern the booster seat.  See Redzone Wireless, 2019 WL 10255541, at *8.  Given the lack of any clear statement that a fraudulent inducement claim for economic loss is barred, the Court concludes that Plaintiff's fraud claim is not futile under Maine law.

Accordingly, the Court allows the amendments as to the Maine Plaintiffs' claim for fraud as part of the nationwide class.

### d)   New Jersey

 "[T]he economic loss doctrine does not apply to fraud-in-the-inducement claims because a party fraudulently induced to enter a contract is not bound by that contract's terms, and, effectively, no contractual relationship exists."  Kemp v. Est. of Brandau, No. A-4161-19, 2022 WL 1179741, at *8 (N.J. Super. Ct. App. Div. Apr. 21, 2022).  The key inquiry is whether "the fraud allegations directly relate to the inducement of the contract, instead of the performance of the contract, and thus establish an independent tort claim."  Hickman v. Subaru of Am., Inc., No. 121CV02100NLHAMD, 2022 WL 11021043, at *10 (D.N.J. Oct. 19, 2022) (ruling that the Court "is not prepared to hold that the economic loss doctrine bars Plaintiffs' common law fraud claims").

Accordingly, the Court allows the amendments as to the New Jersey Plaintiffs' claim for fraud as part of the nationwide class.

### e)   Pennsylvania

Under the economic loss doctrine, plaintiffs may not bring a tort claim for economic losses where their right to recovery "flows only from a contract."  Earl v. NVR, Inc., 990 F.3d 310, 312

3d Cir. 2021).  Earl "set aside" Werwinski Ford Motor Co., 286 F.3d 661, 680–81 (3d Cir. 2002)

(concluding Pennsylvania's economic loss rule barred all fraud claims, including Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claims, and that no exception for intentional fraud existed) "with respect to the economic loss doctrine's application to UTPCPL claims." Earl, 990 F.3d at 314.  Although Earl only expressly abrogated Werwinski as to the UTPCPL, courts have applied it to allow fraudulent inducement claims to survive both the economic loss and gist of the action doctrine (also raised by Evenflo here, D. 151 at 22 n.15).  See, e.g., Callery v. HOP Energy, LLC, No. CV 20-3652, 2023 WL 2601178, at *5 (E.D. Pa. Mar. 22, 2023).

Here, neither the economic loss doctrine or gist of the action doctrine bars Plaintiffs' claims.  Plaintiffs' claims are based on Evenflo's advertising and Evenflo's representations on its own and its distributors' websites.  D. 144-1 ¶¶ 176–77, 180, 192–94, 196, 200–01, 218.  The Court plausibly infers that at least some of these statements were collateral to the terms of any contract, as Plaintiffs viewed the representations before purchasing the products.

Accordingly, the Court allows the amendments as to the Pennsylvania Plaintiffs' claim for fraud as part of the nationwide class.

### f) South Carolina

Under the economic loss rule, South Carolina courts have "prohibited negligence actions against a manufacturer where duties were created solely by contract and where the product only injured itself or where the damage was contemplated by the parties' contract." Sapp v. Ford Motor Co., 687 S.E.2d 47, 50 (S.C. 2009).  It remains unsettled whether the doctrine also precludes actions for fraud, or fraudulent concealment in particular.  Harrell v. BMW of N. Am., LLC, 517 F. Supp. 3d 527, 540 (D.S.C. 2021).  In the absence of a clear statement that such claims are barred, federal courts applying South Carolina law have allowed fraud claims similar to Plaintiffs' here to

proceed on the basis that they rely upon a tort law duty not to commit fraud rather than a contractual duty.  See, e.g., id. at 540–41.

Accordingly, the Court allows the amendments as to the South Carolina Plaintiffs' claim for fraud as part of the nationwide class.

        2.     *Statutory Fraud Claims (Counts II, XXXVII, XLIX, LVIII, LXVI and LXX)*

Evenflo further challenges the viability of fraud-based claims brought under consumer protection statutes in Maine, New Jersey, North Carolina, Pennsylvania and South Carolina.  D. 151 at 21–22.  In New Jersey and Pennsylvania, courts have concluded that such claims are not barred by the economic loss doctrine.  Dean v. Barrett Homes, Inc., 8 A.3d 766, 772 (N.J. 2010); Dixon v. Nw. Mut., 146 A.3d 780, 790 (Pa. Super. Ct. 2016).  Even in states where no appellate court has ruled against the application of the economic loss bar to fraud-based consumer protection claims, courts typically do not preclude statutory claims for economic loss.  See, e.g., Eldredge Lumber & Hardware Inc. v. Lord, No. CIV.A. CV 03-192, 2003 WL 23146214, at *2 (Me. Super. Dec. 9, 2003); Thomasson v. Greensboro News & Rec., Inc., No. 1:19CV1164, 2020 WL 5821045, at *7 (M.D.N.C. Sept. 30, 2020); Harrell, 517 F. Supp. 3d at 541.

Accordingly, the Court allows the motion to amend with respect to these statutory consumer fraud claims under Maine, New Jersey, North Carolina, Pennsylvania and South Carolina law.

### E.    Contractual Privity Requirement

The common-law concept of privity "prevent[s] persons who were not actual parties to the contract . . . from suing for breach of warranty."  18 Williston on Contracts § 52:38 (4th ed.). Evenflo asserts that to the extent that Plaintiffs in California, Florida, Iowa, Kentucky, New York, North Carolina, Ohio, Tennessee, and Washington did not purchase Big Kid booster seats directly from Evenflo, their implied warranty claims under the law of must be dismissed for lack of privity

(Counts IV, IX, XI, XV, XXVII, XXXI, LVI, LX, LXIV, LXXVI, LXXX).  D. 151 at 23.  Evenflo

further asserts that Plaintiffs' claim under the Kentucky Consumer Protection Act ("KCPA"), Ky.

Rev. Stat. § 367.100, *et seq.*, (Count XXIX) is similarly barred.  Id. at 24.

> 1. *No Privity Requirement for Breach of Implied Warranty Claim under California's Song-Beverly Act or in Iowa and Ohio*

> a)   California (Count IX)

Plaintiffs assert two implied warranty claims under California law:  one under the Song-

Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1970, et. seq., and one

under the adopted U.C.C., Cal. Comm. Code, § 2314.  The Court focuses here on the Song-Beverly

Act and will address the U.C.C.-based claim below.

The Song-Beverly Act applies to "goods sold in California."  Gusse v. Damon Corp., 470

F. Supp. 2d 1110, 1112 (C.D. Cal. 2007).   It provides buyers a cause of action for implied warranty

against the manufacturer of a consumer good, even where the buyer lacks privity.  Mega RV Corp.

v. HWH Corp., 170 Cal. Rptr. 3d 861, 874 n.11 (Cal. Ct. App. 2014); Cal. Civ. Code §§ 1792,

1792.1.  Here, Plaintiff Hampton has plausibly pled the sale of a consumer good in California.  D.

144-1 ¶ 24.  Accordingly, an implied warranty claim under the Song-Beverly Act, Cal. Civ. Code

§ 1790, *et seq.*, for consumers that did not purchase a Big Kid directly from Evenflo is not futile

for lack of privity, and Plaintiffs may amend the complaint to plead Count IX as to Hampton.

> b)   Iowa (Count XXVII)

The Iowa Supreme Court has eliminated the privity requirement for implied warranty

claims in the products liability context, reasoning that "[implied warranty] obligations on the part

of the seller were imposed by operation of law, and did not depend for their existence upon express

agreement of the parties."  Speight v. Walters Dev. Co., 744 N.W.2d 108, 114 (Iowa 2008)

(quoting State Farm Mut. Auto. Ins. Co. v. Anderson–Weber, Inc., 110 N.W.2d 449, 454 (Iowa

1961)).  Thus, Plaintiff Gathings has at least a viable implied warranty claim against Evenflo, as the manufacturer of the Big Kid booster seat, even though she purchased the product from Walmart.

Evenflo cites <u>Des Moines</u> for the proposition that "privity [is] required for implied-warranty claim asserting economic loss."  D. 151 at 23 n. 21 (citing <u>Des Moines Flying Servs., Inc. v. Aerial Servs. Inc.</u>, 880 N.W.2d 212, 219–20 (Iowa 2016)).   <u>Des Moines</u> imposes this limitation on plaintiffs who seek "consequential economic losses" under an express or implied warranty theory.  <u>Des Moines</u>, 880 N.W.2d at 219–20.  Even so, a "nonprivity buyer can recover for direct economic loss damages when the remote seller/manufacturer breaches an express warranty."  <u>Id.</u> at 219.   Here, non-privity buyers seek direct economic damages against a manufacturer for breach of implied warranty.  <u>See</u> D. 144-1 ¶ 573 (seeking "monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true").   Although <u>Des Moines</u> offers little clarity, the Iowa Supreme Court has elsewhere expressed its willingness to permit "a nonprivity purchaser [to] recover 'direct economic loss' for breaches of implied warranties under the U.C.C."  <u>Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.</u>, 762 N.W.2d 463, 476 (Iowa 2009) (concluding that consequential losses, i.e., "all losses caused by the defective product," could not be recovered by non-privity buyer).

The Court concludes that lack of privity does not render an implied breach of warranty claim under Iowa law futile and allows Plaintiffs' motion to amend their complaint as to Gathings's implied warranty claim (Count XXVII).

### c)   Ohio (Count LXIV)

"Ohio law recognizes implied warranty claims under both contract law and tort law." <u>Risner v. Regal Marine Indus., Inc.</u>, 8 F. Supp. 3d 959, 993 (S.D. Ohio 2014); <u>see</u> <u>Caterpillar Fin.</u>

Servs. Corp. v. Harold Tatman & Son's Ents., Inc., 50 N.E.3d 955, 962 (Ohio 2015). Plaintiffs have pled a breach of the implied warranty in tort claim under Ohio law. D. 144-1 ¶¶ 987–95. "The parties do not need to be in privity in order to bring a breach of implied warranty in tort claim." Caterpillar Fin. Servs., 50 N.E.3d at 963. Such a claim may be maintained as to economic losses. Id. at 966. Accordingly, the Court concludes that Honaker's implied warranty claim is not futile and shall allow Plaintiffs' amendment to state such a claim under Ohio law.

> 2.  *Third-Party Beneficiary Exception to Privity Requirement in California, Florida, North Carolina and Washington*

Under the laws of California, Florida, and North Carolina and Washington, Plaintiffs' implied warranty claims in Counts XI, XV, LX and LXXX must be supported by privity between each Plaintiff and Evenflo. See, e.g., Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008); Kramer v. Piper Aircraft Corp., 520 So. 2d 37, 39 (Fla. 1988); Thongchoom v. Graco Children's Prod., Inc., 71 P.3d 214, 219 (Wash. Ct. App. 2003). Plaintiffs alleges that each of these states nevertheless recognizes a third-party beneficiary exception which would apply here.

> a)  California (Count XI)

"California cases permit a third party to bring an action even though he is not specifically named as a beneficiary, if he is more than incidentally benefitted by the contract." Gilbert Fin. Corp. v. Steelform Contracting Co., 145 Cal. Rptr. 448, 450 (Cal. Ct. App. 1978). Courts have reached divergent conclusions as to whether Gilbert stands for the proposition that consumers may assert implied warranty claims against a manufacturer even though they lack privity with the manufacturer. Compare In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 983–84 (N.D. Cal. 2014) (concluding that the third-party beneficiary exception applied in consumer litigation context), with Xavier v. Philip Morris USA Inc., 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011) (stating that "[n]o reported California decision has held that the purchaser of a consumer product

may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale"). Critics of the third-party beneficiary exception assert that it is not among the two exceptions to the warranty privity requirement that have been recognized by California courts in the consumer product context and argue that the subcontractor relationship in <u>Gilbert</u> is distinguishable. <u>Quackenbush v. Am. Honda Motor Co., Inc.</u>, No. C 20-05599 WHA, 2023 WL 187491, at *2–3 (N.D. Cal. Jan. 13, 2023); <u>see</u> <u>Long v. Graco Children's Prods., Inc.</u>, No. 13–cv–01257–WHO, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013).

The Court is persuaded that <u>Gilbert</u>, a case based on the relationship between a homeowner and subcontractor, does not stand for the proposition that a consumer is a more than incidental beneficiary of the contract between a manufacturer and retailer. <u>In re Seagate Tech. LLC Litig.</u>, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017) (noting that majority of district courts applied third-party beneficiary exception but declining to do so). The complaint alleges that Evenflo, under some unspecified contractual arrangement with Walmart, agreed to provide Walmart inventory that Walmart could sell to retail consumers. <u>See</u> <u>id.</u> ¶ 363 (alleging that California Plaintiffs purchased booster seats "through authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party"). The Court cannot plausibly infer from Plaintiffs' allegations that Evenflo knowingly assumed some existing duty on behalf of Walmart to sell Hampton a booster seat. Thus, an indirect purchaser's U.C.C. implied warranty is futile for

lack of privity under California law and Plaintiffs' to amend their complaint is denied with respect to Hampton's U.C.C. implied warranty claim under Cal. Comm. Code § 2314 (Count XI).[7]

        b)    <u>Florida (Count XV)</u>

Courts applying Florida law have similarly reached divergent conclusions as to whether the state's privity requirement permits an exception for third-party beneficiaries in the consumer litigation context. <u>Compare</u> <u>Sanchez-Knutson v. Ford Motor Co.</u>, 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014), <u>and</u> <u>Weiss v. Gen. Motors LLC</u>, 418 F. Supp. 3d 1173, 1182 (S.D. Fla. 2019), <u>with</u> <u>Rife v. Newell Brands, Inc.</u>, 632 F. Supp. 3d 1276, 1304 (S.D. Fla. 2022), <u>and</u> <u>Padilla v. Porsche Cars N. Am., Inc.</u>, 391 F. Supp. 3d 1108, 1117 (S.D. Fla. 2019). However, several courts have noted that "the overwhelming weight of Florida law" favors requiring contractual privity between a purchaser and manufacturer to plead an implied warranty claim. <u>Padilla</u>, 391 F. Supp. 3d at 1116.

Here, the proposed complaint alleges that "Florida Plaintiff and members of the Florida Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party." D. 144-1 ¶ 429. Such allegations do not plausibly plead that the "provisions of the contract [between Evenflo and its retailers] primarily and directly benefit the third party or a class of persons of which the third party is a member." <u>Greenacre Properties, Inc.</u>

---

[7] The parties appear to agree that an exception to the California privity requirement exists where "plaintiff relies on written labels or advertisements of a manufacturer." D. 158 at 22; <u>see</u> D. 151 at 23; <u>Clemens</u>, 534 F.3d at 1023 (citing <u>Burr v. Sherwin Williams Co.</u>, 268 P.2d 1041, 1049 (Cal. 1954)). This exception applies only to the express warranties created by those labels and advertisements, not to the implied warranty claims at issue here. <u>Angiano v. Anheuser-Busch InBev Worldwide, Inc.</u>, 532 F. Supp. 3d 911, 920 (C.D. Cal. 2021).

v. Rao, 933 So. 2d 19, 23 (Fla. Dist. Ct. App. 2006).  The Court concludes that Aly and Talutto have not adequately pled privity to support their breach of implied warranty claims.  Accordingly, Plaintiffs' motion for leave to amend is denied as the breach of implied warranty claim under Fla. Stat. § 672.314 (Count XV) as futile.

c)     North Carolina (Count LX)

Under North Carolina law, "the general rule is that privity is required to assert a claim for breach of an implied warranty involving only economic loss."  Energy Invs. Fund, L.P. v. Metric Constructors, Inc., 525 S.E.2d 441, 446 (N.C. 2000).  "If the third party is an intended beneficiary, the law implies privity of contract."  Coastal Leasing Corp. v. O' Neal, 405 S.E.2d 208, 212 (N.C. Ct. App. 1991) (citation omitted).  "To establish a claim based on the third party beneficiary contract doctrine, a complaint's allegations must show:  (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his *direct*, and not incidental, benefit."  Hospira Inc. v. Alphagary Corp., 671 S.E.2d 7, 13 (N.C. Ct. App. 2009) (emphasis in original).

Here, Plaintiffs' allegations "do not involve the type of 'active and direct dealings' which courts have required to confer third party beneficiary status on a party not contemplated by the contract itself."  Id.  Matthews alleges no direct involvement in the formation of the contract between Walmart and Evenflo.  See D. 144-1 ¶¶ 923–26.  By contrast, in Coastal Leasing, the plaintiff "personally selected" equipment from seller that he wished to lease through an intermediary and "authorized its purchase" by the intermediary.  Coastal Leasing, 405 S.E.2d at 209.

Courts applying evaluating privity under North Carolina law have generally concluded that consumers are not third-party beneficiaries of a manufacturer's agreements with its distributors. See, e.g., Kelly v. Georgia-Pac. LLC, No. 7:08-CV-197-D, 2010 WL 11579013, at *6 (E.D.N.C.

33

Aug. 31, 2010); <u>Gregory v. Atrium Door & Window Co.</u>, 415 S.E.2d 574, 575 (N.C. Ct. App. 1992).  Plaintiffs cite to a contrary decision by a California federal court applying North Carolina law.  D. 158 at 22 (citing <u>In re MyFord Touch</u>, 46 F. Supp. 3d at 984–85).  While that opinion cites <u>Coastal Leasing,</u> it does not persuade this Court that the allegations here are similar to <u>Coastal Leasing</u>.

Accordingly, the Court concludes that an implied warranty claim under N.C. Gen. Stat. § 25-2314 (Count LX) is futile as to any indirect purchaser and denies Plaintiffs' motion to amend as to this claim.

d)    <u>Washington (Count LXXX)</u>

Under Washington law, "where a commercial plaintiff can show that it is the intended third-party beneficiary of a contract between the manufacturer and its direct purchaser, recovery may be available under a third-party beneficiary analysis."  <u>Tex Enterprises, Inc. v. Brockway Standard, Inc.</u>, 66 P.3d 625, 630 (Wash. 2003).  This third-party beneficiary analysis considers the "sum of the interaction" between the purchaser and manufacturer including whether "(1) the manufacturer knew the identity, purposes, and requirements of the purchasers' specifications; (2) [purchaser] had communicated its needs to the manufacturer, not only directly, but also through its agent, the supplier; (3) although the manufacturer invoiced the supplier, the manufacturer delivered the [product] directly to [purchaser]; (4) the manufacturer's representatives attended installation of the [product]; and (5) after difficulties developed, the manufacturer tried to fix the [product's] problem."  <u>Babb v. v. Regal Marine Indus., Inc.</u>, 186 Wash. App. 1003, 2015 WL 786857, at *4 (2015); <u>see</u> <u>Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.</u>, 831 P.2d 724, 730 (1992).

Here, nothing in the proposed second amended complaint suggests that Evenflo knew the identity of individual consumers that would be purchasing its booster seats or specially designed

seats for particular Plaintiffs.  The fact that Evenflo may have been generally aware of the intended use of its product and designed its products for a particular category of consumers is not enough to establish Plaintiffs' status as a beneficiary.  See Harju v. Johnson & Johnson, No. 320CV06258BHSJRC, 2021 WL 6622131, at *3 (W.D. Wash. Dec. 22, 2021), report and recommendation adopted, 2022 WL 203488 (W.D. Wash. Jan. 24, 2022).  Courts examining Washington's third-party exception to the privity requirements have concluded it does not apply to consumers who purchase retail products and seek to hold manufacturers liable.  Short v. Hyundai Motor Co., 444 F. Supp. 3d 1267, 1286–87 (W.D. Wash. 2020); Johnson v. Metro-Goldwyn-Mayer Studios Inc., No. C17-541 RSM, 2017 WL 3313963, at *6 (W.D. Wash. Aug. 3, 2017).

Accordingly, Reed has not plausibly pled privity to support her breach of implied warranty claim under R.C.W. § 62A.2-314 (Count LXXX) and Plaintiffs' motion for leave to amend is denied as to this claim.

### 3.    Breach of Implied Warranty and Consumer Protection Act in Kentucky

Under Kentucky law, "a seller's warranty protections are *only* afforded to one with whom there is privity of contract."  Compex Int'l Co. v. Taylor, 209 S.W.3d 462, 465 (Ky. 2006) (emphasis in original).  Plaintiffs concede that Kentucky law does not allow for exceptions to the privity requirement for warranty claims.  D. 158 at 21; Brown Sprinkler Corp. v. Plumbers Supply Co., 265 S.W.3d 237, 240 (Ky. Ct. App. 2007).  Plaintiff Wilder purchased his Big Kid booster seats from Walmart.  D. 144-1 ¶ 58.  He thus does not meet the privity requirement for an implied warranty claim under Kentucky law.

Plaintiffs assert that no privity is required where "a manufacturer makes 'affirmations of fact . . . that would qualify as express warranties.'"  D. 158 at 23 (quoting Est. of DeMoss v. Eli Lilly & Co., 234 F. Supp. 3d 873, 885 (W.D. Ky. 2017)).  This exception stems from Naiser, a federal case interpreting Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc., 836 S.W.2d 907, 909

(Ky. Ct. App. 1992) to allow KCPA claims in the absence of privity where "Plaintiffs have sufficiently alleged that [manufacturer] made valid express warranties for Plaintiffs' benefit." Naiser v. Unilever U.S., Inc., 975 F. Supp. 2d 727, 743 (W.D. Ky. 2013).  Courts analyzing Kentucky law have since declined to follow Naiser's exception to the privity requirement.  See, e.g., Burton v. Ethicon Inc., No. CV 5:20-280-DCR, 2020 WL 5809992, at *8 (E.D. Ky. Sept. 29, 2020); Simpson v. Champion Petfoods USA, Inc., 397 F. Supp. 3d 952, 962 (E.D. Ky. 2019).

Accordingly, Plaintiffs' motion to amend is denied as to Wilder's implied warranty claim under Ky. Rev. Stat. § 355.2-314 (Count XXXI) and KCPA claim, Ky. Rev. Stat. § 367.100 *et seq.* (Count XXXIX).

### 4. Dangerousness Exceptions to Privity Requirement in New York and Tennessee

Plaintiffs argue that a dangerousness exception applies to the privity requirement for implied warranty claims under New York (Count LVI) and Tennessee (Count LXXVI) laws.  D. 158 at 22.

In Hubbard, a court determined that New York law provided for a "thing of danger" exception to the privity requirement for implied warranty claims.  Hubbard v. Gen. Motors Corp., No. 95 CIV. 4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996).  Several courts declined to follow Hubbard, concluding that, at most, New York law permits an implied warranty claim only where a thing of danger inflicts non-economic loss on a non-privity buyer.  See e.g., Cummings v. FCA US LLC, 401 F. Supp. 3d 288, 311–12 (N.D.N.Y. 2019); Mahoney v. Endo Health Sols., Inc., No. 15CV9841(DLC), 2016 WL 3951185, at *5 (S.D.N.Y. July 20, 2016); Dixon v. Ford Motor Co., No. 14-CV-6135 JMA ARL, 2015 WL 6437612, at *4–5 (E.D.N.Y. Sept. 30, 2015).  This Court concludes that New York law does not include a "thing of danger" exception to the

privity requirement in implied warranty claims for purely economic loss.  <u>Cummings</u>, 401 F. Supp.

3d at 312.

Charter Oak similarly concluded that Tennessee law did not require privity "to establish a

claim for implied warranty if the product is defective so that it is unreasonably dangerous to the

user or to its property."  <u>Charter Oak Fire Ins. Co. v. Broan Nutone, LLC</u>, No. 05-2428 MA/P,

2006 WL 8435269, at *5 (W.D. Tenn. Sept. 28, 2006).  It appears that this reflects a long-standing

recognition of this exception under Tennessee law.  <u>See</u> <u>Travis v. Ferguson</u>, No. M2016-00833-

COA-R3-CV, 2017 WL 1736708, at *2 (Tn. App. Ct. May 3, 2017); <u>Leach v. Wills</u>, 429 S.W.2d

823, 830 (Tn. App. Ct. 1968).

Accordingly, the Court concludes that Sarratori's and Schnitzer's claims for breach of

implied warranties under N.Y. U.C.C. § 2-314 are futile and denies Plaintiffs' motion to amend as

to these claims (Count LVI), but will allow the amend as to Miller's claim under Tenn. Code § 47-

2-314 (Count LXXVI).

### F.   <u>Availability of Monetary Relief</u>

Evenflo challenges the availability of monetary relief under two state statutes, the

California Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, (Count VI)

and the Georgia Unfair and Deceptive Trade Practices Act ("GAUDTPA"). D. 151 at 24.

Restitution is an available form of "ancillary relief" under the UCL.  <u>In re Tobacco Cases</u>

<u>II</u>, 192 Cal. Rptr. 3d 881, 891 (Cal. Ct. App. 2015).  Plaintiffs seek the difference in value between

the booster seat they received and that which Evenflo's representations promised, which is an

accepted measure of restitution.  <u>Id.</u> at 891–94 (defining measure of restitution as difference

between price plaintiffs paid and actual value received in deceptive marketing claim).  Evenflo

offers no argument for why such relief should not be available here.  Accordingly, the Court

permits Plaintiffs to amend their complaint to seek restitution for a violation of the UCL, Cal. Bus. & Prof. Code § 17200 (Count VI).

As to the GAUDTPA, Plaintiffs do not dispute that monetary relief is unavailable under that statute. D. 158 at 23; see Catrett v. Landmark Dodge, Inc., 560 S.E.2d 101, 106 (Ga. App. 2002). Instead, Plaintiffs state that Evenflo's argument is "beside the point since the SAC only asserts a claim under Georgia's Fair Business Practices Act," which does permit monetary damages. D. 158 at 23 (citing D. 144-1 ¶¶ 444–55); see Campbell v. Beak, 568 S.E.2d 801, 806 (Ga. App. 2002). Accordingly, the Court allows Plaintiffs amend their complaint to state a claim under the Fair Business Practices Act, O.C.G.A. § 10-1-390, et seq. (Count XVII).

### G.   Express Breach of Warranty Claim Against Manufacturerin Louisiana

Evenflo argues that "[u]nder Louisiana law, a claim for breach of express warranty is subsumed within the Louisiana Products Liability Act and is not 'viable as a theory of recovery against a manufacturer.'" D. 151 at 25 (quoting Touro Infirmary v. Sizerer Architects, 947 So. 2d 740, 744 (La. App. 2006)). The Louisiana Products Liability Act ("LPLA") "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Stat. Ann. § 9:2800.52. Damage, as defined in the LPLA, includes economic damage. La. Stat. § 9:2800.53(5) (defining damage to include "damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that [other state law] does not allow recovery for such damage or economic loss"). The elements of such a claim include that "(1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product unreasonably dangerous; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." Sketchler v. Hernandez, 326 So. 3d 912, 917 (La. Ct. App. 2021). "A product is unreasonably dangerous when it does not conform

to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue."  La. Stat. Ann. § 9:2800.58.  Courts applying Louisiana law, have concluded that a breach of express warranty under article 2529 "is encompassed by the LPLA and is no longer viable as an independent theory of recovery against a manufacturer.  Touro Infirmary, 947 So. 2d at 744; see, e.g., Jefferson v. Lead Indus. Ass'n, Inc., 930 F. Supp. 241, 245 (E.D. La. 1996), aff'd, 106 F.3d 1245 (5th Cir. 1997); Brennon v. Pfizer, Inc., No. CIV.A. 09-1093, 2009 WL 2525180, at *3 (W.D. La. Aug. 17, 2009).

Here, the breach of warranty claim under La. Civ. Code art. 2529, 2545 (Count XXXIV) are encompassed in the LPLA's express warranty provision and thus precluded in favor of the LPLA.[8]  Plaintiffs allege that Evenflo warranted through the marketing, packaging and labeling of the Big Kid booster seat that it was side-impact tested and appropriate for children weighing 30 to 110 pounds.  D. 144-1 ¶¶ 648–49.  These warranties induced Plaintiffs to purchase the Big Kid booster seat, id. ¶¶ 64–65, and "damage" in the form of economic loss arising from a deficiency in the product, in other words damage to the product itself, resulted from the fact that Evenflo's warranties turned out to be untrue.  Id. ¶ 232.

Plaintiffs object that their damage is caused by Evenflo's representations rather than the products themselves and thus the LPLA does not apply.  D. 144-1 ¶¶ 650–651; D. 158 at 24 (quoting La. Rev. Stat. Ann. § 9:2800.52).  The plain language of the LPLA contemplates a

---

[8] Evenflo has not identified which Louisiana warranty counts from the proposed complaint are futile, as Plaintiff does not use the term "express warranty" for any of its Louisiana claims as Evenflo challenges in its opposition.  D. 151 at 25.  The Court construes Evenflo's argument to be directed towards the claim for breach of warranty of specified quality, under La. Civ. Code arts. 2529 and 2545 (Count XXXIV).

situation where "claimant's damage was proximately caused because the express warranty was untrue."  La. Stat. Ann. § 9:2800.58.  While some cases have allowed non-LPLA claims to proceed when they arise from a basis not encompassed by the LPLA, it does not appear that these cases have permitted an express warranty claim against a manufacturer.  See, e.g., ExPert Riser Sols., LLC v. Techcrane Int'l, LLC, 319 So. 3d 320, 329 (La. Ct. App. 2020) (concluding that contract claims and claims for negligent misrepresentation, fraud and unfair and deceptive trade practices arising from the same operative facts as contract claim, were not barred by LPLA because such factual allegations were "unrelated to the allegations concerning the defective nature of the [product]"); Lavergne v. Am.'s Pizza Co., LLC, 838 So. 2d 845, 848 (La. Ct. App. 2003) (affirming trial court's conclusion that "LPLA's exclusivity provision . . . does not eliminate the liability of a manufacturer for damages caused by the negligent use of its product by one of its employees" which arise from its position "as an employer of a potentially negligent employee" rather than as a manufacturer); Wagner v. Reiss, No. CV 19-2721, 2020 WL 836383, at *3 (E.D. La. Feb. 20, 2020) (allowing claim for negligent misrepresentation and false advertising to proceed).  The situation here is distinguishable from each of these cases.

In ExPert Riser, the court concluded that a contract claim based on a machine's failure to meet agreed-upon specifications rested upon an entirely separate factual basis from plaintiff's product liability claim.  See ExPert Riser, 319 So. 3d at 323–24, 327–28 (identifying basis for product liability claims as defects including malfunctioning roller bearings, failure to seat rotating gears and damaged welds whereas breach of contract and fraud claims were based on machine's inability to be "fitted with an eight-part line" and "lift 100 tons").  Here Plaintiffs' claims are not based on the failure to meet some contractual duty independent of Evenflo's obligation to uphold its express warranties.  Cf. id. at 329–30.  Similarly, when Evenflo made express warranties

regarding its booster seats, it did so as the manufacturer of the seats rather than from some separate role.  In other words, Evenflo did not "wear[] two hats."  <u>Lavergne</u>, 838 So. 2d at 848.  Finally, <u>Wagner</u> does not stand for the proposition that a misrepresentation claim always lies outside the scope of the LPLA.  The critical fact in <u>Wagner</u> was that defendant misrepresented the safety of a medical procedure, rather than a product within the meaning of the LPLA.  <u>Wagner</u>, 2020 WL 836383, at *3.  The booster seats at issue in this litigation qualify as products within the meaning of the LPLA.

The Court is persuaded by <u>Touro</u>, wherein a Louisiana appellate court dismissed an express warranty claim under La. Civ. Code. art. 2529, as precluded by the LPLA.  <u>Touro Infirmary</u>, 947 So. 2d at 744.  Accordingly, the Court denies Plaintiffs' motion to amend their complaint as to a breach of warranty of specified quality claim under La. Civ. Code arts 2529, 2545 (Count XXXIV).

### H.   <u>Unjust Enrichment</u>

#### 1.   *Pleading Unjust Enrichment in the Alternative in Florida, Georgia, Iowa, Kentucky, Michigan, New Jersey, New York, North Carolina, and West Virginia*

Evenflo argues that under the laws of Florida, Georgia, Iowa, Kentucky, Michigan, New Jersey, New York, North Carolina, and West Virginia, an unjust enrichment claim cannot be asserted where a contract exists.  D. 151 at 25.  Moreover, Evenflo asserts that "[i]n at least Florida, Georgia, and Kentucky, courts have explicitly held that a plaintiff may only plead unjust enrichment in the alternative if the defendant has explicitly denied the existence of a contract."  <u>Id.</u> at 26 (collecting cases).  The Court declines to rule the unjust enrichment claims futile at this stage for the following reasons.

First, although Evenflo has identified cases in Florida, Georgia and Kentucky which dismiss unjust enrichment claims under a Rule 12(b)(6) standard where the existence of the contract is not disputed, Plaintiffs may still plead unjust enrichment as an alternative for contract-

based claims.  <u>See, e.g.</u>,  <u>Quantum Supply B.V. v. Mercury Air Cargo Inc.</u>, No. 20-CV-25223, 2021 WL 2414161, at \*3 (S.D. Fla. June 14, 2021); <u>Ed Federkeil Racing, Inc., v. Fire Service Plus, Inc.</u>, No. 3:20-CV-141-TCB, 2021 WL 2555582, at \*7 (N.D. Ga. Mar. 17, 2021); <u>D.R.E. Med. Grp., Inc. v. NorVap Int'l, Ltd.</u>, No. 321CV00372GNSRSE, 2022 WL 2345923, at \*2 (W.D. Ky. June 29, 2022).

Second, as the transferee court, this Court applies the law of the First Circuit to any question of federal law, including the federal pleading requirements.  <u>See</u> <u>In re Korean Air Lines Disaster of Sept. 1, 1983</u>, 829 F.2d 1171, 1174 (D.C. Cir. 1987), <u>aff'd sub nom.</u> <u>Chan v. Korean Air Lines, Ltd.</u>, 490 U.S. 122 (1989); <u>In re Fresenius</u>, 76 F. Supp. 3d at 291 n.6.  Under First Circuit law, Plaintiffs are permitted to plead "mutually exclusive" theories of breach of contract and unjust enrichment as alternative theories, even though they may only recover on one.  <u>Lass v. Bank of Am., N.A.</u>, 695 F.3d 129, 140 (1st Cir. 2012).

Accordingly, Plaintiffs' unjust enrichment claims are not futile simply because they plead a similar and alternative factual basis underlying other claims.

2.   *Lack of Direct Benefit Conferred to Evenflo in Florida, Georgia, Iowa and New Jersey*

Evenflo argues that each of these jurisdictions requires plaintiffs to confer a direct benefit to defendant to establish unjust enrichment and that Plaintiffs who did not purchase booster seat directly from Evenflo cannot meet this requirement.  D. 151 at 27.

a)   <u>Florida</u>

Under Florida law, "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant."  <u>Kopel v. Kopel</u>, 229 So. 3d 812, 818 (Fla. 2017).  A direct benefit is not conferred on a manufacturer where a consumer buys a product from a retailer, rather than directly from the manufacturer.  <u>Marrache v. Bacardi U.S.A., Inc.</u>, 17 F.4th 1084, 1102 (11th

Cir. 2021).  Recent decisions from the Eleventh Circuit and Florida Court of Appeals have rejected Plaintiffs' theory that they conferred a direct benefit to Evenflo by paying a retailer who passed that revenue on to Evenflo.  See Johnson v. Catamaran Health Sols., LLC, 687 F. App'x 825, 830 (11th Cir. 2017); CFLB P'ship, LLC v. Diamond Blue Int'l, Inc., 352 So. 3d 357, 359–60 (Fla. Dist. Ct. App. 2022).

Accordingly, the Court concludes that Talutto's and Aly's unjust enrichment claim against Evenflo is futile because they did not purchase booster seats directly from Evenflo.  Plaintiffs' motion to amend the complaint is denied as to the unjust enrichment claim by any Florida resident who did not purchase booster seats directly from Evenflo (Count XVI).

b)   Georgia

In the absence of a clear statement from the Georgia Supreme Court, courts applying Georgia law have come to conflicting conclusions regarding whether Georgia requires a plaintiff alleging unjust enrichment to have directly conferred a benefit to defendant.  Compare Amin v. Mercedes-Benz USA, LLC, 349 F. Supp. 3d 1338, 1362 (N.D. Ga. 2018) (concluding that "direct payment" to car manufacturer was not necessary to plead unjust enrichment), with Peterson v. Aaron's, Inc., No. 1:14-CV-1919-TWT, 2015 WL 5479877, at *1–2 (N.D. Ga. Sept. 16, 2015) (concluding that plaintiff did not confer direct benefit to franchisor by leasing equipment from franchisee).   This Court joins other courts that have held that a purchaser need not directly pay a manufacturer to confer a benefit on the manufacturer under Georgia law.  See, e.g., Nalley v. Gen. Motors LLC, No. 1:21-CV-04174-WMR, 2022 WL 18459646, at *9 (N.D. Ga. Aug. 30, 2022); Elder v. Reliance Worldwide Corp., 563 F. Supp. 3d 1221, 1233 (N.D. Ga. 2021); Amin, 349 F. Supp. 3d at 1362.

Accordingly, the Court concludes that Plaintiff Taylor's claim for unjust enrichment (Count XX) is not futile and allows Plaintiffs to amend as to the unjust enrichment claims under Georgia law for individuals who purchased booster seats from a retailer.

c)    <u>Iowa</u>

The Iowa Supreme Court "recognize[s] unjust enrichment is a broad principle" with no limitation that "the benefits to be conferred directly by the plaintiff." <u>State ex rel. Palmer v. Unisys Corp.</u>, 637 N.W.2d 142, 155 (Iowa 2001). "[B]enefits can be direct or indirect, and can involve benefits conferred by third parties." <u>Id.</u> "The critical inquiry is that the benefit received be at the expense of the plaintiff." <u>Id.</u> Here, Plaintiffs argue that they conferred a benefit to Evenflo by purchasing the Big Kid booster seats from retailers, who ultimately passed the profit of those sales to Evenflo. D. 158 at 25. This indirect benefit is sufficient to state a plausible claim for unjust enrichment under Iowa law. <u>See</u> <u>Kelly v. Ethicon, Inc.</u>, No. 20-CV-2036-CJW-MAR, 2020 WL 4572348, at *10 (N.D. Iowa Aug. 7, 2020).

Evenflo's citation to a <u>Southard</u> is unpersuasive. <u>Southard v. Visa U.S.A.</u>, Inc., No. 94491, 2004 WL 3030028, at *5 (Iowa Dist. Nov. 17, 2004), <u>aff'd</u>, 734 N.W.2d 192 (Iowa 2007). There, the unjust enrichment claim was dismissed because plaintiffs' injury was too remote. <u>Southard</u>, 734 N.W.2d at 199. Plaintiffs had alleged that credit card issuers' anticompetitive conduct caused merchants to pay inflated processing costs, who in turn raised prices and passed those costs down to plaintiffs. <u>Id.</u> Plaintiffs' injury here is much more closely linked to Evenflo's conduct, where Evenflo's misrepresentations led them to overpay for Evenflo's booster seats.

Accordingly, the Court concludes that Plaintiff Gathings's unjust enrichment claim is not futile and Plaintiffs may amend their complaint to plead an unjust enrichment under Iowa law (Count XXVIII) for indirect purchasers.

44

        d)     <u>New Jersey</u>

Under New Jersey law, to recover under a theory of unjust enrichment, the plaintiff must show "some direct relationship between the parties or a mistake on the part of the person conferring the benefit." <u>Callano v. Oakwood Park Homes Corp.</u>, 219 A.2d 332, 335 (N.J. Super. App. Div. 1966). Liability will only be imposed where "plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." <u>Castro v. NYT Television</u>, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) (internal citation and quotation marks omitted); see <u>VRG Corp. v. GKN Realty Corp.</u>, 641 A.2d 519, 526 (N.J. 1994); <u>Shazo v. Martino</u>, No. A-2675-17T4, 2019 WL 3315643, at *3 (N.J. Super. Ct. App. Div. July 24, 2019).

The proposed complaint does not allege that, at the time Plaintiff Karen Sanchez purchased her Big Kid booster seat, she reasonably expected Evenflo to be responsible for her payment to Walmart. <u>See</u> <u>T.J. McDermott Transp. Co. v. Cummins, Inc.</u>, No. CIV. 14-04209 WHW, 2015 WL 1119475, at *14 (D.N.J. Mar. 11, 2015). Nor has she pled "the sort of mistake" that would satisfy the relational requirements under New Jersey law. <u>See</u> <u>Hemy v. Perdue Farms, Inc.</u>, No. CIV.A. 11-888 FLW, 2011 WL 6002463, at *23 (D.N.J. Nov. 30, 2011). A majority of courts have interpreted New Jersey law to preclude unjust enrichment claims by consumers against manufacturers for products purchased from an intermediary. <u>Noble v. Samsung Elecs. Am., Inc.</u>, No. CV 15-3713, 2018 WL 801590, at *7 (D.N.J. Feb. 8, 2018); <u>see, e.g.</u>, <u>Stratis v. BMW of N. Am., LLC</u>, No. 222CV06929BRMJRA, 2023 WL 3092188, at *14 (D.N.J. Apr. 26, 2023); <u>Green v. Green Mountain Coffee Roasters, Inc.</u>, 279 F.R.D. 275, 283 (D.N.J. 2011). The Court agrees with this approach and concludes that Plaintiffs cannot state a claim for unjust enrichment under New Jersey law.

The Court acknowledges that some courts have come to the opposite conclusion regarding consumer unjust enrichment claims. DeFrank v. Samsung Elecs. Am., Inc., No. CV1921401KMJBC, 2020 WL 6269277, at *24 (D.N.J. Oct. 26, 2020); Stewart v. Beam Glob. Spirits & Wine, Inc., 877 F. Supp. 2d 192, 197–201 (D.N.J. 2012). The majority view appears to be more consistent with New Jersey law's focus on the reasonable expectations of the plaintiff and the dealings between the parties. See Enriquez v. Johnson & Johnson, No. CAM-L-4677-18, 2019 WL 5586557, at *11 (N.J. Super. Ct. Law Div. Oct. 10, 2019), aff'd, No. A-1174-19, 2021 WL 5272370 (N.J. Super. Ct. App. Div. Nov. 12, 2021).

Accordingly, the Court concludes that Plaintiff Sanchez's unjust enrichment claim is futile and Plaintiffs are denied leave to amend their complaint to plead unjust enrichment (Count LII) for New Jersey consumers who did not purchase booster seats directly from Evenflo.

## I.    Standing for Injunctive Relief

Although the First Circuit affirmed this Court's dismissal of the injunctive relief for lack of standing, that was based upon the allegations in the consolidated complaint. Plaintiffs have amended certain allegations regarding injunctive relief in the proposed second amended complaint, so the Court returns to this matter.

To establish Article III standing, Plaintiffs must demonstrate that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). When injunctive relief is sought, standing turns on whether the plaintiff is "likely to suffer future injury." D. 127 at 26 (quoting Laufer v. Acheson Hotels, LLC, 50 F.4th 259, 276 (1st Cir. 2022), vacated as moot on other grounds, __ S. Ct. ___, 2023 WL 8378965 (2023)). In other words, Plaintiffs must plausibly allege that "the threatened injury is certainly impending or there is a substantial risk that the harm

will occur." <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158 (2014) (internal quotation marks and citation omitted).   This requires more than "some day intentions" to repeat the act that caused the past injury.   <u>Laufer</u>, 50 F.4th at 277 (concluding that plaintiff had alleged "concrete plans" to continue visiting defendant's website to test ADA compliance).

The proposed second amended complaint contains a modified request for injunctive relief in the form of "corrective notice to all prior purchasers of Big Kid booster seats stating only truthful information regarding weight limit and side-impact testing of the Big Kid booster seats" and a prohibition on "making material misrepresentations regarding weight limit and side-impact testing of its booster seats."   D. 144-1 at 237.   The First Circuit affirmed this Court's ruling that Plaintiffs lacked standing for injunctive relief concluding that there was "no impending future injury that an injunction might redress."   D. 127 at 26–27.   In reaching this conclusion, the First Circuit agreed with this Court that plaintiffs had not alleged "any likelihood of relying on Evenflo's advertising or purchasing Big Kids in the future" and could not rely on "hypothetical future injury to other unnamed 'parents and grandparents.'"   <u>Id.</u>

Plaintiffs assert that their proposed amendments place their standing for injunctive relief on different footing, because the corrective notice "is not prospective relief, the concern of the First Circuit," but rather "*retrospective* injunctive relief to all prior purchasers."   D. 158 at 26. "[P]ast harm does not confer standing to seek forward-looking declaratory or injunctive relief unless there is ongoing injury or a sufficient threat that the injury will recur."   <u>Roe v. Healey</u>, No. 22-1740, 78 F.4th 11, 21 (1st Cir. Aug. 14, 2023); <u>see</u> <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 111 (1983) (concluding that plaintiff was not entitled to injunction "[a]bsent a sufficient likelihood that he will again be wronged in a similar way" (alteration in original)).   Thus Plaintiffs cannot establish standing on the basis that the requested injunction will remedy past harm, <u>Roe</u>, 78 F.4th

at 21 (concluding that plaintiffs lacked standing for injunction based on past school closures), and

none of the cases cited by Plaintiffs stand for the opposite proposition.  D. 158 at 26–27 (citing

Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 934 (11th Cir. 2020) (concluding plaintiff

failed to allege harm or material risk of harm based on retailers printing of too many credit card

digits on receipt and thus lacked standing); then citing Marcus v. AT&T Corp., 138 F.3d 46, 62–

63 (2d Cir. 1998) (affirming dismissal of request for injunctive relief because plaintiffs did not

state a claim for fraud); and then citing United States v. Daniel Chapter One, 793 F. Supp. 2d 157,

163 (D.D.C. 2011) (granting government preliminary injunction to enjoin defendants from

violating FTC's final order)).  Even Davidson, the case that most supports Plaintiffs' position,

focuses on the harms Plaintiffs would suffer in the future, with a product they would repurchase

in the future, if injunctive relief were not granted.  Davidson v. Kimberly-Clark Corp., 889 F.3d

956, 971–72 (9th Cir. 2018) (focusing on plaintiff's "desire to purchase truly flushable wipes" and

inability to rely on defendant's advertising in the future).

      In its prior order on the motion to dismiss, this Court distinguished Davidson on the basis

that, unlike the Davidson plaintiff, Plaintiffs in the instant matter had not alleged that they would

purchase Evenflo booster seats again and thus could not establish a sufficiently imminent future

injury.  D. 119 at 12 n.5 (quoting Davidson, 889 F.3d at 969 n.5).  Plaintiffs have attempted to

address that flaw in their amended complaint by amending their complaint to allege that eighteen

Plaintiffs "would like to purchase an Evenflo booster seat again, but only if she [or he] was

confident that the booster seat conformed to Evenflo's representations about weight limit and side-

impact testing."  D. 144-1 at ¶¶ 22, 27, 32, 44, 51, 56, 66, 72, 76, 84, 93, 97, 104, 109, 116, 121,

128, 132, 144.  Even assuming that the First Circuit would follow Davidson, see Williams v.

Reckitt Benckiser LLC, 65 F.4th 1243, 1256 (11th Cir. 2023) (distinguishing Davidson); but see

<u>Downing v. Keurig Green Mountain, Inc.</u>, No. 1:20-CV-11673-IT, 2021 WL 2403811, at *4 (D. Mass. June 11, 2021) (applying <u>Davidson</u> and concluding that plaintiff had standing to seek injunctive relief to prevent continued false marketing), the Court is not convinced that these new allegations save Plaintiffs' standing for injunctive relief in this case.

First, Plaintiffs' allegations that they "would like to purchase" new booster seats do not plausibly allege anything more than a hypothetical injury.  <u>Williams</u>, 65 F.4th at 1254–55 (holding that plaintiffs pled only a "remote and attenuated risk of future harm" where they stated "they 'would like' to purchase products from RB 'if' RB develops products that 'truly improve[ ] brain performance'" (alteration in original)); <u>Hesse v. Godiva Chocolatier, Inc.</u>, 463 F. Supp. 3d 453, 465 (S.D.N.Y. 2020) (concluding that future injury alleged "is *hypothetical—if* they choose to purchase [defendant's] products in the future, then they may be harmed" (emphasis in original)). Plaintiffs' reply brief suggests that Plaintiffs may have more children or grandchildren that require booster seats.  D. 158 at 26.  But this "possibility," <u>id.</u>, is far from the "concrete plans" the First Circuit has required where a future injury is contingent on Plaintiff taking some past action. <u>Laufer</u>, 50 F.4th at 277.

By comparison, in <u>Davidson</u>, the plaintiff alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet; would purchase truly flushable wipes manufactured by [defendant] if it were possible; regularly visits stores . . . where [defendant's] 'flushable' wipes are sold; and is continually presented with [defendant]'s 'flushable' wipes packaging but has no way of determining whether the representation 'flushable' is in fact true." <u>Davidson</u>, 889 F.3d at 970–71 (internal quotation marks omitted).  Similarly, in <u>Downing</u>, another session of this Court was persuaded that standing plausibly existed for an injunction based on Plaintiff's "present inability to rely on the product's labeling."  <u>Downing</u>, 2021 WL 2403811, at

*1, 4 (indicating that defendant's advertisement for single-serving coffee pods "have remained substantively and materially similar since June 2016").  Plaintiffs here do not allege that they continue to buy booster seats or that they continually encounter the misrepresentations complained of.  Indeed the allegations of the proposed second amended complaint suggest that Evenflo took steps to correct its marketing and labeling after receiving negative news coverage.  See D. 144-1 ¶¶ 193 n.24, 199–202.  The Court further notes that booster seats are not a disposable product like flushable wipes or single-serving coffee pods which makes Plaintiffs' hypothetical allegations of their plans to repurchase implausible compared to those in Davidson and Downing.

Accordingly, the Court concludes that Plaintiffs lack standing to seek injunctive relief and denies Plaintiffs' motion to amend their complaint as to injunctive relief.

**J.     Request to Strike Class Allegations**

Evenflo seeks to strike Plaintiffs' class allegations because individual issues of fact and law will predominate, Plaintiffs are not adequate representatives of subclasses for states in which they do not reside and because NHTSA regulation is superior to class action litigation.  D. 151 at 28–33.  District courts may exercise their authority under Rule 12(f) to strike class allegations "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis.'"  Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013).  "[S]triking the class allegations in their entirety" is, however, a "drastic measure."  Id. at 60.  The Court notes that a motion for such relief is "disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."  Id. at 59 (alteration in original) (citation omitted).

Here, the Court concludes that it is premature to strike the class allegations before Plaintiffs are permitted to conduct discovery and brief their class certification motion.  As to the differences between the laws of various states, the Court notes that it "has many tools at its disposal to address concerns regarding the appropriate contours of the putative class, including redefining the class during the certification process or creating subclasses."  Id. at 60.  Indeed, Plaintiffs suggested that the Court might take such an approach by identifying potential subclasses in its complaint.  D. 144-1 ¶ 242.  To the extent that Evenflo objects that named Plaintiffs do not represent every state and thus could not represent individual state subclasses, the Court defers ruling on the precise contours of potential subclasses to the class certification stage, when a fuller record and more complete briefing by the parties will be available.  O'Leary v. N.H. Boring, Inc., 176 F. Supp. 3d 4, 13 (D. Mass. 2016) (concluding that "[c]oncerns surrounding the number of other employees potentially affected and/or whether they too failed to be paid in accordance with state law . . . are better addressed during the class certification process").

As to the potential for individualized fact determinations, discovery may well reveal that "variations in exposure to advertising, the advertisements themselves, differences in [the booster seats], or the reasons for purchasing [the booster seats] will affect the ability to certify a class." Bezdek v. Vibram USA Inc., No. CIV.A. 12-10513-DPW, 2013 WL 639145, at *9 (D. Mass. Feb. 20, 2013).  For now, the Court is satisfied that Plaintiffs all assert claims based on the same set of written misrepresentations, which appeared on retail websites and product packaging, regarding Evenflo's Big Kid booster seats.  Id.  at *1, *9–10 (involving claims that misrepresented health benefits of using their products on their website, social media and in-store displays).  It is not obvious here that classwide litigation is impossible.  Cf. Rovinelli v. Trans World Ent. Corp., No. CV 19-11304-DPW, 2021 WL 752822, at *11–12 (D. Mass. Feb. 2, 2021) (striking class

allegations where plaintiffs' claims alleged idiosyncratic oral misrepresentations made by defendants' salespeople), appeal dismissed, No. 21-1160, 2021 WL 3772017 (1st Cir. May 12, 2021).  This is not to suggest that Defendants do not have viable challenges to class certification based on the differences between Plaintiffs or between the laws of various states, but the Court is not persuaded by the cited case law that it should strike class allegations in this case prior to the class certification stage.

Finally, as to the superiority of NHTSA regulation, the Court has already concluded that the misrepresentation-based claims pled by Plaintiffs in this action are not the subject of agency expertise.  See Nader, 426 U.S. at 305–06.  Bridgestone is distinguishable in that it involved claims that defendants' products were "failure-prone," rather than misrepresentations regarding the characteristics of their products.  In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1019 (7th Cir. 2002).

Accordingly, the Court denies Evenflo's request to strike the proposed class allegations without prejudice, subject to renewal after class discovery.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part the motion to amend, D. 144.  The motion is DENIED as to claims brought by Plaintiffs who did not purchase boost seats directly from Evenflo for breach of implied warranty under the California U.C.C. and under the laws of Florida, Kentucky, New York, North Carolina and Washington (Counts XI, XV, XXXI, LVI, LX, LXXX); as to unjust enrichment claims under the laws of Florida and New Jersey (Counts XVI and LII); as to the KCPA (Count XXIX); and as to the Louisiana breach of warranty of specified quality claim (Count XXXIV)  The Court further DENIES the motion to amend as to the time-barred express and implied warranty claims by Sapeika, Matthews and Schnitzer (Counts XLII, XLIII, LV, LVI, LIX and LX) and as to Schnitzer's NY DAPA claim (Count LIII).  The

Court finally DENIES the motion to amend as to and Plaintiffs' request for injunctive relief.  The

motion to amend is otherwise ALLOWED.

      **So Ordered.**

/s/ Denise J. Casper       

United States District Judge
