**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: EVENFLO CO., INC. MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 20-md-02938-DJC |
| | CLASS ACTION |
| This Document Relates To: ALL ACTIONS | JURY TRIAL DEMANDED |

**SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   PARTIES ....................................................................................................... 7

    A.    Plaintiffs ............................................................................................ 7

        1.    California Plaintiffs ................................................................ 7

        2.    Florida Plaintiffs ................................................................... 8

        3.    Georgia Plaintiff ................................................................... 9

        4.    Indiana Plaintiffs ................................................................ 10

        5.    Iowa Plaintiff ..................................................................... 11

        6.    Kentucky Plaintiff .............................................................. 12

        7.    Louisiana Plaintiff ............................................................. 12

        8.    Maine Plaintiff ................................................................... 13

        9.    Michigan Plaintiffs ............................................................ 14

        10.    Missouri Plaintiff ............................................................... 15

        11.    New Jersey Plaintiff ........................................................... 15

        12.    New York Plaintiffs ........................................................... 16

        13.    North Carolina Plaintiff ..................................................... 17

        14.    Ohio Plaintiff ..................................................................... 18

        15.    Pennsylvania Plaintiff ........................................................ 19

        16.    South Carolina Plaintiff ..................................................... 19

        17.    Tennessee Plaintiff ............................................................. 20

        18.    Washington Plaintiff .......................................................... 20

        19.    West Virginia Plaintiffs ..................................................... 21

    B.    Defendant ........................................................................................ 23

III.   JURISDICTION AND VENUE .................................................................. 23

# TABLE OF CONTENTS
## (continued)

Page

IV.  FACTUAL ALLEGATIONS ........................................................... 23

   A.  The development of car seat regulation led to Evenflo's early
       knowledge of safety concerns. .............................................. 23

   B.  Evenflo competes in a tight market for children's car safety seats .................... 25

   C.  Evenflo developed sham safety testing and falsely marketed its Big
       Kid Booster Seat. ........................................................ 27

       1.  Evenflo developed its sham booster seat side-impact test to
           burnish its marketing ................................................ 30

       2.  Despite conclusive evidence that its product was dangerous
           for children within the weight range it specified, Evenflo
           falsely marketed its new Big Kid model as rigorously "side
           impact tested" and safe for children under 40 pounds. ................... 35

   D.  Evenflo disregarded scientific consensus—and its own engineers'
       recommendations—by falsely representing that its booster seat was
       safe for children as small as 30 pounds. .................................... 40

   E.  Evenflo continued to use materially false and misleading
       statements regarding the safety and safety testing of its Big Kid
       booster seat throughout the Class Period. .................................. 48

   F.  In response to ProPublica's reporting and consumer outrage,
       Congress launched an investigation into Evenflo's conduct and
       published a damning Congressional Subcommittee Staff Report in
       December 2020. .......................................................... 52

   G.  Had Evenflo not made material false statements regarding the Big
       Kid booster seat's safety profile, no parent or guardian would have
       purchased it—particularly those whose children weigh less than 40
       pounds. .................................................................. 57

V.  TOLLING OF THE STATUTE OF LIMITATIONS ................................... 58

   A.  The discovery rule tolls the applicable statutes of limitation. ................. 58

   B.  Fraudulent concealment also tolls any applicable statutes of
       limitation. ............................................................... 59

   C.  Estoppel prevents reliance upon statutes of limitation. ...................... 59

# TABLE OF CONTENTS
## (continued)

<div align="right">Page</div>

VI.    CLASS ALLEGATIONS ............................................................. 59

VII.    CAUSES OF ACTION .......................................................... 67

    A.    Claims Brought on Behalf of the Nationwide Class, or in the
Alternative, the State Subclasses ............................................ 67

COUNT I COMMON LAW FRAUD .................................................. 67

COUNT II VIOLATION OF STATE CONSUMER PROTECTION STATUTES ................. 69

COUNT III BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE (U.C.C. § 2-313)........................ 72

COUNT IV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(U.C.C. § 2-314) ....................................................... 73

COUNT V UNJUST ENRICHMENT.................................................. 75

    B.    Claims Brought on Behalf of the California Subclass ........................ 77

COUNT VI VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*) ........................ 77

COUNT VII VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT (CAL.
CIV. CODE §§ 1750–85) .............................................. 78

COUNT VIII VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*) ........................ 82

COUNT IX BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY – SONG-BEVERLY CONSUMER
WARRANTY ACT (CAL. CIVIL CODE § 1790, *ET SEQ.*) ...................... 83

COUNT X BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE (CAL. COMM. CODE
§ 2313) .............................................................. 85

COUNT XI UNJUST ENRICHMENT ................................................ 87

    C.    Claims Brought on Behalf of the Florida Subclass............................ 88

COUNT XII FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES
ACT (FLA. STAT. § 501.201, *ET SEQ.*) ................................ 88

**TABLE OF CONTENTS**
(continued)

Page

COUNT XIII BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE (FLA. STAT. § 672.313)............................ 90

    D.    Claims Brought on Behalf of the Georgia Subclass .............................. 92

COUNT XIV GEORGIA FAIR BUSINESS PRACTICES ACT (O.C.G.A. § 10-1-390, *ET SEQ.*)............................................................................ 92

COUNT XV BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE (O.C.G.A. § 11-2-313) .............................. 94

COUNT XVI BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (O.C.G.A. § 11-2-314) ............................................. 96

COUNT XVII UNJUST ENRICHMENT .................................................................. 97

    E.    Claims Brought on Behalf of the Indiana Subclass .............................. 99

COUNT XVIII VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT ("IDCSA") (IND. CODE § 24-5-0.5-1, *ET SEQ.*) ..................................... 99

COUNT XIX BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE (IND. CODE § 26-1-2-313) ................... 103

COUNT XX BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (IND. CODE § 26-1-2-314)............................................................ 105

COUNT XXI UNJUST ENRICHMENT.................................................................... 107

    F.    Claims Brought on Behalf of the Iowa Subclass ................................ 108

COUNT XXII VIOLATION OF IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE § 714H.1, *ET SEQ.*) ............................ 108

COUNT XXIII BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE (IOWA CODE § 554.2313) ................... 110

COUNT XXIV BREACH OF IMPLED WARRANTY OF MERCHANTABILITY (IOWA CODE § 554.2314)................................................... 111

COUNT XXV UNJUST ENRICHMENT .................................................................. 113

    G.    Claims Brought on Behalf of the Kentucky Subclass......................... 114

# TABLE OF CONTENTS
## (continued)

Page

COUNT XXVI BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE  (KY. REV. STAT. § 355.2-313) ...................................................................................................... 114

COUNT XXVII UNJUST ENRICHMENT ............................................... 116

    H.    Claims Brought on Behalf of the Louisiana Subclass ..................................... 117

COUNT XXVIII BREACH OF WARRANTY AGAINST REDHIBITORY DEFECTS (LA. CIV. CODE ART. 2520, *ET SEQ.*) ..................................... 117

COUNT XXIX BREACH OF WARRANTY OF FITNESS (LA. CIV. CODE ARTS. 2475 AND 2524) ........................................................ 120

COUNT XXX UNJUST ENRICHMENT ................................................. 122

    I.    Claims Brought on Behalf of the Maine Subclass ............................................ 124

COUNT XXXI VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT (5 M.R.S. § 207, *ET SEQ.*) ................................................. 124

COUNT XXXII BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE (11 M.R.S. § 2-313) .............................. 126

COUNT XXXIII BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (11 M.R.S. § 2-314) ............................................... 128

COUNT XXXIV UNJUST ENRICHMENT .............................................. 130

    J.    Claims Brought on Behalf of the Michigan Subclass ........................................ 131

COUNT XXXV VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS § 445.903, *ET SEQ.*) ........................... 131

COUNT XXXVI BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE (MICH. COMP. LAWS § 440.2313) ................................................................. 133

COUNT XXXVII BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MICH. COMP. LAWS § 440.2314) .................................... 135

COUNT XXXVIII UNJUST ENRICHMENT ........................................... 137

    K.    Claims Brought on Behalf of the Missouri Subclass ........................................ 138

**TABLE OF CONTENTS**
**(continued)**

Page

COUNT XXXIX VIOLATION OF MISSOURI MERCHANDISING
PRACTICES ACT (MO. REV. STAT. § 407.010, *ET SEQ.*) ...................................... 138

COUNT XL BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE (MO. REV. STAT. § 400.2-
313) ....................................................................................................................... 140

COUNT XLI BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(MO. REV. STAT. § 400.2-314) .................................................................. 142

COUNT XLII UNJUST ENRICHMENT ................................................................. 144

L.       Claims Brought on Behalf of the New Jersey Subclass .................................... 145

COUNT XLIII VIOLATION OF THE NEW JERSEY CONSUMER FRAUD
ACT (N.J. STAT. ANN. § 56:8-1, *ET SEQ.*) ................................................ 145

COUNT XLIV BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE (N.J. STAT. ANN. § 12A:2-
313) ....................................................................................................................... 147

COUNT XLV BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.J. STAT. ANN. § 12A:2-314) ........................................... 149

M.       Claims Brought on Behalf of the New York Subclass ..................................... 151

COUNT XLVI VIOLATIONS OF THE NEW YORK DECEPTIVE  ACTS AND
PRACTICES ACT (N.Y. GEN. BUS. LAW § 349, *ET SEQ.*) ..................................... 151

COUNT XLVII VIOLATIONS OF THE NEW YORK FALSE ADVERTISING
LAW (N.Y. GEN. BUS. LAW § 350, *ET SEQ.*) ............................................. 154

COUNT XLVIII BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE (N.Y. U.C.C. § 2-313) ............................. 156

COUNT XLIX UNJUST ENRICHMENT ................................................................. 158

N.       Claims Brought on Behalf of the North Carolina Subclass .............................. 159

COUNT L VIOLATION OF THE NORTH CAROLINA UNFAIR &
DECEPTIVE TRADE PRACTICES ACT (N.C. GEN. STAT. § 75-1.1,
*ET SEQ.*) ...................................................................................................... 159

COUNT LI UNJUST ENRICHMENT ....................................................................... 161

# TABLE OF CONTENTS
## (continued)

Page

O.     Claims Brought on Behalf of the Ohio Subclass ................................................. 163

COUNT LII VIOLATION OF THE CONSUMER SALES PRACTICES ACT
(OHIO REV. CODE § 1345.01, *ET SEQ.*) ..................................................... 163

COUNT LIII BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE (OHIO REV. CODE
§ 1302.26) ...................................................................................................... 164

COUNT LIV BREACH OF IMPLIED WARRANTY IN TORT (OHIO
COMMON LAW) ............................................................................................ 166

COUNT LV UNJUST ENRICHMENT ....................................................................... 167

P.     Claims Brought on Behalf of the Pennsylvania Subclass .................................. 168

COUNT LVI VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW (73 PA. CONS.
STAT. § 201-1, *ET SEQ.*) ............................................................................. 168

COUNT LVII BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE  (13 PA.C.S. § 2313) ............................... 171

COUNT LVIII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (13 PA.C.S. § 2314) ............................................... 173

COUNT LIX UNJUST ENRICHMENT ....................................................................... 175

Q.     Claims Brought on Behalf of the South Carolina Subclass ............................... 176

COUNT LX VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE
PRACTICES ACT (S.C. CODE § 39-5-10, *ET SEQ.*) ................................... 176

COUNT LXI BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE (S.C. CODE § 36-2-313) ........................ 178

COUNT LXII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (S.C. CODE § 36-2-314) ........................................ 179

COUNT LXIII UNJUST ENRICHMENT ..................................................................... 181

R.     Claims Brought on Behalf of the Tennessee Subclass ...................................... 183

COUNT LXIV VIOLATION OF THE TENNESSEE CONSUMER
PROTECTION ACT (TENN. CODE. § 47-18-101, *ET SEQ.*) ...................... 183

**TABLE OF CONTENTS**
(continued)

Page

COUNT LXV BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE (TENN. CODE. § 47-2-313) ................... 186

COUNT LXVI BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (TENN. CODE. § 47-2-314) ................................................ 187

COUNT LXVII UNJUST ENRICHMENT ........................................................................ 189

S.      Claims Brought on Behalf of the Washington Subclass .................................... 191

COUNT LXVIII VIOLATION OF THE WASHINGTON CONSUMER
PROTECTION ACT (RCW § 19.86, *ET SEQ.*) ............................................................ 191

COUNT LXIX BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE  (RCW § 62A.2-313) ............................... 193

COUNT LXX UNJUST ENRICHMENT .......................................................................... 194

T.      Claims Brought on Behalf of the West Virginia Subclass ................................. 196

COUNT LXXI VIOLATION OF THE WEST VIRGINIA CONSUMER
CREDIT AND PROTECTION ACT  (W. VA. CODE § 46A-6-101,
*ET SEQ.*) .......................................................................................................................... 196

COUNT LXXII BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
PROMISE, DESCRIPTION, OR SAMPLE  (W. VA. CODE § 46-2-313) .................. 200

COUNT LXXIII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (W. VA. CODE § 46-2-314) ................................................. 201

COUNT LXXIV UNJUST ENRICHMENT ..................................................................... 203

Plaintiffs, on behalf of themselves and all others similarly situated, in this action against Defendant Evenflo Company, Inc., allege the following based on personal knowledge, the investigation of counsel, and information and belief.

## I.    INTRODUCTION

1.    The safety of our children is of paramount importance. Consequently, a company that sells consumer products—here booster seats for young children riding in cars—and represents that they mitigate the risk of injury and death to children involved in car wrecks must be completely truthful in its statements about the safety and efficacy of its products and must back its claims of safety and safety testing with valid science. Such a company must not make demonstrably false and misleading statements about its products to consumers in order to profit.

2.    This case arises because Defendant Evenflo Company, Inc. ("Evenflo") broke these simple rules. To better compete with its archrival Graco Children's Products, Evenflo labeled and advertised its "Big Kid" booster seats as: (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds. But Evenflo knew as early as 1992 that its booster seats were not safe for kids under 40 pounds. And it knew that its so-called "side-impact" tests were sham tests, self-created and entirely unrelated to the actual forces in side-impact collisions, and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it claimed.

3.    Legitimate testing reveals that the Big Kid booster seats do not provide the protections to children in side-impact collisions that are claimed in Evenflo's marketing—especially for children under 40 pounds. Moreover, Evenflo itself sold its Big Kid booster seats as safe *only* for children *above 40 pounds* in Canada and other countries, and its internal documents make clear that it refused to raise that recommended weight floor to 40 pounds for Big Kid booster seats sold in the U.S.—over the objections of its own safety engineers—solely to ensure it sold more of them.

4.    Side-impact safety protections are plainly material to consumers. In 2018, side-impact crashes were responsible for more than a quarter of deaths in vehicle collisions of

children under 15 years. As the National Highway Traffic Safety Administration ("NHTSA") recently acknowledged: "[i]mpacts to the side of a vehicle rank almost equal to frontal crashes as a source of occupant fatalities and serious injuries to children ages 0 to 12 years."[1] Though less common than head-on crashes, side-impact collisions are more likely to result in serious harm—including traumatic brain injuries, spinal injuries, and atlanto-occipital dislocation ("AOD"), which occurs when the ligaments attached to the spine are severed.[2]

5.      Since the early 2000s, various states' laws have mandated the use of car seats for children. Though these laws vary in their specifics, they share a simple purpose: to prevent injury by ensuring that children are properly, and safely, restrained. However, though federal rules long governed car seats' required crashworthiness in head-on collisions, until 2022's adoption of new testing requirements by NHTSA as a result of a damning Congressional Subcommittee report[3] and following disclosure of the allegations set forth in this lawsuit,[4] neither individual states nor the federal government had developed side-impact testing rules for child safety seats.

6.      As a result, when assessing side-impact crashworthiness, parents and guardians for decades were left to rely on the statements made by seat manufacturers like Evenflo—manufacturers who compete fiercely with one another for sales. Evenflo is among the major

---

[1] U.S. Department of Transportation, National Highway Traffic Safety Administration, 49 C.F.R. Part 571, Final Rule ("Federal Motor Vehicle Safety Standards; Child Restraint Systems--Side Impact Protection"), June 2022, available at https://www.nhtsa.gov/sites/nhtsa.gov/files/2022-06/Final-rule-FMVSS-213a-side-impact-child-restraint-systems-web.pdf.

[2] According to a 2015 study, AOD (sometimes referred to as "internal decapitation") is "3 times more common in children than in adults" because, compared to adults, children have proportionally larger heads and laxer ligaments. Graham Hall et al., *Atlanto-occipital dislocation*, 6(2) WORLD J. ORTHOPEDICS 236–243 (2015), available at https://www.ncbi.nlm.nih.gov/pubmed/25793163.

[3] U.S. House of Representatives, Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, Staff Report: *Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Meaningless Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats*," Dec. 10, 2020.

[4] *See supra* note 1.

players in the child safety seat market and manufactures and sells a range of children's products, including car seats, strollers, high chairs, and infant carriers.

7.      Evenflo, in a cynical ploy to out-compete its main rival, Graco, intentionally misrepresented the safety of its products to parents and other consumers. Specifically, Evenflo prominently marketed one of its most popular products, the "Big Kid" booster seat, at all relevant times as: (1) "side impact tested" "above and beyond government standards" and (2) safe for children as light as 30 pounds. But these claims are false: Evenflo's own sham testing demonstrates that the Big Kid booster seat leaves children—especially those under 40 pounds— vulnerable to serious head, neck, and spine injuries, and especially so in a side-impact crash.

8.      On its website and in its marketing, Evenflo told parents and guardians that its in-house side-impact testing was "rigorous," simulated realistic conditions, and was equivalent to federal testing. In reality, Evenflo's tests were anything but: testing videos revealed that when Evenflo itself subjected child-sized crash dummies seated in Big Kid booster seats to the forces of a t-bone collision, they were thrown far out of their shoulder belts.

9.      In fact, the bar for "passing" Evenflo's side-impact testing was so low that there were only two ways the booster seats could fail: (1) if a child-sized dummy ended up on the floor, or (2) the booster seat itself broke into pieces. The following video still is from an actual side-impact test performed by Evenflo as a basis for its claim that its seats were "side impact tested" beyond federal testing standards. Alarmingly, this Big Kid booster seat "passed" Evenflo's test even though the child-sized dummy was grotesquely stretched and tossed outside the seat.



     10.     Evenflo's top booster seat engineer admitted that when children move in the manner depicted in the video, they can suffer catastrophic head, neck, and spinal injuries, or die. Despite this, for more than a decade Evenflo marketed its side-impact testing as "rigorous" and falsely stated that its "test simulates the government side impact tests conducted for automobiles." Evenflo prominently advertised its products as "side impact tested," going so far as to stitch a "side impact tested" label into many of its seats' backs:



11.     In other words, only by creating a test that Evenflo Big Kid booster seats *always passed*—even when experts admitted that children would be severely injured if they were in the tested seats—and then announcing that its products "passed" that test could Evenflo aggressively market its Big Kid booster seats as "side impact tested" and safe for children as light as 30 pounds.

12.     Evenflo's dishonesty and deceptive marketing strategy was phenomenally successful. Since launch, Evenflo has sold more than 18 million Big Kid booster seats, making the product one of the best-selling models in the United States. The keys to this success were in no small part due to Evenflo's longstanding refusal to limit the weight range to children over 40 pounds—instead falsely advertising the product as safe for children 30 pounds and up—and its false claim that its booster seats were especially safe because they were subject to "rigorous" side-impact tests "above and beyond [non-existent] government standards," when in truth the

tests were a sham. Evenflo likely earned hundreds of millions of dollars by falsely marketing its Big Kid boosters as rigorously tested for side-impact safety for children as light as 30 pounds.

13.    Despite its false advertising to consumers, Evenflo claimed that safety was its first priority. According to Sarah Haverstick, a "Safety Advocate" and "Child Passenger Safety Technician" at Evenflo, "safety is a word that is embedded into [Evenflo's] DNA and will always be our number one priority for our customers." Evenflo boldly made these statements to the public in its marketing materials.

14.    Had Evenflo not made false statements regarding the Big Kid booster seat and truthfully disclosed and reported that the safe weight range of its seats was 40 pounds and above, Plaintiffs and reasonable consumers like them would not have purchased the booster seat for a child weighing less than 40 pounds or would have paid less for it. Likewise, had Evenflo not made false statements and truthfully disclosed the real results of its so-called side-impact testing to the public, Plaintiffs and reasonable consumers like them would not have purchased a Big Kid booster seat or would have paid less for it. Instead, Evenflo kept the proper weight range and these test results secret, and embarked on a disinformation campaign of false and misleading statements aimed at convincing millions of consumers that its Big Kid booster seats are safe for children as light as 30 pounds, especially in side-impact collisions.

15.    The market price for the Big Kid seats was impacted, in substantial part, by the material misrepresentations Evenflo made regarding the weight and safety attributes of the Big Kid seats. If Evenflo had told the truth about its products, then the market price would have been lower and Plaintiffs and reasonable consumers would have paid less for, or not purchased at all, the Big Kid seats. As a result, Plaintiffs and all purchasers of the Big Kid seats suffered actual point of purchase economic injury.

16.    Plaintiffs bring this proposed class action for damages on behalf of themselves and all other persons nationwide who purchased a "Big Kid" booster seat manufactured by Evenflo between 2008 and May 2022. Plaintiffs bring this action for violations of relevant state

consumer protection laws, for common law fraud, for breach of express and implied warranties, and for unjust enrichment.

17.     On behalf of themselves and all others similarly situated, Plaintiffs seek compensatory damages for past economic harm, measured either by (1) a refund of the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations); (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true (because, at minimum, they would have paid less but-for Evenflo's material misrepresentations); and/or (3) the monetary difference between the actual value of the Big Kid seat at the time of purchase and the price Plaintiffs paid for it. They also seek punitive damages for Evenflo's misconduct.

## II.     PARTIES

**A.     Plaintiffs**

### 1.     California Plaintiffs

#### a.     Mona-Alicia Sanchez

18.     Plaintiff Mona-Alicia Sanchez is a California citizen residing in Eastvale, California.

19.     On or about February 4, 2017, Plaintiff Sanchez purchased an Evenflo Big Kid High Back booster seat at a Walmart located in Fontana, California.

20.     Prior to purchasing the Big Kid booster seat, Plaintiff Sanchez reviewed the packaging for it, which she specifically noted included the statement that the seat was safe for children as light as 30 pounds. This claim was critically important to Plaintiff Sanchez because she wanted to make sure that the booster seat she purchased would be safe for her son to use. He was approximately 32 pounds at the time she purchased the booster seat.

21.     Because they were material to her purchasing decision, had Plaintiff Sanchez known that Evenflo's statements regarding side-impact testing and the safety of the product for

children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### b.    Heather Hampton

22.     Plaintiff Heather Hampton is a citizen of California residing in Wilton, California.

23.     On or about October 29, 2019, Plaintiff Hampton purchased two Evenflo Big Kid Sport High Back Booster Seats for $29.88 each at Walmart in Galt, California, for her two children who were four and five years old.

24.     Because Plaintiff Hampton's children weighed 33 pounds and 36 pounds when she was shopping for booster seats, she was looking for a booster seat that was safe for children weighing less than 40 pounds. Evenflo's assurance that its Big Kid booster seat was safe for children weighing 30 to 110 pounds was, therefore, critical to her purchase decision.

25.     Because they were material to her purchasing decision, had Plaintiff Hampton known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 2.    Florida Plaintiffs

### a.    Karyn Aly

26.     Plaintiff Karyn Aly is a citizen of Florida residing in Orlando, Florida.

27.     On or about August 12, 2018, Plaintiff Aly purchased an Evenflo Big Kid LX AMP high back booster seat from Amazon. Plaintiff Aly's daughter had seen this booster seat in a friend's car and told Plaintiff Aly that she wanted the same seat. Prior to purchase, Plaintiff Aly read the advertising and marketing materials for the Big Kid Booster seat that were displayed on the Amazon website. Plaintiff Aly considered it important that the seat indicated it was "side impact tested" and the appearance of the seat with the side wings made it appear to her to be safe. Plaintiff Aly particularly noted the advertised safety features and that it was advertised as "side impact tested," which she reasonably understood to mean that the booster seat had been tested and was safe for children in the event of a side-impact collision.

28.    Based upon the packaging of the Big Kid booster seat and the marketing and advertising materials that she reviewed on the Amazon website, Plaintiff Aly believed that the Big Kid booster seat was a safe and appropriate booster seat for her daughter.

29.    Because they were material to her purchasing decision, had Plaintiff Aly known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false she would not have purchased the seats, or would have paid less for them.

**b.    Debora de Souza Correa Talutto**

30.    Plaintiff Debora de Souza Correa Talutto is a citizen of Florida residing in Lake Mary, Florida.

31.    On or about April 30, 2018, Plaintiff Talutto purchased two Big Kid LX AMP High Back booster seats from Amazon.com. Plaintiff Talutto carefully reviewed the product information on Amazon and provided by Evenflo in its marketing materials and on its packaging. In particular, since Plaintiff Talutto's son at the time was just over 30 pounds, the safe weight range provided by Evenflo was important and a material consideration in her purchase decision. In addition, the fact that Evenflo described and labeled the booster seats as "Side impact tested" caused her to believe that the car seats would be safe, particularly in the event of a collision or side-impact collision.

32.    Because they were material to her purchasing decision, had Plaintiff Talutto known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

**3.    Georgia Plaintiff**

**a.    Sakina Taylor**

33.    Plaintiff Sakina Taylor is a citizen of Georgia residing in Morrow, Georgia.

34.     In June 2019, Plaintiff Taylor purchased two Evenflo Big Kid booster seats for approximately $50 each from Walmart for her five-year-old twins who weighed 31 and 33 pounds at the time.

35.     Prior to making her purchase, Plaintiff Taylor researched the Evenflo Big Kid Booster seat and various other booster seats online.

36.     As a reasonable consumer, Plaintiff Taylor relied on the weight range provided by Evenflo in concluding that the booster seat would be safe for her twins. She also relied on representations that the Big Kid booster seats were side-impact tested in deciding to purchase the Big Kid Booster seats amongst various other options.

37.     Because they were material to her purchasing decision, had Plaintiff Taylor known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 4.     Indiana Plaintiffs

#### a.     Jessica Greenshner

38.     Plaintiff Jessica Greenshner is a citizen of Indiana residing in Fishers, Indiana.

39.     On or about January 5, 2019, Plaintiff Greenshner purchased a Big Kid booster seat for her child who was 5 years of age at the time of purchase, at Amazon.com. Plaintiff Greenshner recalls reviewing information stating the seat was designed to keep children between 30 and 110 pounds safe, and safe in the event of a side-impact crash, that the seat exceeded NHTSA recommendations, that it was rigorously tested, and that the boost in height decreased the risk of injury. These statements and the package labeling reasonably led Plaintiff Greenshner to believe that the Big Kid booster seat she purchased would be safe for her child to use.

40.     Because they were material to her purchasing decision, had Plaintiff Greenshner known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

**b.     Becky Brown**

41.     Plaintiff Becky Brown is a citizen of Indiana residing in Danville, Indiana.

42.     In June 2019, Plaintiff Brown purchased an Evenflo Big Kid booster seat at a big box store in Avon, Indiana.

43.     Prior to purchase, Plaintiff Brown compared the various car seats available in the store.

44.     At the time of her purchase, Plaintiff Brown's grandson had just reached 30 pounds in weight. Plaintiff purchased the Big Kid model because of its prominent representations that it was safe for children at or above 30 pounds.

45.     Plaintiff Brown's decision to purchase the Big Kid booster seat was directly impacted by Defendant's representations that the safe use weight range was at or above 30 pounds.

46.     Because they were material to her purchasing decision, had Plaintiff Brown known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

**5.     Iowa Plaintiff**

**a.     Anna Gathings**

47.     Plaintiff Anna Gathings is an Iowa citizen residing in Davenport, Iowa.

48.     In 2020, Plaintiff Gathings purchased an Evenflo Big Kid booster seat for her child at a Walmart located in Davenport, Iowa.

49.     Prior to purchase, Plaintiff Gathings researched various seats online (including seats made by Graco and other companies), and ultimately purchased the Big Kid model not only because it could accommodate her child as she grew, but also because of its advertised side-impact protection.

50.     Because they were material to her purchasing decision, had Plaintiff Gathings known that Evenflo's statements regarding side-impact testing and the safety of the product for

children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 6.    Kentucky Plaintiff

#### a.    Joseph Wilder

51.    Plaintiff Joseph Wilder is a Kentucky citizen residing in Independence, Kentucky.

52.    In July 2018, Plaintiff Wilder purchased two Evenflo Big Kid LX booster seats for his son at a Walmart in Fort Wright, Kentucky. At the time, Plaintiff Wilder's son weighed approximately 38 pounds.

53.    Plaintiff Wilder purchased the Evenflo Big Kid LX car seats after reading the packaging, which included representations that the Big Kid LX was safe for children who weighed as little as 30 pounds, that "SAFETY IS OUR #1 PRIORITY," and that it was "Side Impact Tested." Plaintiff Wilder reasonably relied on these statements to reach the conclusion that the Big Kid booster seat would be safe for his son in the event of a collision, and especially safe in the event of a side-impact collision.

54.    Because they were material to his purchasing decision, had Plaintiff Wilder known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, he would not have purchased the seats, or would have paid less for them.

### 7.    Louisiana Plaintiff

#### a.    Talise Alexie

55.    Plaintiff Talise Alexie is a citizen of Louisiana residing in Slidell, St. Tammany Parish, Louisiana.

56.    In April 2016, Plaintiff Alexie purchased an Evenflo Big Kid Booster Seat for $35.83 for her five-year-old daughter who weighed less than 40 pounds.

57.    As a reasonable consumer, Plaintiff Alexie relied on the weight range provided by Evenflo in concluding that the booster seat would be safe for her daughter. Plaintiff Alexie also perceived Defendant's representations regarding side-impact collision testing as an indication

that the Booster Seat had succeeded under rigorous safety testing standards beyond those required by the government when, in fact, it did not.

58.    Plaintiff Alexie's decision to purchase the Booster Seat was directly impacted by Defendant's representations regarding the safe weight range and its supposedly rigorous side-impact collision testing.

59.    Because they were material to her purchasing decision, had Plaintiff Alexie known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

**8.    Maine Plaintiff**

  **a.    Jeffrey Lindsey**

60.    Jeffrey Lindsey is a citizen of Maine, residing in Bangor, Maine.

61.    On or about December 27, 2019, Plaintiff Lindsey purchased an Evenflo Big Kid booster seat from Amazon.

62.    Plaintiff Lindsey purchased the seat for use by his daughter, who was under 40 pounds at that time. Plaintiff Lindsey carefully researched the various car seat offerings on line and purchased the Big Kid booster seat specifically because: (1) his daughter fell within the published weight range of 30–110 pounds and (2) the Big Kid booster seat was expressly advertised as having been side-impact tested and thus safe for kids, like his daughter, in the event of a collision.

63.    Plaintiff Lindsey's decision to purchase the Big Kid booster seats was directly impacted by Defendant's representations regarding its supposedly rigorous side-impact collision testing and that the safe use weight range was at or above 30 pounds.

64.    Because they were material to his purchasing decision, had Plaintiff Lindsey known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, he would not have purchased the seats, or would have paid less for them.

- 13 -

9.    **Michigan Plaintiffs**

    a.    **Theresa Holliday**

65.    Plaintiff Theresa Holliday is a Michigan citizen residing in Detroit, Michigan.

66.    In 2019, Plaintiff Holliday purchased an Evenflo Big Kid booster seat for her daughter at a Walmart store located in Michigan. Plaintiff Holliday recalls seeing Evenflo's safety representations on the seat's box at the time of purchase and relied on these representations in making her purchase decision. Plaintiff Holliday also purchased the seat because it was marketed for children weighing 30 pounds or more. At the time of purchase, Plaintiff Holliday's daughter weighed approximately thirty-three pounds.

67.    Because they were material to her purchasing decision, had Plaintiff Holliday known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

    b.    **Amy Sapeika**

68.    Plaintiff Amy Sapeika is a Michigan citizen residing in Bloomfield Hills, Michigan.

69.    On or about April 3, 2014, Plaintiff Sapeika purchased a new Evenflo Big Kid booster seat from Amazon and successively used it for her two eldest children.

70.    Safety, including side-impact protection, was a particular concern for Plaintiff Sapeika because her children were small for their ages.

71.    Plaintiff Sapeika relied upon the description of the "Big Kid" booster seat displayed on Amazon's website where she purchased the car seat.

72.    At the time she first used the "Big Kid" booster seat for each child, they weighed less than 40 pounds.

73.    Based upon her belief that the "Big Kid" booster seat provided adequate safety, including side-impact protection, for her children, she encouraged her mother to buy two more "Big Kid" booster seats to use when she visited her parents in California with her children.

- 14 -

74.     Because they were material to her purchasing decision, had Plaintiff Sapeika known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 10.    Missouri Plaintiff

####        a.    Emily Naughton

75.     Plaintiff Emily Naughton is a citizen of Missouri residing in Franklin County, Missouri.

76.     In October 2018, Plaintiff Naughton purchased an Evenflo Big Kid booster seat at a Walmart in Washington, Missouri, for $34.88 for use by her four-year-old child. When Plaintiff Naughton installed the Big Kid booster seat, she was concerned because it seemed cheaply made.

77.     As a reasonable consumer, Plaintiff Naughton paid attention to Evenflo's labeling, which indicated the Big Kid booster seat was safe for children as light as 30 pounds. Plaintiff Naughton perceived Defendant's representations regarding side-impact collision testing as an indication that the Big Kid booster seat had succeeded under rigorous safety testing standards beyond those required by the government when, in fact, it did not.

78.     Plaintiff Naughton's decision to purchase the Booster Seat was directly impacted by Defendant's representations regarding its supposedly rigorous side-impact collision testing.

79.     Because they were material to her purchasing decision, had Plaintiff Naughton known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 11.    New Jersey Plaintiff

####        a.    Karen Sanchez

80.     Plaintiff Karen Sanchez is a New Jersey citizen residing in Cape May Courthouse, New Jersey.

81.     In August 2018, Plaintiff Sanchez purchased an Evenflo Big Kid Sport (Model No. 36511910) from her local Walmart store. Evenflo's affirmative representations concerning the Big Kid booster seat's supposed safety and quality were material to Plaintiff Sanchez, and she relied on those representations in connection with her decision to purchase the booster seat. Plaintiff Sanchez also purchased the seat because it was marketed for children weighing 30 pounds or more and at the time of purchase, Plaintiff's children were five and three, and she wanted a booster that both could use.

82.     Because they were material to her purchasing decision, had Plaintiff Sanchez known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 12.     New York Plaintiffs

#### a.     Danielle Sarratori

83.     Plaintiff Danielle Sarratori is a New York citizen residing in Waterloo, New York.

84.     In 2019, Plaintiff Sarratori purchased four Evenflo Big Kid booster seats for her children—two at a Walmart store located in Waterloo, New York, and two more online through Amazon. Evenflo's affirmative representations concerning the Big Kid booster seat's supposed safety and quality were material to Sarratori, and she relied on those representations in connection with her purchases. Plaintiff Sarratori also purchased the seats because they were marketed for children weighing 30 pounds or more. At the time of her purchases, Plaintiff Sarratori's children weighed less than 40 pounds.

85.     Because they were material to her purchasing decision, had Plaintiff Sarratori known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

       **b.**      **David Schnitzer**

86.      Plaintiff David Schnitzer is a New York citizen residing in Wantagh, Nassau County, New York.

87.      In October 2015, Plaintiff Schnitzer purchased an Evenflo Big Kid booster seat for $39.99 for use by his five-year-old son who weighed less than 40 pounds.

88.      In purchasing the Evenflo Big Kid booster seat, Plaintiff Schnitzer relied upon Evenflo's statement that the booster seat was safe for children weighing 30 to 110 pounds and on its representation that the booster seat had been side-impact tested.

89.      As a reasonable consumer, Plaintiff Schnitzer perceived Defendant's representations regarding side-impact collision testing as an indication that the Big Kid booster seat had succeeded under rigorous safety testing standards beyond those required by the government when, in fact, it did not.

90.      Plaintiff Schnitzer's decision to purchase the Big Kid booster seat was directly impacted by Defendant's representations regarding the safe weight range and Defendant's supposedly rigorous side-impact collision testing.

91.      Because they were material to his purchasing decision, had Plaintiff Schnitzer known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, he would not have purchased the seats, or would have paid less for them.

      **13.**      **North Carolina Plaintiff**

       **a.**      **Carla Matthews**

92.      Plaintiff Carla Matthews is a North Carolina citizen residing in Candler, North Carolina.

93.      In 2012, Plaintiff Matthews purchased six Big Kid booster seats for her three youngest children—then between the ages of five and six—online from the Toys R Us / Babies R Us website. Plaintiff Matthews recalls reviewing information stating the seat was designed to keep children between 30 and 110 pounds safe in a side-impact crash, that the seat exceeded

NHTSA recommendations, that it was rigorously tested, and that the boost in height decreased the risk of injury.

94.     In July 2013, Plaintiff Matthews was in a side-impact crash: a man pulled out of a gas station and hit the front wheel and fender of Plaintiff Matthews' vehicle. At the time, Plaintiff Matthews' twins were in the car. Plaintiff Matthews recalls that, when her vehicle was struck, her twins' heads moved in a manner similar to that depicted in this complaint (see *infra*). Both were sore afterwards, and Plaintiff Matthews called a nurse urgent care line in order to ask whether there were symptoms to which she should be attentive.

95.     Because they were material to her purchasing decision, had Plaintiff Matthews known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 14.     Ohio Plaintiff

####      a.     Cassandra Honaker

96.     Cassandra Honaker is a citizen of Ohio residing in Marietta, Ohio.

97.     In June 2018, Plaintiff Honaker purchased an Evenflo Big Kid booster seat from Walmart.

98.     Prior to purchase, Plaintiff Honaker researched various car seats online and in-person at Walmart by comparing all of the available products.

99.     Based on the representations on the product packaging and online, Plaintiff Honaker believed that the Big Kid booster seats had undergone rigorous safety testing for side-impact collisions.

100.     Plaintiff Honaker's decision to purchase the Big Kid booster seat was directly impacted by Defendant's representations regarding its supposedly rigorous side-impact collision testing.

101.     Because they were material to her purchasing decision, had Plaintiff Honaker known that Evenflo's statements regarding side-impact testing and the safety of the product for

children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 15.    Pennsylvania Plaintiff
####       a.    Lauren Mahler

102.    Plaintiff Lauren Mahler is a Pennsylvania citizen residing in Clarks Summit, Pennsylvania.

103.    In 2018, Plaintiff Mahler purchased an Evenflo Big Kid booster seat for her granddaughter at a Walmart in Dickson City, Pennsylvania.

104.    Plaintiff Mahler bought the booster seat at least in part because Evenflo advertised it as passing side-impact testing, an important consideration for her because of her concern for the safety of her granddaughter.

105.    Because they were material to her purchasing decision, had Plaintiff Mahler known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 16.    South Carolina Plaintiff
####       a.    Tarnisha Alston

106.    Plaintiff Tarnisha Alston is a citizen of South Carolina residing in Yemassee County, South Carolina.

107.    In December 2018, Plaintiff Alston purchased an Evenflo Big Kid booster seat at Walmart in Beaufort, South Carolina, for $52.00 for her four-year-old daughter.

108.    Plaintiff Alston purchased the Big Kid booster seat because she believed that it would provide car safety for her daughter, but when she installed it, the booster seat did not seem to be well made.

109.    As a reasonable consumer, Plaintiff Alston perceived Defendant's representations regarding side-impact collision testing as an indication that the Big Kid booster seat had

succeeded under rigorous safety testing standards beyond those required by the government when, in fact, it did not.

110.    Plaintiff Alston's decision to purchase the Big Kid booster seat was directly impacted by Defendant's representations regarding its supposedly rigorous side-impact collision testing.

111.    Because they were material to her purchasing decision, had Plaintiff Alston known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 17.    Tennessee Plaintiff

#### a.    Ashley Miller

112.    Plaintiff Ashley Miller is a Tennessee citizen residing in Portland, Tennessee.

113.    In early 2020, Plaintiff Miller purchased an Evenflo Big Kid booster seat for her son at a Walmart store in Gallatin, Tennessee. Plaintiff Miller recalls seeing Evenflo's "side impact tested" labeling and safety ratings on the seat's box at the time of purchase and relied on these representations in making her purchase decision. Plaintiff Miller also purchased the seat because it was marketed for children weighing 30 pounds or more. At the time of purchase, Plaintiff Miller's son weighed approximately 38 pounds.

114.    Because they were material to her purchasing decision, had Plaintiff Miller known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

### 18.    Washington Plaintiff

#### a.    Lindsay Reed

115.    Plaintiff Lindsay Reed is a citizen of Washington residing in Spokane, Washington.

116.    In October 2019, Plaintiff Reed purchased an Evenflo Big Kid AMP High Back booster seat on Amazon for $44.99 for use by her son who weighed less than 40 pounds.

117.    Plaintiff Reed relied upon the fact that the listing on Amazon said that the Big Kid booster seat was safe for children weighing 30 to 110 pounds, but when she installed the booster seat, she was concerned whether it would be safe for children as little as 30 pounds.

118.    Plaintiff Reed's son was injured in a car accident while using the Evenflo Big Kid booster seat. There will not be a lawsuit for the car accident her son was in while riding in the booster seat.

119.    As a reasonable consumer, Plaintiff Reed believed Evenflo's representations concerning the safe weight range of the Big Kid booster seat and she perceived Defendant's representations regarding side-impact collision testing as an indication that the Big Kid booster seat had succeeded under rigorous safety testing standards beyond those required by the government when, in fact, it did not.

120.    Plaintiff Reed's decision to purchase the Big Kid booster seat was directly impacted by Defendant's representations regarding safety and its supposedly rigorous side-impact collision testing.

121.    Because they were material to her purchasing decision, had Plaintiff Reed known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

**19.    West Virginia Plaintiffs**

    **a.    Janette D. Smarr**

122.    Plaintiff Janette D. Smarr is a West Virginia citizen residing in Parkersburg, West Virginia.

123.    Plaintiff Smarr purchased two Evenflo Big Kid model booster seats for her twins in 2019 from a Walmart located at 2900 Pike Street, Parkersburg, West Virginia. Prior to her purchase, Plaintiff Smarr researched by reading product reviews about the safety of the Evenflo

Big Kid booster seats, including that the seats were safe for children weighing less than 40 pounds.

124.    At the time of purchase, Plaintiff Smarr assumed that booster seats sold in the United States were subject to certain safety guidelines and would be safe for use by her twins. The information on the packaging of the seats she purchased indicated that the seats had passed rigorous safety tests, including "side impact" testing.

125.    Because they were material to her purchasing decision, had Plaintiff Smarr known that Evenflo's statements regarding side-impact testing and the safety of the product for children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

              **b.    Kristin Atwell**

126.    Plaintiff Kristin Atwell is a West Virginia citizen residing in Huntington, West Virginia.

127.    Plaintiff Atwell purchased an Evenflo Big Kid model booster seat for her son on or about May 12, 2020, from a Target in Barboursville, West Virginia. Prior to her purchase, Plaintiff Atwell researched by reading product reviews about the safety of the Evenflo Big Kid booster seats, including that the seats were safe for children weighing less than 40 pounds.

128.    Prior to purchasing the Big Kid booster seat for her four-year-old son, Plaintiff Atwell researched booster seats extensively because she needed a booster seat that was safe for children under 40 pounds. The Evenflo Big Kid booster seat was the only booster seat that she could find that stated the seat was safe for children as light as 30 pounds. This claim was critically important to Plaintiff Atwell because she wanted to make sure that the booster seat she purchased would be safe for her son to use. He was approximately 34 pounds at the time she purchased the booster seat.

129.    Because they were material to her purchasing decision, had Plaintiff Atwell known that Evenflo's statements regarding side-impact testing and the safety of the product for

children as light as 30 pounds were false, she would not have purchased the seats, or would have paid less for them.

**B.    Defendant**

130.    Defendant Evenflo Company, Inc., is a Delaware corporation, and is a wholly-owned subsidiary of Goodbaby International Holdings Limited. Evenflo is headquartered in Canton, Massachusetts.

131.    In this Complaint, when reference is made to any act, deed, or conduct of Evenflo, the allegation means that it engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Evenflo.

### III.    JURISDICTION AND VENUE

132.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states.

133.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant is a resident of Canton, Massachusetts, which is located in this judicial district. Moreover, a substantial part of the events and omissions giving rise to the claims occurred in this district.

### IV.    FACTUAL ALLEGATIONS

**A.    The development of car seat regulation led to Evenflo's early knowledge of safety concerns.**

134.    The first child restraint systems were introduced in 1968, and the first child passenger safety law was passed in Tennessee ten years later.[5]

---

[5] *See* Melissa Roy, *Then and Now: 25 Years of Car Seat Safety*, SOUTH FLORIDA SUN-SENTINEL, August 28, 2015, https://www.courant.com/sfp-then-and-now-25-years-of-car-seat-safety-20150828-story.html (last visited February 20, 2023).

135.    In the late 1970s, the U.S. public's increasing awareness of the high rates of morbidity and mortality for child passengers resulted in rapid proliferation of state laws on the issue.[6]

136.    Between 1977 and 1985, all 50 states adopted one or more laws aimed at reducing harm to infants and child passengers by requiring the use of some sort of child restraint device.[7]

137.    In the early 1980s, states required crash testing for car seats.[8]

138.    Beginning in the 1990s, NHTSA, as well as professional associations like the American Academy of Pediatrics ("AAP"), have developed child passenger safety standards and guidelines that cover a wider range of child passenger safety issues and better protect children from injuries.[9] Among other things, they emphasized the importance of three types of safety practices in protecting child passengers: (1) device-based restraints tailored to the age and size of individual child passengers; (2) rear seating; and (3) seatbelt wearing of minors who have outgrown child restraint devices but are still in need of supervision to comply with seatbelt requirements.[10]

139.    As early as 1992, Evenflo was well-aware that booster seats were not safe for children under 40 pounds and should not be used by them. In a memorandum dated November 5, 1992, and circulated to 24 different Evenflo employees, the author attached and praised a NHTSA flyer that was pending approval. That flyer stated with respect to booster seats: "A toddler over one year of age, weighing 20 to 40 pounds, is not big enough for a booster seat in the car. He needs the extra protection for his upper body and head that a harness with hip and

---

[6] Jin Yung Bae *et al.*, *Child Passenger Safety Laws in the United States, 1978–2010: Policy Diffusion in the Absence of Strong Federal Intervention*, 100: 30-37 SOC. SCI. MED. (JAN. 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3899584/ (last visited February 20, 2023).

[7] *See id.*

[8] *See supra* note 5.

[9] *See supra* note 6.

[10] *See id.*

shoulder straps can give." The Evenflo employee who circulated the memorandum suggested that the flyer should even be inserted in the packaging for Evenflo's harness car seats.[11]

140.    In the early 2000s, the CDC Task Force strongly recommended that states adopt laws mandating the use of age and size appropriate child restraints. Subsequently, NHTSA and AAP guidelines were updated with similar emphasis.

141.    The first booster seat law was implemented in 2000, when Massachusetts, and then California, implemented laws requiring booster seats for children over 40 pounds.[12]

**B.    Evenflo competes in a tight market for children's car safety seats.**

142.    Though models vary, the market for children's car safety seats is generally grouped around the three basic designs that track, sequentially, with children's growing weights and heights: rear-facing seats, forward-facing seats with harnesses, and belt-positioning booster seats.

143.    According to AAP, the most recent evidence-based, best practices for optimizing child passenger safety include:

    a.    All infants and toddlers should ride in a rear-facing car safety seat as long as possible, until they reach the highest weight or height allowed by their car seat manufacturer. Most convertible seats have limits that will permit children to ride rear-facing for two years or more.

    b.    All children who have outgrown the rear-facing weight or height limit for their seat should use a forward-facing seat with a harness for as long as possible, up to the highest weight or height allowed by the manufacturer.

    c.    All children whose weight or height exceed the forward-facing limit for their car seat should use a belt-positioning booster seat until the vehicle lap and shoulder seat belt fits properly, typically when they have reached 4 feet, 9 inches in height and are between 8 and 12 years of age.[13]

---

[11] *See* Evenflo Company, Inc.'s Motions in Limine, Exs. 5 and 6, *Somoza v. Abbot and Evenflo Company, Inc*., No. 2015-CA-001596, 4th Judicial Circuit (Duval County, FL), Filing No. 63607028 (Nov. 1, 2017).

[12] *See supra* note 5.

[13] *See* Dennis R. Durbin *et al*., *Child Passenger Safety*, 142(5) PEDIATRICS (2018), https://pediatrics.aappublications.org/content/142/5/e20182460 (last visited February 20, 2023).

144.     Though car seat recommendations have changed, the AAP has long embraced one central principle: parents should not move children from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat. Specifically, since the early 2000s, the AAP has advised that children who weigh 40 pounds or less—at the time, the weight limit of most harnessed seats—are best protected in a seat with its own internal harness. Today, almost all harnessed seats can accommodate children up to 65 pounds and as tall as 4 feet, 1 inch, and some fit children up to 90 pounds.

145.     And even this 40-pound threshold is no longer considered the safe, preferred option for children. Since 2011, the AAP has recommended (consistent with the above) that children stay in harnessed seats "as long as possible" —that is, in many cases, until they are 65 pounds (and in some cases up to 90 pounds)—because of the significantly greater protection harnessed seats provide.

146.     These thresholds are crucial because, according to scientific consensus—and as Evenflo has known since at least 1992[14]—booster seats do not adequately protect younger children and those under 40 pounds in particular. To deliver its full safety benefit in a crash, an adult seat belt must remain on the strong parts of a child's body—i.e., across the middle of the shoulder and the upper thighs. Furthermore, even if young children are tall enough for a belt to reach their shoulders, they rarely sit upright for long and often wriggle out of position.

147.     By contrast, a tightly adjusted five-point harness secures a child's shoulders and hips, and goes between the legs. Harnesses secure children's bodies so that they are less likely to be ejected, and they disperse crash forces over a wider area. This difference is illustrated by the following video stills, which are taken from comparison tests of the Evenflo "SecureKid," a seat that can accommodate a child up to 65 pounds with an internal harness, and the Evenflo Big Kid:

---

[14] *See supra* ¶ 139.



148.    In the test of the SecureKid, the dummy's head and torso remained entirely within the seat's confines. By contrast, in the test of the Big Kid, the seat belt slipped off the dummy's shoulder, and the dummy's head and torso flailed far outside the seat.

149.    Although this Big Kid test "passed" Evenflo's side-impact testing, Evenflo's Director of Manufacturing Engineering has previously admitted that it placed the dummy's neck in severe extension, and thus more at risk for injurious head contact.

150.    Data bears out what the above image makes plain: compared with seat belts, child restraints, when not misused, are associated with a 28% reduction in risk of death adjusting for seating position, vehicle type, model year, driver and passenger ages, and driver survival status.[15]

**C.    Evenflo developed sham safety testing and falsely marketed its Big Kid Booster Seat.**

151.    Evenflo introduced the Big Kid booster seat in the early 2000s in an effort to compete in the developing booster seat category, which was prompted by certain states requiring

---

[15] *See* Michael R. Elliott, *et al.*, *Effectiveness of child safety seats vs seat belts in reducing risk for death in children in passenger vehicle crashes*, 160(6) ARCH PEDIATR. ADOLESC. MED. 617–621 (2006), https://www.ncbi.nlm.nih.gov/pubmed/16754824 (last visited February 20, 2023).

school-age children to use such elevated seats until they could fit properly in regular seat belts.[16] Evenflo's internal records indicate that the Big Kid booster seat was specifically developed for the purpose of "regaining control in the market" from Graco, which had recently released a popular model called the "TurboBooster."[17]

152.    At the time of the Big Kid's development, Evenflo's team proposed creating a booster seat with similar features to Graco's TurboBooster, but priced to sell for about $10 less, or between $40 and $50, and marketed the Big Kid booster seat as safe for babies as young as 1 year old with a minimum weight of 30 pounds and no minimum height standard. Though some car seats sell for well more than this, Evenflo sought to develop a product that would sell briskly at large retailers (*e.g.*, Walmart, Target, Costco, Babies R Us, Amazon). Evenflo succeeded. Within a few years, an internal design review deemed the Big Kid "the reliable workhouse in the Evenflo platform stable."[18]

153.    But in spite of this success, as of 2008, Graco was still outselling Evenflo. So, that year, Evenflo launched a new Big Kid booster seat with so-called "side wings"—that is, curved extensions on either side of the headrest. Below are the Big Kid (left) and TurboBooster (right):

---

[16] *See* Daniela Porat and Patricia Callahan, *Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, PROPUBLICA (Feb. 6, 2020), https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety (last visited February 20, 2023).

[17] *See id.*

[18] *See id.*



154.    The addition of these "wings" was cynical: Evenflo's engineers believed the Big Kid's relative "on-shelf perception" was diminished because Graco's seat looked like it had more side support, and thus the Big Kid required an aesthetic upgrade to stay competitive. An Evenflo document makes this explicit: it states that one purpose of the new side wings was "increased perceived side protection" among consumers. Consistent with this, Evenflo's own side-impact testing showed no difference in safety between the two models:



1.    **Evenflo developed its sham booster seat side-impact test to burnish its marketing.**

155.    As part of its quest to gain an upper hand on Graco—and to enhance the perceived safety of the Big Kid—Evenflo also began to "test" the side-impact crashworthiness of its new Big Kid prior to its 2008 release.

156.    But in the absence of a federal standard, Evenflo had a unique opportunity: it could develop its own "safety test," then use the uniform "passage" of that test to simultaneously distinguish its new product from the competition and influence consumers to buy the product.

157.    Evenflo falsely stated that its side-impact testing is "rigorous" and analogous to "government" tests. For example, according to a blog post authored by Sarah Haverstick, a "Safety Advocate" and "Child Passenger Safety Technician" at Evenflo, "the engineers at Evenflo have designed the Evenflo side-impact test protocol" as a "rigorous test [that] simulates the government side impact tests conducted for automobiles":

# Making the Transition – How to Choose a Booster Seat



<div dir="rtl">١١ أبريل ٢٠١٥، الساعة ١٠:٢٠ ص ·</div>

## the safety net

### with sarah haverstick

There are so many booster seat options on the market it can be hard to know where to start when shopping for this important piece of safety equipment. Here are some tips to make the experience a little easier.

**First - don't transition your child too early**. At a minimum, your child should be 4 years old to use a booster seat. Your child must be mature enough to sit in the booster seat with the seat belt in the proper position – without putting it under their arm, behind their back or slouching.

**Next – make sure your child actually fits in the booster**. Belt positioning booster seats are all about proper seat belt fit. Booster seats are designed to make your child a little taller so they can use the lap/shoulder seat belt, which is made to fit an adult. The lap belt should be low and snug across the hips (not across the belly) and the shoulder belt should cross the chest and shoulder (not the neck and face). Every booster seat fits in every vehicle differently, so ideally, ask the store if you can bring it out to your car to test for fit with your child.

Once you have proper belt fit – there are many other features you can look for:

### Extended Use
Combination car seats are forward-facing only car seats that allow you to use a harness for your child and then remove the harness to use the seat as a booster. Upper weight limits on the harness will vary. Using a car seat with a higher weight rating for the harness (over 40 pounds) will help delay your child's transition into a booster seat.

### High Back Booster vs. No Back Booster
You will need a high back booster if your vehicle does not have a headrest for the seating position that your child will be using (fairly uncommon with most newer vehicles, but more common in older vehicles or pickup trucks). Otherwise, high back boosters are a great option when first transitioning a child to a booster, and are also helpful if your child is prone to napping in the car. No back boosters are great options for travel, or to have on hand in case you frequently car pool with other booster-age kids, since they are compact and easy to store.

### Lower Anchors
Combination seats will often allow the use of the lower anchors and tether when the seat is used in booster mode. When used with a booster, lower anchors are not designed to help with crash safety for the child (the seat belt protects the child in a crash – which is why it is important that it fits right). However, the lower anchors do keep the booster seat in the same place. This is helpful when your independent child wants to climb in and buckle the seat belt on their own. The lower anchors are also helpful in keeping the booster seat tied down when not in use so it does not become a projectile in a crash. That way you do not need to remember to buckle the seat in every time it is not in use.

### Side Impact Testing
Currently, there is no federal standard for side impact testing of car seats and booster seats. However, the engineers at Evenflo have designed the Evenflo Side Impact Test protocol. This rigorous test simulates the government side impact tests conducted for automobiles.

### Cool factor!
This might not sound as important – but as safety advocates, we know that booster seats have been proven to be more effective than seat belts alone for kids ages 4 through 8. But, we also know that older kids do not want to look (or feel) like babies in the car. To encourage kids to be excited about using boosters, Evenflo has added fun colors, cup holders and even lights and speakers in some booster seat models. If possible, bring your child with you when you are shopping for their new seat. Allowing them to help with the decision may make them more interested in using the seat.

158.    This material claim is false. During the period at issue, Evenflo's side-impact test was performed by placing an object on a bench (resembling a car seat), moving that bench at 20 miles per hour, then suddenly decelerating it. In truth, this did not resemble—much less surpass—government test standards for side-impact collisions. And there were no such government tests or standards for booster seats.

159.    In stark contrast, NHTSA's 5-Star Safety Ratings program evaluates vehicles based on their performance during two side-impact crash scenarios.[19] In the first, designed to simulate an intersection-type collision, a 3,015 pound moving barrier is crashed at 38.5 miles per hour into a standing vehicle containing two dummies.[20] In the second, designed to simulate a crash into a telephone pole, a vehicle angled at 75 degrees (and containing the same two dummies) is pulled sideways at 20 miles per hour into a 25 cm diameter pole at the driver's seating location. Following both tests, injuries to the dummies' heads, chest, lower spine, abdomen, and pelvis are evaluated.

160.    This difference between the rigorous NHTSA 5-Star test and Evenflo's "bench" test was nowhere apparent in Evenflo's marketing materials, nor was it explained on Evenflo's website. To the contrary, a section of Evenflo's website devoted to "Safety Technology"[21] stated:

> [A]t Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard. We also continually enhance our products with new technologies that distribute crash forces away from your child during a crash. Some of those technologies include …
>
> • Side Impact Tested: Meets or exceeds all applicable federal safety standards and Evenflo's Side [sic] impact standards.

---

[19] A description of this rating system can be found on NHTSA's website, https://www.nhtsa.gov/ratings.

[20] In these tests, the first dummy is an average-size adult male in the driver's seat, and the second is a small-size adult female in the rear driver's side passenger seat.

[21] Evenflo, "Safety Technology," https://www.evenflo.com/safety-learning/safety-tech.html (last accessed Feb. 9, 2020).

161.    The same page includes the following false and misleading descriptions of Evenflo's side impact testing:



**Evenflo Side Impact Testing**

Evenflo Side impact testing simulates a crash in which the vehicle carrying the car seat is struck on the side by another vehicle. An example of a real life side impact collision is when a car crossing an intersection is struck on the side by another car that ran a stop sign.

**Why is it important to car seat safety?**

Approximately one out of four vehicle crashes have a side impact component. According to the National Highway Traffic Safety Administration (NHTSA), impacts to the side of the vehicle rank almost equal to frontal crashes as a source of fatalities and serious injuries to children ages 0 to 12.

**How are car seats tested now?**

Federal car seat safety standards require a frontal impact test with a 30 mph velocity change. This approximates the crash forces generated in a collision between a vehicle traveling 60 mph and a parked car of similar mass, or the energy produced in a fall from a three story building. There are currently no provisions in the U.S. and Canadian standards for side impact testing. NHTSA is in the process of developing a child side impact test standard.

**What is the Evenflo Side Impact Testing?**

At Evenflo, car seat safety is a top priority. That's why we have created the Evenflo Side Impact test protocol. The Evenflo Side Impact test protocol was developed by Evenflo engineers using state-of-the-art facilities. The rigorous test simulates the energy in the severe 5-star government side impact tests conducted for automobiles.

All Evenflo car seats meet or exceed all applicable federal safety standards and Evenflo's side impact standards.

For car seat safety that you can depend on, trust Evenflo. Shop our collection of side impact tested car seats today.

162.    Furthermore, not only was Evenflo's side-impact test less rigorous than the federal government's test, it was, for all intents and purposes, impossible to fail.

163.    Records of Evenflo's internal side-impact tests of various models indicate that, following each test, an Evenflo technician (1) answered whether the test showed "dummy retention," which is indicated by checking either "yes" or "no" on a form, then (2) sent her report to an engineer who, in turn, (3) decided whether the Big Kid model passed or failed.

164.    But an Evenflo senior test technician has admitted that, for purposes of these forms, "dummy retention" means the following: "did [the dummy] stay in the seat or did it fall out of the seat and end up on the floor?"

165.    In other words, there were only two ways a booster seat fails Evenflo's "rigorous" side-impact test: (1) if a child-sized dummy escaped its restraint entirely, and thus ended up on the floor; or (2) the booster seat itself broke into pieces.

166.    The same technician has stated that, in 13 years, he did not once perform a "failed" side-impact test on a booster seat. He also testified that the following images—all of

which are from "passed" Evenflo side-impact tests, and use a dummy based on a three-year-old

child—would have been marked that "yes," they passed:



167.    These images show the seat belt slipping off the dummy's shoulders and instead

tightening around its abdomen and ribs. This kind of violent movement at high speed can cause

serious damage to a child's internal organs, head, neck, and spine, including paralysis or death.

168.    Evenflo was aware of these risks. A safety engineer at Evenflo has admitted under

oath that, when real children move in this way, they are at risk for injurious head contact.

169.    In other words, the same proprietary side-impact tests deemed successful by

Evenflo's engineers demonstrate, unequivocally, that Big Kid booster seats place many children

at risk of serious injury or death.

170.    Evenflo falsely represented to consumers that its side-impact safety tests were rigorous and met or exceeded federal government testing standards, keeping the truth about these sham tests secret.[22]

**2.    Despite conclusive evidence that its product was dangerous for children within the weight range it specified, Evenflo falsely marketed its new Big Kid model as rigorously "side impact tested" and safe for children under 40 pounds.**

171.    Upon learning from its own pre-release tests that its Big Kid booster seats placed many children at serious risk in side-impact collisions, Evenflo knew, unequivocally, that children under 40 pounds should not use its booster seats.

172.    At least as early as 1992, Evenflo had internally circulated NHTSA informational flyers that made clear children 20 to 40 pounds should use harnessed seats with shoulder and hip restraints.[23]

173.    And not only that: beginning in 2008, Evenflo began aggressively marketing its Big Kid booster seats as "side impact tested" to both business customers and retail consumers. For example, Evenflo sent marketing materials to Walmart, Target, and Babies R Us that emphasized in large bold letters that its new Big Kid booster seat was "side impact tested." Other marketing materials stated: "Knowing that one in four automobile accidents are side impact collisions, we believe it's important to go beyond the current government standards when designing the next generation of Evenflo car seats, including the Big Kid LX."

174.    Evenflo took a similarly aggressive tack with consumers. As noted above, the company prominently advertised its Big Kid models as "side impact tested." The following

---

[22] The above description of Evenflo's testing is based on an exposé by the nonprofit organization ProPublica, which published an investigation into Evenflo's testing and marketing of the Big Kid booster seat on February 6, 2020. *See supra* note 16. Prior to the ProPublica story, consumers had no way of obtaining photos, video, or any other data from Evenflo's side-impact testing, which was only produced in the course of ongoing, separate litigation against the company.

[23] *See supra* ¶ 139.

screen shots are from several websites on which the Big Kid was available for sale, including Evenflo's own website:[24]

Evenflo's website:



_____

[24] Although some of these advertisements stated that the seat was safe for children weighing between 40 and 110 pounds, this range is a recent change from Evenflo advertisements that for years assured consumers that the seat was safe for children weighing as little as 30 pounds.

Amazon:

**Product description**

Color: Denver

Product Description

The Evenflo big kid AMP belt-positioning booster car seat gets your child excited about sitting in a booster seat. With 6 height positions, the back adjusts as your child grows, keeping the side and head support in the proper position. It also transitions into a no-back booster. Your child will love the comfortable padding around the head and body. Elastic cup holders are perfect for a juice box or a quick snack. With Backrest : Height recommendation : 112 to 145 cm (44 to 57 in.) and tops of the child's ears are at or below the top of the booster seat headrest . At least 4 years old Without Backrest : Weight recommendation : 112 to 145 cm (44 to 57 in.) and tops of the child's ears are at or below the top of the vehicle seat headrest . At least 4 years old

**Safety Testing:**

At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.

- **Side Impact Tested**: Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards.
- Designed and tested for structural integrity at energy levels approximately **2X the federal crash test standard**.
- **FMVSS 213**: Federal Motor Vehicle Safety Standards for Child Restraint Systems
- **FMVSS 302**: Federal Motor Vehicle Safety Standards for Flammability of Interior Materials
- **CMVSS 302**: Canada Motor Vehicle Safety Standard
- **CMVSS 213**: Canada Motor Vehicle Safety Standard
- **Evenflo Temperature Testing**: All current Evenflo car seats are tested for product integrity at both high and low temperatures.

Walmart:

**About This Item**

**We aim to show you accurate product information.** Manufacturers, suppliers and others provide what you see here, and we have not verified it. See our disclaimer

The Evenflo Big Kid Sport Booster Car Seat gets your child excited about sitting in a booster seat! With 6 height positions, the back adjusts as your child grows, keeping the side and head support in the proper position. It also transitions into a no-back booster. Your child will love the comfortable padding around the head and body. The dual cup holders will keep drinks and snacks close. **Evenflo Big Kid Sport High Back Booster Seat, Peony Playground:**

- 2 Seats In 1? removable back for easy transition to a no-back booster
- Easy one-hand, 6-position height adjustment to accommodate growing children longer
- 2 cup holders for drinks
- Machine-washable pad keeps seat looking clean
- Side Impact Tested: meets or exceeds all applicable Federal Safety Standards and Evenflo's Side Impact Test Standard
- Designed and tested for structural integrity at energy levels: approximately 2X the federal crash test standard
- Energy absorbing foam liner provides added safety and comfort
- For use as high back booster (with backrest)
- Weight: 40 - 100 lbs
- Height: 44 - 57"
- Age: child is at least 4 years old or older
- Child's ears are below top of child restraint headrest
- For Use as No Back Booster (without backrest)
- Weight: 40 - 100 lbs
- Height: 44 - 57"
- Age: child is at least 4 years old or older

**Questions about product recalls?**

Items that are a part of a recall are removed from the Walmart.com site, and are no longer available for purchase. These items include Walmart.com items only, not those of Marketplace sellers. Customers who have purchased a recalled item will be notified by email or by letter sent to the address given at the time of purchase. For complete recall information, go to Walmart Recalls.

175.    The "side impact tested" label appears on the Big Kid's packaging:



176.    Evenflo is so committed to its false "side impact tested" marketing strategy that it even stiches "side impact tested" labels into the Big Kid seats themselves:





177.    Customer reviews for several Big Kid models confirm that parents and guardians rely on Evenflo's material misrepresentations.



**D.    Evenflo disregarded scientific consensus—and its own engineers' recommendations—by falsely representing that its booster seat was safe for children as small as 30 pounds.**

178.    As noted above, the AAP has, since the early 2000s, advised that children who weigh 40 pounds or less are best protected in a seat with its own internal harness—which was then the weight limit of most harnessed seats. And NHTSA, as early as 1992, had provided similar guidance, which Evenflo employees had reviewed and discussed including in their harness seat packaging. Today, almost all harnessed seats can accommodate children up to 65 pounds and as tall as 4 feet, 1 inch, and some fit children up to 90 pounds. Since 2011, the AAP has recommended that children stay in harnessed seats "as long as possible"—i.e., up to manufacturers' weight limits.

179.    Consistent with this recommendation, many booster seat manufacturers in the United States specified that, at a minimum, children should weigh at least 40 pounds before using their products. But Evenflo refused to abide this scientific consensus and until very

recently, and only under public pressure, continued to market its booster seats for children who weigh as little as 30 pounds.

180.    It was only following a journalistic exposé by the nonprofit organization ProPublica[25]—published on February 6, 2020—that Evenflo revised its website to state that the minimum weight for Big Kid booster seats is 40 pounds. According to Evenflo's general counsel, in May 2016, the company changed some, but not all, of its U.S. booster seats to a 40-pound minimum so that the company could sell them in Canada, which does not allow the sale of boosters to children under 40 pounds.[26] But the company otherwise left its minimum weight recommendation of 30 pounds intact, including for U.S. customers, to supposedly "provide options for parents whose children were too tall" for harnessed seats.

181.    In other words, before early 2020, the 30-pound standard often prevailed in Evenflo's sales materials, product descriptions, and product manuals for the Big Kid booster. For example, a screenshot of Evenflo's product page for the "Big Kid Amp Highback 2-in-1 Belt-Positioning Booster Car Seat" from July 21, 2019[27] lists a minimum weight of 30 pounds:

---

[25] *See supra* note 16.

[26] In fact, Big Kid boosters sold in Canada warn parents and guardians that children less than 40 pounds are at risk of "SERIOUS INJURY or DEATH" if placed in these seats.

[27] This product listing was retrieved from the Wayback Machine, a digital archive, and can be found at the following URL: http://web.archive.org/web/20190721134649/https://www.evenflo.com/car-seats/big-kid/31911431.html.



182.    Following ProPublica's reporting, Evenflo's sudden updating of this standard was so hasty and erratic that many of its Big Kid booster seats continued to be advertised as

appropriate for children weighing as little as 30 pounds. For example, on February 9, 2020, the

"Big Kid High Back Booster Car Seat" was displayed on Kohl's webpage as appropriate for

children weighing between 30 and 110 pounds:



183.    The same page also included the following clarification (dated February 6, 2020) from an account that appears to be associated with Evenflo—presumably posted in haste on the same day the ProPublica exposé was published:



184.    Meanwhile, according to ProPublica's reporting, Big Kid booster seats ordered directly from Evenflo's website in January 2020 came with boxes that did not specify an age for use, and bore labels stating that they were safe for children weighing as little as 30 pounds.

185.    As with Evenflo's "side impact tested" labeling, the company's longstanding decision to cling to and market the 30-pound safety minimum—in the face of scientific consensus to the contrary—had a cynical purpose: to sell more booster seats. For in marketing the Big Kid booster seat, Evenflo knew that parents often face complaints from children who see harnessed seats as babyish. Furthermore, parents have an incentive to choose booster seats because they are generally cheaper, less complicated to use, and easier to move. So in marketing the seats falsely as safe at a mere 30 pounds, Evenflo aimed to solve the dilemma for purchasers.

186.    Evenflo historically resisted conforming its marketing to scientific safety consensus at every turn—once again, in a bid to outcompete Graco and sell as many seats as possible.

187.    For example, when Evenflo first launched the Big Kid booster seat in the early 2000s, it marketed it as safe for children as young as one year old so long as they weighed 30 pounds—without a minimum height. At the time, Graco labeled its competing booster seat as safe for children who weighed at least 30 pounds and were at least three years old.

188.    Evenflo's engineers have since conceded that neither one-year-olds nor two-year-olds should be placed in Big Kid booster seats, consistent with scientific consensus. In a 2016 deposition, Joshua Donay, an Evenflo project engineer who worked on the Big Kid, stated that he would "not put a one-year-old in any belt-positioning booster, Big Kid, Graco, you name it," and "would keep them in an infant seat." In a deposition in a different case, Evenflo's top booster seat engineer, Eric Dahle, acknowledged that two-year-olds should not be placed in Big Kid booster seats.

189.    But it was not until 2007 that Evenflo increased the minimum age on the Big Kid to three, and also added a minimum height requirement (38 inches). At the time, Evenflo warned consumers that failure to follow these instructions could "result in your child striking the vehicle's interior during a sudden stop or crash, potentially resulting in serious injury or death."

190.    In spite of this significant revision, Evenflo made no effort to notify past purchasers, issue corrective advertising, or to undertake any other remedial action, thus exposing millions of children under three and/or 38 inches to risk of serious injury or death.

191.    Evenflo's battle to maintain the 30-pound weight threshold was even harder fought.

192.    As noted above, in 2011, the AAP made the widely publicized safety announcement that parents should keep their children in rear-facing child safety seats for as long as possible before transitioning them to forward-facing harnessed seats, and that switching

children to booster seats at 40 pounds was no longer recommended. NHTSA updated its

guidelines shortly thereafter to reflect the AAP's recommendations:[28]



193.    As reported by ProPublica, in early 2012, Dahle—Evenflo's top booster seat

engineer—delivered a PowerPoint presentation to his colleagues in which he stated that three-

and four-year-old children are at an "increased risk of injury" in booster seats because, as a result

of their immaturity, they often do not sit properly. Dahle wrote that "[k]eeping the seat at 30 lbs

encourages parents to transition them earlier because they can, and the booster is a less expensive

option," and that Evenflo should discourage early transitions to booster seats in favor of keeping

---

[28] See NHTSA, "NHTSA Releases New Child Seat Guidelines" (March 21, 2011), available at https://www.autoblog.com/2011/03/21/nhtsa-issues-new-child-seat-guidelines (last visited February 20, 2023).

children in harnessed seats longer: "[a harnessed seat] is the better option. We should encourage that behavior by modifying the weight rating to 40 lbs. To overcome the misuse, we should follow the NHTSA Guidelines and increase the age rating to 4 yrs old also."

194.    Dahle also sent his colleagues a 2010 NHTSA report on booster seat effectiveness,[29] specifically noting two of the study's findings: (1) that three- and four-year-old children had a reduced risk of injury in crashes when they were using harnessed seats rather than boosters, and that early graduation to boosters may "present safety risks" and (2) children should remain in harnessed seats until they are four or weigh 40 pounds, and that harnessed seats may offer more side support and "better containment" for smaller children in crashes.

195.    But in a meeting several days later, McKay Featherstone, an Evenflo senior marketing director, "vetoed" Dahle's weight recommendations, though the company did agree to raise the minimum age for Big Kid booster seats to four years old. When the subject of increasing the weight limit came up again later that year—this time raised by another employee—Featherstone (by then promoted to vice president of marketing and product development) wrote in an email:

> Gregg, why are we even talking about this? It has always been this
> way in Canada so I don't understand why it is now a big problem
> that requires a $30k investment or us to change product. I have

---

[29] NHTSA, "Booster Seat Effectiveness Estimates Based on CDS and State Data," (July 2010), https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (last visited February 20, 2023).

The report is based on data from the National Automotive Sample System - Crashworthiness Data System (NASS CDS) from 1998 to 2008, as well as 17 combined years of state data from Kansas, Washington, and Nebraska, and estimated the effects of early graduation from child restraint seats to booster seats and of early graduation from booster seats to lap and shoulder belts. Among the report's principal findings was that "among three- and four-year-olds there is evidence of increased risk of injury when restrained in booster seats rather than with the recommended child restraints." The report notes that "[t]his increase depends on injury severity, and may be as large as 27 percent for non-disabling to fatal injuries."

The report also recommends that "[f]orward-facing (convertible or combination) child seats [be used] for children age 1 to 4, or until they reach 40 lbs." It explains: "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks. Child restraint seats may offer more lateral support and better containment for smaller children."

looked at 40 lbs for the US numerous times and will not approve
this.

196.    Furthermore, even after Evenflo increased the Big Kid's age limit to four years
old, it continued selling the old model with manuals dated 2008—which stated that the seat was
safe for three-year-olds.

197.    Incredibly, in a 2019 deposition, Jon Conaway, Evenflo's senior product manager
for car seats, stated that he was unaware of any internal debate over weight limits. He also denied
knowledge of NHTSA's updated 2011 recommendations, claiming that he first became aware of
them during the deposition itself—i.e., when they were read to him by plaintiff's counsel in
2019.

**E.    Evenflo continued to use materially false and misleading statements regarding the
safety and safety testing of its Big Kid booster seat throughout the Class Period.**

198.    From well before and throughout the Class Period from 2008 to May 2022,
Evenflo advertised its Big Kid booster seats throughout the United States with pervasive material
false statements regarding their safety, safe weight range, and their (now known to be fraudulent)
side-impact testing regimen. At any time and in any of these advertisements, Evenflo could have
provided complete and accurate information about the safety and "safety testing" of the Big Kid
booster seats. But Evenflo did not do so.

199.    For example, the following table sets forth false and misleading advertisements
and marketing messages Evenflo created and transmitted by Evenflo through various channels to
Nationwide Class members throughout the United States. These advertisements could and should
have included complete and truthful information about the safe weight range for the Big Kid
booster seats and they could and should have explained that Evenflo's "side impact testing" was
a sham. That its testing in no way resembled the testing required by NHTSA for automobiles and
that virtually every Big Kid booster seat passed this test even when those very tests showed that
an actual child occupant would have been severely injured if the test simulated an *actual* side-
impact collision with a real child in the car seat.

| Date | Source | Representation |
|---|---|---|
| 2008 | Facebook Post from "A Mother's Promise" Facebook Group (created by Evenflo) | "With innovations like mandatory Side-impact testing for all our car seats, our rigorous standards often surpass those of the government and have led the way for the rest of the industry." |
| 2008 | Evenflo website | "The Big Kid Booster is for use forward facing with children that are 30-100 lbs and up to 57" tall." |
| 2008 | Evenflo website | "The Big Kid Booster is for use forward facing with children that are 30-100 lbs and up to 57" tall." |
| 2008 | Evenflo website | "At Evenflo, car seat safety is a top priority. That's why we have created the Evenflo side-impact test protocol. The Evenflo side-impact test protocol was developed by Evenflo engineers using state-of-the-art facilities. The rigorous test simulates the energy in the severe 5 star government side impact tests conducted for automobiles." |
| 2009 | Evenflo website | "The Big Kid Booster is for use forward facing with children that are 30-100 lbs and up to 57" tall." |
| 2009 | Evenflo website | "The Big Kid Booster is for use forward facing with children that are 30-100 lbs and up to 57" tall." |
| 2010 | Evenflo website | "30-100 lbs."<br><br>"All Evenflo car seats are Side Impact Tested."<br>(font color in original) |
| 2010 | Evenflo website | "30-100 lbs."<br><br>"All Evenflo car seats are Side Impact Tested."<br>(font color in original) |
| 2011 | Evenflo website | "[W]eight range from 30-100 lbs"<br><br>"Side Impact Tested! Evenflo booster car seats meet or exceed all applicable Federal Safety Standards and Evenflo's side-impact test Standard"<br>(font color in original) |
| 2012 | Evenflo website | "Side Impact Tested! Meets or exceeds all applicable Federal Safety Standards AND Evenflo's side-impact test Standard"<br>(font color in original)<br><br>"The Amp Booster With Backrest is for use with children 30 – 110 lbs" |

| Date | Source | Representation |
|------|--------|----------------|
| 2012 | Evenflo website | "Side Impact Tested! Meets or exceeds all applicable Federal Safety Standards AND Evenflo's side-impact test Standard"<br>(font color in original) |
| 2012 | Evenflo website | "At Evenflo, car seat safety is a top priority. That's why we have created the Evenflo side-impact test protocol. The Evenflo side-impact test protocol was developed by Evenflo engineers using state-of-the-art facilities. The rigorous test simulates the energy in the severe 5 star government side impact tests conducted for automobiles." |
| 2013 | Evenflo Twitter account | "Big Kid Sport Boosters feature superior protection & comfort, growing with your Big Kid! Weight range from 30-100 lbs" |
| 2014 | Evenflo website | "With a weight range from 30-110 lbs, 6-position height adjustments and a 2 in 1 design, our booster car seats will be able to grow along with your child. With an Evenflo booster car seat, you can rest assured your little one will be safe and sound." |
| 2015 | Evenflo website | "**For Use With the Backrest Child Must Meet All These Requirements**<br>• Weight: 30 - 110 lbs (13.6 – 49.8 kg)" |
| 2015 | Evenflo website | "**Side Impact Tested!** Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards." |
| 2015 | Evenflo website | "**For Use With the Backrest Child Must Meet All These Requirements**<br>• Weight: 30 - 110 lbs (13.6 – 49.8 kg)" |
| 2015 | Evenflo website | "**Side Impact Tested!** Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards." |
| 2016 | Evenflo website | "At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.<br><br>• **Side Impact Tested:** Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards." |

| Date | Source | Representation |
|------|--------|----------------|
| 2017 | Evenflo website | "Our AMP high back boosters are designed for children 30-110 lbs. Once your child has reached 40 lbs, it is usually safe to 'amp it up' into the no-back version of this seat."<br><br>"At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.<br><br>• **Side Impact Tested:** Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards." |
| 2018 | Evenflo website | "Our Big Kid high back boosters are designed for children 30-110 lbs. Once your child has reached the size and age requirements, you can transition into the no-back version of this seat."<br><br>"**Safety Testing**<br>At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.<br><br>**Side Impact Tested:** Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards." |
| 2019 | Evenflo website | "Our AMP high back boosters are designed for children 30-110 lbs. Once your child has reached the size and age requirements, you can transition into the no-back version of this seat."<br><br>"**Safety Testing**<br>At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.<br><br>**Side Impact Tested:** Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards." |
| Unknown | Evenflo Big Kid Video Advertisement (source unknown) | "Tested above and beyond industry standards" (with a bar chart showing "Federal Crash Test Standards" and "Side Impact Tested") |

| Date | Source | Representation |
|------|--------|----------------|
| Unknown | Evenflo Website: Blog Post | "[Th]e engineers at Evenflo have designed the Evenflo side-impact test protocol" as a "rigorous test [that] simulates the government side impact tests conducted for automobiles." |
| Unknown | Evenflo website | "[A]t Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard. We also continually enhance our products with new technologies that distribute crash forces away from your child during a crash. Some of those technologies include …<br>• Side Impact Tested: Meets or exceeds all applicable federal safety standards and Evenflo's Side [sic] impact standards." |
| Unknown | Evenflo website | **"Safety Testing**<br>At Evenflo, we continue to go above and beyond government standards to provide car seats that are tested at 2X the Federal Crash Test Standard.<br><br>**Side Impact Tested:** Meets or exceeds all applicable federal safety standards and Evenflo's side impact standards." |
| Unknown | Evenflo packaging | "Side impact tested"<br><br>"30-110 lbs" |
| Unknown | Evenflo Big Kid seat labeling | "Side impact tested" |
| 2019 | Evenflo website | "Weight: 30-110 lbs" |
| 2020 | Kohl's website | "30 – 110 lbs" |

**F.    In response to ProPublica's reporting and consumer outrage, Congress launched an investigation into Evenflo's conduct and published a damning Congressional Subcommittee Staff Report in December 2020.**

200.    On February 12, 2020, in response to ProPublica's reporting, the United States House of Representatives' Subcommittee on Economic and Consumer Policy sent a letter to Jon Chamberlain, Evenflo's CEO, requesting documents and information on Evenflo's Big Kid model booster seats.[30]

---

[30] A true and correct copy of the letter is available at: https://www.documentcloud.org/documents/6774691-2020-02-12-RK-to-Chamberlain-Evenflo-Re-Big-Kid.html.

201.    The letter, authored by U.S. Representatives Raja Krishnamoorthi and Katie Porter, notes that Evenflo's marketing of its seats as "side impact tested" alarmingly "appears to be inconsistent with the video evidence of side impact testing," and that Evenflo's internal tests "appear to show that side impacts could put children sitting in the 'Big Kid' seat in grave danger." Representatives Krishnamoorthi and Porter also noted: "Videos of Evenflo's side impact tests for the 'Big Kid' seat show child-sized test dummies bending violently at the hip, torsos, and neck, as well as test dummy heads being thrown to the side. This video evidence appears to present a high risk of serious injuries to the head, neck, and spine."

202.    The letter demanded that Evenflo produce the following by February 24, 2020, just weeks after the ProPublica report was published:

    1.    All impact test videos, including side-impact test videos;

    2.    All documents referring or relating to the following:

        a.    Labeling concerning the age, weight, and height of children for whom the seat is intended, including on marketing materials, packaging, instructional materials, or the seat itself;

        b.    Labeling of safety-related terms, including "Side Impact Tested," on marketing materials, packaging, instructional materials, or the seat itself;

        c.    Labeling of potential risks, including "Serious Injury or Death," on marketing materials, packaging, instructional materials, or the seat itself;

        d.    Safety and risk standards used by Evenflo in connection with side impact testing, including what constituted a "passing" result; and

        e.    Actual results and records of impact and other safety testing;

    3.    All communications with the U.S. federal agencies referring or relating to safety standards; and

    4.    All communications with Canadian regulators relating to any recall.

203.    On February 14, 2020, two days after Reps. Krishnamoorthi and Porter sent the above letter to Evenflo, Senator Tammy Duckworth, the Ranking Member of the Senate Commerce, Science and Transportation Subcommittee on Transportation and Safety, and Senator Maria Cantwell, the Ranking Member of the Senate Commerce, Science and Transportation

Committee, sent a letter to NHTSA Acting Administrator James C. Owens "demanding answers about reported negligence by a booster seat manufacturer [named] Evenflo."[31] Among other things, the letter requests that NHTSA "act swiftly to finalize a long overdue rule establishing effective side impact performance requirements for all child restraint systems," and states that:

> There are real world consequences to [NHTSA's] inaction. For example, ProPublica reported the details of potential negligence of a booster seat manufacturer, Evenflo, in developing and marketing its "Big Kid" booster car seat product that may fail to protect children in side impact crashes, which accounted for an estimated 25 percent of vehicle collision fatalities for children under the age of 15 in 2018.

> Evenflo suggests that their car seat products meet or exceed all applicable Federal safety standards for side impact testing, a claim that appears misleading. Evenflo also asserts that their products meet the company's own side impact standards. However, alleged videos of side-impact testing calls into question the level of protection these standards provide.

204.    Sens. Duckworth and Cantwell's letter also requested responses to the following questions by March 4, 2020:

> 1. On what date and in what manner did NHTSA first learn about concerns related to the safety performance of Evenflo booster seats in side impact collisions?

> 2. Evenflo's website states that it provides car seats that are "Side Impact Tested: Meets or exceeds all applicable federal safety standards and Evenflo's Side impact standards." Please identify which applicable Federal Motor Vehicle Safety Standard (FMVSS) addressing side impact performance requirements Evenflo is citing, and confirm whether Evenflo consulted with NHTSA in establishing the company's side impact standards.

> 3. Has Evenflo's "Big Kid" booster car seat ever failed NHTSA compliance testing under FMVSS 213?

---

[31] Press Release, Sen. Tammy Duckworth (Feb. 14, 2020), https://www.duckworth.senate.gov/news/press-releases/duckworth-cantwell-demand-answers-following-reports-that-major-child-car-seat-manufacturer-lied-about-safety-testing-and-requirements-resulting-in-fatalities (last visited February 20, 2023). A true and correct copy of the above-referenced letter accompanies Sen. Duckworth's press release.

4. What actions has, or will, NHTSA take in coordination with the Federal Trade Commission and the Consumer Product Safety Commission to crack down on false and deceptive advertising by makers of child safety seats and booster seats?

5. When will NHTSA publish a final rule creating a Federal Motor Vehicle Safety Standard that establishes effective side impact performance requirements for all child restraint systems?

205.    On December 10, 2020, the United States House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, published its Staff Report with a damning title: "Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Meaningless Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats."[32] The report concluded, among other things, that Evenflo "endangered the lives of millions of American children and misled consumers about the safety of booster seats by failing to conduct appropriate side-impact testing, deceiving consumers with false and misleading statements" regarding "their side-impact testing protocols, and unsafely recommending that children under 40 pounds and as light as 30 pounds can use booster seats."[33] Put simply, the report found that Evenflo's "claims that their booster seats are side-*impact* tested are false"[34] and that "Evenflo unfairly and deceptively advertises its booster seats as "side-impact tested."[35] The report also noted that "Evenflo long marketed its booster seats for children as light as 30 pounds" and "only corrected its dangerous practice after the Subcommittee began its investigation."[36]

---

[32] https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2020-12-10%20Subcommittee%20on%20Economic%20and%20Consumer%20Policy%20Staff%20Report%20on%20Booster%20Seat%20Investigation.pdf (last visited February 20, 2023).

[33] *Id.* at 1.

[34] *Id.* at 14 (emphasis in original).

[35] *Id.* at 15.

[36] *Id.* at 4.

206.    Further, "[i]nternal documents reviewed by the Subcommittee show that Evenflo has been among the worst offenders."[37] Particularly appalling to the Subcommittee was the revelation that Evenflo's "executives were willing to spend $30,000 for different labels in the U.S. and Canada to keep the same unsafe 30-pound recommendation for seats sold in the U.S. rather than use the safer 40-pound recommendation for both Canadian and U.S. markets."[38]

207.    The report further revealed that Evenflo "deceptively marketed [its] booster seats as side-impact tested despite having created its own weak testing conditions, which do not even involve an impact—Evenflo gives its booster seat a passing grade every time a child test dummy does not fully eject and the seat itself does not break apart."[39] As the report put it, though "Evenflo advertises its booster seats as 'side impact tested' for safety," in fact "[t]o the contrary, Evenflo uses a proprietary standard that appears to [have] little-to-no connection to child safety."[40] In a word—Evenflo's purported side-impact tests were "meaningless."[41] And its statements to consumers regarding "side impact test safety" were false and misleading, including the claim that its tests "meet or exceed all applicable federal safety standards" because no such standard existed during the period.

208.    In sum, these sham tests relied upon in marketing materials and claims of safety for 30-pound children deceived consumers and "appear to constitute unfair and deceptive acts and practices in violation of federal and state consumer protection laws," the Staff Report concluded. Ultimately, the Subcommittee "encourage[d] the Federal Trade Commission and state Attorneys General to investigate and take appropriate actions to remedy these consumer protection violations."[42]

---

[37] *Id.* at 2.

[38] *Id.*

[39] *Id.* at 3 (internal quotation marks omitted).

[40] *Id.* at 15.

[41] *Id.*

[42] *Id.*

**G.    Had Evenflo not made material false statements regarding the Big Kid booster seat's safety profile, no parent or guardian would have purchased it—particularly those whose children weigh less than 40 pounds.**

209.    Because Evenflo falsely represented the nature and results of its so-called side-impact testing to consumers and the actual safety of its booster seats for children under 40 pounds, it succeeded in profiting off unwitting consumers.

210.    As ProPublica's reporting and the U.S. House of Representatives' investigations made plain, Evenflo spent more than a decade maximizing its profits through a disinformation campaign, relentlessly telling consumers that Big Kid booster seats were "side impact tested" and safe for children as light as 30 pounds. Meanwhile, Evenflo aggressively fought any attempt to upgrade the weight limit for these seats to 40 pounds for U.S. customers.

211.    The result of this conduct was that, in reliance on Evenflo's material misrepresentations regarding the safety of their Big Kid booster seats, potentially millions of parents and guardians purchased Big Kid booster seats in the mistaken belief that their children would be more protected during side impact crashes, even at a mere 30 pounds. This means that, every day, millions of children are placed in Evenflo seats for which they are too young or too small.

212.    Unquestionably, consumers who purchased the Big Kid booster seats falsely marketed as they have been did not get the benefit of the bargain they struck. They paid for a booster seat marketed to them as rigorously "side impact tested" at or above purported federal government standards and as safe for children as small as 30 pounds in the event of a side impact collision. But they did not get that product. They got a booster seat that, while touted as the product of a relentless drive for safety, was falsely marketed as safer than it actually is, a product marketed under a relentless and callous drive for profits—even at the risk of injury and death to children.

213.    On behalf of themselves and all others similarly situated, Plaintiffs seek compensatory damages solely for past economic harm, measured either by (1) a refund of the full purchase price (because they would not have bought at all but-for Evenflo's material

misrepresentations); (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true (because, at minimum, they would have paid less but-for Evenflo's material misrepresentations); and/or (3) the monetary difference between the actual value of the Big Kid seat at the time of purchase and the price Plaintiffs paid for it. They also seek punitive damages for Evenflo's misconduct.

## V.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    The discovery rule tolls the applicable statutes of limitation.

214.    Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Evenflo's Big Kid booster seat models were falsely advertised as rigorously "side impact tested" and safe for children as light as 30 pounds.

215.    Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Evenflo's Big Kid booster seat models are unsafe for children under 40 pounds and that Evenflo's sham "side impact testing" provided no basis for its safety claims, or that Evenflo's marketing of these seats as safe and "side impact tested" was false and misleading. The information revealing Evenflo's false marketing and true profile of the Big Kid booster seat models was within Evenflo's sole possession, and was not known to the public until February 6, 2020, when ProPublica published the exposé discussed above, and the subsequent Congressional Subcommittee Staff Report published December 10, 2020. To the extent some of the information reported by ProPublica was previously disclosed as part of litigation, it was either sealed by court order or behind a paywall—specifically, CM/ECF's fee-based access system—and difficult for consumers to find or access.

216.    Plaintiffs and Class members could not have reasonably discovered the true extent of Evenflo's deception and litany of material false statements regarding the safety and safety

testing of its Big Kid booster seats until ProPublica published its exposé and the Staff Report laid bare the truth of Evenflo's false and fraudulent consumer marketing campaign.

217.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule.

**B.    Fraudulent concealment also tolls any applicable statutes of limitation.**

218.    All applicable statutes of limitation have also been tolled by Evenflo's fraudulent concealment throughout the period relevant to this action of its internal testing.

219.    Instead of disclosing to consumers that its "side impact testing" was, in the words of the above-detailed Congressional Report "meaningless," and in fact evidenced the dangers faced by children in side-impact collisions (especially at lighter weights), Evenflo continued to manufacture and sell these seats with false and misleading statements and without disclosing this information. Instead, it affirmatively misrepresented the seats as safe for children as light as 30 pounds and "side impact tested."

**C.    Estoppel prevents reliance upon statutes of limitation.**

220.    Evenflo was under a continuous duty to disclose to Plaintiffs and the other Class members the actual nature and results of its purported "side impact testing" and the dangers faced by lighter children in particular who use its Big Kid booster seats.

221.    Evenflo knowingly, affirmatively, and actively concealed or recklessly disregarded the truth that its booster seats were not safe for kids under 40 pounds, that its so-called "side-impact" tests were sham tests, self-created, and entirely unrelated to the actual forces in side-impact collisions, and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it claimed.

222.    Based on the foregoing, Evenflo is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ALLEGATIONS

223.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rules 23(a) and (b)(3), or, in the alternative, (c)(4) of the Federal Rules of

Civil Procedure, on behalf of the following class (the "Nationwide Class") and, if appropriate,

subclasses (the "State Subclasses"):

### Nationwide Class

All persons in the United States, including the District of Columbia and Puerto Rico, who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

### Alabama Subclass

All persons in the State of Alabama who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

### Alaska Subclass

All persons in the State of Alaska who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

### Arizona Subclass

All persons in the State of Arizona who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

### Arkansas Subclass

All persons in the State of Arkansas who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

### California Subclass

All persons in the State of California who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

### Colorado Subclass

All persons in the State of Colorado who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

### Connecticut Subclass

All persons in the State of Connecticut who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

### Delaware Subclass

All persons in the State of Delaware who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

### District of Columbia Subclass

All persons in the District of Columbia who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Florida Subclass**

All persons in the State of Florida who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Hawaii Subclass**

All persons in the State of Hawaii who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Idaho Subclass**

All persons in the State of Idaho who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Illinois Subclass**

All persons in the State of Illinois who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Indiana Subclass**

All persons in the State of Indiana who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Iowa Subclass**

All persons in the State of Iowa who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Kansas Subclass**

All persons in the State of Kansas who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Kentucky Subclass**

All persons in the Commonwealth of Kentucky who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Louisiana Subclass**

All persons in the State of Louisiana who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Maine Subclass**

All persons in the State of Maine who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Maryland Subclass**

All persons in the State of Maryland who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Massachusetts Subclass**

All persons in the Commonwealth of Massachusetts who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Michigan Subclass**

All persons in the State of Michigan who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Minnesota Subclass**

All persons in the State of Minnesota who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Mississippi Subclass**

All persons in the State of Mississippi who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Missouri Subclass**

All persons in the State of Missouri who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Montana Subclass**

All persons in the State of Montana who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Nebraska Subclass**

All persons in the State of Nebraska who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Nevada Subclass**

All persons in the State of Nevada who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**New Hampshire Subclass**

All persons in the State of New Hampshire who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**New Jersey Subclass**

All persons in the State of New Jersey who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**New Mexico Subclass**

All persons in the State of New Mexico who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**New York Subclass**

All persons in the State of New York who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**North Carolina Subclass**

All persons in the State of North Carolina who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**North Dakota Subclass**

All persons in the State of North Dakota who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Ohio Subclass**

All persons in the State of Ohio who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Oklahoma Subclass**

All persons in the State of Oklahoma who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Oregon Subclass**

All persons in the State of Oregon who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Pennsylvania Subclass**

All persons in the Commonwealth of Pennsylvania who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Puerto Rico Subclass**

All persons in Puerto Rico who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Rhode Island Subclass**

All persons in the State of Rhode Island who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**South Carolina Subclass**

All persons in the State of South Carolina who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**South Dakota Subclass**

All persons in the State of South Dakota who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Tennessee Subclass**

All persons in the State of Tennessee who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Texas Subclass**

All persons in the State of Texas who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Utah Subclass**

All persons in the State of Utah who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Vermont Subclass**

All persons in the State of Vermont who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Virginia Subclass**

All persons in the Commonwealth of Virginia who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Washington Subclass**

All persons in the State of Washington who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**West Virginia Subclass**

All persons in the State of West Virginia who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Wisconsin Subclass**

All persons in the State of Wisconsin who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

**Wyoming Subclass**

All persons in the State of Wyoming who purchased an Evenflo "Big Kid" booster seat between 2008 and May 31, 2022.

224.    Excluded from the Class are all claims for personal injury or wrongful death, and the Defendant and any entity in which the Defendant has a controlling interest, any of the Defendant's legal representatives, officers, directors, assignees, and successors, the Judge to

whom this case is assigned, any member of the Judge's immediate family, and the Judge's staff and their immediate families.

225.    Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. During the Class Period, millions of Big Kid models were sold to millions of individual customers. Class members are readily identifiable from information and records in the possession of Evenflo and third-party merchants like Amazon, Target, Walmart, Kmart, Costco, and Babies R Us, and can self-identify based upon their purchase of the Big Kid booster seats.

226.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all Class members were damaged by the same wrongful conduct: as a result of Evenflo's false and misleading claims that these models were "side impact tested" and "safe for children as light as 30 pounds," they were misled into purchasing these seats—which they otherwise would not have purchased at all or for which they would have paid less.

227.    Plaintiffs will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiffs are coincident with, and not antagonistic to, those of the other members of the Class.

228.    Plaintiffs' counsel are experienced in the prosecution of class action litigation and have particular experience with class action litigation involving false advertising of consumer products.

229.    Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Evenflo has acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in Evenflo's wrongful actions.

230.    Questions of law and fact common to the Class include, but are not limited to:

  a.    Whether—despite its false statements to the contrary—Evenflo knew, or had reason to know, that its Big Kid booster seat models were unsafe for children under 40 pounds;

b.      Whether Evenflo falsely represented its "side impact testing" and concealed from consumers evidence, including proprietary test data, demonstrating that its Big Kid booster seat models are unsafe for children under 40 pounds;

c.      Whether Evenflo affirmatively misrepresented the safety of its Big Kid booster seat models as safe for children under 40 pounds;

d.      Whether Evenflo affirmatively misrepresented the safety of its Big Kid booster seat models as "side impact tested" "above and beyond government standards";

e.      Whether Evenflo's conduct was knowing and willful;

f.      Whether Evenflo's false statements regarding safety and safety testing in its product packaging and labeling (or elsewhere) was unfair, deceptive, fraudulent, or unconscionable;

g.      Whether Evenflo is liable to Plaintiffs and Class members for compensatory damages under the causes of action alleged herein;

h.      Whether Evenflo is liable to Plaintiffs and Class members for punitive damages under the causes of action alleged herein; and

i.      Whether Plaintiffs and Class members are entitled to attorneys' fees, prejudgment interest, and costs, and if so, in what amount.

231.    Plaintiffs and Class members have all suffered harm and damages as a result of Evenflo's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism—including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually—substantially

outweigh potential difficulties in management of this class action. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy at law. The class treatment of common questions of law and fact also is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

232.    Plaintiffs know of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## VII.    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class, or in the Alternative, the State Subclasses**

### COUNT I
### COMMON LAW FRAUD

233.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

234.    Plaintiffs bring this Count on behalf of themselves and the members of the Nationwide Class or, in the alternative, on behalf of the members of the State Subclasses.

235.    Plaintiffs assert claims for fraud under the common laws of the fifty states, the District of Columbia, and Puerto Rico, which are materially the same or which can be sorted into a small number of groups containing materially identical elements.

236.    Evenflo made affirmative representations to Plaintiffs and Nationwide Class members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

237.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented, but failed to disclose this to Plaintiffs and members of the Nationwide Class.

238.     Evenflo had an independent duty to disclose to Plaintiffs and Nationwide Class members that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed, because (1) Evenflo was in exclusive control of the material facts regarding the true weight and safety attributes of its Big Kid booster seats, and such facts were not generally known to the public, Plaintiffs, or Nationwide Class members and (2) Evenflo made partial representations about material facts to Plaintiffs and Nationwide Class members but suppressed other material facts; and (3) Evenflo actively concealed material facts from Plaintiffs and Nationwide Class members.

239.     Evenflo breached its duty because it failed to disclose these material facts to Plaintiffs and Nationwide Class members.

240.     Evenflo's affirmative misrepresentations and omissions were material to Plaintiffs and Nationwide Class members because they concerned the safety of the Big Kid booster seats, consideration of which was material to determining the value and price of the Big Kid booster seats.

241.     Evenflo reasonably could have anticipated that Plaintiffs and members of the Nationwide Class would purchase its Big Kid booster seats in part based on Evenflo's affirmative misrepresentations and material omissions, and Evenflo intended them to do so.

242.     Plaintiffs and Nationwide Class members reasonably relied on and were induced to act by Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats.

243.     Had Evenflo not made affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats, Plaintiffs and Nationwide Class members would not have purchased a Big Kid booster seat or would have paid less for it.

244.     As a direct and proximate result of Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats,

Plaintiffs and Nationwide Class members sustained monetary damage because they purchased products that they otherwise would not have purchased and/or overpaid for the Big Kid booster seats.

245.    Plaintiffs seek compensatory damages for past economic harm, measured either by (1) a refund of the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations); (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true (because, at minimum, they would have paid less but-for Evenflo's material misrepresentations); and/or (3) the monetary difference between the actual value of the Big Kid seat at the time of purchase and the price Plaintiffs paid for it.

246.    Evenflo's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Nationwide Class members' rights, the safety and well-being of Plaintiffs' and Nationwide Class members' young children and the representations that Evenflo made to them, in order to enrich Evenflo. Evenflo's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT II
## VIOLATION OF STATE CONSUMER PROTECTION STATUTES

247.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

248.    Plaintiffs bring this Count on behalf of themselves and the members of the Nationwide Class or, in the alternative, on behalf of the members of the State Subclasses.

249.    Plaintiffs assert claims under consumer protection statutes of the fifty states, the District of Columbia, and Puerto Rico, which are materially the same or which can be sorted into a small number of groups containing materially identical elements.

250.    Under the state consumer protections statutes, Evenflo had a duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of its Big Kid booster seats.

251.    Evenflo made affirmative representations to Plaintiffs and Nationwide Class members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

252.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented, but failed to disclose this to Plaintiffs and members of the Nationwide Class.

253.    Evenflo had an independent statutory duty to disclose to Plaintiffs and Nationwide Class members that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed, because (1) Evenflo was in exclusive control of the material facts regarding the true weight and safety attributes of its Big Kid booster seats, and such facts were not generally known to the public, Plaintiffs, or Nationwide Class members; (2) Evenflo made partial representations about material facts to Plaintiffs and Nationwide Class members but suppressed other material facts; and (3) Evenflo actively concealed material facts from Plaintiffs and Nationwide Class members.

254.    Evenflo breached its statutory duty because it failed to disclose these material facts to Plaintiffs and Nationwide Class members.

255.    Evenflo's affirmative misrepresentations and omissions were material to Plaintiffs and Nationwide Class members because they concerned the safety of the Big Kid booster seats, consideration of which was material to determining the value and price of the Big Kid booster seats.

256.    Evenflo reasonably could have anticipated that Plaintiffs and members of the Nationwide Class would purchase its Big Kid booster seats in part based on Evenflo's affirmative misrepresentations and material omissions, and Evenflo intended them to do so.

257.    Plaintiffs and Nationwide Class members reasonably relied on and were induced to act by Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats.

258.    Had Evenflo not made affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats, Plaintiffs and Nationwide Class members would not have purchased a Big Kid booster seat or would have paid less for it.

259.    As a direct and proximate result of Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats, Plaintiffs and Nationwide Class members sustained monetary damage because they purchased products that they otherwise would not have purchased and/or overpaid for the Big Kid booster seats.

260.    Plaintiffs seek statutory damages and compensatory damages for past economic harm, measured either by (1) a refund of the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations); (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true (because, at minimum, they would have paid less but-for Evenflo's material misrepresentations); and/or (3) the monetary difference between the actual value of the Big Kid seat at the time of purchase and the price Plaintiffs paid for it.

261.    Evenflo's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Nationwide Class members' rights, the safety and well-being of Plaintiffs' and Nationwide Class members' young children and the representations that Evenflo made to them, in order to enrich Evenflo. Evenflo's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF EXPRESS WARRANTY BY AFFIRMATION,
## PROMISE, DESCRIPTION, OR SAMPLE
## (U.C.C. § 2-313)

262.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

263.    Plaintiffs assert this Count on behalf of themselves and members of the Nationwide Class or, in the alternative, on behalf of members of the State Subclasses.

264.    Plaintiffs assert claims for breach of express warranties by affirmation, promise, description, or sample under U.C.C. § 2-313, which has been adopted by and is materially the same under the laws of each state (except Louisiana), the District of Columbia, and Puerto Rico, or which can be sorted into a small number of groups containing materially identical elements.

265.    Evenflo is and was at all relevant times a merchant as defined by U.C.C. § 2-104.

266.    The Big Kid booster seats are and were at all relevant times goods as defined by U.C.C. § 2-105.

267.    U.C.C. § 2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

268.    Plaintiffs and members of the Nationwide Class purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

269.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an

express warranty to Plaintiffs and members of the Nationwide Class that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

270.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

271.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

272.    As a direct and proximate result of Evenflo's breach of the express warranty, Plaintiffs and members of the Nationwide Class suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

273.    Plaintiffs and members of the National Class are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

### COUNT IV
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (U.C.C. § 2-314)

274.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

275.    Plaintiffs assert this Count on behalf of themselves and members of the Nationwide Class or, in the alternative, on behalf of members of the State Subclasses.

276.    Plaintiffs assert claims for breach of implied warranty of merchantability under U.C.C. § 2-314, which has been adopted by and is materially the same under the laws of each state (except Louisiana), the District of Columbia, and Puerto Rico or which can be sorted into a small number of groups containing materially identical elements.

277.    Evenflo is and was at all relevant times a merchant as defined by U.C.C. § 2-104

278.    The Big Kid booster seats are and were at all relevant times goods as defined by U.C.C. § 2-105.

279.    The U.C.C. states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314(1).

280.    The U.C.C. states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." U.C.C. § 2-314(2)(f).

281.    Plaintiffs and members of the Nationwide Class purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

282.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty to Plaintiffs and members of the Nationwide Class that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

283.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

284.    Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that they did not conform to Evenflo's affirmations of fact.

285.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

286.    As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, Plaintiffs and members of the Nationwide Class suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

287.    Plaintiffs and members of the National Class are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT V
## UNJUST ENRICHMENT

288.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

289.    Plaintiffs bring this Count in the alternative to Counts I-IV pursuant to Federal Rule of Civil Procedure 8(d)(2).

290.    Plaintiffs assert this Count on behalf of themselves and members of the Nationwide Class or, in the alternative, on behalf of members of the State Subclasses.

291.    Plaintiffs assert claims under the law of unjust enrichment of the fifty states, the District of Columbia, and Puerto Rico, which are materially the same, or which can be sorted into a small number of groups containing materially identical elements.

292.    Evenflo made affirmative representations to Plaintiffs and members of the Nationwide Class that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

293.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

294.    Plaintiffs and the members of the Nationwide Class purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known that the booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards."

295.    Evenflo was unjustly enriched at the expense of and to the detriment of Plaintiffs and Nationwide Class members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Plaintiffs and the Nationwide Class members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

296.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers, and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Plaintiffs and members of the Nationwide Class. Plaintiffs and members of the Nationwide Class therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

B.      **Claims Brought on Behalf of the California Subclass**

**COUNT VI**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

297.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

298.    This claim is brought by Plaintiffs Mona-Alicia Sanchez and Heather Hampton, ("California Plaintiffs") against Evenflo on behalf of themselves and the California Subclass members.

299.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

300.    Evenflo engaged in unfair and deceptive trade practices that violated the UCL by representing to California Plaintiffs and California Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds, despite knowing that the booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

301.    Evenflo had a duty to disclose to California Plaintiffs and California Subclass members that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed, but Evenflo intentionally failed to disclose these material facts to California Plaintiff and California Subclass members.

302.    California Plaintiffs and California Subclass members reasonably relied on and were induced to act by Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats.

303.    Had Evenflo not made affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats, California Plaintiffs and California Subclass members would not have purchased a Big Kid booster seat or would have paid less for it.

304.    As a direct and proximate result of Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats, Plaintiffs and California Subclass members sustained monetary damage because they purchased products that they otherwise would not have purchased and/or overpaid for the Big Kid booster seats.

305.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and members of the California Subclass any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below.

### COUNT VII
### VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT
### (CAL. CIV. CODE §§ 1750–85)

306.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

307.    This claim is brought by California Plaintiffs against Evenflo on behalf of themselves and the California Subclass members.

308.    The California Legal Remedies Act prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The prohibited unfair or deceptive acts or practices include, among others: (a) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not

have," *id.* § 1770(a)(5); and (b) "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," *id.* § 1770(a)(7).

309.    Evenflo is a "person" under the California Legal Remedies Act. *Id.* § 1761(c).

310.    Plaintiffs and California Subclass members each purchased one or more Evenflo "Big Kid" booster seats and are "consumers" under the California Legal Remedies Act. *Id.* § 1761(d).

311.    Evenflo made affirmative representations to California Plaintiffs and California Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

312.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

313.    Evenflo had a duty to disclose to California Plaintiffs and California Subclass members that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed, but Evenflo failed to disclose these material facts to California Plaintiffs and California Subclass members.

314.    Evenflo's affirmative misrepresentations and material omissions constituted both "unfair" and "deceptive" acts in violation of the California Legal Remedies Act.

315.    Evenflo's conduct violated at least the following provisions of the Legal Remedies Act:

    a.    Cal. Civ. Code § 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

b.    Cal. Civ. Code § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade if they are of another.

316.    Evenflo misrepresented and omitted material facts regarding its Big Kid booster seats with an intent to mislead California Plaintiffs and California Subclass members.

317.    Evenflo's affirmative misrepresentations and omissions were material to California Plaintiffs and California Subclass members because they concerned the safety of the Big Kid booster seats, consideration of which was material to determining the value and price of the Big Kid booster seats.

318.    Evenflo was in exclusive control of the material facts regarding the true weight and safety attributes of its Big Kid booster seats, and such facts were not generally known to the public, California Plaintiffs, or California Subclass members.

319.    In purchasing Big Kid booster seats from Evenflo, California Plaintiffs and California Subclass members were deceived by Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats.

320.    Evenflo knowingly engaged in a pattern of deception and deliberate public disinformation with regard to the safety profile of its Big Kid booster seats. California Plaintiffs and California Subclass members did not, and could not, unravel Evenflo's deception on their own.

321.    Evenflo knew or should have known that its conduct violated the California Legal Remedies Act.

322.    California Plaintiffs and California Subclass members reasonably relied on and were induced to act by Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats.

323.    Had Evenflo not made affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats, California Plaintiffs and California Subclass members would not have purchased a Big Kid booster seat or would have paid less for it.

324.    As a direct and proximate result of Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats, California Plaintiffs and California Subclass members sustained monetary damage because they purchased products that they otherwise would not have purchased and/or overpaid for the Big Kid booster seats.

325.    Evenflo's unlawful acts and practices complained of herein affect the public interest.

326.    On February 19, 2020, California Plaintiffs sent a notice letter under Cal. Civ. Code § 1782 to Evenflo.

327.    Evenflo did not rectify its conduct within 30 days of receiving California Plaintiffs' notice. Therefore, California Plaintiffs request the following forms of relief pursuant to Cal. Civ. Code § 1782:

a.    Actual damages measured either by (1) a refund of the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations); (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true (because, at minimum, they would have paid less but-for Evenflo's material misrepresentations); and/or (3) the monetary difference between the actual value of the Big Kid seat at the time of purchase and the price Plaintiffs paid for it;

b.    Restitution of money to California Plaintiffs and California Subclass members, and the general public;

c.    Punitive damages;

d.    An additional award of up to $5,000 to each plaintiff and any Subclass member who is a "senior citizen";

e.    Attorneys' fees and costs; and

f.    Other relief that this Court deems proper.

## COUNT VIII
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)

328.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

329.     This claim is brought by California Plaintiffs against Evenflo on behalf of themselves and the California Subclass members.

330.     California Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

331.     Evenflo caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Evenflo, to be untrue and misleading to consumers, including Plaintiffs and the other California Subclass members.

332.     Evenflo has violated § 17500 because the misrepresentations and omissions regarding the safe weight range and side impact crash-tested nature of the Big Kid Booster seats, as set forth in this Complaint, were material and likely to deceive a reasonable consumer.

333.     California Plaintiffs and the other California Subclass members have suffered an injury in fact, including the loss of money or property, as a result of Evenflo's unfair, unlawful, and/or deceptive practices. In purchasing their Big Kid booster seats, Plaintiffs and the other California Subclass members relied on the affirmative misrepresentations and material omissions of Evenflo with respect to the safety, safe weight range; and testing of the Big Kid booster seats. Evenflo's representations turned out not to be true because Evenflo knew well that its booster

seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed. Had California Plaintiffs and the other California Subclass members known this, they would not have purchased the Big Kid booster seats or would have paid less for them. Accordingly, California Plaintiffs and the other California Subclass members overpaid for their Big Kid booster seats and did not receive the benefit of their bargain.

334.    All of the wrongful conduct alleged herein occurred in the conduct of Evenflo's business. Evenflo's wrongful conduct was part of a pattern or generalized course of conduct, both in the State of California and nationwide.

335.    California Plaintiffs, individually and on behalf of the other California Subclass members, request that this Court enter such orders or judgments as may be necessary to restore to California Plaintiffs and the other California Subclass members any money Evenflo acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

### COUNT IX
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY – SONG-BEVERLY CONSUMER WARRANTY ACT
### (CAL. CIVIL CODE § 1790, *ET SEQ.*)

336.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

337.    This claim is brought by California Plaintiffs against Evenflo on behalf of themselves and the California Subclass members.

338.    The Big Kid booster seats are and were at all relevant times consumer goods within the meaning of Cal. Civ. Code § 1791(a).

339.    California Plaintiffs are and were at all relevant times buyers within the meaning of Cal. Civ. Code § 1791(b).

340. Evenflo is and was at all relevant times a manufacturer as defined by Cal. Civ. Code § 1791(j). At the time of purchase, Evenflo was in the business of selling consumer goods to consumers.

341. A warranty that consumer goods are in merchantable condition is implied by law pursuant to Cal. Civ. Code §§ 1791.1 & 1792.

342. The implied warranty that consumer goods are in a merchantable condition means that the goods "conform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a)(4).

343. California Plaintiff and members of the California Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats. Evenflo knew or had reason to know of the specific use for which the Big Kid booster seats were purchased.

344. Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty to California Plaintiffs and members of the California Subclass that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

345. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

346. Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that they did not conform to Evenflo's affirmations of fact.

347.    Evenflo cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Big Kid booster seats.

348.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

349.    As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, California Plaintiffs and members of the California Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

350.    California Plaintiff and members of the California Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT X
## BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE
### (CAL. COMM. CODE § 2313)

351.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

352.    This claim is brought by California Plaintiffs against Evenflo on behalf of themselves and the California Subclass members.

353.    Evenflo is and was at all relevant times a merchant as defined by Cal. Comm. Code § 2104.

354.    The Big Kid booster seats are and were at all relevant times goods as defined by Cal. Comm. Code § 2105.

355.    Cal. Comm. Code § 2313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

356.    California Plaintiffs and members of the California Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

357.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

358.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

359.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

360.    As a direct and proximate result of Evenflo's breach of the express warranty, California Plaintiffs and members of the California Subclass suffered monetary damage at the

point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

361.    California Plaintiffs and members of the California Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT XI
## UNJUST ENRICHMENT

362.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

363.    California Plaintiffs bring this Count in the alternative to Counts VI-X pursuant to Federal Rule of Civil Procedure 8(d)(2).

364.    This claim is brought by California Plaintiffs against Evenflo on behalf of themselves and the California Subclass members.

365.    Evenflo made affirmative representations to California Plaintiffs and California Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

366.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

367.    California Plaintiffs and the members of the California Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known that the booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards."

368.    Evenflo was unjustly enriched at the expense of and to the detriment of California Plaintiffs and California Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and California Plaintiffs and California Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

369.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as California Plaintiffs and the California Subclass.

370.    California Plaintiffs and members of the California Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**C.    Claims Brought on Behalf of the Florida Subclass**

<div align="center">

**COUNT XII**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(FLA. STAT. § 501.201, *ET SEQ.*)**

</div>

371.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

372.    This claim is brought by Plaintiffs Karyn Aly and Debora de Souza Correa Talutto ("Florida Plaintiffs") against Evenflo on behalf of themselves and members of the Florida Subclass.

373.    Florida Plaintiffs and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

374.    Evenflo advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly affecting the people of Florida.

375.    Evenflo engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

376.    Evenflo's false representations and omissions as alleged herein were material because they were likely to deceive reasonable consumers.

377.    Had Evenflo disclosed to Florida Plaintiffs and Florida Subclass members material facts, including but not limited to: (a) that neither states nor the federal government had developed side-impact testing rules for child safety seats; (b) that the bar for "passing" Evenflo's testing was so low that the only way to fail the company's test is if a child-sized dummy ended up on the floor or the booster seat itself broke into pieces; (c) that the booster seat passed the company's side-impact tests even if the child-sized dummy was violently moved or jostled; (d) that Evenflo's side-impact testing was performed by placing a product on a bench (resembling a car seat), moving that bench at 20 miles per hour, then suddenly decelerating it which is in stark contrast to NHTSA's rating program; (e) that internal videos of Evenflo's side impact tests for the Big Kid booster seats show child-sized test dummies bending violently at the hip, torsos, and neck, as well as test dummy heads being thrown to the side, which present a high risk of serious injuries to the head, neck, and spine; (f) that children should not be moved from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat; and (g) that no child should use a booster seat until he or she weighs at least 40 pounds and that experts now recommend keeping children in harnessed seats until 65, or even 90, pounds, Florida Plaintiffs and Florida Subclass members would not have purchased the Big Kid booster seats or would have paid less. Florida Plaintiffs and Florida Subclass members acted reasonably in relying on Evenflo's misrepresentations and omissions, the truth of which they could not have discovered.

378.    As a direct and proximate result of Evenflo's deceptive acts and practices, Florida Plaintiffs and Florida Subclass members have suffered ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Big Kid booster seats.

379.    Florida Plaintiffs and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

<div align="center">

**COUNT XIII**
**BREACH OF EXPRESS WARRANTY BY AFFIRMATION,**
**PROMISE, DESCRIPTION, OR SAMPLE**
**(FLA. STAT. § 672.313)**

</div>

380.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

381.    This claim is brought by Florida Plaintiffs against Evenflo on behalf of themselves and members of the Florida Subclass.

382.    Evenflo is and was at all relevant times a merchant as defined by Fla. Stat. § 672.104.

383.    The Big Kid booster seats are and were at all relevant times goods as defined by Fla. Stat. § 672.105.

384.    Fla. Stat. § 672.313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

385.    Florida Plaintiffs and members of the Florida Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third

party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

386.   Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

387.   The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

388.   Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

389.   As a direct and proximate result of Evenflo's breach of the express warranty, Florida Plaintiffs and members of the Florida Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

390.   Florida Plaintiffs and members of the Florida Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

**D.     Claims Brought on Behalf of the Georgia Subclass**

**COUNT XIV**
**GEORGIA FAIR BUSINESS PRACTICES ACT**
**(O.C.G.A. § 10-1-390, *ET SEQ.*)**

391.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

392.     This claim is brought by Plaintiff Sakina Taylor ("Georgia Plaintiff") against Evenflo on behalf of herself and members of the Georgia Subclass.

393.     Georgia Plaintiff and Georgia Subclass members are "consumers" as defined by O.C.G.A. § 10-1-392(a)(6).

394.     Evenflo advertised, offered, or sold goods or services in Georgia and engaged in trade or commerce directly affecting the people of Georgia.

395.     Evenflo engaged in unfair and deceptive acts and practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce, in violation of O.C.G.A. § 10-1-393(a).

396.     Evenflo's false representations and omissions as alleged herein were material because they were likely to deceive reasonable consumers.

397.     Evenflo had an independent duty to disclose to Georgia Plaintiff and Georgia Subclass members that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed, because (1) Evenflo was in exclusive control of the material facts regarding the true weight and safety attributes of its Big Kid booster seats, and such facts were not generally known to the public, Georgia Plaintiff, or Georgia Subclass members; (2) Evenflo made partial representations about material facts to Georgia Plaintiff and Georgia Subclass members but suppressed other material facts; and (3) Evenflo actively concealed material facts from Georgia Plaintiff and Georgia Subclass members.

398.    Had Evenflo disclosed to Georgia Plaintiff and Georgia Subclass members material facts, including but not limited to: (a) that neither states nor the federal government had developed side-impact testing rules for child safety seats; (b) that the bar for "passing" Evenflo's testing was so low that the only way to fail the company's test is if a child-sized dummy ended up on the floor or the booster seat itself broke into pieces; (c) that the booster seat passed the company's side-impact tests even if the child-sized dummy was violently moved or jostled; (d) that Evenflo's side-impact testing was performed by placing a product on a bench (resembling a car seat), moving that bench at 20 miles per hour, then suddenly decelerating it which is in stark contrast to NHTSA's rating program; (e) that internal videos of Evenflo's side impact tests for the Big Kid booster seats show child-sized test dummies bending violently at the hip, torsos, and neck, as well as test dummy heads being thrown to the side, which present a high risk of serious injuries to the head, neck, and spine; (f) that children should not be moved from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat; and (g) that no child should use a booster seat until he or she weighs at least 40 pounds and that experts now recommend keeping children in harnessed seats until 65, or even 90, pounds, Georgia Plaintiff and Georgia Subclass members would not have purchased the Big Kid booster seats or would have paid less. Georgia Plaintiff and Georgia Subclass members acted reasonably in relying on Evenflo's misrepresentations and omissions, the truth of which they could not have discovered.

399.    As a direct and proximate result of Evenflo's deceptive acts and practices, Georgia Plaintiff and Georgia Subclass members have suffered ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Big Kid booster seats.

400.    Evenflo was provided notice of its violations of the GFBPA as outlined herein, including by the numerous consumer class action complaints filed against it.

401.    Evenflo intentionally and knowingly misrepresented and failed to disclose material facts it had a duty to disclose regarding its Big Kid model booster seats with intent to mislead Georgia Plaintiff and Georgia Subclass members.

402.    Georgia Plaintiff and Georgia Subclass members seek all monetary and non-monetary relief allowed by law, including general and exemplary damages; declaratory relief; reasonable attorneys' fees and costs; and any other relief that is just and proper under O.C.G.A. § 10-1-399.

## COUNT XV
## BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE
## (O.C.G.A. § 11-2-313)

403.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

404.    This claim is brought by Georgia Plaintiff against Evenflo on behalf of herself and members of the Georgia Subclass.

405.    Evenflo is and was at all relevant times a "merchant" as defined by O.C.G.A. § 11-2-104(1) and a "seller" as defined by O.C.G.A. § 11-2-103(1)(d).

406.    The Big Kid booster seats are and were at all relevant times goods as defined by O.C.G.A. § 11-2-105(1).

407.    O.C.G.A. § 11-2-313(1)(a) states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

408.    Georgia Plaintiff and Georgia Subclass members purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third

party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

409.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

410.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

411.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

412.    As a direct and proximate result of Evenflo's breach of the express warranty, Georgia Plaintiff and Georgia Subclass members suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

413.    Georgia Plaintiff and Georgia Subclass members are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

**COUNT XVI**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(O.C.G.A. § 11-2-314)**

414.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

415.    This claim is brought by Georgia Plaintiff against Evenflo on behalf of herself and members of the Georgia Subclass.

416.    Evenflo is and was at all relevant times a "merchant" as defined by O.C.G.A. § 11-2-104(1) and a "seller" as defined by O.C.G.A. § 11-2-103(1)(d).

417.    The Big Kid booster seats are and were at all relevant times goods as defined by O.C.G.A. § 11-2-105(1).

418.    A warranty that the Big Kid booster seats were in merchantable condition is implied by law pursuant to O.C.G.A. § 11-2-314.

419.    Georgia law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." O.C.G.A. § 11-2-314(2)(f).

420.    Georgia Plaintiff and Georgia Subclass members purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

421.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond

government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

422.    Evenflo cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Big Kid booster seats.

423.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

424.    As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, Georgia Plaintiff and Georgia Subclass members suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

425.    Georgia Plaintiff and Georgia Subclass members are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT XVII
## UNJUST ENRICHMENT

426.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

427.    Georgia Plaintiff bring this Count in the alternative to Counts XIV-XVI pursuant to Federal Rule of Civil Procedure 8(d)(2).

428.    Georgia Plaintiff asserts this Count on behalf of herself and members of the Georgia Subclass.

429.    Evenflo made affirmative representations to Georgia Plaintiff and Georgia Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

430.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

431.    Georgia Plaintiff and Georgia Subclass members purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known that the booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards."

432.    Evenflo was unjustly enriched at the expense of and to the detriment of Georgia Plaintiff and Georgia Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Georgia Plaintiff and Georgia Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

433.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Georgia Plaintiff and Georgia Subclass members. Georgia Plaintiff and Georgia Subclass members therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

E.    **Claims Brought on Behalf of the Indiana Subclass**

**COUNT XVIII**
**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT ("IDCSA")**
**(IND. CODE § 24-5-0.5-1, *ET SEQ.*)**

434.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

435.    This count is brought by Plaintiff Jessica Greenshner and Plaintiff Becky Brown ("Indiana Plaintiffs") on behalf of themselves and members of the Indiana Subclass.

436.    Evenflo is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

437.    Evenflo is a "supplier" as defined by Ind. Code § 24-5-0.5-2(a)(3)(A) and regularly engages in or solicits "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

438.    Evenflo received notice from Plaintiffs pursuant to Ind. Code § 24-5-0.5-5 concerning its wrongful conduct as alleged herein. Moreover, Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Evenflo was provided notice by the numerous consumer class action complaints filed against it. Therefore, sending pre-suit notice pursuant to Ind. Code § 24-5-0.5-5 is an exercise in futility for Indiana Plaintiffs because Evenflo has not cured its unfair, abusive, and deceptive acts and practices, or its violations of IDCSA were incurable.

439.    Evenflo engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3.

440.    Prohibited deceptive acts in violation of Indiana Code § 24-5-0.5-3, include, but are not limited to: (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (b) misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

441.    Evenflo engaged in deceptive practices that violated the IDCSA by knowingly making misleading statements about the safety and safety testing of its Big Kid booster seats and knowingly failing to disclose the true safety risks posed by its Big Kid booster seats.

442.    For example, Evenflo falsely and misleadingly represented that the Big Kid booster seats were "Side Impact Tested" and safe for children as small as 40 or even 30 pounds. Evenflo also failed to disclose material facts, including but not limited to the following: (1) that neither states nor the federal government had developed side-impact testing rules for child safety seats; (2) that the bar for "passing" Evenflo's testing was so low that the only way to fail the company's test was if a child-sized dummy ends up on the floor or the booster seat itself breaks into pieces; (3) that the booster seat passed the company's side-impact tests even if the child-sized dummy was violently moved or jostled; (4) that Evenflo's side-impact test was performed by placing a product on a bench (resembling a car seat), moving that bench at 20 miles per hour, then suddenly decelerating it which is in stark contrast to NHTSA's rating program; (5) that internal videos of Evenflo's side impact tests for the Big Kid booster seat show child-sized test dummies bending violently at the hip, torsos, and neck, as well as test dummy heads being thrown to the side which presents a high risk of serious injuries to the head, neck, and spine; (6) that children should not be moved from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat; and (7) that no child should use a booster seat until he or she weighs at least 40 pounds and that experts now recommend keeping children in harnessed seats until 65, or even 90, pounds.

443.    Evenflo's acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

444.    The injury to consumers from Evenflo's conduct was and is substantial because it was non-trivial and non-speculative and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant number of consumers, but also because it inflicted a significant amount of harm on each consumer.

445.    Consumers could not have reasonably avoided injury because Evenflo's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the safety and safety testing profile of Evenflo's Big Kid booster seats, Evenflo created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

446.    Evenflo's business practices, in concealing material information or misrepresenting the qualities, characteristics, and performance of its Big Kid booster seats had no countervailing benefit to consumers or to competition.

447.    Evenflo's acts and practices were also "abusive" for numerous reasons, including: (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction; consumers lacked an understanding of the material risks and costs of a variety of their transactions; (c) because they took unreasonable advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Evenflo; and (d) because Evenflo took unreasonable advantage of consumers' reasonable reliance that it was providing truthful and accurate information.

448.    Evenflo intentionally and knowingly misrepresented and failed to disclose material facts it had a duty to disclose regarding its Big Kid model booster seats with intent to mislead Indiana Plaintiffs and the Indiana Subclass.

449.    Evenflo's omissions and/or misrepresentations about the safety of its Big Kid model booster seats were material to Indiana Plaintiffs and the Indiana Subclass because they were likely to deceive reasonable consumers. Indiana Plaintiffs and Indiana Class members relied on Evenflo's material misrepresentations and omissions regarding the safety of Evenflo's Big Kid booster seats.

450.    Evenflo owed Indiana Plaintiffs and the Indiana Subclass a duty to disclose material facts about the safety risks posed by its Big Kid model booster seats, because Evenflo:

      a.    Possessed exclusive knowledge about its testing of these seats;

      b.    Intentionally concealed the foregoing from Indiana Plaintiffs and the Indiana Subclass; and/or

      c.    Made incomplete and misleading representations that its Big Kid model seats were "Side Impact Tested," while purposefully withholding material facts from Indiana Plaintiffs and the Indiana Subclass that contradicted these representations.

451.    Indiana Plaintiffs and absent Indiana Subclass members had unequal bargaining power with respect to their purchase and/or use of Evenflo's Big Kid booster seats because of Evenflo's omissions and misrepresentations.

452.    Indiana Plaintiffs and members of the Indiana Subclass could not have discovered through the exercise of reasonable diligence the true safety and safety testing features of Evenflo's Big Kid booster seat models. Indiana Plaintiffs and Indiana Subclass members acted reasonably in relying on Evenflo's misrepresentations and omissions, the truth of which they could not have discovered.

453.    Had Evenflo disclosed to Indiana Plaintiffs and Indiana Subclass members that its booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards," Indiana Plaintiffs and the Indiana Subclass members would not have purchased Big Kid model booster seats and/or would have paid less. Instead, Evenflo kept these tests secret and embarked on a disinformation campaign aimed at convincing millions that its Big Kid booster seats were safe.

454.    Evenflo's deceptive, unfair, and abusive acts or practices were likely to and did in fact deceive reasonable consumers, including Indiana Plaintiffs and the Indiana Subclass members, about the true weight and safety attributes of the Big Kid booster seats.

455.    Evenflo had an ongoing duty to all Evenflo customers to refrain from deceptive, unfair, and abusive acts and practices under the IDCSA.

456.    Evenflo acted intentionally, knowingly, and maliciously to violate IDCSA, and recklessly disregarded Indiana Plaintiffs' and Indiana Subclass members' rights. Evenflo's knowledge about the true weight and safety attributes of the Big Kid booster seats put it on notice that the Big Kid booster seats were not as it advertised.

457.    Evenflo's conduct includes incurable deceptive acts that Evenflo engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

458.    As a direct and proximate result of Evenflo's unfair, abusive, and deceptive acts or practices, Indiana Plaintiffs and absent Indiana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Big Kid booster seats.

459.    Indiana Plaintiffs and Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; and punitive damages.

## COUNT XIX
## BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE
### (IND. CODE § 26-1-2-313)

460.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

461.    This count is brought by Indiana Plaintiffs on behalf of themselves and members of the Indiana Subclass.

462.    Evenflo is and was at all relevant times a merchant as defined by Ind. Code § 26-1-2-104.

463.    The Big Kid booster seats are and were at all relevant times goods as defined by Ind. Code § 26-1-2-105.

464.    Ind. Code § 26-1-2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

465.    Indiana Plaintiffs and members of the Indiana Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

466.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

467.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

468.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

469.    As a direct and proximate result of Evenflo's breach of the express warranty, Indiana Plaintiffs and members of the Indiana Subclass suffered monetary damage at the point of

sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

470.    Indiana Plaintiffs and members of the Indiana Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

<div align="center">

**COUNT XX**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(IND. CODE § 26-1-2-314)**

</div>

471.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint

472.    This count is brought by Indiana Plaintiffs on behalf of themselves and members of the Indiana Subclass.

473.    Evenflo is and was at all relevant times a merchant as defined by Ind. Code § 26-1-2-104.

474.    The Big Kid booster seats are and were at all relevant times goods as defined by Ind. Code § 26-1-2-105.

475.    A warranty that the Big Kid booster seats were in merchantable condition is implied in a contract for their sale pursuant to Ind. Code § 26-1-2-314.

476.    Indiana law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." Ind. Code § 26-1-2-314(2)(f).

477.    Indiana Plaintiffs and members of the Indiana Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of

Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats. Evenflo knew or had reason to know of the specific use for which the Big Kid booster seats were purchased.

478.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

479.    Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that they did not conform to Evenflo's affirmations of fact.

480.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

481.    As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, Indiana Plaintiffs and members of the Indiana Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

482.    Indiana Plaintiffs and members of the Indiana Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct

described herein, and any such obligations are unconscionable and therefore void as a matter of law.

**COUNT XXI**
**UNJUST ENRICHMENT**

483.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

484.     Indiana Plaintiffs brings this Count in the alternative to Counts XVIII-XX pursuant to Federal Rule of Civil Procedure 8(d)(2).

485.     This claim is brought by Indiana Plaintiffs against Evenflo on behalf of themselves and the members of the Indiana Subclass.

486.     Evenflo made affirmative representations to Indiana Plaintiffs and Indiana Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

487.     Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

488.     Indiana Plaintiffs and Indiana Subclass members purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known that the booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards."

489.     Evenflo was unjustly enriched at the expense of and to the detriment of Indiana Plaintiffs and Indiana Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Indiana Plaintiffs and Indiana Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

490.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Indiana Plaintiffs and Indiana Subclass members.

491.    Indiana Plaintiffs and Indiana Subclass members therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**F.    Claims Brought on Behalf of the Iowa Subclass**

**COUNT XXII**
**VIOLATION OF IOWA PRIVATE RIGHT OF ACTION**
**FOR CONSUMER FRAUDS ACT**
**(IOWA CODE § 714H.1, *ET SEQ.*)**

492.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

493.    This count is brought by Plaintiff Anna Gathings ("Iowa Plaintiff"), on behalf of herself and members of the Iowa Subclass.

494.    The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H.3, provides in pertinent part:

> A person shall not engage in a practice or act the person knows or reasonably should know is [a] deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise….

495.    Under the Iowa Private Right of Action for Consumer Frauds Act, actual damages "means all compensatory damages proximately caused by the prohibited practice or act that are reasonably ascertainable in amount" and "[a] consumer who suffers an ascertainable loss of

money or property as the result of a prohibited practice or act in violation of this chapter may bring an action at law to recover actual damages," and reasonable attorney's fees.

496.    Defendant engaged in a deceptive consumer-oriented act by falsely representing on its website, the product container, product manual and/or inserts that the "Big Kid" booster seat was:

> a.    Safe for children as small as 30 pounds, while sales of the same booster seat in Canada were restricted to use by children at least 40 pounds, and there was evidence that an even greater weight was required for its safe use;
>
> b.    "Side impact tested" at standards twice as demanding as the government's standards, whereas there never were any adopted government standard for side impact collisions for booster seats, and Defendant's own testing and evidence from personal injury litigation demonstrated that the "Big Kid" booster seats did not protect occupants from anticipated side impact collisions and exposed vulnerable infants and children to traumatic head, neck, spine and other injuries entailing serious injury or even death.

497.    These alleged unfair practices, deceptions, fraud, false pretenses, false promises, or misrepresentations related to a material fact or facts.

498.    Iowa Plaintiff and the Iowa Subclass have sustained ascertainable losses of money, and are entitled to actual damages, as the result of a prohibited practice or actions. In addition, Iowa Plaintiff and the Iowa Subclass shall show by a preponderance of clear, convincing, and satisfactory evidence that the prohibited practice or act in violation in willful and wanton disregard for the rights or safety of another, entitling them to statutory damages up to three times the amount of actual damages may be awarded to a prevailing consumer.

**COUNT XXIII**
**BREACH OF EXPRESS WARRANTY BY AFFIRMATION,**
**PROMISE, DESCRIPTION, OR SAMPLE**
**(IOWA CODE § 554.2313)**

499.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

500.     This count is brought by Iowa Plaintiff on behalf of herself and members of the Iowa Subclass.

501.     Evenflo is and was at all relevant times a merchant as defined by Iowa Code § 554.2104.

502.     The Big Kid booster seats are and were at all relevant times goods as defined by Iowa Code § 554.2105.

503.     Iowa Code § 554.2313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

504.     Iowa Plaintiff and members of the Iowa Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

505.     Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

506.     The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus,

Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

507.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

508.    As a direct and proximate result of Evenflo's breach of the express warranty, Iowa Plaintiff and members of the Iowa Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

509.    Iowa Plaintiff and members of the Iowa Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

### COUNT XXIV
### BREACH OF IMPLED WARRANTY OF MERCHANTABILITY
### (IOWA CODE § 554.2314)

510.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

511.    This count is brought by Iowa Plaintiff on behalf of herself and members of the Iowa Subclass.

512.    Evenflo is and was at all relevant times a merchant as defined by Iowa Code § 554.2104.

513.    The Big Kid booster seats are and were at all relevant times goods as defined by Iowa Code § 554.2105.

514.    Pursuant to Iowa Code § 554.2314, Defendant owed implied warranties for the "Big Kid" booster seat, including that it is "fit for the ordinary purposes for which such goods are used" and that it "conform[s] to the promises or affirmations of fact made on the container."

515.    Iowa law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." Iowa Code § 554.2314(2)(f).

516.    Evenflo is in the business of manufacturing, supplying, marketing, advertising, warranting, and selling "Big Kid" booster seats. Evenflo is, and was at all relevant times, a merchant with respect to booster seats. Evenflo impliedly warranted to Iowa Plaintiff and other members of the Iowa Subclass that the "Big Kid" booster seat was of a certain quality and was fit for its ordinary and particular purpose. Evenflo also owed an implied warranty that the "Big Kid" booster seat "conform[ed] to the promises or affirmations of fact made on the container or label."

517.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

518.    Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that did not conform to Evenflo's affirmations of fact.

519.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

520.    As a direct and proximate result of Evenflo's breach of the warranties of merchantability, Iowa Plaintiff and the members of the Iowa Subclass suffered monetary damage

at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

521.    Iowa Plaintiff and members of the Iowa Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

<div align="center">

**COUNT XXV**
**UNJUST ENRICHMENT**

</div>

522.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

523.    Iowa Plaintiff bring this Count in the alternative to Counts XXII-XXIV pursuant to Federal Rule of Civil Procedure 8(d)(2).

524.    Iowa Plaintiff brings this Count on behalf of herself and the members of the Iowa Subclass.

525.    Evenflo made affirmative representations to Iowa Plaintiff and Iowa Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

526.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

527.    Iowa Plaintiff and the members of the Iowa Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "side impact tested" and suitable for children as small as 30 pounds were false and/or misleading.

528.    Evenflo was unjustly enriched at the expense of and to the detriment of Iowa Plaintiff and Iowa Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Iowa Plaintiff and the Iowa Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

529.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Iowa Plaintiff and the Iowa Subclass.

530.    Iowa Plaintiff and members of the Iowa Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**G.    Claims Brought on Behalf of the Kentucky Subclass**

**COUNT XXVI**
**BREACH OF EXPRESS WARRANTY BY AFFIRMATION,**
**PROMISE, DESCRIPTION, OR SAMPLE**
**(KY. REV. STAT. § 355.2-313)**

531.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

532.    Kentucky Plaintiff Joseph Wilder brings this count against Evenflo on behalf of himself and the members of the Kentucky Subclass.

533.    Evenflo is and was at all relevant times a merchant as defined by Ky. Rev. Stat. § 355.2-104.

534.    The Big Kid booster seats are and were at all relevant times goods as defined by Ky. Rev. Stat. § 355.2-104.

535.     Ky. Rev. Stat. § 355.2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

536.     Kentucky Plaintiff and members of the Kentucky Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

537.     Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

538.     The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

539.     Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

540.     As a direct and proximate result of Evenflo's breach of the express warranty, Kentucky Plaintiff and members of the Kentucky Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference

between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

541.    Kentucky Plaintiff and members of the Kentucky Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

### COUNT XXVII
### UNJUST ENRICHMENT

542.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

543.    Kentucky Plaintiffs bring this Count in the alternative to Counts XXVI pursuant to Federal Rule of Civil Procedure 8(d)(2).

544.    Kentucky Plaintiff brings this Count on behalf of himself and the members of the Kentucky Subclass.

545.    Evenflo made affirmative representations to Kentucky Plaintiff and Kentucky Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

546.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

547.    Kentucky Plaintiff and the members of the Kentucky Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

548.    Evenflo was unjustly enriched at the expense of and to the detriment of Kentucky Plaintiff and Kentucky Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Kentucky Plaintiff and the Kentucky Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

549.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Kentucky Plaintiff and the Kentucky Subclass.

550.    Kentucky Plaintiff and members of the Kentucky Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**H.    Claims Brought on Behalf of the Louisiana Subclass**

**COUNT XXVIII**
**BREACH OF WARRANTY AGAINST REDHIBITORY DEFECTS**
**(LA. CIV. CODE ART. 2520, *ET SEQ.*)**

551.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

552.    Plaintiff Talise Alexie ("Louisiana Plaintiff" for purposes of this count) brings this count against Evenflo on behalf of herself and the members of the Louisiana Subclass.

553.    Louisiana Plaintiff and Louisiana Subclass members are and were at all relevant times buyers under La. Civ. Code articles 2520, *et seq.*

554.     Defendant is and was at all relevant times a seller and manufacturer under La. Civ. Code articles 2520, *et seq.*

555.     Defendant engaged in trade or commerce at all relevant times under La. Civ. Code articles 2520, *et seq.* by designing, manufacturing, distributing, advertising, marketing, labeling, offering for sale, selling, and distributing the Big Kid booster seat at issue.

556.     Louisiana Plaintiff and Louisiana Subclass members purchased Defendant's Big Kid booster seat either directly from Defendant or through retailers, such as Target, Walmart, Kohl's, Buy Buy Baby, and Amazon, among others.

557.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, warranted that the Big Kid booster seat was fit for its intended purpose as stated above.

558.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, warranted through the marketing, packaging, and labeling of the Big Kid booster seat that the product was "side impact tested" and that its side-impact testing "meets or exceeds all applicable federal safety standards and Evenflo's side impact standards," thereby making it safe, when in fact the warranties are meaningless as to the intended safety purposes of the Big Kid booster seat.

559.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, warranted through the marketing, packaging, and labeling of the Big Kid booster seat that the product was appropriate for children weighing 30 to 110 pounds, when in fact it is not intended or appropriate for children under 40 pounds as stated above.

560.     Each model of the Big Kid booster seat has an identical or substantially identical warranty that indicated the intended purpose, when the Big Kid booster seats are not fit for those purposes.

561.     Defendant made the foregoing representations and warranties to all buyers, which became the basis of the bargain between Louisiana Plaintiff, Louisiana Subclass members, and Defendant.

562.    In fact, Defendant's Big Kid booster seats contain redhibitory defects, as they are not safe in the event of a side impact collision or if the child weighs between 30 and 39 pounds and because each of the above-described warranties is a false and misleading misrepresentation as to the fitness of the Big Kid booster seats for particular uses.

563.    The aforementioned redhibitory defects existed at the time of delivery to the Louisiana Plaintiff and Louisiana Subclass members, were unknown to them, and could not have been discovered by any reasonably prudent buyer because of the representations and warranties of the Defendant.

564.    Defendant breached these warranties and/or contract obligations by placing the Big Kid booster seats into the stream of commerce and selling them to consumers, when the Big Kid booster seats are unsafe and pose a significant safety risk to children at the time they enter the stream of commerce. The lack of safety inherent in the Big Kid booster seat renders it unfit for its intended use and purpose and substantially and/or completely impairs the use and value of the Big Kid booster seat.

565.    Defendant breached its warranties by selling the Big Kid booster seats, which contain redhibitory defects, are unsafe for use, and cannot be used for their ordinary, intended purpose of protecting children in the event of a side impact collision and protecting children weighing as little as 30 pounds. Defendant breached its written warranties to Louisiana Plaintiff and Louisiana Subclass members in that the Big Kid booster seats are not safe for their intended purpose at the time that they left Defendant's possession or control and were sold to Louisiana Plaintiff and Louisiana Subclass members, creating a serious safety risk to Louisiana Plaintiff, Louisiana Subclass members, and their children.

566.    Defendant further breached its warranty to adequately repair or replace the Big Kid booster seat despite its knowledge of the defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing safe Big Kid booster seats.

567.    Defendant had actual knowledge of the existence of the redhibitory defect in the Big Kid booster seats through the results of its own internal side-impact testing and, as both the

manufacturer and seller of the Big Kid booster seat, is deemed to have known that the Seat had a redhibitory defect under La. Civ. Code article 2545. Though notice of the existence of the defect is not required under La. Civ. Code article 2522, Defendant was provided notice of the redhibitory defects and breaches of the above-described warranties through previous lawsuits against Defendant involving serious and permanent injuries sustained by children while using the Big Kid booster seats.

568.     Louisiana Plaintiff and Louisiana Subclass members are entitled to reimbursement for the full cost of the Big Kid booster seats due to the above-described redhibitory defects and Defendant's breach of its warranties. Louisiana Plaintiff and Louisiana Subclass members are also entitled to recover their attorneys' fees pursuant to the law of redhibition.

569.     The aforementioned redhibitory defect renders Defendant's Big Kid booster seat useless or renders its use so inconvenient that it must be presumed that Louisiana Plaintiff and Louisiana Subclass members would not have bought it had they known of the defect. Alternatively, the redhibitory defect diminishes the usefulness or value of the seat to the point that Louisiana Plaintiff and Louisiana Subclass members would have either paid less or not bought the Big Kid booster seat at all.

570.     Louisiana Plaintiff and Louisiana Subclass members were damaged by Defendant's uniform misconduct, as they did not receive the benefit of the bargain, lost the Big Kid booster seat's intended benefits, and suffered damages at the point-of-sale, as they would not have purchased the Big Kid booster seats or would have paid less if they had known the truth about the unreasonable safety risk to children posed by the Big Kid booster seats.

## COUNT XXIX
## BREACH OF WARRANTY OF FITNESS
### (LA. CIV. CODE ARTS. 2475 AND 2524)

571.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

572.    This claim is brought by Louisiana Plaintiff against Evenflo on behalf of herself and the members of the Louisiana Subclass.

573.    Louisiana Plaintiff brings this Count in the alternative to Counts XXXIV and XXXVI pursuant to Federal Rule of Civil Procedure 8(d)(2).

574.    La. Civ. Code art. 2475 provides that the seller "warrants that the thing sold is fit for its intended use."

575.    La. Civ. Code art. 2524 provides: "The thing sold must be reasonably fit for its ordinary use. When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose."

576.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, warranted through the marketing, packaging, and labeling of the Big Kid booster seat that the product was "side impact tested" and that its side-impact testing "meets or exceeds all applicable federal safety standards and Evenflo's side impact standards," thereby making it safe, when in fact the warranties are meaningless as to the intended safety purposes of the Big Kid booster seat.

577.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, warranted through the marketing, packaging, and labeling of the Big Kid booster seat that the product was intended and appropriate for children weighing 30 to 110 pounds, when in fact it is not intended or appropriate for children under 40 pounds as stated above.

578.    Ordinary use of Defendant's Big Kid booster seats includes its use to protect children in the event of a side impact collisions and to protect children weighing as little as 30 pounds.

579.    Defendant knew that the purpose of the Louisiana Plaintiff and Louisiana Subclass members for buying the Seat was to protect children from side impact collisions and to protect children who weighed between 30 and 39 pounds.

580.    The Louisiana Plaintiff and Louisiana Subclass members relied on the Defendant's skill and judgment, and the Defendant's representations of same, in selecting the Big Kid booster seat for the purpose of protecting their children from side impact collisions and protecting children who weighed between 30 and 39 pounds.

581.    Despite the aforementioned reliance by the Louisiana Plaintiff and the Louisiana Subclass members on the skill and judgment of the Defendant, the Big Kid booster seats are not safe in the event of a side impact collision or if the child weighs between 30 and 39 pounds.

582.    The Big Kid booster seat is not safe for its intended and/or ordinary use, thereby causing the Louisiana Plaintiff and Louisiana Subclass members to suffer damages as they did not receive the benefit of the bargain, lost the Big Kid booster seat's intended benefits, and suffered damages at the point-of-sale, as they would not have purchased the Big Kid booster seats or would have paid less if they had known the truth about the unreasonable safety risk to children posed by the Big Kid booster seats.

583.    Louisiana Plaintiff and Louisiana Subclass members therefore seek dissolution of the sale and damages resulting from the Defendant's breach of the warranty of fitness.

## COUNT XXX
## UNJUST ENRICHMENT

584.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

585.    This claim is brought by Louisiana Plaintiff against Evenflo on behalf of herself and the members of the Louisiana Subclass.

586.    Louisiana Plaintiff brings this Count in the alternative to Counts XXVIII-XXIX pursuant to Federal Rule of Civil Procedure 8(d)(2).

587.    Louisiana Civil Code article 2298 provides that: "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person."

588.    Evenflo made affirmative representations to Louisiana Plaintiff and Louisiana Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

589.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

590.    Louisiana Plaintiff and Louisiana Subclass members purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known that the booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards."

591.    Evenflo was enriched without justification or cause at the expense of and to the detriment of Louisiana Plaintiff and Louisiana Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed.

592.    The Louisiana Plaintiff and Louisiana Subclass members' impoverishment and Evenflo's enrichment were caused by Evenflo's unjust material misrepresentations and failure to disclose material facts, as Louisiana Plaintiff and Louisiana Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

593.    Specifically, Evenflo received and appreciated a direct financial benefit from the sale of its products to end consumers. Evenflo sold its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sold products to end consumers. The sale of Evenflo's products to end consumers resulted in revenues which were either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business was directly associated with the volume of the sale of its products to end consumers, such as Louisiana Plaintiff and Louisiana Subclass members.

594.    Louisiana Plaintiff and Louisiana Subclass members therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**I.    Claims Brought on Behalf of the Maine Subclass**

**COUNT XXXI**
**VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT**
**(5 M.R.S. § 207, *ET SEQ.*)**

595.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

596.    This claim is brought by Jeffrey Lindsey ("Maine Plaintiff") against Evenflo, on behalf of himself and the members of the Maine Subclass.

597.    The Maine Unfair Trade Practices Act declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce are … unlawful." 5 M.R.S. § 207. The Maine Unfair Trade Practices Act provides a private right of action by "[a]ny person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207." 5 M.R.S. § 213(a).

598.    At all relevant times, Defendant was engaged in trade or commerce within the State of Maine, including the trade or commerce of marketing, selling and causing to be sold the Big Kid booster seats within the State of Maine.

599.    At all relevant times, Maine Plaintiff and members of the Maine Subclass were "persons" as defined in 5 M.R.S. § 206, and they purchased Evenflo Big Kid booster seats primarily for personal, family, or household purposes.

600.    In the course of its business in trade or commerce, Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." Evenflo knew, however, that its

booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented, but Evenflo failed to disclose this to Maine Plaintiff and members of the Maine Subclass. Through this conduct Evenflo has engaged in unfair or deceptive acts or practices in the conduct of trade or commerce in violation of 5 M.R.S. § 207.

601.    The deceptive, false, and misleading labeling and marketing of the Big Kid booster seats as alleged herein were material in that they concerned facts that would have been important to a reasonable consumer in making a decision whether to purchase the Big Kid booster seats.

602.    Evenflo intentionally and knowingly misrepresented and omitted material facts regarding its Big Kid model booster seats with intent to mislead Maine Plaintiff and the Maine Subclass.

603.    Evenflo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Maine Plaintiff and the Maine Subclass members, about the true safety risks posed by its Big Kid booster seats.

604.    In addition, violations of federal consumer protection statutes, including Section 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a)(1), are also violations of 5 M.S.R. § 207. *See* 5 M.S.R. § 207(1). Because Defendant has withheld material information from consumers and made unsubstantiated advertising claims regarding the Big Kid Booster Car Seats, as alleged herein, in violation of Section 5 of the FTC Act, the conduct described herein also violates 5 M.S.R. § 207.

605.    As a direct and proximate result of Defendant's conduct in connection with the branding, labeling, marketing and selling of the Big Kid Booster Car Seats in Maine as alleged herein, Maine Plaintiff and the Maine Subclass were harmed.

606.    As a direct and proximate result of Evenflo's wrongful conduct, Maine Plaintiff and the Maine Subclass members have been damaged by their purchase of Big Kid model

booster seats, and Evenflo is liable for its actions in violation of 5 M.R.S. § 207. Accordingly, Maine Plaintiff and the other members of the Maine Subclass were harmed by, and Evenflo is liable for, its actions alleged herein in violation of 5 M.R.S. § 207.

607.    The harm suffered could not be reasonably avoided by Maine Plaintiff and the Maine Subclass members, and the harmed suffered by them is not outweighed by any countervailing benefit to the consumers.

608.    As a result of the conduct described herein, Evenflo is liable to Maine Plaintiff and the Maine Subclass for actual damages that Plaintiff and the Maine Subclass incurred, restitution or such other equitable relief together with all related court costs, attorneys' fees, and interest.

609.    Pursuant to 5 M.R.S. § 213(1-A), Plaintiffs sent a demand letter to Defendant regarding the conduct alleged herein and requested relief. Evenflo did not provide a reasonable offer of settlement under the circumstances.

### COUNT XXXII
### BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE
### (11 M.R.S. § 2-313)

610.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

611.    This claim is brought by Maine Plaintiff against Evenflo on behalf of himself and the members of the Maine Subclass.

612.    Evenflo is and was at all relevant times a merchant as defined by 11 M.R.S. § 2-104.

613.    The Big Kid booster seats are and were at all relevant times goods as defined by 11 M.R.S. § 2-105.

614.    11 M.R.S. § 2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part

of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

615.    Maine Plaintiff and members of the Maine Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

616.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

617.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

618.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

619.    As a direct and proximate result of Evenflo's breach of the express warranty, Maine Plaintiff and members of the Maine Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

620.    Maine Plaintiff and members of the Maine Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT XXXIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (11 M.R.S. § 2-314)

621.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

622.    This claim is brought by Maine Plaintiff against Evenflo on behalf of himself and the members of the Maine Subclass.

623.    Evenflo is and was at all relevant times a merchant as defined by 11 M.R.S. § 2-104.

624.    The Big Kid booster seats are and were at all relevant times goods as defined by 11 M.R.S. § 2-105.

625.    A warranty that the Big Kid booster seats were in merchantable condition is implied by law pursuant to 11 M.R.S. § 2-314.

626.    Maine law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." 11 M.R.S. § 2-314(2)(f).

627.    Maine Plaintiff and members of the Maine Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats. Evenflo knew or had reason to know of the specific use for which the Big Kid booster seats were purchased.

628.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

629.    Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that did not conform to Evenflo's affirmations of fact.

630.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

631.    As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, Maine Plaintiff and members of the Maine Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

632.    Maine Plaintiff and members of the Maine Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

**COUNT XXXIV**
**UNJUST ENRICHMENT**

633.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

634.    Maine Plaintiffs bring this Count in the alternative to Counts XXXI-XXXIII pursuant to Federal Rule of Civil Procedure 8(d)(2).

635.    This claim is brought by Maine Plaintiff against Evenflo on behalf of himself and the members of the Maine Subclass.

636.    Evenflo made affirmative representations to Maine Plaintiff and Maine Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

637.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

638.    Maine Plaintiff and Maine Subclass members purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known that the booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards."

639.    Evenflo was unjustly enriched at the expense of and to the detriment of Maine Plaintiff and Maine Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Maine Plaintiff and Maine Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

640.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as

well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Maine Plaintiff and Maine Subclass members.

641.    Maine Plaintiff and Maine Subclass members therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**J.    Claims Brought on Behalf of the Michigan Subclass**

<div align="center">

**COUNT XXXV**
**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(MICH. COMP. LAWS § 445.903, *ET SEQ.*)**

</div>

642.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

643.    This claim is brought by Plaintiff Amy Sapeika ("Sapeika") and Plaintiff Theresa Holliday ("Holliday") against Evenflo on behalf of themselves and the members of the Michigan Subclass.

644.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; or "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

645.    Sapeika, Holliday, and the Michigan Subclass members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

<div align="center">- 131 -</div>

646.     Evenflo is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

647.     In the course of its business, Evenflo made affirmative representations to Sapeika, Holliday, and members of the Michigan Subclass that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds. Evenflo knew, however, that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented, but Evenflo failed to disclose this to Sapeika, Holliday, and members of the Michigan Subclass.

648.     Evenflo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Sapeika, Holliday, and the Michigan Subclass members, about the true safety risks posed by its Big Kid booster seats.

649.     Evenflo intentionally and knowingly misrepresented material facts regarding its Big Kid model booster seats with intent to mislead Sapeika, Holliday, and the members of the Michigan Subclass.

650.     Evenflo knew or should have known that its conduct violated the Michigan CPA.

651.     Evenflo owed Sapeika, Holliday, and the Michigan Subclass members a duty to disclose that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed, because (1) Evenflo was in exclusive control of the material facts regarding the true weight and safety attributes of its Big Kid booster seats, and such facts were not generally known to the public, Sapeika, Holliday, or Michigan Subclass members and (2) Evenflo made partial representations about material facts to Sapeika, Holliday, and Michigan Subclass members but suppressed other material facts; and (3) Evenflo actively concealed material facts from Sapeika, Holliday, and Michigan Subclass members.

652.    Evenflo's omissions and/or misrepresentations about the weight limits and safety testing of its Big Kid model booster seats were material to Sapeika, Holliday, and the Michigan Subclass.

653.    Sapeika, Holliday, and the members of the Michigan Subclass suffered ascertainable loss caused by Evenflo's misrepresentations and its concealment of and failure to disclose material information. Sapeika, Holliday, and the Michigan Subclass members would not have purchased Big Kid model booster seats but for Evenflo's violations of the Michigan CPA.

654.    Evenflo had an ongoing duty to all Evenflo customers to refrain from unfair and deceptive practices under the Michigan CPA. As a direct and proximate result of Evenflo's violations of the Michigan CPA, Sapeika, Holliday, and the members of the Michigan Subclass have suffered injury-in-fact and/or actual damage.

655.    Sapeika and Holliday seek monetary relief against Evenflo measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

656.    Sapeika and Holliday also seek punitive damages because Evenflo carried out despicable conduct with willful and conscious disregard of the rights of others. Evenflo's conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT XXXVI
## BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE
### (MICH. COMP. LAWS § 440.2313)

657.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

658.    This claim is brought by Holliday against Evenflo on behalf of herself and the members of the Michigan Subclass.

659.    Evenflo is and was at all relevant times a merchant as defined by Mich. Comp. Laws § 440.2104.

660.    The Big Kid booster seats are and were at all relevant times goods as defined by Mich. Comp. Laws § 440.2105.

661.    Mich. Comp. Laws § 440.2313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

662.    Holliday and members of the Michigan Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

663.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

664.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

665.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

666.    As a direct and proximate result of Evenflo's breach of the express warranty, Holliday and members of the Michigan Subclass suffered monetary damage at the point of sale

- 134 -

in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

667.    Holliday and members of the Michigan Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT XXXVII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MICH. COMP. LAWS § 440.2314)

668.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

669.    This claim is brought by Holliday against Evenflo on behalf of herself and the members of the Michigan Subclass.

670.    Evenflo is and was at all relevant times a merchant as defined by Mich. Comp. Laws § 440.2104.

671.    The Big Kid booster seats are and were at all relevant times goods as defined by Mich. Comp. Laws § 440.2105.

672.    Michigan law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mich. Comp. Laws § 440.2314.

673.    Michigan law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." Mich. Comp. Laws § 440.2314(2)(f).

674.    Holliday and members of the Michigan Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of

Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats. Evenflo knew or had reason to know of the specific use for which the Big Kid booster seats were purchased.

675.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

676.    Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that did not conform to Evenflo's affirmations of fact.

677.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

678.    As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, Holliday and members of the Michigan Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

679.    Holliday and members of the Michigan Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT XXXVIII
## UNJUST ENRICHMENT

680.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

681.    Sapeika and Holliday bring this Count in the alternative to Counts XXXV-XXXVII pursuant to Federal Rule of Civil Procedure 8(d)(2).

682.    This claim is brought by Sapeika and Holliday against Evenflo on behalf of themselves and the members of the Michigan Subclass.

683.    Evenflo made affirmative representations to Sapeika, Holliday, and Michigan Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

684.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

685.    Sapeika, Holliday, and the members of the Michigan Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

686.    Evenflo was unjustly enriched at the expense of and to the detriment of Sapeika, Holliday, and Michigan Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts, and Sapeika, Holliday, and the Michigan Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

687.     Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Sapeika, Holliday, and the members of the Michigan Subclass.

688.     Sapeika, Holliday, and members of the Michigan Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**K.     Claims Brought on Behalf of the Missouri Subclass**

<div align="center">

**COUNT XXXIX**
**VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT**
**(MO. REV. STAT. § 407.010, *ET SEQ.*)**

</div>

689.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

690.     This claim is brought by Plaintiff Emily Naughton ("Missouri Plaintiff") against Evenflo on behalf of herself and the members of the Missouri Subclass.

691.     Missouri Plaintiff and Missouri Subclass members were at all relevant times consumers under the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.* (the "MMPA").

692.     Missouri Plaintiff and Missouri Subclass members purchased Defendant's Big Kid booster seat primarily for personal, family, or household purposes.

693.     Defendant was at all relevant times engaged in "trade" or "commerce" under the MMPA by way of its manufacturing, distributing, selling, marketing, advertising, labeling and packaging the Big Kid booster seat at issue.

694.     Defendant's Big Kid booster seat constitutes "merchandise" under the MMPA.

695.     In the course of its business, Evenflo made affirmative representations to Missouri Plaintiffs and members of the Missouri Subclass that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds. Evenflo, however, knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented, but Evenflo failed to disclose this to Missouri Plaintiffs and members of the Missouri Subclass.

696.     Evenflo had a duty to disclose to Missouri Plaintiffs and members of the Missouri Subclass that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed, because (1) Evenflo was in exclusive control of the material facts regarding the true weight and safety attributes of its Big Kid booster seats, and such facts were not generally known to the public, Missouri Plaintiffs and members of the Missouri Subclass and (2) Evenflo made partial representations about material facts to Missouri Plaintiffs and members of the Missouri Subclass but suppressed other material facts; and (3) Evenflo actively concealed material facts from Missouri Plaintiffs and members of the Missouri Subclass.

697.     Defendant's foregoing deceptive acts and practices, including its omissions while engaged in business, were and are deceptive acts or practices in violation of § 407.020.

698.     Missouri Plaintiff and Missouri Subclass members suffered damages when they purchased the Big Kid booster seats. Defendant's unconscionable, deceptive, and/or unfair practices caused actual damages to Missouri Plaintiff and the Missouri Subclass members who were unaware that the Big Kid booster seat not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there

were no applicable government side-impact tests during the relevant time period that it could

meet or exceed as Evenflo had represented.

699.    Defendant's foregoing deceptive acts and practices, including its omissions, were

likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

700.    Consumers, including Missouri Plaintiff and Missouri Subclass members, would

not have purchased the Big Kid booster seats had they known about the actual weight limit and

safety profile of the product, or the results of Defendant's internal side-impact testing.

701.    As a direct and proximate result of Defendant's deceptive acts and practices,

including its omissions, Missouri Plaintiff and Missouri Subclass members have been damaged

as alleged herein, and are entitled to recover actual damages, punitive damages, and/or restitution

to the extent permitted by law, including class action rules, in an amount to be proven at trial.

702.    In addition, Missouri Plaintiff and Missouri Subclass members seek reasonable

attorneys' fees and costs.

<div align="center">

**COUNT XL**
**BREACH OF EXPRESS WARRANTY BY AFFIRMATION,**
**PROMISE, DESCRIPTION, OR SAMPLE**
**(MO. REV. STAT. § 400.2-313)**

</div>

703.    Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

704.    This claim is brought by Missouri Plaintiff against Evenflo on behalf of herself

and the members of the Missouri Subclass.

705.    Evenflo is and was at all relevant times a merchant as defined by Mo. Rev. Stat.

§ 400.2-104.

706.    The Big Kid booster seats are and were at all relevant times goods as defined by

Mo. Rev. Stat. § 400.2-104.

707.    Mo. Rev. Stat. § 400.2-313 states that a merchant creates an express warranty by

making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and

<div align="center">

- 140 -

</div>

becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

708. Missouri Plaintiff and members of the Missouri Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

709. Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

710. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

711. Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

712. As a direct and proximate result of Evenflo's breach of the express warranty, Missouri Plaintiff and members of the Missouri Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

713.    Missouri Plaintiff and members of the Missouri Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT XLI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MO. REV. STAT. § 400.2-314)

714.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

715.    This claim is brought by Missouri Plaintiff against Evenflo on behalf of herself and the Missouri Subclass.

716.    Evenflo is and was at all relevant times a merchant as defined by Mo. Rev. Stat. § 400.2-104.

717.    The Big Kid booster seats are and were at all relevant times goods as defined by Mo. Rev. Stat. § 400.2-104.

718.    A warranty that the Big Kid booster seats were in merchantable condition is implied by law pursuant to Mo. Rev. Stat. § 400.2-314.

719.    Missouri law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." Mo. Rev. Stat. § 400.2-314(2)(f).

720.    Missouri Plaintiff and members of the Missouri Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats. Evenflo knew or had reason to know of the specific use for which the Big Kid booster seats were purchased.

721.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

722.    Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that did not conform to Evenflo's affirmations of fact.

723.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

724.    As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, Missouri Plaintiff and members of the Missouri Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

725.    Missouri Plaintiff and members of the Missouri Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT XLII
## UNJUST ENRICHMENT

726.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

727.     Missouri Plaintiff bring this Count in the alternative to Counts XXXIX-XLI pursuant to Federal Rule of Civil Procedure 8(d)(2).

728.     Missouri Plaintiff brings this Count on behalf of herself and the members of the Missouri Subclass.

729.     Evenflo made affirmative representations to Missouri Plaintiff and Missouri Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

730.     Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

731.     Missouri Plaintiff and the members of the Missouri Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

732.     Evenflo was unjustly enriched at the expense of and to the detriment of Missouri Plaintiff and Missouri Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Missouri Plaintiff and the Missouri Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

733.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Missouri Plaintiff and the members of the Missouri Subclass.

734.    Missouri Plaintiff and members of the Missouri Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**L.    Claims Brought on Behalf of the New Jersey Subclass**

**COUNT XLIII**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1, *ET SEQ.*)**

735.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

736.    Plaintiff Karen Sanchez ("New Jersey Plaintiff") brings this claim on behalf of herself and the members of the New Jersey Subclass.

737.    Evenflo is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

738.    Evenflo sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

739.    The New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise. N.J. Stat. § 56:8-2.

740. Evenflo engaged in deceptive and fraudulent conduct, made misrepresentations and knowingly concealed and omitted material facts in connection with the advertising and sale of Big Kid booster seats. The misrepresentations and omissions were material because they were likely to deceive reasonable consumers.

741. For example, Evenflo falsely and misleadingly represented that the Big Kid booster seats were "Side Impact Tested" and safe for children as small as 40 or even 30 pounds. Evenflo also failed to disclose material facts, including but not limited to the following: (1) that neither states nor the federal government had developed side-impact testing rules for child safety seats; (2) that the bar for "passing" Evenflo's testing was so low that the only way to fail the company's test was if a child-sized dummy ends up on the floor or the booster seat itself breaks into pieces; (3) that the booster seat passed the company's side-impact tests even if the child-sized dummy was violently moved or jostled; (4) that Evenflo's side-impact testing was performed by placing a product on a bench (resembling a car seat), moving that bench at 20 miles per hour, then suddenly decelerating it which is in stark contrast to NHTSA's rating program; (5) that internal videos of Evenflo's side impact tests for the Big Kid booster seats show child-sized test dummies bending violently at the hip, torsos, and neck, as well as test dummy heads being thrown to the side which present a high risk of serious injuries to the head, neck, and spine; (6) that children should not be moved from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat; and (7) that no child should use a booster seat until he or she weighs at least 40 pounds and that experts now recommend keeping children in harnessed seats until 65, or even 90, pounds.

742. Evenflo intended to mislead New Jersey Plaintiff and New Jersey Subclass members and induced them to rely on its deceptive and fraudulent conduct, misrepresentations and omissions of material fact.

743. Evenflo acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded New Jersey Plaintiff's and New Jersey Subclass members' rights. Evenflo's knowledge of its internal testing put it on notice that the Big Kid

booster seats were not "Side Impact Tested" or safe and suitable for children as small as 30 pounds.

744.     As a direct and proximate result of Evenflo's deceptive acts and practices, New Jersey Plaintiff and absent New Jersey Subclass members have suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

745.     New Jersey Plaintiff and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

<div align="center">

**COUNT XLIV**
**BREACH OF EXPRESS WARRANTY BY AFFIRMATION,**
**PROMISE, DESCRIPTION, OR SAMPLE**
**(N.J. STAT. ANN. § 12A:2-313)**

</div>

746.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

747.     New Jersey Plaintiff brings this claim on behalf of herself and the members of the New Jersey Subclass.

748.     Evenflo is and was at all relevant times a merchant as defined by N.J. Stat. Ann. § 12a:2-104.

749.     The Big Kid booster seats are and were at all relevant times goods as defined by N.J. Stat. Ann. § 12a:2-105.

750.     N.J. Stat. Ann. § 12a:2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

751.     New Jersey Plaintiff and members of the New Jersey Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

752.     Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

753.     The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

754.     Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

755.     As a direct and proximate result of Evenflo's breach of the express warranty, New Jersey Plaintiff and members of the New Jersey Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

756.     New Jersey Plaintiff and members of the New Jersey Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct

described herein, and any such obligations are unconscionable and therefore void as a matter of law.

<div align="center">

**COUNT XLV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.J. STAT. ANN. § 12A:2-314)**

</div>

757.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

758.    New Jersey Plaintiff brings this claim on behalf of herself and the New Jersey Subclass.

759.    Evenflo is and was at all relevant times a merchant as defined by N.J. Stat. Ann. § 12a:2-104.

760.    The Big Kid booster seats are and were at all relevant times goods as defined by N.J. Stat. Ann. § 12a:2-105.

761.    A warranty that the Big Kid booster seats were in merchantable condition is implied by law pursuant to N.J. Stat. Ann. § 12a:2-314.

762.    New Jersey law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." N.J. Stat. Ann. § 12a:2-314(2)(f).

763.    New Jersey Plaintiff and members of the New Jersey Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats. Evenflo knew or had reason to know of the specific use for which the Big Kid booster seats were purchased.

764.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government

standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

765.     Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that did not conform to Evenflo's affirmations of fact.

766.     Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

767.     As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, New Jersey Plaintiff and members of the New Jersey Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

768.     New Jersey Plaintiff and members of the New Jersey Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

**M.     Claims Brought on Behalf of the New York Subclass**

**COUNT XLVI**
**VIOLATIONS OF THE NEW YORK DECEPTIVE**
**ACTS AND PRACTICES ACT**
**(N.Y. GEN. BUS. LAW § 349, *ET SEQ.*)**

769.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

770.     Plaintiff Danielle Sarratori ("Sarratori") brings this count against Evenflo on behalf of herself and the members of the New York Subclass.

771.     Sarratori has standing to pursue this claim because she suffered injury in fact and lost money or property as a result of Evenflo's actions as described above. All members of the New York Subclass have incurred actual damages and ascertainable loss in the form of the diminished value of their car seats because had they known the truth about the Big Kid booster seats, they would not have purchased them or paid as much for these products.

772.     Sarratori and the New York Subclass members are persons within the meaning of the New York Deceptive Acts and Practices Act (the "New York DAPA"). N.Y. Gen. Bus. Law § 349(h).

773.     Evenflo's actions as set forth herein occurred in the conduct its business, trade, or commerce within the meaning of N.Y. Gen. Bus. Law § 349(a).

774.     The New York DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349(a). Evenflo's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

775.     In the course of its business, Evenflo concealed, suppressed, and misrepresented material facts concerning the Big Kid booster seats, in violation of N.Y. Gen. Bus. Law § 349(a). It did so by, among other things, representing that Big Kid booster seats were suitable for children weighing as little as 30 pounds and that the products were "side impact tested" and provided side impact collision protection—but concealing that Big Kid booster seats were unsafe for any purpose for children weighing less than 40 pounds and that Evenflo's internal tests

showed that a child in its Big Kid booster seats could be in grave danger in such a crash. Evenflo's representations and omissions were material because they were likely to and did in fact deceive reasonable consumers, including Sarratori and the members of the New York Subclass.

776.    Evenflo knew these statements were false and misleading at the time of sale. Evenflo also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Big Kid booster seats.

777.    Evenflo's actions as alleged were further "deceptive" because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Evenflo's customers. The harm caused by Evenflo's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Sarratori and the members of the New York Subclass. Evenflo could and should have chosen one of many reasonably available alternatives, including not selling the Big Kid booster seats, disclosing to prospective buyers that these products were not suitable for use by children weighing less than 40 pounds for any purpose and that Evenflo's own testing showed that child in the Big Kid booster seats could be in grave danger in a side impact collision, and/or not representing that the Big Kid booster seats were suitable for consumer use.

778.    As a result of Evenflo's conduct in violation of in violation of N.Y. Gen. Bus. Law § 349(a), Sarratori and the members of the New York Subclass received an inferior product to the product which they were promised. Had Evenflo disclosed the aforementioned material facts concerning the Big Kid booster seat, Sarratori and the members of the New York Subclass would not have purchased these products or would have paid substantially less.

779.    Evenflo owed Sarratori and the members of the New York Subclass a duty to disclose the true nature of the Big Kid booster seats because Evenflo: (a) possessed exclusive knowledge about the Big Kid booster seats' true nature; (b) intentionally concealed the foregoing from Sarratori and the members of the New York Subclass; and (c) made incomplete

representations about side impact collision protection the Big Kid booster seats provided and these products' suitability for children weighing less than 40 pounds, while purposefully withholding material facts from Sarratori and the members of the New York Subclass that contradicted these representations. At the time of sale, Evenflo knew about the Big Kid booster seats' unsafe nature and that these products were not suitable for use by children weighing less than 40 pounds. Evenflo acquired additional information concerning the Big Kid booster seats' safety attributes and suitability for use for children weighing less than 40 pounds after these products were sold but continued to conceal such information.

780.    Evenflo thus violated the New York DAPA by, at a minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Big Kid booster seats.

781.    Evenflo acted intentionally, knowingly, and maliciously in misrepresenting material facts regarding the Big Kid booster seats with the intent to mislead Sarratori and the New York Subclass members. Evenflo's knowledge of the Big Kid booster seats' internal safety crash results put it on notice that these booster seats were not as advertised. Accordingly, Evenflo knew or should have known that its conduct violated the New York DAPA.

782.    As a direct and proximate result of Evenflo's violations of the New York DAPA, Sarratori and the members of the New York Subclass have suffered injury-in-fact, actual damage, or both.

783.    Sarratori and the members of the New York Subclass further seek monetary damages against Evenflo, measured as actual damages in an amount to be determined at trial or $50 each, whichever is greater, as well as treble damages up to $1,000 each because Evenflo willfully and knowingly violated the New York DAPA. Sarratori and the members of the New York Subclass also seek reasonable attorneys' fees and any other just and proper relief available under the New York DAPA.

## COUNT XLVII
## VIOLATIONS OF THE NEW YORK FALSE ADVERTISING LAW
### (N.Y. GEN. BUS. LAW § 350, *ET SEQ.*)

784.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

785.    Sarratori and Plaintiff David Schnitzer ("Schnitzer") bring this count against Evenflo on behalf of themselves and the members of the New York Subclass.

786.    Sarratori and Schnitzer have standing to pursue this claim because they suffered injury in fact and lost money or property as a result of Evenflo's actions as described above. All members of the New York Subclass have incurred actual damages and ascertainable loss in the form of the diminished value of their car seats because had they known the truth about the Big Kid booster seats, they would not have purchased them or paid as much for these products.

787.    Evenflo's actions as set forth herein occurred in the conduct its business, trade, or commerce within the meaning of the New York False Advertising Law ("New York FAL"). N.Y. Gen. Bus. Law § 350.

788.    The New York FAL makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of ... representations [made] with respect to the commodity." N.Y. Gen. Bus. Law § 350-a(1).

789.    In the course of its business, Evenflo concealed, suppressed, and misrepresented material facts concerning the Big Kid booster seats, in violation of N.Y. Gen. Bus. Law § 350. It did so by, among other things, representing that Big Kid booster seats were suitable for children weighing as little as 30 pounds and that the products were "side impact tested" and provided side impact collision protection—but concealing that Big Kid booster seats were unsafe for any purpose for children weighing less than 40 pounds and that Evenflo's internal tests showed that a child in its Big Kid booster seats could be in grave danger in such a crash. Evenflo made and

disseminated these representations and omissions throughout New York, through advertising, marketing, and other publications and statements. These representations and omissions were material because they were likely to and did in fact deceive reasonable consumers, including Sarratori, Schnitzer, and the members of the New York Subclass.

790.    Evenflo knew these statements were false and misleading at the time of sale. Evenflo also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Big Kid booster seats.

791.    As a result of Evenflo's conduct in violation of in violation of N.Y. Gen. Bus. Law § 350, Sarratori, Schnitzer, and the members of the New York Subclass received an inferior product to the product which they were promised. Had Evenflo disclosed the aforementioned material facts concerning the Big Kid booster seat, Sarratori, Schnitzer, and the members of the New York Subclass would not have purchased these products or would have paid substantially less.

792.    Evenflo thus violated the New York FAL by, at a minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Big Kid booster seats.

793.    Evenflo acted intentionally, knowingly, and maliciously in misrepresenting material facts regarding the Big Kid booster seats with the intent to mislead Sarratori, Schnitzer, and the New York Subclass members. Evenflo's knowledge of the Big Kid booster seats' internal safety crash results put it on notice that these booster seats were not as advertised. Accordingly, Evenflo knew or should have known that its conduct violated the New York FAL.

794.    Unless restrained by this Court, Evenflo will continue to engage in untrue and misleading advertising in violation N.Y. Gen. Bus. Law § 350.

795.     As a direct and proximate result of Evenflo's violations of the New York FAL, Sarratori, Schnitzer, and the members of the New York Subclass have suffered injury-in-fact, actual damage, or both.

796.     Sarratori, Schnitzer, and the members of the New York Subclass further seek monetary damages against Evenflo, measured as actual damages in an amount to be determined at trial or statutory damages of $500 each, whichever is greater. Because Evenflo willfully and knowingly violated the New York FAL, Sarratori, Schnitzer, and the New York Subclass members are entitled to recover three times actual damages, up to $10,000. Sarratori, Schnitzer, and the members of the New York Subclass also seek reasonable attorneys' fees and any other just and proper relief available under the New York FAL.

<div align="center">

**COUNT XLVIII**
**BREACH OF EXPRESS WARRANTY BY AFFIRMATION,**
**PROMISE, DESCRIPTION, OR SAMPLE**
**(N.Y. U.C.C. § 2-313)**

</div>

797.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

798.     Sarratori brings this count against Evenflo on behalf of herself and the members of the New York Subclass.

799.     Evenflo is and was at all relevant times a merchant as defined by N.Y. U.C.C. § 2-104.

800.     The Big Kid booster seats are and were at all relevant times goods as defined by N.Y. U.C.C. § 2-105.

801.     N.Y. U.C.C. § 2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

802.     Sarratori and members of the New York Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for

retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

803.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

804.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

805.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

806.    As a direct and proximate result of Evenflo's breach of the express warranty, Sarratori and members of the New York Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

807.    Sarratori and members of the New York Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

**COUNT XLIX**
**UNJUST ENRICHMENT**

808.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

809.    Sarratori and Schnitzer bring this Count in the alternative to Counts XLVI-XLVIII pursuant to Federal Rule of Civil Procedure 8(d)(2).

810.    Sarratori and Schnitzer bring this Count on behalf of themselves and the members of the New York Subclass.

811.    Evenflo made affirmative representations to Sarratori, Schnitzer, and the members of New York Subclass that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

812.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

813.    Sarratori, Schnitzer, and the members of the New York Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

814.    Evenflo was unjustly enriched at the expense of and to the detriment of Sarratori, Schnitzer, and New York Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts, and Sarratori, Schnitzer, and New York Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

815.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Sarratori, Schnitzer, and the members of the New York Subclass.

816.    Sarratori, Schnitzer, and members of the New York Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**N.    Claims Brought on Behalf of the North Carolina Subclass**

**COUNT L**
**VIOLATION OF THE NORTH CAROLINA**
**UNFAIR & DECEPTIVE TRADE PRACTICES ACT**
**(N.C. GEN. STAT. § 75-1.1, *ET SEQ.*)**

817.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

818.    Plaintiff Carla Matthews ("North Carolina Plaintiff") brings this count against Evenflo on behalf of herself and the members of the North Carolina Subclass.

819.    Defendant's foregoing acts and practices, including its omissions in the conduct of trade or commerce, were directed at consumers.

820.    Defendant engaged in "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

821.    Evenflo made affirmative representations to North Carolina Plaintiff and members of the North Carolina Subclass that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

822.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented, but failed to disclose this to North Carolina Plaintiff and members of the North Carolina Subclass.

823.    Evenflo had an independent duty to disclose to North Carolina Plaintiff and members of the North Carolina Subclass that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed, because (1) Evenflo was in exclusive control of the material facts regarding the true weight and safety attributes of its Big Kid booster seats, and such facts were not generally known to the public, North Carolina Plaintiff, and members of the North Carolina Subclass and (2) Evenflo made partial representations about material facts to North Carolina Plaintiff and members of the North Carolina Subclass but suppressed other material facts; and (3) Evenflo actively concealed material facts from North Carolina Plaintiff and members of the North Carolina Subclass.

824.    Defendant's foregoing deceptive acts and practices, including its misrepresentations omissions while engaged in business, were and are deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*

825.    North Carolina Plaintiff and North Carolina Subclass members were deceived by Defendant's affirmative misrepresentations and material omissions about the weight and safety attributes of the booster seats.

826.    North Carolina Plaintiff and North Carolina Subclass members suffered damages when they purchased the Big Kid booster seats. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to North Carolina Plaintiff and the North Carolina Subclass members who were unaware that the Big Kid booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government

standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented, notwithstanding Defendant's representations at the time of purchase.

827.    Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

828.    Consumers, including North Carolina Plaintiff and North Carolina Subclass members, purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known that the booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards," as Evenflo had represented.

829.    As a direct and proximate result of Defendant's deceptive acts and practices, including its omissions, North Carolina Plaintiff and North Carolina Subclass members suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true. They are entitled to recover actual damages and/or treble damages to the extent permitted by law.

830.    In addition, North Carolina Plaintiff and North Carolina Subclass members seek reasonable attorneys' fees and costs.

## COUNT LI
## UNJUST ENRICHMENT

831.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

832.    North Carolina Plaintiff brings this Count in the alternative to Count L pursuant to Federal Rule of Civil Procedure 8(d)(2).

833.    North Carolina Plaintiff bring this Count on behalf of themselves and the members of the North Carolina Subclass.

834. Evenflo made affirmative representations to North Carolina Plaintiff and North Carolina Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

835. Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

836. North Carolina Plaintiff and the members of the North Carolina Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

837. Evenflo was unjustly enriched at the expense of and to the detriment of North Carolina Plaintiff and North Carolina Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and North Carolina Plaintiff and the North Carolina Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

838. Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as North Carolina Plaintiff and the members of the North Carolina Subclass.

839.    North Carolina Plaintiff and members of the North Carolina Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**O.    Claims Brought on Behalf of the Ohio Subclass**

<div align="center">

**COUNT LII**
**VIOLATION OF THE CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE § 1345.01, *ET SEQ.*)**

</div>

840.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

841.    This claim is brought by Plaintiff Cassandra Honaker ("Ohio Plaintiff") on behalf of herself and the members of the Ohio Subclass.

842.    Evenflo is a "supplier" as defined by § 1345.01(C).

843.    Ohio Plaintiff and members of the Ohio Subclass are "consumers" as defined by § 1345.01(D), and their purchase of Evenflo's "Big Kid" seats are "consumer transactions" within the meaning of § 1345.01(A).

844.    Evenflo violated § 1345.02 by virtue of its unfair and deceptive practices in connection with the sale and solicitation of its "Big Kid" seats.

845.    As described above, Evenflo falsely and misleadingly marketed its "Big Kid" line of booster car seats as safe for children as small as 30 pounds when they are not. Evenflo also deceptively represented that its "Big Kid" seats had been side impact tested, and that its side impact test protocol meets or exceeds all applicable federal safety standards, when in reality no federal agency has announced a side impact collision test for child safety seats, and the results of Evenflo's side impact testing show that using its "Big Kid" seats would not make children safer in a side impact collision. Evenflo also consistently failed to disclose the safety risks to children using "Big Kid" seats despite knowing the hazards they posed.

846.    As a direct and proximate cause of Evenflo's unlawful methods, acts, and practices, Ohio Plaintiff and members of the proposed Ohio Subclass suffered injury because

they paid more for their "Big Kid" seats than they otherwise would have, if they would have purchased them at all. Meanwhile, Evenflo has sold more "Big Kid" seats than it otherwise could have and charged inflated prices for the seats, unjustly enriching itself.

847.    The Ohio Attorney General has made available for public inspection the following state court decisions that have held that the acts and omissions of Evenflo, as detailed above, including, but not limited to, the failure to honor implied warranties and the concealment and nondisclosure of material facts about safety and performance of the product in question, constitute deceptive sales practices in violation of Ohio's Consumer Sales Practices Act:

        a.     *Bellinger v. Hewlett-Packard Co.* (OPIF #10002077);

        b.     *Borror v. MarineMax of Ohio* (OPIF #10002388);

        c.     *Brown v. Spears* (OPIF #10000403);

        d.     *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025); and

        e.     *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304).

848.    Pursuant to § 1345.09, Ohio Plaintiff and members of the Ohio Subclass seek damages, revocation, rescission, and their reasonable costs and attorney fees.

### COUNT LIII
### BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE
### (OHIO REV. CODE § 1302.26)

849.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

850.    This claim is brought by Ohio Plaintiff on behalf of herself and the members of the Ohio Subclass.

851.    Evenflo is and was at all relevant times a merchant as defined by Ohio Rev. Code § 1301.01(A)(5).

852.    The Big Kid booster seats are and were at all relevant times goods as defined by Ohio Rev. Code § 1301.01(A)(8).

853.    Ohio Rev. Code § 1302.26 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

854.    Ohio Plaintiff and members of the Ohio Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

855.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

856.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

857.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

858.    As a direct and proximate result of Evenflo's breach of the express warranty, Ohio Plaintiff and members of the Ohio Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations or (2) the monetary difference between the

actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

859.    Ohio Plaintiff and members of the Ohio Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT LIV
## BREACH OF IMPLIED WARRANTY IN TORT
## (OHIO COMMON LAW)

860.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

861.    This claim is brought by Ohio Plaintiff on behalf of herself and the members of the Ohio Subclass.

862.    Evenflo impliedly warranted to Ohio Plaintiff and members of the Ohio Subclass that its "Big Kid" seats were of a certain quality, were fit for the ordinary purpose for which they would be used, and conformed to the promises or affirmations of fact made on their container or label.

863.    Specifically, Evenflo impliedly warranted that its "Big Kid" seats are safe for children as small as 30 pounds, have been side impact tested, and that Evenflo's side impact test protocol meets or exceeds all applicable federal safety standards.

864.    Evenflo's "Big Kid" seats would not pass without objection in the child car safety seat trade because contrary to Evenflo's implied warranties, its "Big Kid" seats fail to provide children side impact protection and are unsafe for children as small as 30 pounds, which makes them unsafe and unfit for the ordinary purposes for which such booster seats are used.

865.    Prior to purchase, Ohio Plaintiff and members of the Ohio Subclass could not have discovered that Evenflo's "Big Kid" seats were not fit for their ordinary purpose and did not conform to the quality previously represented.

866.     Evenflo has failed to meet the expectations of a reasonable consumer. Evenflo's actions have deprived Ohio Plaintiff and members of the Ohio Subclass of the benefit of their bargain, and have caused Ohio Plaintiff and members of the Ohio Subclass to pay more for their "Big Kid" seats than they otherwise would have, if they would have purchased them at all.

867.     As a direct and proximate result of Evenflo's breach of its duties, Ohio Plaintiff and members of the Ohio Subclass received goods whose condition substantially impairs their value. Ohio Plaintiff and members of the Ohio Subclass have been damaged by paying more for their "Big Kid" seats than they otherwise would have, if they would have purchased them at all.

868.     Ohio Plaintiff and members of the Ohio Subclass are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the affected booster seats or the receive compensation for the overpayment or diminution in value of their booster seats, and are also entitled to reasonable attorney fees and costs.

**COUNT LV**
**UNJUST ENRICHMENT**

869.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

870.     Ohio Plaintiff brings this Count in the alternative to Counts LII-LIV pursuant to Federal Rule of Civil Procedure 8(d)(2).

871.     Ohio Plaintiff brings this Count on behalf of herself and the members of the Ohio Subclass.

872.     Evenflo made affirmative representations to Ohio Plaintiff and Ohio Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

873.     Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

- 167 -

874.     Ohio Plaintiff and the members of the Ohio Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

875.     Evenflo was unjustly enriched at the expense of and to the detriment of Ohio Plaintiff and Ohio Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Ohio Plaintiff and the Ohio Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

876.     Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Ohio Plaintiff and the members of Ohio Subclass.

877.     Ohio Plaintiff and members of the Ohio Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**P.     Claims Brought on Behalf of the Pennsylvania Subclass**

**COUNT LVI**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE**
**PRACTICES AND CONSUMER PROTECTION LAW**
**(73 PA. CONS. STAT. § 201-1, *ET SEQ.*)**

878.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

879.    This claim is brought by Plaintiff Lauren Mahler ("Pennsylvania Plaintiff") on behalf of herself and the members of the Pennsylvania Subclass.

880.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including representing that goods or services have characteristics, benefits or qualities that they do not have; representing that goods or services are of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised and certified; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 Pa. Cons. Stat. § 201-2(4).

881.    Evenflo, Pennsylvania Plaintiff, and Pennsylvania Subclass members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

882.    Pennsylvania Plaintiff purchased an Evenflo Big Kid booster seat primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2.

883.    All of the acts complained of herein were perpetrated by Evenflo in the course of trade or commerce within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

884.    In the course of its business, Evenflo made affirmative representations to Pennsylvania Plaintiff and Pennsylvania Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

885.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

886.    Evenflo had an duty to disclose to Pennsylvania Plaintiff and Pennsylvania Subclass members that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could

meet or exceed, but Evenflo intentionally failed to disclose these material facts to Pennsylvania Plaintiff and Pennsylvania Subclass members.

887.   Evenflo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Pennsylvania Plaintiff and the Pennsylvania Subclass members, about the true weight and safety attributes of its Big Kid booster seats.

888.   Evenflo intentionally and knowingly misrepresented material facts regarding its Big Kid model booster seats with intent to mislead Pennsylvania Plaintiff and the Pennsylvania Subclass.

889.   Evenflo knew or should have known that its conduct violated the Pennsylvania CPL.

890.   Evenflo owed Pennsylvania Plaintiff and the Pennsylvania Subclass a duty to disclose the truth about the safety risks posed by its Big Kid model booster seats, because Evenflo:

       a.   Possessed exclusive knowledge about the testing of these seats;

       b.   Intentionally concealed the foregoing from Pennsylvania Plaintiff and the members of the Pennsylvania Subclass; and/or

       c.   Made incomplete and misleading representations that its Big Kid model seats were "side impact tested," while purposefully withholding material facts from Pennsylvania Plaintiff and the members of the Pennsylvania Subclass that contradicted these representations.

891.   Evenflo's affirmative misrepresentations and omissions were material to Pennsylvania Plaintiff and the Pennsylvania Subclass members because they concerned the safety of the Big Kid booster seats, consideration of which was material to determining the value and price of the Big Kid booster seats.

892.   Pennsylvania Plaintiff and the members of the Pennsylvania Subclass suffered ascertainable loss caused by Evenflo's misrepresentations and its concealment of and failure to disclose material information. Pennsylvania Plaintiff and the Pennsylvania Subclass members

would not have purchased Big Kid model booster seats but for Evenflo's violations of the Pennsylvania CPL.

893.    Evenflo had a duty to all Evenflo customers to refrain from unfair and deceptive practices under the Pennsylvania CPL.

894.    As a direct and proximate result of Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats, Pennsylvania Plaintiff and the members of the Pennsylvania Subclass sustained actual monetary damage because they purchased products that they otherwise would not have purchased and/or overpaid for the Big Kid booster seats.

895.    Evenflo is liable to Pennsylvania Plaintiff and the members of the Pennsylvania Subclass for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 Pa. Cons. Stat. § 201-9.2(a). Pennsylvania Plaintiff and the members of the Pennsylvania Subclass are also entitled to an award of punitive damages given that Evenflo's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT LVII
## BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE
### (13 PA.C.S. § 2313)

896.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

897.    This claim is brought by Pennsylvania Plaintiff on behalf of themselves and the members of the Pennsylvania Subclass.

898.    Evenflo is and was at all relevant times a merchant as defined by 13 Pa. C.S. § 2104.

899.    The Big Kid booster seats are and were at all relevant times goods as defined by 13 Pa. C.S. § 2105.

900.    13 Pa. C.S. § 2313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

901.    Pennsylvania Plaintiff and members of the Pennsylvania Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

902.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

903.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

904.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

905.    As a direct and proximate result of Evenflo's breach of the express warranty, Pennsylvania Plaintiff and members of the Pennsylvania Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary

difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

906.    Pennsylvania Plaintiff and members of the Pennsylvania Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT LVIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 PA.C.S. § 2314)

907.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

908.    Pennsylvania Plaintiff bring this claim on behalf of themselves and the members of the Pennsylvania Subclass.

909.    Evenflo is and was at all relevant times a merchant as defined by 13 Pa. C.S. § 2104.

910.    The Big Kid booster seats are and were at all relevant times goods as defined by 13 Pa. C.S. § 2105.

911.    A warranty that the Big Kid booster seats were in merchantable condition is implied by law pursuant to 13 Pa. C.S. § 2314.

912.    Pennsylvania law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." 13 Pa. C.S. § 2314(b)(6).

913.    Pennsylvania Plaintiff and members of the Pennsylvania Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

914.     Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

915.     Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that did not conform to Evenflo's affirmations of fact.

916.     Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

917.     As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, Pennsylvania Plaintiff and members of the Pennsylvania Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

918.     Pennsylvania Plaintiff and members of the Pennsylvania Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT LIX
## UNJUST ENRICHMENT

919.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

920.    Pennsylvania Plaintiff bring this Count in the alternative to Counts LVI-LVIII pursuant to Federal Rule of Civil Procedure 8(d)(2).

921.    Pennsylvania Plaintiff bring this Count on behalf of themselves and the members of the Pennsylvania Subclass.

922.    Evenflo made affirmative representations to Pennsylvania Plaintiff and Pennsylvania Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

923.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

924.    Pennsylvania Plaintiff and the members of the Pennsylvania Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

925.    Evenflo was unjustly enriched at the expense of and to the detriment of Pennsylvania Plaintiff and Pennsylvania Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Pennsylvania Plaintiff and the Pennsylvania Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

926.    Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Pennsylvania Plaintiff and the Pennsylvania Subclass.

927.    Pennsylvania Plaintiff and members of the Pennsylvania Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**Q.    Claims Brought on Behalf of the South Carolina Subclass**

**COUNT LX**
**VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT**
**(S.C. CODE § 39-5-10, *ET SEQ.*)**

928.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

929.    Plaintiff Tarnisha Alston ("South Carolina Plaintiff") brings this count on behalf of herself and the members of the South Carolina Subclass.

930.    Defendant's foregoing acts and practices, including its omissions in the conduct of trade or commerce, were directed at consumers.

931.    Evenflo made affirmative representations to South Carolina Plaintiff and South Carolina Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

932.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and

that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

933.    Evenflo had an independent duty to disclose to South Carolina Plaintiff and South Carolina Subclass members that its booster seats were not safe for kids under 40 pounds, that its booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed, but Evenflo willfully failed to disclose these material facts to South Carolina Plaintiff and South Carolina Subclass members.

934.    Evenflo's affirmative misrepresentations and omissions were material to South Carolina Plaintiff and South Carolina Subclass members because they concerned the safety of the Big Kid booster seats, consideration of which was material to determining the value and price of the Big Kid booster seats.

935.    South Carolina Plaintiff and South Carolina Subclass members reasonably relied on and were induced to act by Evenflo's affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats.

936.    Defendant's unlawful acts and practices complained herein adversely impacted the public interest.

937.    Defendant knew or should have known that its conduct violated the South Carolina Act.

938.    Defendant's foregoing deceptive acts and practices, including its omissions, were and are deceptive acts or practices in violation of S.C. Code § 39-5-10, *et seq.*

939.    Had Evenflo not made affirmative misrepresentations and material omissions regarding the weight and safety attributes of its Big Kid booster seats, South Carolina Plaintiff and South Carolina Subclass members would not have purchased a Big Kid booster seat or would have paid less for it.

940.    As a direct and proximate result of Evenflo's deceptive acts and practices, South Carolina Plaintiff and South Carolina Subclass members sustained monetary damage because

- 177 -

they purchased products that they otherwise would not have purchased and/or overpaid for the Big Kid booster seats.

941.    In addition, South Carolina Plaintiff and South Carolina Subclass members seek reasonable attorneys' fees and costs.

## COUNT LXI
## BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE
### (S.C. CODE § 36-2-313)

942.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

943.    South Carolina Plaintiff brings this count on behalf of herself and the members of the South Carolina Subclass.

944.    Evenflo is and was at all relevant times a merchant as defined by S.C. Code § 36-2-104.

945.    The Big Kid booster seats are and were at all relevant times goods as defined by S.C. Code § 36-2-105.

946.    S.C. Code § 36-2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

947.    South Carolina Plaintiff and members of the South Carolina Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

948.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government

standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

949.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

950.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

951.    As a direct and proximate result of Evenflo's breach of the express warranty, South Carolina Plaintiff and members of the South Carolina Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

952.    South Carolina Plaintiff and members of the South Carolina Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT LXII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (S.C. CODE § 36-2-314)

953.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

954.    This claim is brought by South Carolina Plaintiff against Evenflo on behalf of herself and the members of the South Carolina Subclass.

955.    Evenflo is and was at all relevant times a merchant as defined by S.C. Code § 36-2-104.

956.    The Big Kid booster seats are and were at all relevant times goods as defined by S.C. Code § 36-2-105.

957.    A warranty that the Big Kid booster seats were in merchantable condition is implied by law pursuant to S.C. Code § 36-2-314.

958.    South Carolina Plaintiff and members of the South Carolina Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

959.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

960.    Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that did not conform to Evenflo's affirmations of fact.

961.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here

because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

962.    As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, South Carolina Plaintiff and members of the South Carolina Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

963.    South Carolina Plaintiff and members of the South Carolina Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

<div align="center">

**COUNT LXIII**
**UNJUST ENRICHMENT**

</div>

964.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

965.    South Carolina Plaintiff brings this Count in the alternative to Counts LX-LXII pursuant to Federal Rule of Civil Procedure 8(d)(2).

966.    South Carolina Plaintiff brings this Count on behalf of herself and the members of the South Carolina Subclass.

967.    Evenflo made affirmative representations to South Carolina Plaintiff and South Carolina Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

968.    Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

969.     South Carolina Plaintiff and the members of the South Carolina Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

970.     Evenflo was unjustly enriched at the expense of and to the detriment of South Carolina Plaintiff and South Carolina Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and South Carolina Plaintiff and the South Carolina Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

971.     Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as South Carolina Plaintiff and the South Carolina Subclass.

972.     South Carolina Plaintiff and members of the South Carolina Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**R.    Claims Brought on Behalf of the Tennessee Subclass**

**COUNT LXIV**
**VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT**
**(TENN. CODE. § 47-18-101, *ET SEQ.*)**

973.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

974.    Plaintiff Ashley Miller ("Tennessee Plaintiff") brings this count against Evenflo on behalf of herself and the members of the Tennessee Subclass.

975.    Tennessee Plaintiff has standing to pursue this claim because she suffered injury in fact and lost money or property as a result of Evenflo's actions as described above. All members of the Tennessee Subclass have incurred actual damages and ascertainable loss in the form of the diminished value of their car seats because had they known the truth about the Big Kid booster seats, they would not have purchased them or paid as much for these products.

976.    Tennessee Plaintiff and the Tennessee Subclass members are "natural persons" and "consumers" within the meaning of the Tennessee Consumer Protection Act ("Tennessee CPA"). Tenn. Code § 47-18-103(3).

977.    Evenflo is a "person" within the meaning of Tenn. Code § 47-18-103(14).

978.    Evenflo is engaged in "trade," "commerce," or "consumer transactions" within the meaning of Tenn. Code § 47-18-103(20).

979.    The Tennessee CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," including, but not limited to: "Representing that goods…have characteristics…, uses, [or] benefits…that they do not have…"; "Representing that goods…are of a particular standard, quality or grade…, if they are of another"; "Advertising goods…with intent not to sell them as advertised"; "Using statements or illustrations in any advertisement which create a false impression of the grade, quality,…[or] usability…or which may otherwise misrepresent the goods…in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods…to other goods…"; and

"Engaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code §§ 47-18-102(2), 47-18-104.

980.    In the course of its business, Evenflo concealed, suppressed, and misrepresented material facts concerning the Big Kid booster seats, in violation of Tenn. Code § 47-18-102(2) and Tenn. Code § 47-18-104. It did so by, among other things, representing that Big Kid booster seats were suitable for children weighing as little as 30 pounds and that the products were "side impact tested" and provided side impact collision protection—but concealing that Big Kid booster seats were unsafe for any purpose for children weighing less than 40 pounds and that Evenflo's internal tests showed that a child in its Big Kid booster seats could be in grave danger in such a crash. Evenflo's representations and omissions were material because they were likely to and did in fact deceive reasonable consumers, including Tennessee Plaintiff and members of the Tennessee Subclass. Evenflo knew these statements were false and misleading at the time of sale.

981.    Evenflo's actions as alleged were further "unfair" and "deceptive" because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Evenflo's customers. The harm caused by Evenflo's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Tennessee Plaintiff and the members of the Tennessee Subclass. Evenflo could and should have chosen one of many reasonably available alternatives, including not selling the Big Kid booster seats, disclosing to prospective buyers that these products were not suitable for use by children weighing less than 40 pounds, and that the booster seats were not "side impact tested" "above and beyond government standards." Additionally, Evenflo's conduct was "unfair" because it violated the legislatively declared policies reflected by Tennessee's strong consumer warranty laws.

982.    Evenflo's actions as set forth above occurred in the conduct of trade or commerce.

983.    As a result of Evenflo's conduct in violation of Tenn. Code § 47-18-104, Tennessee Plaintiff and the members of the Tennessee Subclass received an inferior product to

the product which they were promised. Had Evenflo disclosed the aforementioned material facts concerning the Big Kid booster seat, Tennessee Plaintiff and the members of the Tennessee Subclass would not have purchased these products or would have paid substantially less.

984.    Evenflo owed Tennessee Plaintiff and the Tennessee Subclass a duty to disclose the true nature of the Big Kid booster seats because Evenflo: (a) possessed exclusive knowledge about the Big Kid booster seats' true nature; (b) intentionally concealed the foregoing from Tennessee Plaintiff and the members of the Tennessee Subclass ; and (c) made incomplete representations about side impact collision protection the Big Kid booster seats provided and these products' suitability for children weighing less than 40 pounds, while purposefully withholding material facts from Tennessee Plaintiff and the members of the Tennessee Subclass that contradicted these representations. At the time of sale, Evenflo knew about the Big Kid booster seats' unsafe nature and that these products were not suitable for use by children weighing less than 40 pounds. Evenflo acquired additional information concerning the Big Kid booster seats' safety attributes and suitability for use for children weighing less than 40 pounds after these products were sold but continued to conceal such information.

985.    Evenflo thus violated the Tennessee CPA by, at a minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Big Kid booster seats.

986.    Evenflo acted intentionally, knowingly, and maliciously in misrepresenting material facts regarding the Big Kid booster seats with the intent to mislead Tennessee Plaintiff and the Tennessee Subclass members. Evenflo's knowledge of the Big Kid booster seats' internal safety crash results put it on notice that these booster seats were not as advertised. Accordingly, Evenflo knew or should have known that its conduct violated the Tennessee CPA.

987.    As a direct and proximate result of Evenflo's violations of the Tennessee CPA, Tennessee Plaintiff and the members of the Tennessee Subclass have suffered injury-in-fact, actual damage, or both.

988.    Tennessee Plaintiff and the members of the Tennessee Subclass further seek monetary damages against Evenflo, measured as actual damages in an amount to be determined at trial, treble damages as a result of Evenflo's "willful or knowing violation[s]" of the Tennessee CPA, and any other just and proper relief available under Tenn. Code § 47-18-109.

## COUNT LXV
## BREACH OF EXPRESS WARRANTY BY AFFIRMATION, PROMISE, DESCRIPTION, OR SAMPLE
## (TENN. CODE. § 47-2-313)

989.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

990.    Tennessee Plaintiff brings this count against Evenflo on behalf of herself and the members of the Tennessee Subclass.

991.    Evenflo is and was at all relevant times a merchant as defined by Tenn. Code § 47-2-104.

992.    The Big Kid booster seats are and were at all relevant times goods as defined by Tenn. Code § 47-2-105.

993.    Tenn. Code § 47-2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

994.    Tennessee Plaintiff and members of the Tennessee Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

995.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government

- 186 -

standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

996.    The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

997.    Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

998.    As a direct and proximate result of Evenflo's breach of the express warranty, Tennessee Plaintiff and members of the Tennessee Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

999.    Tennessee Plaintiff and members of the Tennessee Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT LXVI
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (TENN. CODE. § 47-2-314)

1000.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1001.   Tennessee Plaintiff brings this count against Evenflo on behalf of herself and the members of the Tennessee Subclass.

1002.   Evenflo is and was at all relevant times a merchant as defined by Tenn. Code § 47-2-104.

1003.   The Big Kid booster seats are and were at all relevant times goods as defined by Tenn. Code § 47-2-105.

1004.   A warranty that the Big Kid booster seats were in merchantable condition is implied by law pursuant to Tenn. Code. § 47-2-314.

1005.   Tennessee law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." Tenn. Code. § 47-2-314(2)(f).

1006.   Tennessee Plaintiff and members of the Tennessee Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats. Evenflo knew or had reason to know of the specific use for which the Big Kid booster seats were purchased.

1007.   Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

1008.   Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that did not conform to Evenflo's affirmations of fact.

- 188 -

1009.   Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

1010.   As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, Tennessee Plaintiff and members of the Tennessee Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

1011.   Tennessee Plaintiff and members of the Tennessee Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT LXVII
## UNJUST ENRICHMENT

1012.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1013.   Tennessee Plaintiff brings this Count in the alternative to Counts LXIV-LXVI pursuant to Federal Rule of Civil Procedure 8(d)(2).

1014.   Tennessee Plaintiff brings this Count on behalf of herself and the Tennessee Subclass.

1015.   Evenflo made affirmative representations to Tennessee Plaintiff and Tennessee Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

1016.   Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

1017.   Tennessee Plaintiff and the members of the Tennessee Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

1018.   Evenflo was unjustly enriched at the expense of and to the detriment of Tennessee Plaintiff and Tennessee Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Tennessee Plaintiff and the Tennessee Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

1019.   Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Tennessee Plaintiff and the members of the Tennessee Subclass.

1020.   Tennessee Plaintiff and members of the Tennessee Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**S.      Claims Brought on Behalf of the Washington Subclass**

<div align="center">

**COUNT LXVIII**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(RCW § 19.86, *ET SEQ.*)**

</div>

1021.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1022.   This claim is brought by Plaintiff Lindsay Reed ("Washington Plaintiff") against Evenflo on behalf of herself and the members of the Washington Subclass.

1023.   Defendant's foregoing unfair and deceptive acts and practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Washington Plaintiff and the members of the Washington Subclass.

1024.   Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." Evenflo failed to disclose that the Big Kid booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards."

1025.   Defendant's foregoing deceptive acts and practices, including its omissions, were material, in part, because they concerned an essential part of the Big Kid booster seats' intended use and provision of safety to children.

1026.   Defendant's foregoing deceptive acts and practices, including its omissions, were and are deceptive acts or practices in violation of the Consumer Protection Act, RCW § 19.86, *et seq.*, in that:

> a.      Defendant manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Big Kid booster seats as safe for children as light as 30 pounds and as "side impact tested" "above and beyond government standards," when it knew these representations were false;
>
> b.      Defendant knew that the truth about the weight limit and safety testing of the booster seats were unknown to and would not be easily discovered by

<div align="center">

- 191 -

</div>

Washington Plaintiff and Washington Subclass members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Big Kid booster seats;

c.    Washington Plaintiff and Washington Subclass members were deceived by Defendant's affirmative representations and material omissions, and could not easily discover, that the Big Kid booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards"; and,

d.    Defendant's deceptive acts and practices, including its omissions, injured Washington Plaintiff and Washington Subclass members, and had the potential to injure members of the public at-large.

1027.   Washington Plaintiff and Washington Subclass members suffered damages when they purchased the Big Kid booster seats. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Washington Plaintiff and the Washington Subclass members who were unaware that the Big Kid booster seats that the Big Kid booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards," notwithstanding Defendant's representations at the time of purchase.

1028.   Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

1029.   Consumers, including Washington Plaintiff and Washington Subclass members, would not have purchased the Big Kid booster seats had they known that the Big Kid booster seats were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards."

1030.   As a direct and proximate result of Defendant's deceptive acts and practices, including its omissions, Washington Plaintiff and Washington Subclass members have been damaged as alleged herein, and are entitled to recover actual damages and/or treble damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

1031.   In addition, Washington Plaintiff and Washington Subclass members seek reasonable attorneys' fees and costs.

**COUNT LXIX**
**BREACH OF EXPRESS WARRANTY BY AFFIRMATION,**
**PROMISE, DESCRIPTION, OR SAMPLE**
**(RCW § 62A.2-313)**

1032.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1033.   This claim is brought by Washington Plaintiff against Evenflo on behalf of herself and members of the Washington Subclass.

1034.   Evenflo is and was at all relevant times a merchant as defined by RCW § 62A.2-104.

1035.   The Big Kid booster seats are and were at all relevant times goods as defined by RCW § 62A.2-105.

1036.   RCW § 62A.2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

1037.   Washington Plaintiff and members of the Washington Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

1038.   Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

1039.   The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

1040.   Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

1041.   As a direct and proximate result of Evenflo's breach of the express warranty, Washington Plaintiff and members of the Washington Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

1042.   Washington Plaintiff and members of the Washington Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

**COUNT LXX**
**UNJUST ENRICHMENT**

1043.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1044.   Washington Plaintiff brings this Count in the alternative to Counts LXVIII-LXIX pursuant to Federal Rule of Civil Procedure 8(d)(2).

1045.   Washington Plaintiff brings this Count on behalf of the Washington Subclass.

1046.   Evenflo made affirmative representations to Washington Plaintiff and Washington Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

1047.   Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

1048.   Washington Plaintiff and the members of the Washington Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

1049.   Evenflo was unjustly enriched at the expense of and to the detriment of Washington Plaintiff and Washington Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and Washington Plaintiff and Washington Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

1050.   Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as Washington Plaintiff and the members of the Washington Subclass.

1051.   Washington Plaintiff and members of the Washington Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

**T.   Claims Brought on Behalf of the West Virginia Subclass**

<div align="center">

**COUNT LXXI**
**VIOLATION OF THE WEST VIRGINIA CONSUMER**
**CREDIT AND PROTECTION ACT**
**(W. VA. CODE § 46A-6-101, *ET SEQ.*)**

</div>

1052.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1053.   This claim is brought by Janette D. Smarr and Kristin Atwell ("West Virginia Plaintiffs") against Evenflo on behalf of themselves and the members of the West Virginia Subclass.

1054.   The West Virginia Consumer Credit and Protection Act ("WVCCPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

1055.   West Virginia Plaintiffs and the West Virginia Subclass are "consumers" within the meaning of W. Va. Code § 46A-1-102.

1056.   Evenflo made affirmative representations to West Virginia Plaintiff and members of the West Virginia Subclass that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

1057.   Evenflo knew, but failed to disclose, that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

1058.   Evenflo's unlawful acts or practices were likely to and did in fact deceive reasonable consumers, including West Virginia Plaintiffs and the West Virginia Subclass members, about the true weight limit and safety attributes of the Big Kid booster seats.

1059.   West Virginia Plaintiffs and West Virginia Subclass members relied on Evenflo's representations regarding their side-impact testing and weight limits when purchasing car seats for their children.

1060.   Evenflo intentionally and knowingly misrepresented material facts regarding its "Big Kid" booster seats with intent to mislead West Virginia Plaintiffs and the West Virginia Subclass.

1061.   Evenflo knew or should have known that its conduct violated the WVCCPA.

1062.   Evenflo owed West Virginia Plaintiffs and the West Virginia Subclass a duty to disclose the truth about the weight limit and safety attributes of its "Big Kid" booster seats, because Evenflo:

> a.   Possessed exclusive knowledge about the weight limit and safety testing of these seats;
>
> b.   Intentionally concealed the foregoing from West Virginia Plaintiffs and the members of the West Virginia Subclass; and/or
>
> c.   Made incomplete and misleading representations that its "Big Kid" booster seats were "side impact tested," while purposefully withholding material facts from West Virginia Plaintiffs and the West Virginia Subclass that contradicted these representations.

1063.   Evenflo's omissions and/or misrepresentations about the safety of its "Big Kid" booster seats were material to West Virginia Plaintiffs and the West Virginia Subclass.

1064.   West Virginia Plaintiffs and the members of the West Virginia Subclass suffered ascertainable loss caused by Evenflo's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs and the West Virginia Subclass members would not have purchased "Big Kid" model seats but for Evenflo's violations of the WVCCPA.

1065.   Evenflo had an ongoing duty to all Evenflo customers to refrain from unlawful acts or practices under the WVCCPA. As a direct and proximate result of Evenflo's violations of

the WVCCPA, Plaintiffs and the members of the West Virginia Subclass have suffered injury-in-fact and/or actual damage.

1066.   Evenflo's violations present a continuing risk to West Virginia Plaintiffs and the members of the West Virginia Subclass, as well as to the general public. Evenflo's unlawful acts and practices complained of herein affect the public interest.

1067.   West Virginia Plaintiffs seek monetary relief against Evenflo measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 for each plaintiff; reasonable attorneys' fees and court costs; and any other just and proper relief available under W. Va. Code § 46A-6-106.

1068.   Evenflo also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of its "Big Kid" booster seats.

1069.   Additionally, Evenflo willfully and intentionally labelled its "Big Kid" booster seats as safe for children weighing between 30 and 40 pounds when it knew—and, in fact, changed its labelling internationally—that its "Big Kid" booster seats were not safe for children weighing less than 40 pounds.

1070.   Evenflo's unlawful acts or practices were likely to and did in fact deceive reasonable consumers, including West Virginia Plaintiffs and the West Virginia Subclass members, about the true weight limits and safety attributes of its "Big Kid" booster seats.

1071.   West Virginia Plaintiffs and West Virginia consumers relied on Evenflo's representations regarding their side-impact testing and weight limits when purchasing car seats for their children.

1072.   Evenflo intentionally and knowingly misrepresented material facts regarding its Big Kid model booster seats with intent to mislead West Virginia Plaintiffs and the West Virginia Subclass.

1073.   Evenflo knew or should have known that its conduct violated the West Virginia CPA.

1074.   Evenflo owed West Virginia Plaintiffs and the West Virginia Subclass a duty to disclose the truth about the safety risks posed by its Big Kid model booster seats, because Evenflo:

a.      Possessed exclusive knowledge about the testing of these seats;

b.      Intentionally concealed the foregoing from Plaintiffs and the West Virginia Subclass; and/or

c.      Made incomplete and misleading representations that its "Big Kid" booster seats were "side impact tested," while purposefully withholding material facts from Plaintiffs and the West Virginia Subclass that contradicted these representations.

1075.   Evenflo's omissions and/or misrepresentations about the safety of its "Big Kid" booster seats were material to West Virginia Plaintiffs and the West Virginia Subclass.

1076.   West Virginia Plaintiffs and the West Virginia Subclass suffered ascertainable loss caused by Evenflo's misrepresentations and its concealment of and failure to disclose material information. West Virginia Plaintiffs and the West Virginia Subclass members would not have purchased "Big Kid" booster seats but for Evenflo's violations of the WVCCPA.

1077.   Evenflo had an ongoing duty to all Evenflo customers to refrain from unlawful acts or practices under the WVCCPA. As a direct and proximate result of Evenflo's violations of the WVCCPA, West Virginia Plaintiffs and the members of the West Virginia Subclass have suffered injury-in-fact and/or actual damage.

1078.   Pursuant to W. Va. Code § 46A-6-106, Plaintiffs' counsel advised Defendant, on behalf of the West Virginia Subclass, of the violation of this statute and afforded Defendant an opportunity to cure this violation, but Defendant has failed to timely do so.

1079.   West Virginia Plaintiffs seek monetary relief against Evenflo measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages or

other damages available by law for each plaintiff; reasonable attorneys' fees and court costs; and any other just and proper relief available under 46 W Va. Code § 46A-6-106.

<div align="center">

**COUNT LXXII**
**BREACH OF EXPRESS WARRANTY BY AFFIRMATION,**
**PROMISE, DESCRIPTION, OR SAMPLE**
**(W. VA. CODE § 46-2-313)**

</div>

1080.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1081.    This claim is brought West Virginia Plaintiffs against Evenflo on behalf of themselves and the members of the West Virginia Subclass.

1082.    Evenflo is and was at all relevant times a merchant as defined by W. Va. Code. § 46-2-104.

1083.    The Big Kid booster seats are and were at all relevant times goods as defined by W. Va. Code. § 46-2-105.

1084.    W. Va. Code. § 46-2-313 states that a merchant creates an express warranty by making to the buyer "[a]ny affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain" and "any description of the goods which is made part of the basis of the bargain."

1085.    West Virginia Plaintiffs and members of the West Virginia Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

1086.    Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations of fact became part of the basis of the bargain and thus created an express warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact.

<div align="center">

- 200 -

</div>

1087.   The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its express warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

1088.   Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

1089.   As a direct and proximate result of Evenflo's breach of the express warranty, West Virginia Plaintiff and members of the West Virginia Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

1090.   West Virginia Plaintiff and members of the West Virginia Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT LXXIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (W. VA. CODE § 46-2-314)

1091.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1092.   This claim is brought by West Virginia Plaintiffs against Evenflo on behalf of themselves and the members of the West Virginia Subclass.

1093.   Evenflo is and was at all relevant times a merchant as defined by W. Va. Code. § 46-2-104.

1094.   The Big Kid booster seats are and were at all relevant times goods as defined by W. Va. Code. § 46-2-105.

1095.   A warranty that the Big Kid booster seats were in merchantable condition is implied by law pursuant to W. Va. Code. § 46-2-314.

1096.   West Virginia law states that "goods to be merchantable must … conform to the promises or affirmations of fact made on the container or label if any." W. Va. Code. § 46-2-314(2)(f).

1097.   West Virginia Plaintiffs and members of the West Virginia Subclass purchased the Big Kid booster seats manufactured and marketed by Evenflo by and through Evenflo's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Evenflo's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Evenflo was the merchant, manufacturer, marketer, warrantor, and/or seller of the Big Kid booster seats.

1098.   Evenflo made affirmations of fact that its Big Kid booster seats were safe for children as light as 30 pounds and were "side impact tested" "above and beyond government standards." These affirmations created an implied warranty that the Big Kid booster seats conformed to Evenflo's affirmations of fact. The Big Kid booster seats, however, were not safe for children as light as 30 pounds and were not "side impact tested" "above and beyond government standards." Thus, Evenflo breached its implied warranty because the Big Kid booster seats did not conform to Evenflo's affirmations of fact.

1099.   Evenflo cannot disclaim its implied warranty as it knowingly sold Big Kid booster seats that did not conform to Evenflo's affirmations of fact.

1100.   Evenflo was provided notice as outlined herein, including by the numerous consumer class action complaints filed against it. Moreover, affording Evenflo a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here

because Evenflo had actual knowledge of and concealed that its booster seats did not conform to its affirmations of fact.

1101.   As a direct and proximate result of Evenflo's breach of the implied warranty of merchantability, West Virginia Plaintiffs and members of the West Virginia Subclass suffered monetary damage at the point of sale in an amount measured either by (1) the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations, or (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true.

1102.   West Virginia Plaintiffs and members of the West Virginia Subclass are excused from performance of any warranty obligations as a result of Evenflo's intentional misconduct described herein, and any such obligations are unconscionable and therefore void as a matter of law.

## COUNT LXXIV
## UNJUST ENRICHMENT

1103.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1104.   West Virginia Plaintiffs bring this Count in the alternative to Counts LXXI-LXXIII pursuant to Federal Rule of Civil Procedure 8(d)(2).

1105.   West Virginia Plaintiffs bring this Count on behalf of the West Virginia Subclass.

1106.   Evenflo made affirmative representations to West Virginia Plaintiffs and West Virginia Subclass members that its "Big Kid" booster seats were (1) "side impact tested" "above and beyond government standards" and (2) safe for children as small as 30 pounds.

1107.   Evenflo knew that its booster seats were not safe for kids under 40 pounds, that the booster seats were not "side impact tested" "above and beyond government standards," and that there were no applicable government side-impact tests during the relevant time period that it could meet or exceed as it represented.

1108.   West Virginia Plaintiffs and the members of the West Virginia Subclass purchased Evenflo's Big Kid booster seats that they would otherwise have not purchased, or for which they would have paid less money, had they known of the safety risks of using the booster seats and that Evenflo's representations that the Big Kid booster seats were "Side Impact Tested" and suitable for children as small as 30 pounds were false and/or misleading.

1109.   Evenflo was unjustly enriched at the expense of and to the detriment of West Virginia Plaintiffs and West Virginia Subclass members, who unknowingly paid money and overpaid for the Big Kid booster seats that were falsely marketed. Evenflo was also unjustly enriched because it made material misrepresentations and failed to disclose material facts and West Virginia Plaintiffs and the West Virginia Subclass members would have otherwise not bought the Big Kid booster seats or would have paid less for them absent Evenflo's affirmative misrepresentations and material omissions.

1110.   Specifically, Evenflo receives and appreciates a direct financial benefit from the sale of its products to end consumers. Evenflo sells its products directly to end consumers, as well as selling its products to distributors, retailers and other intermediaries, who then sell products to end consumers. The sale of Evenflo's products to end consumers results in revenues which are either paid directly to Evenflo or used by the intermediaries to pay Evenflo for its products. That is, Evenflo's success as a business is directly associated with the volume of the sale of its products to end consumers, such as West Virginia Plaintiffs and the West Virginia Subclass.

1111.   West Virginia Plaintiffs and members of the Colorado Subclass therefore seek both restitution of the monies they paid and overpaid and/or non-restitutionary disgorgement of Evenflo's profits.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in their favor and against Evenflo, as follows:

A.     A determination that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure Rule 23(a) and (b)(3) or, in the alternative, (c)(4), and for an order certifying this case as a class action, appointing Plaintiffs as Class representatives as reflected above, and appointing Plaintiffs' counsel as Class Counsel;

B.     A declaration that Evenflo's affirmative misrepresentations and material omissions about the weight limit and safety testing of Evenflo's Big Kid booster seat were unfair, deceptive, fraudulent, wrongful, and unlawful; and a declaration that Evenflo breached its express and implied warranties;

C.     Compensatory damages an amount measured either by (1) a refund of the full purchase price (because they would not have bought at all but-for Evenflo's material misrepresentations); (2) the monetary difference between the actual value of the Big Kid seat at the time of purchase and what its value would have been if Evenflo's representations had been true (because, at minimum, they would have paid less but-for Evenflo's material misrepresentations); and/or (3) the monetary difference between the actual value of the Big Kid seat at the time of purchase and the price Plaintiffs paid for it;

D.     Disgorgement of the ill-gotten gains derived by Evenflo from its misconduct;

E.     Punitive, exemplary, and treble damages;

F.     Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

G.     An order awarding Plaintiffs and Class members their attorney's fees, costs, and expenses incurred in connection with this action; and

H.     Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED: January 4, 2024

Respectfully submitted,

/s/ Mark P. Chalos
**Mark P. Chalos**
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
222 Second Avenue South, Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Email: mchalos@lchb.com

**Steve W. Berman**
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

**Martha A. Geer**
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
900 W. Morgan Street
Raleigh, NC 27606
Telephone: (919) 600-5023
Email: mgeer@milberg.com

*Plaintiffs' Co-Lead Counsel*

**Edward F. Haber**
SHAPIRO HABER & URMY LLP
Two Seaport Lane, 6th Floor
Boston, MA 02210
Telephone: (617) 439-3939
Email: ehaber@shulaw.com

*Plaintiffs' Liaison Counsel*

**Alison E. Chase**
KELLER ROHRBACK LLP
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Email: achase@kellerrohrback.com

**Rosemary M. Rivas**
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Email: rmr@classlawgroup.com

**Jeffrey W. Golan**
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Email: jgolan@barrack.com

*Plaintiffs' Executive Committee*